Case No. _____

---

**In The United States Court of Appeals
for the Third Circuit**

---

RYAN BUTTON,
on behalf of himself and others similarly situated,

*Plaintiff-Petitioner*,

v.

DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC D/B/A DOLLAR GENERAL, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, AND JOHN DOES 1-500, INDIVIDUALLY, JOINTLY, SEVERALLY, OR IN THE ALTERNATIVE,

*Defendants-Respondents*,

---

On Petition For Permission To Appeal From the Order and Opinion of the United States District Court for the District of New Jersey Granting Remand

Civil Action No. 22-07028 (MAS) (RLS)

---

**PLAINTIFF-PETITIONER RYAN BUTTON'S PETITION FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1453(c)(1)**

---

Javier L. Merino, Esq.
**THE DANN LAW FIRM, P.C.**
1520 US Highway 130, Ste. 101
North Brunswick, NJ 08902
Telephone: (201) 355-3440
Facsimile: (216) 373-0536
jmerino@dannlaw.com

*Attorneys for Plaintiff-Petitioner Ryan Button*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. i

TABLE OF EXHIBITS ..................................................................... iii

PRELIMINARY STATEMENT ...........................................................1

STATEMENT OF FACTS ..................................................................2

PLAINTIFF'S CLAIMS AGAINST THE JOHN DOES DEFENDANTS ..............5

PROCEDURAL HISTORY...................................................................6

QUESTIONS PRESENTED...................................................................8

RELIEF SOUGHT ...........................................................................9

ARGUMENT ..................................................................................9

   I.   THE APPEAL IS AUTHORIZED BY 28 U.S.C. § 1453(c)(1). ....................9

   II.    THIS COURT SHOULD EXERCISE ITS DISCRETION AND GRANT THIS PETITION ..............................................................................9

   III.   STANDARD OF REVIEW .................................................................10

   IV.   APPELLATE REVIEW IS WARRANTED BECAUSE THE DISTRICT COURT APPLIED THE WRONG STANDARD AND BURDEN OF PROOF IN DETERMINATING WHETHER AN EXCEPTION TO CAFA APPLIED. 11

      A.   John Doe Individual Liability Under The CFA ......................................11

      B.   District Court Incorrectly Construed Allegations of Complaint..............13

      C.   District Court Incorrectly Concluded That John Does Merely Acted Pursuant to a Corporate Policy..........................................................16

CONCLUSION ................................................................................18

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME.............................19

STATEMENT OF RELATED CASES AND PROCEEDINGS ...........................20

CERTIFICATE OF BAR MEMBERSHIP, DIGITAL SUBMISSION AND ANTI-VIRUS SCAN ................................................................................21

CERTIFICATE OF SERVICE ...............................................................22

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Boeing Co.*, 821 F.3d 1111 (9th Cir. 2016) .................................................16

*Allen v. V & A Bros., Inc.*, 208 N.J. 114 (2011) ......................................... 12, 13, 17

*Bloomquist v. Covance, Inc.*, No. 16-cv-2559-BAS (BLM), 2017 U.S. Dist. LEXIS 68576 (S.D. Cal. May 3, 2017) .................................................................... 16, 18

*BP Am., Inc. v. Oklahoma ex rel. Edmondson*, 613 F.3d 1029 (10th Cir. 2010) ......9

*Brumfield v. Sanders*, 232 F.3d 376 (3d Cir. 2000)..................................................11

*Busker v. Wabtec Corp.*, 750 Fed. Appx. 522 (9th Cir. 2018) ......................... 16, 17

*Coleman v. Estes Express Lines, Inc.*, 627 F.3d 1096 (9th Cir. 2010) ............. 10, 15

*Coleman*, 631 F.3d at 1017 ......................................................................................16

*College of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33 (1st Cir. 2009)...............................................................................................................10

*Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026 (3d Cir. 1997) ...............................................................................................11

*Miller v. Icon Clinical Research LLC*, No. 20-cv-04117-YGR, 2020 U.S. Dist. LEXIS 152319 (N.D. Cal. Aug. 20, 2020)...........................................................18

*Morgan v. Gay*, 471 F.3d 469 (3d Cir. 2006) ........................................................13

*Opelousas Gen. Tr. Auth. v. Multiplan, Inc.*, 533 F. App'x 488 (5th Cir. 2013) ....10

*Pacitti v. Macy's*, 193 F.3d 766 (3d Cir. 1999).......................................................11

*Probola v. Long & Foster Real Estate, Inc.*, 486 F. App'x 229 (3d Cir. 2012)........9

*Thornley v. Clearview AI, Inc.*, No. 20-cv-3843, 2020 U.S. Dist. LEXIS 197519 (N.D. Ill. Oct. 23, 2020) .......................................................................................13

*Torres v. CleanNet, U.S.A., Inc.*, No. 14-2818, 2014 U.S. Dist. LEXIS 155657 (E.D. Pa. Nov. 4, 2014) .........................................................................................15

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) ..........................11

i

*Vodenichar v. Halcón Energy Props.*, 733 F.3d 497 (3d Cir. 2013) ...................... 15

*Walsh v. Defs., Inc.*, 894 F.3d 583 (3d Cir. 2018) ................................... 14

*Wilkins v. Navy Fed. Credit Union*, No. 22-cv-02916-SDW-ESK, 2022 U.S. Dist. LEXIS 227797 (D.N.J. Sep. 14, 2022) ................................................ 15

**Statutes**

28 U.S.C. § 1453(c) ............................................................. 9, 10

28 U.S.C. §1332(d) ................................................................. 7

N.J.S.A. 56:8-1(d) ................................................................ 11

**Other**

S.Rep. No. 109-14, at 44 (2005) ................................................. 10

## <u>TABLE OF EXHIBITS</u>

A. Opinion on Motion for Remand, or in Alternative, Leave for Jurisdictional Discovery…………………………………………………………………….A1

B. Notice of Removal……………………………………………….……A12
    a. Exhibit 1 - State Court Complaint and Exhibits………………..…A25

C. Notice of Motion to Remand…………………………………….…....A53
    a. Declaration of Javier L. Merino and Exhibits…………………..…A55

D. Declaration of Philip Goldstein in Opposition to Motion to Remand and Exhibits……………………………………………………..…….…..…A100

## **PRELIMINARY STATEMENT**

This consumer class action arises out of Defendants' policies and practices of charging Plaintiff and putative class members a higher price at the register than the price of merchandise advertised on the shelves at the time of sale at its Dollar General stores in New Jersey. Plaintiff's complaint identified "John Does" Defendants as "officers, supervisors, regional directors, and or managers of Dollar General stores located in New Jersey" who were responsible for setting and implementing Dollar General's policies, procedures and practices regarding merchandise pricing. In denying Plaintiff's request to conduct jurisdictional discovery into the John Doe defendants so that Plaintiff could establish the "local controversy" exception under the Class Action Fairness Act, the District Court assumed facts not in the Complaint and otherwise failed to evaluate Plaintiff's jurisdictional discovery request under the lenient threshold set forth by this Court in *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003).

The court's conclusion that because Plaintiff pled that *both* the corporate officers *and* the John Does defendants as being responsible for implementing and setting Defendants' policies and practices to charge a higher price at the register somehow renders the John Does' conduct as insignificant is based on a wrongful assumption that the John Does' conduct "will necessarily pale in comparison." This conclusory result contradicts this Circuit's holding that discovery should be

permitted so long as the claims are not frivolous and that the District Court should analyze the "local controversy" standard against the complaint as pled and not assume facts outside the pleadings.

The court's second conclusion that the John Does are pled as merely employees of Dollar Generals acting pursuant to a corporate policy and practice contradicts the allegations of the Complaint. The court relied upon this conclusion to reject Plaintiff's request for discovery. Conversely, Plaintiff has pled the John Does as the officers, supervisors, regional directors, and/or managers who were responsible for *setting* and *implementing* Dollar General's policies, practices, and procedures as to merchandise pricing advertisements.

This Court should reverse the portion of the District Court's order denying Plaintiff leave to conduct jurisdictional discovery and permit Plaintiff to re-file his motion for remand upon completing jurisdictional discovery.

## STATEMENT OF FACTS

This action involves Defendants' policies and practices related to regularly charging Plaintiff and putative class members a higher price at the register than the price of merchandise advertised on the shelves at the time of sale at its from Dollar General stores in New Jersey, in violation of the New Jersey General Advertising Regulations, N.J.A.C. 13:45A-9.1, et seq. ("GA Regulations"); New Jersey Unit Price Disclosure Act Regulations, N.J.A.C. 13:45A-14.1, et seq. ("Price Disclosure

Regulations") Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("CFA"); and the Truth in Consumer Contract Notice and Warranty Act ("TCCWNA"), N.J.S.A. 56:12-14, et seq. A27-A52.

Defendants operate dollar stores that offer a variety of inexpensive merchandise, including home products, seasonal products, consumables, and apparel. A31 at ¶ 19. Its core customer category includes low-to-middle-income customers. A31 at ¶ 19. The company's stores are located in convenient locations that are easily accessible to its customers. A31 at ¶ 19. It follows a small-box format and the stores have an easy ''in and out'' shopping set-up. A31 at ¶ 19. As of March 2022, Defendants own and operate approximately one hundred seventy-five (175) Dollar General stores in New Jersey, with more locations scheduled to open. A32 at ¶ 21.

Button regularly shops at the Dollar General store located in Keyport, New Jersey. A32 at ¶ 22. In early 2022, he began noticing discrepancies between the prices of merchandise advertised on the shelves and what he was charged at checkout. A32 at ¶ 23. From May through July 2022, Plaintiff made several purchases at the Keyport Dollar General store during which Dollar General charged him a higher price for its merchandise than advertised shelf price and documented the increase from the advertised price to what he was charged and paid at checkout. A32 at ¶ 23. Due to Plaintiff's experience being charged more at checkout than the

advertised shelf price for merchandise, Plaintiff started to take pictures of the advertised prices to document the advertised/shelf prices to compare them to what he was charged and paid at checkout. A32 at ¶ 25.

Button alleges that Defendants' conduct violates the GA Regulations, the Price Disclosure Regulations, the CFA, and TCCWNA. A27-A52.

The GA regulations prohibit "the failure of an advertiser to substantiate through documents, records or other written proof any claim made regarding the….price of the advertised merchandise". Here, Defendants have violated the GA regulations at N.J.A.C. § 13:45A-9.2(a)(10) by charging consumers more than the price advertised on its unit price labels at Dollar General's New Jersey stores.

Similarly, the Price Disclosure Regulations mandate that corporations and entities engaged in the sale of consumer commodities disclose the unit and retail price of the same. Here, Defendants failed to properly disclose the actual retail price of its consumer goods in its unit price labels as the unit price labels understated the true retail price of the items charged to customers at Dollar General's stores in New Jersey.

Relatedly, Defendants' "advertisement of merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price is an unlawful practice and a violation of the [CFA]." N.J.S.A. 56:8-2.2.

By offering, displaying, and/or entering into form contracts and providing form notices to Button and the members of putative Class contrary to the GA Regulations, the Price Disclosure Regulations and the CFA, Defendants also violated the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, *et seq.*

## **PLAINTIFF'S CLAIMS AGAINST THE JOHN DOES DEFENDANTS**

The Complaint names Defendants JOHN/JANE DOES 1-500 ("John Does") as fictitious names of individuals who are officers, supervisors, regional directors, and or managers of Dollar General stores located in New Jersey during the class period, alleged for the purpose of substituting their names for those of any additional defendants whose identity may be disclosed in discovery and should be made parties to this action. A30 at ¶ 12. The Complaint further pleads that the John Does are all employees of Dollar General who, at all times relevant to this matter, were responsible for setting and implementing Dollar General's policies, procedures and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisements on its shelves and charging the advertised prices at the cash registers in Dollar General's New Jersey stores and the stores they each manage or supervise. A30 at ¶ 13. Furthermore, the complaint alleges that most, if not all of the John Does reside in or are otherwise residents or citizens of New Jersey at all times relevant to this matter. A30 at ¶¶ 14-15. The

Complaint asserts that the John Does are each personally and directly liable to Plaintiff and putative class members that purchased items in the stores where they were responsible for setting and implementing Dollar General's policies, procedures and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisements on its shelves and charging the advertised prices at the cash registers due to their violations of the consumer statutes and regulations pleaded herein. A30 at ¶ 16. Last, the Plaintiff, on behalf of himself and the putative class seeks significant relief directly from the John Does, both collectively and individually, in the form of treble damages, statutory damages, injunctive relief, and attorneys' fees. A47-A49 at "PRAYER FOR RELIEF".

## PROCEDURAL HISTORY

Plaintiff Ryan Button ("Button") filed the complaint in this matter on October 6, 2022 in the New Jersey Superior Court, Law Division, Monmouth County, Docket No. MON-L-005236-22. A13 at ¶ 1 and A27-A52. On or about November 4, 2022, Button served his initial discovery demands (the "Discovery Demands'), along with the summons and complaint, on Defendants Dollar General Corporation, Dolgencorp, LLC, Todd Vasos, Jeff Owen, Steve Sunderland, and Emily Taylor (collectively, "Defendants"). A56 at ¶¶ 3-4 and A61-A82. Through the Discovery Demands, Button requested, amongst other information, the full legal names and

current or last known addresses of the John Does identified in the complaint., i.e., individuals who are or were officers, supervisors, regional directors, and or managers of Dollar General stores located in New Jersey during the Class Period referred to in the complaint. A61-A82. On December 5, 2022, the defendants filed the Notice of Removal, alleging diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"). A12-A24. On January 16, 2023, Plaintiff moved for remand, or in the alternative, for leave to conduct jurisdictional discovery. A53-A99. Through Plaintiff's remand motion, he asserted that the District Court was required to decline jurisdiction based on the "local controversy" exception to CAFA as he is seeking significant relief from the John Does defendants and the John Does' conduct forms a significant basis of Plaintiff's claims. In the alternative, Plaintiff sought jurisdictional discovery into the John Does defendants so that they could be named in an amended complaint for which Plaintiff would refile for remand. Defendants opposed. A100-A574. On August 9, 2023, the District Court denied Plaintiff's motion in its entirety. A1-A12.

The District Court denied Plaintiff's request for remand as it considered the John Does not a defendant presently in the action.[1] A7-A8. The District Court denied Plaintiff's alternative request for jurisdictional discovery on the sole claim that none

---

[1] As set forth above and below, Plaintiff is not petitioning to appeal this portion of the District Court's order; Plaintiff only petitions to appeal the portion of the lower court's order denying his request for leave to conduct jurisdictional discovery.

of the John Does defendants could feasibly have formed a "significant basis" of the claims as outlined in the Complaint. A8-A11. The District Court's "significant basis" evaluation was twofold. First, the Court recognized that the Complaint pled that *both* the John Does defendants and the individually named defendants were responsible for the same conduct. A9. However, the court then determined, without reference to any specific allegations in the complaint, that "the alleged conduct of the John Does is…hardly significant in comparison given the identical alleged conduct further up the corporate hierarchy." A10. Second, the court construed Plaintiff's complaint to read that "the John Does are merely employees of Dollar General" and determined they were "not alleged to have acted independently from the other defendants", even though the complaint pled the John Does as "officers, supervisors, regional directors, and or managers" of Dollar General Stores who "were responsible for *setting* and *implementing* Dollar General's policies, procedures, and practices" as to merchandise price shelving. A10-A11.

## QUESTIONS PRESENTED

1. Whether the District Court erred in finding a John Doe defendant could not form the significant basis of the alleged conduct where similar allegations are made against named Defendants?

2. Whether the District Court erred in holding that the Plaintiff pled the John Does as merely "employees of Dollar Generals" instead of directors, officers, or managers implementing the pricing policies at issue?

**RELIEF SOUGHT**

Petitioner respectfully urges the Court to accept this appeal, reverse the portion of the order denying leave to conduct jurisdictional discovery, and instruct the District Court to enter an order permitting Plaintiff to conduct jurisdictional discovery into the John Does and to refile his motion for remand upon completing jurisdictional discovery.

**ARGUMENT**

I.    **THE APPEAL IS AUTHORIZED BY 28 U.S.C. § 1453(c)(1).**

To further Section 1453(c)'s purpose to "develop a body of appellate law interpreting CAFA," this Court has jurisdiction to "accept an appeal from an order of a district court granting [] a motion to remand a class action to [] State court." 28 U.S.C. § 1453(c)(1); *Probola v. Long & Foster Real Estate, Inc.*, 486 F. App'x 229, 231 (3d Cir. 2012). There is no statutory exception making this case ineligible for review, and this petition is timely. 28 U.S.C. § 1453(c)(1), (d).

II.    **THIS COURT SHOULD EXERCISE ITS DISCRETION AND GRANT THIS PETITION**

Section 1453(c) does not provide a list of factors guiding an appellate court's discretion to grant or deny an appeal of a CAFA remand motion, though several Circuits have established factors that weigh in favor of reviewing this case. *See*, *e.g.*, *BP Am., Inc. v. Oklahoma ex rel. Edmondson*, 613 F.3d 1029, 1034 (10th Cir. 2010) (quoting *College of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d

33, 38-39 (1st Cir. 2009)); *Opelousas Gen. Tr. Auth. v. Multiplan, Inc.*, 533 F. App'x

488, 490 (5th Cir. 2013); *Coleman v. Estes Express Lines, Inc.*, 627 F.3d 1096, 1100

(9th Cir. 2010).

All questions presented here involve important CAFA issues and were

decided in a manner contradicting controlling Third Circuit precedent. The record

here has been well-developed via the fully briefed motion to remand. Review will

provide important guidance to district courts on CAFA exception issues that will

arise again, and will answer questions that are highly consequential to the resolution

of this case. Given Plaintiff's allegations and the scope of relief Plaintiff seeks

against the John Does, this case presents the perfect opportunity for the Circuit Court

to evaluate whether, as Petitioner steadfastly maintains, the District Court erred in

applying this Court's rulings on the burden of proof for conducting jurisdictional

discovery.

### III.    <u>STANDARD OF REVIEW</u>

"[A] court of appeals may accept an appeal from an order of a district court

granting or denying a motion to remand a class action . . . if application is made to

the court of appeals not more than 10 days after entry of the order." 28 U.S.C. §

1453(c)(1). The Senate Judiciary Committee Report on CAFA notes that "a federal

court may have to engage in some fact-finding" to address issues of jurisdiction.

S.Rep. No. 109-14, at 44 (2005). A district court's decision to deny jurisdictional

discovery is reviewed for abuse of discretion. *See Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000); *Pacitti v. Macy's*, 193 F.3d 766, 776 (3d Cir. 1999). Nonetheless, "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is "clearly frivolous". *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citing *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). "The plaintiff's right to conduct jurisdictional discovery should be sustained if" "a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite [significant defendant]". *Toys "R" Us, Inc.*, 318 F.d at 456. Courts should adopt a deferential approach to a party's request for jurisdictional discovery. *Id.*

## IV.    APPELLATE REVIEW IS WARRANTED BECAUSE THE DISTRICT COURT APPLIED THE WRONG STANDARD AND BURDEN OF PROOF IN DETERMINATING WHETHER AN EXCEPTION TO CAFA APPLIED.

### A. John Doe Individual Liability Under The CFA

The John Doe defendants are subject to the New Jersey Consumer Fraud Act ("CFA") because they fall within the definition of a "person" that sold or advertised "merchandise," specifically Dollar General's products to Plaintiff and the class members. N.J.S.A. 56:8-1(d). Under CFA case law, there is no need to "pierce the corporate veil" in order to hold executives of corporations or LLCs liable for their direct conduct. Rather, owners, officers, and employees of a corporation can be held

individually liable for their actions under the CFA if they commit "an affirmative act or a knowing omission that the CFA has made actionable." *Allen v. V & A Bros., Inc.*, 208 N.J. 114, 131-32 (2011). "[T]here can be no doubt that the CFA broadly contemplates imposition of individual liability." *Id.* at 130. "[I]ndividual liability for a violation of the CFA will necessarily depend upon an evaluation of both the specific source of the claimed violation that forms the basis for the plaintiff's complaint as well as the particular acts that the individual has undertaken." *Id.* at 136. "[I]ndividual liability for regulatory violations ultimately must rest on the language of the particular regulation in issue and the nature of the actions undertaken by the individual defendant." *Id.* at 133. Corporate principals and managers "may be broadly liable, for they are the ones who set the policies that the employees may be merely carrying out." *Id.* at 134. The Court went on to caution that the issue of individual liability is fact sensitive and should not generally be decided by dispositive motion:

> These necessarily fact-sensitive determinations often will not lend themselves to adjudication on a record presented in the form of a summary judgment motion. Indeed, as this dispute demonstrates, a trial court may need to await presentation of all of plaintiff's proof about the potential individual liability of corporate officers or employees before there is an adequate record to support a decision. That, however, does not suggest that there will never be a ground on which to conclude that individual claims cannot proceed. Instead, once an adequate record is developed and the evidence assembled, if a trial court concludes that the proofs fail to demonstrate a sufficient basis for imposition of individual liability, the court could direct a verdict in favor of one or more of the individually-named defendants.

*Allen* at 443. Plaintiff has plead in the complaint that the John Does are the Dollar General employees who were responsible for setting and implementing Dollar General's policies, procedures and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisements on its shelves and charging the advertised prices at the cash registers in Dollar General's New Jersey stores and the stores they each manage or supervise. *See* Dkt. 1-1, at ¶ 13. As "the ones who set the policies that the employees may be carrying out", the John Doe defendants are subject to individual liability. *Allen*, 208 N.J. at 134.

## B. District Court Incorrectly Construed Allegations of Complaint

A Plaintiff, even in a class action lawsuit, is the master of his complaint. *Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006). Plaintiff identified the John Does as the "employees of Dollar General who, at all times relevant to this matter, were responsible for <u>setting</u> and <u>implementing</u> Dollar General's policies, procedures, and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisement on its shelves and charging the advertised prices at the cash registers in Dollar General's New Jersey stores." (Emphasis added). *See Thornley v. Clearview AI, Inc.*, No. 20-cv-3843, 2020 U.S. Dist. LEXIS 197519, at *5 (N.D. Ill. Oct. 23, 2020) (remanding case after observing that "a plaintiff is the master of her own complaint. Plaintiffs purposely narrowed

their claim . . . and filed their lawsuit in state court where such actions are allowed without the constraints of Article III standing. In the end, plaintiffs did not allege an injury-in-fact, and thus [the removing defendant] has failed to establish Article III standing.") Furthermore "[t]he local controversy exception does not require that the local defendant's conduct be the most significant conduct or that it predominates over claims against other defendants." *Walsh v. Defs., Inc.*, 894 F.3d 583, 592 (3d Cir. 2018). In Plaintiff's motion, he attached numerous job postings evidencing that Dollar General employees are vested with discretionary authority to set and implement store policies pertaining to merchandise pricing. A58-A59 at ¶¶ 11-13 and A83-A99. One of these included a retail district manager job posting based in Saddle Brook. A59 at ¶ 13 and A95-99.  Dollar general identifies the retail district manager's responsibilities as "Plan and lead the activities of all stores within the assigned area of operation, including full profit and loss responsibility, while acting within the scope of company objectives and policies to accomplish divisional and regional goals" and "[ensure that] [a]ll tools are effectively utilized in each store and market resulting in superior inventory presentation and management." A59 at ¶ 13 and A95-99. The District Court correctly noted that Plaintiff asserted similar allegations against the named corporate Defendants and the John Does pertaining to being responsible for pricing policies at Dollar General stores in New Jersey. A9. However, the District Court then relied upon this assertion to contradictorily state

that "the alleged conduct of the John Does is, therefore, hardly significant in comparison given the identical alleged conduct further up the corporate hierarchy." A10. If both the John Does and the named corporate defendants are responsible for pricing policies, and if the Plaintiff seeks jurisdictional discovery to ascertain the identifies of the John Does and the extent, scope, and nature of their responsibilities, it was incorrect for the District Court to conclude that the John Does' conduct is "hardly significant in comparison" as this conclusion belies the Complaint as pled." The District Court's conclusion "require[d] the Court to accept a key assumption not otherwise pled." *Wilkins v. Navy Fed. Credit Union*, No. 22-cv-02916-SDW-ESK, 2022 U.S. Dist. LEXIS 227797, at *13 (D.N.J. Sep. 14, 2022) *See Torres v. CleanNet, U.S.A., Inc.*, No. 14-2818, 2014 U.S. Dist. LEXIS 155657, at *16-18 n.3 (E.D. Pa. Nov. 4, 2014) ("[T]he Third Circuit has indicated that a district court must make [its] determination based on the allegations in the Complaint.") (citing *Vodenichar v. Halcón Energy Props.*, 733 F.3d 497, 505 n.5 (3d Cir. 2013).

Furthermore, the fact that similar allegations are levied against the corporate named defendants and the John Does does not make the allegations of the John Does less significant. *See Coleman*, 631 F.3d at 1020 (finding "significant basis" requirement satisfied where complaint alleged that in-state and out-of-state defendants violated same laws, because "allegations against [the out-of-state] defendant in no way make the allegations against [the in-state defendant] . . .

15

insignificant"); *see also Bloomquist v. Covance, Inc.*, No. 16-cv-2559-BAS (BLM), 2017 U.S. Dist. LEXIS 68576, at *9 (S.D. Cal. May 3, 2017) ("[T]he in-state defendants are alleged in the complaint to be more than simply local agents or employees . . . . Rather, they are directors within the company. . . . Moreover, the complaint alleges the exact same violations of California Labor Code against all defendants, and this Court need not look further than those allegations."). This Court need not look further than Plaintiff's allegations against the John Does since "nothing in CAFA . . . indicates a congressional intention to turn a jurisdictional determination concerning the local defendant's 'alleged conduct' into a mini-trial on the merits of the plaintiff's claims." *Allen v. Boeing Co.*, 821 F.3d 1111, 1118 (9th Cir. 2016) (quoting *Coleman*, 631 F.3d at 1017).

### C. District Court Incorrectly Concluded That John Does Merely Acted Pursuant to a Corporate Policy

In its decision, the District Court relied upon *Busker v. Wabtec Corp.*, 750 Fed. Appx. 522 (9th Cir. 2018) to hold that Button did not meet the "significant basis" requirement. A10-A11. The District court claimed that Plaintiff "admits, the John Does are merely employees of Dollar General" acting pursuant to a corporate policy and practice. A10. In doing so, the District Court incorrectly interpreted Plaintiff's complaint. In his complaint, Button did not merely allege that the John Does were employees acting pursuant to corporate policy. Instead, Button alleges that the John Does are "officers, supervisors, regional directors, and or managers of

Dollar General stores" who were <u>setting</u> and <u>implementing</u> the store pricing procedures. A30 at ¶¶ 12-13.

In *Busker*, the only allegations as to the local defendant were that he "was an employee, agent, and/or representative" of the corporate defendant and that his violations were "on behalf of his employer". *Busker*, 759 Fed. Appx. at 524. The plaintiff otherwise failed to specifically allege the local defendant's role in the conduct that was the basis of the complaint. *Id.* There, the 9th Circuit determined that the "non-specific allegations about [the local defendant] are insufficient to satisfy the local controversy exception. *Id.* Conversely, the Plaintiff here has identified the roles of the John Doe defendants - they are responsible for setting and implementing Dollar General's policies, procedures and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisements on its shelves and charging the advertised prices at the cash registers. Thus, as pleaded, "[t]he [John Does] may be broadly liable because they are the ones who set the policies that the employees may be merely carrying out." *Allen*, 208 N.J. at 117. Furthermore, Plaintiff's complaint does not merely identify the John Does as employees who were merely acting as agents for Dollar General. These defendants bore the responsibility to set and implement the policies and procedures which are the subject of Plaintiff's claims. A30 at ¶¶ 12-13. Therefore, *Busker* is inapposite. *See Miller v. Icon Clinical Research LLC*, No. 20-

cv-04117-YGR, 2020 U.S. Dist. LEXIS 152319, at *10 n.4 (N.D. Cal. Aug. 20, 2020) (distinguishing *Busker* in noting that plaintiff pled defendant was a director, not merely an employee acting derivatively); *see also Bloomquist v. Covance, Inc.*, No. 16-cv-2559-BAS (BLM), 2017 U.S. Dist. LEXIS 68576, at *9 (S.D. Cal. May 3, 2017) ("[T]he in-state defendants are alleged in the complaint to be more than simply local agents or employees . . . . Rather, they are directors within the company. . . . Moreover, the complaint alleges the exact same violations of California Labor Code against all defendants, and this Court need not look further than those allegations.")

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court accept his appeal, reverse the portion of the District Court's order denying leave to conduct jurisdictional discovery, and instruct the District Court to implement a jurisdictional discovery schedule

Respectfully submitted,

/s/ Javier L. Merino
Javier L. Merino
THE DANN LAW FIRM, PC

**Dated**: August 21, 2023

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 4,235 words, as determined by the word-count function of Microsoft Word 2021, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32.1(f); and

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in the proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: August 21, 2023            By:    /s/ Javier L. Merino
                                         Javier L. Merino, Esq.
                                         **THE DANN LAW FIRM, P.C.**
                                         1520 US Highway 130, Ste. 101
                                         North Brunswick, NJ 08902
                                         Telephone: (201) 355-3440
                                         Facsimile: (216) 373-0536
                                         jmerino@dannlaw.com
                                         *Attorneys for Plaintiff-Petitioner Ryan*
                                         *Button, on behalf of himself and others*
                                         *similarly situated*

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Pursuant to Third Circuit Local Rule 28.2 and 28.1(a)(2), Ryan Button states

that he is aware of no related cases or proceedings, and this case or proceeding has

not been previously heard before this Court.

Dated: August 21, 2023      By:   <u>/s/ Javier L. Merino         </u>
Javier L. Merino, Esq.
**THE DANN LAW FIRM, P.C.**
1520 US Highway 130, Ste. 101
North Brunswick, NJ 08902
Telephone: (201) 355-3440
Facsimile: (216) 373-0536
jmerino@dannlaw.com
*Attorneys for Plaintiff-Petitioner Ryan Button, on behalf of himself and others similarly situated*

## CERTIFICATE OF BAR MEMBERSHIP, DIGITAL SUBMISSION AND ANTI-VIRUS SCAN

I hereby certify that the signatory of this brief, Javier L. Merino, is a member of the bar of this Court.

I further certify that personal identifiers have been redacted. I have scanned for viruses the attached document using Bitdefender Total Security and according to that program, the document was free of viruses.

I additionally certify that the hard copies of the foregoing, to be delivered to the Clerk of the Court for the United States Court of Appeals for the Third Circuit within five business days of the ECF filing, are exact copies of the ECF filing.

Dated: August 21, 2023

By:    /s/ Javier L. Merino
Javier L. Merino, Esq.
**THE DANN LAW FIRM, P.C.**
1520 US Highway 130, Ste. 101
North Brunswick, NJ 08902
Telephone: (201) 355-3440
Facsimile: (216) 373-0536
jmerino@dannlaw.com
*Attorneys for Plaintiff-Petitioner Ryan Button, on behalf of himself and others similarly situated*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Appellate Procedure 25(d), I hereby certify that

on this 21st day of August, 2023, the foregoing Plaintiff Ryan Button's Petition for

Permission to Appeal Pursuant to 28 U.S.C. § 1453(c)(1) was electronically filed

with the Clerk of the Court for the United States Court of Appeals for the Third

Circuit using the CM/ECF system.

Service was accomplished on the following by electronic mail:

Philip A. Goldstein, Esq.
R. Trent Taylor, Esq.
**MCGUIRE WOODS LLP**
1251 Avenue of the Americas, 20th Floor
New York, NY 10020-1104
Telephone: (212) 548-2100
pagoldstein@mcguirewoods.com
rtaylor@mcguirewoods.com

Dated: August 21, 2023          By:    /s/ Javier L. Merino
                                       Javier L. Merino, Esq.
                                       **THE DANN LAW FIRM, P.C.**
                                       1520 US Highway 130, Ste. 101
                                       North Brunswick, NJ 08902
                                       Telephone: (201) 355-3440
                                       Facsimile: (216) 373-0536
                                       jmerino@dannlaw.com
                                       *Attorneys for Plaintiff-Petitioner Ryan*
                                       *Button, on behalf of himself and others*
                                       *similarly situated*

Date Filed: 08/21/2023    Page: 29    Document: 1-1    Case: 23-8034

**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RYAN BUTTON, on behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DOLLAR GENERAL CORPORATION *et al.*,<br><br>Defendants. | Civil Action No. 22-7028 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Ryan Button's ("Plaintiff") Motion to Remand, pursuant to the "local controversy" exception, 28 U.S.C. § 1332(d)(4)(A), to the Class Action Fairness Act of 2005 ("CAFA"), or in the Alternative, for Jurisdictional Discovery. (ECF No. 33.) Defendants Dollar General Corporation, Dolgencorp, LLC d/b/a Dollar General, Todd Vasos, Jeff Owen, Steve Sunderland, and Emily Taylor (collectively, "Defendants") jointly opposed (ECF No. 38), and Plaintiff replied (ECF No. 45). The Court has considered the parties' written submissions and decides the Motion without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth herein, Plaintiff's Motion to Remand, or in the Alternative, for Jurisdictional Discovery, is denied.

## I.   BACKGROUND

### A.    The Parties

Defendant Dollar General Corporation ("DGC") is a Tennessee corporation with its principal place of business in Goodlettsville, Tennessee. (*See* Compl. ¶ 6, ECF No. 1-1.)

Case: 23-8034     Document: 1-1     Page: 30     Date Filed: 08/21/2023

Defendant Dolgencorp, LLC d/b/a Dollar General ("Dolgencorp"), which is organized under the laws of Kentucky and similarly based in Goodlettsville, Tennessee, is a DGC subsidiary that operates stores trading as "Dollar General" in the State of New Jersey. (*See* Notice of Removal ¶ 24, ECF No. 1; Compl. ¶ 5.) Defendant Todd Vasos is the Chief Executive Officer of DGC and is a member of its Board of Directors. (Compl. ¶ 7.) Defendant Jeff Owen is the Chief Operating Officer of DGC. (*Id.* ¶ 8.) Defendant Steve Sunderland is the Executive Vice President of Store Operations of DGC. (*Id* ¶ 9.) Defendant Emily Taylor is the Executive Vice President and Chief Merchandising Officer of DGC. (*Id.* ¶ 10.) Vasos, Owen, Sunderland, and Taylor are all citizens of Tennessee. (*See* Notice of Removal ¶ 24.) Plaintiff is a New Jersey citizen, residing in Cliffwood Beach, New Jersey. (Compl. ¶ 4.)

### B.      Plaintiff's Transactions with Dollar General

Plaintiff regularly shops at the Dollar General store located at 228 NJ-35, Keyport, New Jersey 07735 ("Dollar General Keyport"). (*Id.* ¶ 22.) In early 2022, Plaintiff noticed some discrepancies between the prices of merchandise displayed on the store shelves and what was charged at checkout. (*Id.* ¶ 23.) For this reason, Plaintiff began to document the prices displayed on the store shelves compared to what he was actually charged. (*Id.* ¶¶ 25, 29.) From May 2022 through July 2022, Plaintiff made several purchases at Dollar General Keyport where he was allegedly charged a higher price for certain items than the shelf price on display. (*Id.* ¶ 30.) The alleged pricing discrepancies included: a collective overcharge of $1.30 for three separate items on June 16; an overcharge of $0.25 for a single item on June 21; an overcharge of $0.05 for a single item on June 23; a collective overcharge of $1.05 for three separate items on June 28; and a collective overcharge of $0.85 for two separate items on July 1. (*Id.*)

Case: 23-8034     Document: 1-1     Page: 31     Date Filed: 08/21/2023

### C.     Class Allegations

According to Plaintiff, "[i]t is Defendants' policy and practice to charge a higher price at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves" at Dollar General stores in New Jersey, and "Defendants used the same procedures that they employed in charging a higher price than advertised to Plaintiff when selling the same and/or similar merchandise to numerous other New Jersey consumers." (*Id.* ¶¶ 31, 33.) As such, Plaintiff seeks to represent a class of consumers defined as: "All persons who resided in New Jersey on the date this [C]omplaint was filed, who at any time on or after the day six years prior to the date on which this Complaint was filed, [sic] purchased merchandise at a Dollar General store located in New Jersey." (*Id.* ¶ 34.) Plaintiff also sets forth a subclass, defined as: "All members of the Class who paid more for merchandise than the advertised price labeled on the shelf at [a] Dollar General store located in New Jersey." (*Id.*)

### D.     Procedural History

Plaintiff filed the putative class action lawsuit on October 6, 2022, in the Superior Court of New Jersey, Law Division, Monmouth County, asserting four causes of action against Defendants: (I) declaratory judgment under N.J. Stat. Ann. § 2A:16-50, *et seq.* as to violations of New Jersey consumer protection laws; (II) violations of the General Advertising Regulations (the "GA Regulations"), N.J. Admin. Code § 13:45A-9.1, *et seq.*, and the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, *et seq.*; (III) violations of the Unit Price Disclosure Regulations (the "PD Regulations"), N.J. Admin. Code § 13:45A-14.1, *et seq.*, and the NJCFA; and (IV) violations of the Truth-in-Consumer Contract, Warranty, and Notice Act ("TCCWNA"), N.J. Stat. Ann. § 56:12-14, *et seq.* (Compl. ¶¶ 48–112.) Defendants removed the action to this Court pursuant to CAFA on December 5, 2022. (*See generally* Notice of Removal.)

On December 27, 2022, Defendants filed two separate Motions to Dismiss—one as to the claims against Vasos, Owen, Sunderland, and Taylor, and one as to the claims against DCG and Dolgencorp. (Mots. to Dismiss, ECF Nos. 26, 27.) Plaintiff subsequently filed a Motion to Remand on January 16, 2023. (Pl.'s Moving Br., ECF No. 33-1.) Upon the request of the parties, the Court stayed the Motions to Dismiss pending the disposition of Plaintiff's Motion to Remand. (Ltr. Order, ECF No. 36.) Defendants then jointly opposed the Motion to Remand. (Defs.' Opp'n Br., ECF No. 38.) Plaintiff replied. (Pl.'s Reply Br., ECF No. 45.)

## II.   <u>LEGAL STANDARD</u>

The federal removal statute, 28 U.S.C. § 1441, states that unless "otherwise expressly provided by . . . Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A plaintiff can move to remand a case removed to a federal court where the court lacks subject matter jurisdiction or removal was otherwise improper. 28 U.S.C. § 1447(c).

"CAFA provides federal courts with jurisdiction over civil class actions if the 'matter in controversy exceeds the sum or value of $5,000,000,' the aggregate number of proposed class members is 100 or more, and any class member is a citizen of a state different from any defendant." *Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 503 (3d Cir. 2013) (citing 28 U.S.C. §§ 1332(d)(2), (d)(2)(A), (d)(5)(B)). The party seeking removal pursuant to CAFA is required "to demonstrate federal jurisdiction." *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009) (citing *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007)). Where the threshold jurisdictional requirements under CAFA are satisfied, however, the burden is on the party seeking remand to show the applicability of any exception to CAFA, including the local controversy

Case: 23-8034     Document: 1-1     Page: 32     Date Filed: 08/21/2023

exception, 28 U.S.C. § 1332(d)(4)(A). *See id.* at 153–54. "Courts may consider pleadings as well as evidence that the parties submit to determine whether subject matter jurisdiction exists or an exception thereto applies." *Vodenichar*, 733 F.3d at 503 n.1.

## III. **DISCUSSION**

Plaintiff argues that remand is warranted pursuant to the local controversy exception to CAFA. (*See generally* Pl.'s Moving Br.) According to Plaintiff, the local controversy exception applies because the putative class includes only individuals who are New Jersey residents and because at least one of the John Doe defendants, defined as officers, supervisors, regional directors, or managers at Dollar General stores in New Jersey by the Complaint, is a New Jersey citizen whose conduct forms a significant basis for the claims asserted and from whom significant relief is sought. (*See id.* at 13–19.) Alternatively, Plaintiff seeks jurisdictional discovery as to the identities and residences of the John Does. (*See id.* at 20–22.)

In opposition, Defendants contend that Plaintiff has failed to demonstrate the applicability of the local controversy exception. (*See generally* Defs.' Opp'n Br.) Defendants highlight that the exception requires Plaintiff to have presently named a local defendant and that the John Doe placeholders are insufficient. (*See id.* at 2, 11–14.) As such, Plaintiff cannot show that his lawsuit involves a local defendant whose conduct forms a significant basis for the claims asserted and from whom significant relief is sought. (*See id.* at 11–23.) Defendants further argue that Plaintiff's putative class action is not truly a local controversy as Plaintiff's counsel has filed virtually identical cases in other jurisdictions and that Plaintiff has not properly set forth evidence that the putative class consists of more than two-thirds New Jersey citizens. (*See id.* at 8–11, 24–27.) Additionally, Defendants oppose Plaintiff's request for jurisdictional discovery, asserting that the

Case: 23-8034    Document: 1-1    Page: 34    Date Filed: 08/21/2023

requested discovery will not cure Plaintiff's failure to establish the local defendant requirements under the local controversy exception. (*See id.* at 28–34.)

## A.      The "Local Controversy" Exception to CAFA

"Even if a federal court has jurisdiction under CAFA, it must decline to exercise that jurisdiction if the class action involves a local controversy."[1] *McLaren v. UPS Store Inc.*, 32 F.4th 232, 241 (3d Cir. 2022); *see* 28 U.S.C. § 1332(d)(4)(A). "[T]he party seeking remand has the burden of showing that the local controversy exception applies." *Kaufman*, 561 F.3d at 154. To invoke this exception, the moving party must show:

> (1) greater than two-thirds of the putative class are citizens of the state in which the action was originally filed; (2) at least one defendant is a citizen of the state in which the action was originally filed (the "local defendant"); (3) the local defendant's conduct forms a significant basis for the claims asserted; (4) plaintiffs are seeking significant relief from the local defendant; (5) the principal injuries occurred in the state in which the action was originally filed; and (6) no other class action asserting the same or similar allegations against any of the defendants had been filed in the preceding three years.

---

[1] Plaintiff does not dispute that Defendants established a *prima facie* basis for removal under CAFA. The Court is similarly satisfied that CAFA's threshold jurisdictional requirements are met. "In removal cases, [courts] begin evaluating jurisdiction by reviewing the allegations in the complaint and in the notice of removal." *Kaufman*, 561 F.3d at 151. Defendants' Notice of Removal indicates that Plaintiff and Defendants are citizens of different states, and that Plaintiff seeks to represent a class which may consist of "tens or hundreds of thousands of consumers." (*See* Notice of Removal ¶¶ 20, 21–25.) The Notice of Removal also asserts that the amount in controversy exceeds $5,000,000 and explains the basis for this contention in detail. (*See id.* ¶¶ 26-40.) Notably, Plaintiff does not specify an amount in controversy in the Complaint but seeks, among other things, actual damages, treble damages, disgorgement, and statutory civil penalties under New Jersey law on behalf of himself and the putative class. (*See id.* ¶ 29.) "[W]hen relevant facts are not in dispute . . . the legal-certainty test applies." *Kaufman*, 561 F.3d at 151 (internal quotation marks and citation omitted). "Under the legal-certainty test, federal jurisdiction exists unless it appears, to a legal certainty, that the plaintiff was never entitled to recover the jurisdictional amount." *Id.* Because Plaintiff's Complaint purports to implicate thousands of Dollar General customers in New Jersey and seeks various categories of damages and statutory penalties on their behalf, the Court finds that, pursuant to the legal-certainty test, federal jurisdiction exists under 28 U.S.C. § 1332(d)(2).

A6

*Vodenichar*, 733 F.3d at 506–07 (citing 28 U.S.C. § 1332(d)(4)(A)).

Here, Plaintiff fails to demonstrate the requisite elements of the local controversy exception. Strikingly, none of the defendants currently named in this action are citizens of New Jersey. The two defendant corporate entities, DCG and Dolgencorp, LLC, are citizens of Tennessee. (*See* Compl. ¶¶ 5–6; ECF Nos. 22, 23.) And the individual corporate officers who Plaintiff has named as defendants are similarly Tennessee citizens. (*See* Notice of Removal ¶ 24; ECF Nos. 14, 15, 16, 17.) As such, Plaintiff's lawsuit lacks a named local defendant, let alone a local defendant whose conduct forms a significant basis for the conduct asserted and from whom significant relief is sought. *See Vodenichar*, 733 F.3d at 506–07.

In response to this crucial deficiency, Plaintiff repeatedly argues that the local defendant requirement is satisfied because "at least one of the John Does is a citizen of New Jersey." (Pl.'s Moving Br. 14; Pl.'s Reply Br. 4–5.) However, "the local controversy exception requires consideration of the defendants presently in the action." *Kaufman*, 561 F.3d at 153; *see also Quicken Loans Inc. v. Alig*, 737 F.3d 960, 966 (4th Cir. 2013) (finding that "class of unnamed defendant appraisers is not a party to this lawsuit," and thus "it was improper for the district court to consider them" in evaluating local controversy exception). And "the Court may not consider the unnamed John Doe defendants in this inquiry, as they are not yet parties to this action." *Garcia v. Tempoe, LLC*, No. 17-2106, 2017 WL 6521372, at *4 (D.N.J. Nov. 15, 2017), *report and recommendation adopted by*, 2017 WL 6514148 (D.N.J. Dec. 19, 2017). Indeed, this conclusion is consistent with the general removal principle that "the citizenship of defendants sued under fictitious names shall be disregarded" for diversity purposes. 28 U.S.C. § 1441(b)(1); *see Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1235 (10th Cir. 2006) (collecting cases and holding that "the citizenship of 'John Doe' defendants should be disregarded when considering the

Case: 23-8034   Document: 1-1   Page: 36   Date Filed: 08/21/2023

propriety of removal under 28 U.S.C. §§ 1441(a) and 1332"). Notably, Plaintiff fails to cite any authority holding that a John Doe can satisfy the local defendant requirement under 28 U.S.C. 1332(d)(4)(A)(i)(II). For this reason, Plaintiff cannot demonstrate the applicability of the local controversy exception. Remand is, therefore, unwarranted.[2] Further, as discussed in more detail below, even if Plaintiff ascertains the identities of the John Does via discovery, Plaintiff will be unable to show that any one of the John Does, all of whom are purportedly Dollar General employees at New Jersey stores, is "significant" under the local controversy exception.

## B.   Jurisdictional Discovery

In the alternative, Plaintiff requests jurisdictional discovery, stating that "if the Court desires more specific information as to the identities of the John Doe defendants in order to ascertain whether this matter should be remanded under the 'local controversy' exception, it should order the parties to engage in limited jurisdictional discovery on this issue." (Pl.'s Moving Br. 22.) According to Plaintiff, "[i]t would be a simple matter to, with a few clicks of a computer mouse, search Dollar General's employment database to obtain the necessary information to determine the identities and residence[s] of the John Does." (*Id.*) Importantly, however, discovery pertaining to the identities and residences of the John Does will not salvage Plaintiff's failure to demonstrate that the conduct of any such individual forms a "significant basis" for the claims asserted, as required by the local controversy exception. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II). Thus, jurisdictional discovery would be futile.

---

[2] The parties also dispute, among other things, whether Plaintiff has sufficiently demonstrated that greater than two-thirds of the putative class are New Jersey citizens. The Court, however, need not reach such issues here, as Plaintiff's failure to show any one of the several elements of the local controversy exception precludes its applicability. *See Vodenichar*, 733 F.3d at 506–07.

Case: 23-8034    Document: 1-1    Page: 37    Date Filed: 08/21/2023

The "significant basis" element of the exception "requires that the class action include at least one local defendant 'whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class.'" *Kaufman*, 561 F.3d at 154 (quoting 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb)). Under this requirement, "[t]he local defendant's alleged conduct must be an *important* ground for the asserted claims in view of the alleged conduct of all the [d]efendants." *Id.* at 157 (emphasis in original). "Whether this condition is met requires a substantive analysis comparing the local defendant's alleged conduct to the alleged conduct of all the [d]efendants." *Id.* at 156. "The focus is on the conduct in which the local defendant allegedly engaged and the alleged number of people impacted by it." *Vodenichar*, 733 F.3d at 507 n.8.

Here, Plaintiff alleges[3] that the John Does "are all employees of Dollar General who, at all times relevant to this matter, were responsible for setting and implementing Dollar General's policies, procedures and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisements on its shelves and charging the advertised prices at the cash registers in Dollar General's New Jersey stores." (Compl. ¶ 13.) Similarly, Plaintiff also alleges that Defendants Todd Vasos, Jeff Owen, Steve Sunderland and Emily Taylor are "responsible" for precisely the same. (*Id.* ¶ 11.) Plaintiff further alleges that "[i]t is Defendants' policy and practice to charge a higher price at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves in DOLLAR GENERAL's New Jersey stores." (*Id.* ¶ 33.) Based on these allegations, it is clear that that the conduct of any single John Doe does not form a significant basis for the claims asserted. Plaintiff

---

[3] The Third Circuit has emphasized that the focus of courts' inquiries regarding the significant basis provision "must be the alleged conduct," *Kaufman*, 561 F.3d at 157, highlighting that information revealed through jurisdictional discovery would have little or no import to the Court's analysis of this element.

Case: 23-8034     Document: 1-1     Page: 38     Date Filed: 08/21/2023

expressly states that the named corporate officer defendants are responsible for pricing policies at Dollar General stores in New Jersey. (*See id.* ¶ 13.) The alleged conduct of the John Does is, therefore, hardly significant in comparison given the identical alleged conduct further up the corporate hierarchy. Moreover, given the alleged conduct of the named corporate officers, the number of people impacted by the actions of an individual John Doe, as defined by Plaintiff in the Complaint, will necessarily pale in comparison.

The same is true when considering the alleged conduct of the corporate entity defendants. The thrust of Plaintiff's class action suit is that Defendants have a "policy and practice to charge a higher price at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves." (*Id.* ¶ 33.) As Plaintiff admits, the John Does are merely "employees of Dollar General." (*Id.* ¶ 13.) They are not alleged "to have acted independently from the other defendants," but rather pursuant to a corporate policy and practice. *Busker v. Wabtec Corp.*, 750 F. App'x 522, 524 (9th Cir. 2018) (stating that the local controversy exception does not apply where the alleged conduct of the local defendant was undertaken as an agent of the non-local defendant); *see Kelly v. Verizon Pa., LLC*, No. 16-5672, 2019 WL 558100, at *8 (E.D. Pa. Feb. 12, 2019) (explaining that "the 'significant basis' prong focuses not on tangential conduct by the local defendant that serves as the conduit through which the primary defendant acted, but rather

on the actual conduct that underscores the claims in the complaint").[4] For these reasons, regardless of the requested jurisdictional discovery, Plaintiff will be unable to set forth "at least one local defendant whose alleged conduct forms a significant basis for all the claims asserted in the action." *Kaufman*, 561 F.3d at 155.

Courts have repeatedly recognized that "'[t]he local controversy exception is narrow, and the legislative history of CAFA reveals a strong preference that interstate class actions should be heard in a federal court if properly removed.'" *Durnell v. Foti*, No. 19-2972, 2019 WL 4573247, at *3 (E.D. Pa. Sept. 20, 2019) (quoting *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 584 (7th Cir. 2017)). "Because the CAFA exceptions require Plaintiff[] to prove all of the elements in the conjunctive, the jurisdictional discovery sought by Plaintiff[] would not impact the Court's decision in this case and would be futile." *Dutcher v. Matheson*, 16 F. Supp. 3d 1327, 1339 (D. Utah 2014).

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand, or the in the Alternative, for Jurisdictional Discovery, is denied.

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[4] Notably, Plaintiff's insistence that at least one of the John Does could constitute a significant local defendant under the exception is severely undermined by the existence of several pending lawsuits, filed by Plaintiff's counsel in other jurisdictions, alleging virtually identical conduct by DCG. (*See* Decl. of Philip A. Goldstein, Exs. 2-4.) The common theme of these lawsuits is that DCG has a policy and practice to charge a higher price at the register for merchandise than the price advertised on the unit labels for the same merchandise on the shelves. (*See id.*) The most reasonable inference from this evidence, set forth by Defendants in conjunction with their opposition, is that the conduct of DCG and its corporate affiliates and officers substantially outweighs that of any local John Doe defendant who is merely acting as Dollar General employee and at the direction of a corporate policy and practice.

Philip A. Goldstein
**McGuireWoods LLP**
1251 Avenue of the Americas, 20th Floor
New York, NY 10020-1104
Phone: (212) 548-2100
Fax:    (212) 548-2150
Email: pagoldstein@mcguirewoods.com

*Counsel for Defendants*

<div align="center">

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY (TRENTON)

</div>

| | |
|---|---|
| RYAN BUTTON, on behalf of himself and those similarly situated, | |
| Plaintiff, | Case No.: 3:22-cv-07028<br>(Removed from the Superior Court of New Jersey, Law Division: Monmouth County, Docket No. MON-L-005236-22) |
| v. | |
| DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC d/b/a DOLLAR GENERAL, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, and JOHN DOES 1-500, individually, jointly, severally, or in the alternative, | **DEFENDANTS' NOTICE OF REMOVAL** |
| Defendants. | |

**TO THE CLERK OF THE COURT:**

PLEASE TAKE NOTICE that pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d) ("CAFA"), and 28 U.S.C. §§ 1441, 1446, and 1453, Defendants Dollar General Corporation, Dolgencorp, LLC, Todd Vasos, Jeff Owen, Steve Sunderland, and Emily Taylor (collectively, "Defendants") jointly remove the above-entitled action from the Superior Court of New Jersey, Law Division, Monmouth County, to the United States District Court for the District of New Jersey, Trenton Vicinage, on the grounds of original jurisdiction under the CAFA. In

support of this Notice of Removal, and in accordance with 28 U.S.C. § 1446, Defendants state as follows:

## PROCEDURAL BACKGROUND

1. Plaintiff Ryan Button, a citizen and resident of New Jersey, filed a complaint in the Superior Court of New Jersey, Law Division, Monmouth County, dated October 6, 2022, captioned *Ryan Button, on Behalf of Himself and Those Similarly Situated v. Dollar General Corporation, Dolgencorp, LLC d/b/a Dollar General, Todd Vasos, Jeff Owen, Steve Sunderland, Emily Taylor, and John Does 1-500*, bearing docket number MON-L-002774-22 ("State Court Action").

2. On November 4, 2022, the summons and complaint were served on Dolgencorp, LLC and the individual defendants.[1]

3. Removal of the complaint is timely because this Notice of Removal is filed within 30 days after November 4, 2022, as that time is calculated under the Federal Rules of Civil Procedure, and within 1 year of Plaintiff filing the complaint. 28 U.S.C. §§ 1446(b)(1), (c)(1); 1453(b); Fed. R. Civ. P. 6(a).

4. The State Court Action has not been previously removed to federal court.

5. Defendants have not filed any responsive pleadings in the State Court Action.

6. Defendants are informed and believe that there has been no service of process upon any "Does," which are fictitious defendants and therefore disregarded for the purpose of this removal. 28 U.S.C. § 1441(b)(1); *see also Ortiz v. Richmond Elevator Co., Inc.*, No. 15–672 (CCC), 2015 WL 5945433, at *6 (D.N.J. Sept. 29, 2015) (citing 28 U.S.C. § 1441(b)(1) stating "the citizenship of fictitious parties such as John Doe or ABC Corporation is disregarded for

---

[1] Each of the named defendants in this suit joins in and consents to the removal.

purposes of determining diversity."); *Harris v. Bristol–Myers Squibb Co.*, No. 11–6004 (FLW), 2012 WL 1243260, at *2 n.9 (D.N.J. Apr. 12, 2012) (holding that "the presence of fictitious defendants has no bearing on this Court's jurisdictional analysis" when diversity of citizenship is being addressed, and citing 28 U.S.C. § 1441(b)(1)).

7.      Under 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings (including the Complaint), and orders received by Defendants are attached as **Exhibit 1**.

## VENUE

8.      Venue lies in this Court because the State Court Action was filed in Monmouth County, New Jersey, which is within the geographic boundaries of the United States District Court for the District of New Jersey (Trenton Vicinage).  *See* 28 U.S.C. §§ 110, 1441(a).

## NOTICE

9.      In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal, Defendants will file a Notice to State Court and Adverse Parties of Filing of Notice of Removal to Federal Court with the Clerk of the Superior Court of New Jersey, Law Division, Monmouth County, and will attach a copy of this Notice of Removal thereto.  A copy of the Notice to State Court and Adverse Parties of Filing of Notice of Removal to Federal Court is attached as **Exhibit 2**

10.     In accordance with 28 U.S.C. § 1446(d), Defendants have also given written notice to Plaintiff by contemporaneously serving this Notice of Removal and its exhibits on counsel for Plaintiff.

## GROUNDS FOR REMOVAL

11.     Plaintiff alleges he was charged "a higher price at the register than the price of merchandise advertised on the shelves" at Dollar General stores.  Compl., ¶ 1.  Plaintiff asserts

3

A14

that Defendants "charge a higher price at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves." *Id.*, ¶ 33. Plaintiff brings a class action alleging it is Defendants' "policy and practice" to charge this surplus. *Id.*, ¶¶ 1-2, 33.

12.     Plaintiff brought putative class claims under New Jersey's Declaratory Judgment Act ("DJA"), and for alleged violations of the General Advertising Regulations ("GAR"), Unit Price Disclosure Regulations, Consumer Fraud Act ("CFA"), and Truth-in-Consumer Contract, Warranty, and Notice Act ("TCCWNA"). *Id.*, ¶¶ 48-112. Plaintiff seeks on behalf of himself and the putative class actual damages, disgorgement of "improper gains," treble damages, statutory civil penalties, reasonable attorneys' fees, declaratory relief, and injunctive relief. Compl. Prayer for Relief, ¶¶ (a)-(w).

13.     CAFA gives district courts original jurisdiction "of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . (A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . . ." 28 U.S.C. § 1332(d)(2). A class action subject to this original jurisdiction must be a proposed class with more than 100 members. 28 U.S.C. § 1332(d)(5)(B).

14.     "[N]o antiremoval presumption attends cases invoking CAFA, a statute Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "Congress enacted CAFA to facilitate class actions in federal court, and its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Gallagher v. Johnson & Johnson Consumer Cos.*, 169 F. Supp. 3d 598, 602 (3d Cir. 2016). Without doubt, "Congress's desire that federal courts have broad jurisdictional power to

hear class actions cannot be ignored when interpreting . . . CAFA". *Erie Ins. Exchange v. Erie Indem. Co.*, 722 F.3d 154, 165 (3d Cir. 2013).

15.     The following jurisdictional facts establish this Court has original jurisdiction over this matter, making removal proper.  *See Dart*, 574 U.S. at 89 (a "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"); *Farrell v. FedEx Ground Package Sys.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020) ("[n]o evidentiary support is required" for removal).

16.     Certain financial, sales, and other sensitive information is being provided in **Exhibit 3** which Defendants will move to file under seal, because public disclosure of such highly confidential and sensitive information would likely result in competitive harm or business harm.

## I.     The Proposed Class Exceeds 100 Members.

17.     Plaintiff proposes a class comprised of "[a]ll persons who resided in New Jersey on the date this complaint was filed, who at any time on or after the day six years prior to the date on which this Complaint was filed, who purchased merchandise at a Dollar General store located in New Jersey."  Compl., ¶ 34.  Plaintiff's lawsuit therefore encompasses all Dollar General products sold in New Jersey during the class period.  *See id.*, ¶¶ 31-32 (alleging that the allegedly wrongful conduct applied to "the same and/or similar merchandise" that Plaintiff bought).

18.     The electronic filing stamp on the Complaint filed in the State Court Action indicates Plaintiff filed the Complaint on November 10, 2022, at 4:53PM.  *See id.*, at 1 (top of page).  The class period therefore begins on November 10, 2016.  *See id.*, ¶ 34.

19.     Plaintiff alleges that Dollar General has 175 stores in New Jersey.  *Id.*, ¶ 21.

20.     Plaintiff pleads that the putative class contains more than 100 people.  *Id.*, ¶ 36 ("[t]here are thousands if not tens or hundreds of thousands of consumers who meet the class and

subclass definitions"). This allegation alone supports a finding that the aggregate number of putative class members exceeds 100. *See, e.g.*, *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 499, 509 (3d Cir. 2014) (sufficient to establish 100-plus member putative class when complaint alleged "hundreds of [class] members").[2]

## II.    There is Minimal Diversity.

21.    Minimal diversity exists when "only one member of the plaintiff class—named or unnamed—[is] diverse from any one defendant." *Gallagher*, 169 F. Supp. 3d at 602.

22.    Plaintiff is a citizen of New Jersey. Compl., ¶ 4.

23.    Dollar General Corporation is a Tennessee corporation with its principal place of business in Tennessee. *See id.*, ¶ 6; *see also Triola v. Dollar General Egg Harbor Township*, No. 1:22-cv-00840-PBK-EAP, ECF No. 1-5 (Feb. 16, 2022) ("Declaration of Kelly Collier in Support of Dolgencorp, LLC's Notice of Removal"). Dollar General Corporation is therefore a citizen of Tennessee. 28 U.S.C. § 1332(c)(1).

24.    Dolgencorp, LLC is a single member LLC organized under the laws of Kentucky, with Dollar General Corporation as its sole member. Dolgencorp, LLC's principal place of business is in Goodlettsville, Tennessee. Dolgencorp is therefore a citizen of Tennessee and Kentucky. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010) (for purposes of removal, the "principal place of business" is determined by the "nerve center" test whereby an entity is deemed to be a citizen of the State where its officers direct, control and coordinate activities); *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("the citizenship of an LLC is determined by the citizenship of its members"); *see also* Declaration of Kelly Collier in Support

---

[2]    In addition, it is implausible that less than 100 people were the total customers for all 175 Dollar General stores in New Jersey over six years and were also responsible for the sales identified in the financial information provided in **Exhibit 3**.

of Dolgencorp, LLC's Notice of Removal, at ¶¶6-7. The individual defendants—Todd Vasos, Jeff

Owen, Steve Sunderland, and Emily Taylor—also are citizens of Tennessee.

25.     Minimal diversity is satisfied because Plaintiff is a citizen of a different state than

at least one defendant. *See* 28 U.S.C. § 1332(d)(2)(A); *see also* Declaration of Kelly Collier in

Support of Dolgencorp, LLC's Notice of Removal. In fact, here, all of the defendants are citizens

of a different state than Plaintiff.

### III.    The Amount In Controversy Exceeds $5,000,000.

26.     The removing Defendants have the burden of demonstrating "by a preponderance

of the evidence, [that] the amount in controversy requirement has been satisfied." *Dart*, 574 U.S.

at 88. The "short and plain statement of the grounds for removal . . . tracks the general pleading

requirement." *Griffin v. City of Newark*, 2021 WL 6061661, at *3 (D.N.J. Mar. 31, 2021). A

notice of removal "need only include a plausible allegation that the amount in controversy exceeds

the jurisdictional threshold." *Farrell*, 478 F. Supp. 3d at 540. In fact, "no evidentiary support is

required" to support removal. *Id.*

27.     At this stage of litigation, Defendants need not submit evidence substantiating the

amount in controversy, so long as they can offer a "plausible allegation that the amount in

controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89; *see also Farrell*, 478 F.

Supp. 3d at 540. To the extent there is any dispute over the amount in controversy, Defendants

reserve the right to submit evidence further substantiating their jurisdictional allegations.

28.     Plaintiff's lawsuit centers on an alleged surplus charged at the register compared to

the advertised price. Compl., ¶¶ 1-2, 23, 33. Plaintiff alleges the price discrepancy affected *all*

products sold at Dollar General's 175 stores in New Jersey over six years. *Id.*, ¶¶ 21, 32-33, 34.

29.    Plaintiff has not specified an amount in controversy but seeks actual damages, treble damages, disgorgement of "improper gains," statutory civil penalties, reasonable attorneys' fees, declaratory and injunctive relief, as well as statutory and treble damages for Plaintiff and all others similarly situated.  Compl. Prayer for Relief, ¶¶ (a)-(w).[3]

30.    "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C § 1332(d)(6); *see also* S. Comm. on the Judiciary, Class Action Fairness Act of 2005, S. Rep. No. 109-14, at 42 (Feb. 28, 2005) ("Pursuant to new subsection 1332(d)(6), the claims of the individual class members in any class action shall be aggregated to determine whether the amount in controversy exceeds the sum or value of $5,000,000 (exclusive of interest and costs).").

31.    **Actual Damages.**  Plaintiff and the putative class seek actual damages.  Compl. Prayer for Relief, ¶ (p).  Several methods of calculating the putative class's actual damages establish that the amount in controversy exceeds $5,000,000.

32.    First, Plaintiff alleges he experienced a total of $3.50 in price discrepancies resulting from buying 10 products over a three-month period.  Compl., ¶¶ 29-30.  If Plaintiff is "typical" of the class, as he alleges, *see id.*, ¶ 38, he represents the average putative class member's total actual damages.  And, again, the putative class is every customer who purchased from a New Jersey Dollar General store in the past six years.  *Id.*, ¶ 34.  As a result, under Plaintiff's allegations, there would need to be only 1,428,572 customers who made a purchase from New Jersey Dollar General stores over the six-year class period for actual damages to exceed $5,000,000 ($3.50

---

[3]    Defendants deny that Plaintiff can bring a class action or recover any of these damages on behalf of the putative class.

alleged damages multiplied by 1,428,572 customers equals $5,000,002 class damages). Over the 72-month class period, that means each of Dollar General's 175 New Jersey stores would need only 114 customers per month who made a purchase (1,428,572 customers divided by 175 stores divided by 72 months equals 113.38 customers-per-store-per-month). Plaintiff pleads that there were plausibly more than 114 customers per month at each of Dollar General's 175 New Jersey stores on average. *See id.*, ¶ 36 ("[t]here are thousands if not tens of thousands of consumers who meet the class and subclass definitions"). Under this methodology, Plaintiff's actual damages request puts the amount in controversy over $5,000,000.

33. Alternatively, Plaintiff alleges that Defendants overcharged him and the putative class. *See id.*, ¶¶ 1-2, 23, 33. The Complaint includes a table purporting to show this alleged overcharging of various merchandise. *See id.*, ¶ 30. This table alleges ten instances of overcharging ranging from $0.05 to $0.75. On a percentage basis, this alleged overcharging ranges from 1.6% to 25% of the purported shelf price of the product, and the average percentage is 10.6%. Retail sales figures for Dollar General stores in New Jersey during just one year of the class period are set forth in **Exhibit 3.** *See* Ex. 3, ¶ 3-4. Applying the lowest percentage alleged by Plaintiff (1.6%) in his table to the total retail sales for Dollar General stores in New Jersey during just one year of the class period easily exceeds $5,000,000. *See* Ex. 3, ¶ 3. The same is true when the average percentage (10.6%) of the alleged overcharging in Plaintiff's table is used. Calculations using these same percentages for all 72 months in the class period rather than 12 months would be even higher. *See* Ex. 3, ¶ 3-4. Under this methodology, Plaintiff's actual damages request easily puts the amount in controversy over $5,000,000.

34.     Thus, actual damages alone (whether calculated via the method in Paragraph 31, Paragraph 32, or an altogether different method) satisfy the $5,000,000 amount-in-controversy threshold.

35.     **Statutory/Treble Damages.**  Plaintiff seeks such statutory/treble damages on behalf of himself and the putative class.  Compl. Prayer for Relief, ¶¶ (q)-(r).  Treble damages are considered when calculating the amount in controversy.  *Landmark & Funk PC v. Skinner-Strauss Assocs.*, 640 F.3d 72, 79 (3d Cir. 2011).  The CFA provides for trebling of "damages sustained by any person in interest."  N.J.S.A. § 56:8-19; *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 465 (N.J. 1994) ("an award of treble damages . . . is mandatory under [the CFA] if a consumer-fraud plaintiff proves both an unlawful practice under the [CFA] and an ascertainable loss.").

36.     If each class member allegedly suffered $3.50 in actual damages, *see id.* ¶ 30, treble damages would award each member $10.50.  If each potential class member is subject to a potential treble damages award of $10.50, each Dollar General store in New Jersey would need only 38 customers per month over the class period to exceed $5,000,000 in treble damages. ($5,000,000 divided by $10.50 treble damages equals 476,190.48 customers; 476,190.48 customers divided by 175 stores divided by 72 months equals 37.80 customers-per-store-per-month).  Plaintiff pleads there were plausibly more than 38 customers per month at each of Dollar General's 175 New Jersey stores on average.  *See id.*, ¶ 36 ("[t]here are thousands if not tens of thousands of consumers who meet the class and subclass definitions"); *see also id.*, ¶ 34 (defining the class as "[a]ll persons . . . who purchased merchandise at a Dollar General store located in New Jersey").  The potential treble damages award therefore puts the amount in controversy over $5,000,000.

37.     **Attorneys' Fees.**  "An award of attorneys' fees must be included as part of the amount in controversy determination where such an award is provided for by statute."  *Suber v.*

A21

*Chrysler Corp.*, 104 F.3d 578, 585 (3d. Cir. 1997) ("in calculating the amount in controversy, we must consider potential attorney's fees."); *Kendall v. CubeSmart L.P.*, 2015 WL 7306679, at *5 (D.N.J. Nov. 19, 2015). Under the CFA, any violator of the act "shall be liable . . . [for] reasonable attorney's fees and court costs." N.J.S.A. § 56:12-17. Moreover, "[t]he [New Jersey Truth-in-Consumer Contract, Warranty and Notice Act] provides for an award of attorneys' fees." *Kendall*, 2015 WL 7306679, at *5. Accordingly, attorneys' fees are included in the amount in controversy.

38.     The court has discretion to choose either a lodestar or percentage approach when awarding attorneys' fees. *McCoy v. Health Net., Inc.*, 569 F. Supp. 2d 448, 475-76 (D.N.J. 2008). The lodestar method multiplies reasonable hours expended by the "reasonable hourly rate." *FTC v. Circa Direct LLC*, 912 F. Supp. 2d 165, 170-71 (D.N.J. 2012). Under the percentage approach, class counsel recovers "a variable percentage of the amount recovered for the class." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732, n.10 (3d Cir. 2001).

39.     For a lodestar calculation, the median billable rate for an attorney in New Jersey handling class action cases is $425. *See, e.g.*, Ronald L. Burdge, *United States Consumer Law: Attorney Fee Survey Report 2017-2018*, at 127 https://burdgelaw.com/wp-content/uploads/2021/11/US-Consumer-Law-Attorney-Fee-Survey-Report-w-Table-of-Cases-091119.pdf (last visited Nov. 29, 2022). Since it is difficult for Defendants to estimate a lodestar method of calculation, which will be based on Plaintiff's assertion of a reasonable hourly rate and assertion of hours worked, Defendants reserve the right to supplement this point. Even so, the potential attorneys' fees further increase the amount in controversy.

40.     Indeed, under the percentage calculation, Plaintiff's attorneys' fees request could be as much as thirty percent of any judgment. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005) (recognizing that a "study by the Federal Judicial Center of all class actions

resolved or settled over a four-year period . . . found a median percentage recovery range of 27-30%"). Thus, the attorney's fees in this case alone could be more than $5,000,000.

<h2 style="text-align:center">MISCELLANEOUS</h2>

41.     By filing this Notice of Removal, Defendants do not waive any defenses, either procedural or substantive, that may be available.  No statement or omission in this Notice is an admission of any allegations of or damages sought in the complaint.

42.     Defendants expressly reserve and do not waive their right to amend this Notice of Removal and/or offer evidence supporting the Court's jurisdiction over this action.

43.     If any question arises as to the propriety of removal to this Court, Defendants request the opportunity to present a brief and oral argument in support of their position that this case has been properly removed.

<h2 style="text-align:center">CONCLUSION</h2>

This Court has original jurisdiction over this litigation under CAFA.  The parties are minimally diverse, the proposed class exceeds 100 members, and the amount in controversy exceeds $5,000,000.  Defendants therefore request, under 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453 that the State Court Action be removed to the United States District Court for the District of New Jersey, and that the Court assume jurisdiction over this action and enter such orders necessary to accomplish the requested removal and promote the ends of justice.

Dated:  December 5, 2022
    New York, New York                                    Respectfully Submitted,

                                                          MCGUIREWOODS LLP

                                                          */s/ Philip A. Goldstein*
                                                          Philip A. Goldstein
                                                          1251 Avenue of the Americas, 20th Floor
                                                          New York, NY 10020-1104
                                                          Phone: (212) 548-2100

A23

Fax:     (212) 548-2150
Email: pagoldstein@mcguirewoods.com
*Counsel for Defendants*

A24

# Exhibit 1

Case 3:22-cv-07288-GC-TJB   Document 11   Page 54 of 602   Date Filed 08/21/2023   PageID: 15

**Judiciary eCourts Public Access System - Civil Part**

Home    Help    Logout

CASE JACKET

User:publicaccess

## Docket Number:  MON L 002774 - 22

[ Back ]                                                                [ Create Summary Report ]

**Case Caption:** Button Ryan Vs Dolgen Corp Llc

| | | |
|---|---|---|
| **Court:** Civil Part | **Venue:** Monmouth | **Case Initiation Date:** 10/10/2022 |
| **Case Type:** Complex Commercial | **Case Status:** Active | **Jury Demand:** 6 Jurors |
| **Case Track:** 4 | **Judge:** Mara Zazzali-Hogan | **Team:** 3 |
| **# of Discovery Days:** 450 | **Age of Case:** 00 YR 01 MO | **Consolidated Case:** N |
| **Original Discovery End Date:** | **Current Discovery End Date:** | **# of DED Extensions:** 0 |
| **Original Arbitration Date:** | **Current Arbitration Date:** | **# of Arb Adjournments:** 0 |
| **Original Trial Date:** | **Current Trial Date:** | **# of Trial Date Adjournments:** 0 |
| **Disposition Date:** | **Case Disposition:** Open | **Statewide Lien:** |

| Plaintiffs (1) | Defendants (6) | Case Proceedings (1) | ACMS Documents (5) | Fees (5) |

Ryan Button

### Case Actions

| Filed Date | Filings | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|---|
| 10/10/2022 | 📎 ✉ | Complaint with Jury Demand for MON-L-002774-22 submitted by MERINO, JAVIER LUIS, THE DANN LAW FIRM, PC on behalf of RYAN BUTTON against DOLLAR GENERAL CORPORATION, DO, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR ET AL. | LCV20223595492 | 10/10/2022 |
| 10/11/2022 | 📎 ✉ | TRACK ASSIGNMENT Notice submitted by Case Management | LCV20223596039 | 10/11/2022 |
| 10/11/2022 | ✉ | DEFICIENCY NOTICE: re: Complaint [LCV20223595492] -Data Submitted Does Not Match Documents DF Dolgencorp is listed on the complaint but not in ecourts/ACMS - a motion to correct data is needed. | LCV20223602407 | 10/11/2022 |
| 10/13/2022 | ✉ | CLERK NOTICE: re: Complaint [LCV20223595492] -Because class actions are excluded from the CBLP program, this matter will proceed in the normal course as a Track IV case, as per Judge Zazzali-Hogan. | LCV20223632194 | 10/13/2022 |
| 10/19/2022 | 📎 ✉ | ORDER TO REMOVE FROM COMPLEX BUSINESS LITIGATION - GRANTED by Judge MARA ZAZZALI-HOGAN | LCV20223649853 | 10/19/2022 |
| 10/21/2022 | 📎 ✉ | NOTICE OF APPEARANCE (NOT THE FIRST PAPER) submitted by RUDNICK, JONATHAN, S of JONATHAN RUDNICK, LLC on behalf of RYAN BUTTON against DOLLAR GENERAL CORPORATION, DO, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR ET AL. | LCV20223719863 | 10/21/2022 |
| 10/28/2022 | 📎 ✉ | MOTION TO CORRECT DATA submitted by MERINO, JAVIER, LUIS of THE DANN LAW FIRM, PC on behalf of RYAN BUTTON against DOLLAR GENERAL CORPORATION, DO, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR ET AL. | LCV20223779730 | 10/28/2022 |
| 10/28/2022 | ✉ | The motion filed on 10/28/2022 will be decided on 11/18/2022. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION TO CORRECT DATA [LCV20223779730] | LCV20223780778 | 10/28/2022 |
| 11/18/2022 | 📎 ✉ | ORDER TO CORRECT DATA-Granted by Judge ZAZZALI-HOGAN, MARA re: MOTION TO CORRECT DATA [LCV20223779730] | LCV20223995994 | 11/18/2022 |

Showing 1 to 9 of 9 entries

A26

Javier L. Merino, Esq. – NJ Attorney ID No.:078112014
Andrew R. Wolf, Esq. - NJ Attorney ID No.: 018621995
THE DANN LAW FIRM, PC
1520 U.S. Hwy. 130 – Suite 101
North Brunswick, NJ 08902
(201) 355-3440 – -TELEPHONE
(216) 373-0536 – FAX

Jonathan Rudnick, Esq.
NJ Attorney ID No.: 034721990
The Law Office of Jonathan Rudnick LLC
788 Shrewsbury Ave, Suite 204
Tinton Falls, NJ, 07724
*Attorneys for Plaintiff and those similarly situated*

| | |
|---|---|
| RYAN BUTTON, ON BEHALF OF HIMSELF AND THOSE SIMILARLY SITUATED, <br> Plaintiff, <br><br> vs. <br><br> DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC D/B/A DOLLAR GENERAL, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, AND JOHN DOES 1-500, INDIVIDUALLY, JOINTLY, SEVERALLY, OR IN THE ALTERNATIVE, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY MONMOUTH COUNTY - LAW DIVISION <br><br> Civil Action <br><br> Docket No.: MON-L- <br><br> **CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff, RYAN BUTTON ("Plaintiff"), on behalf of himself and those similarly situated, by way of Complaint, states:

## NATURE OF THE ACTION

1.     This is a consumer protection class action against DOLLAR GENERAL CORPORATION ("DGC"), DOLGENCORP, LLC D/B/A DOLLAR GENERAL ("DOLLAR GENERAL"), Todd Vasos, Jeff Owen, Steve Sunderland, Emily Taylor, JOHN DOES 1-500,  ("John Does"), collectively "Defendants" arising out of defendants' policies and

practices of regularly charging Plaintiff and putative class members a higher price at the register than the price of merchandise advertised on the shelves at the time of sale at its from Dollar General stores in  New Jersey.

2.     The class action claims arise from Defendants' regular practice of charging customers a higher price on various items than the price advertised on the shelves, in violation of the New Jersey General Advertising Regulations, <u>N.J.A.C.</u> 13:45A-9.1*, et seq.* ("GA Regulations"); New Jersey Unit Price Disclosure Act Regulations, <u>N.J.A.C.</u> 13:45A-14.1*, et seq.* ("Price Disclosure Regulations") Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("CFA"); and the Truth in Consumer Contract Notice and Warranty Act ("TCCWNA"), N.J.S.A. 56:12-14, *et seq.*, for Defendants' unlawful practices of charging more than the advertised price of merchandise to its New Jersey consumers in its New Jersey locations.

## <u>VENUE</u>

3.     Venue in Monmouth County is proper, pursuant to <u>R.</u> 4:3-2, because it is the county in which Plaintiff resides and is a county in which Defendants do business.

## <u>PARTIES</u>

4.     Plaintiff resides in Cliffwood Beach, New Jersey.

5.     Defendant DOLLAR GENERAL is the sole legal entity who operates stores trading as "Dollar General" in the State of New Jersey. DOLLAR GENERAL's principal place of business is in Goodlettsville, Tennessee.

6.     Defendant DGC is the parent of DOLLAR GENERAL. DGC's principal place of business is in Goodlettsville, Tennessee.

7.     Defendant Todd Vasos is the Chief Executive Officer of Dollar General and is a member of this Board of Directors. He has been in those positions at all times relevant to this matter.

A28

8. Defendant Jeff Owen is the Chief Operating Officer of Dollar General. He has been in this position since 2019. Prior to holding this position, he was the Executive Vice President of Store Operations from 2015 to 2019.

9. Defendant Steve Sunderland is the Executive Vice President of Store Operations of Dollar General. He has been in this position since 2019. Prior to holding this position, he was the Senior Vice President of Store Operations from 2014 to 2019.

10. Defendant Emily Taylor is the Executive Vice President and Chief merchandising Officer of Dollar General. She has been in this position since 2020. Prior to holding this position, she was the Senior Vice President of Store Operations from 2014 to 2019. She joined Dollar General in 1998 and held roles of increasing responsibility in investor relations, financial planning and analysis, merchandise planning, pricing and merchandising operations prior to her promotion to Vice President, Pricing & Merchandise Data Optimization in March 2011. She served as Vice President, Merchandising Operations (March 2012 to April 2014) and was subsequently promoted to Senior Vice President, General Merchandise Manager in April 2014. She most recently served as Senior Vice President, Channel Innovation (September 2019 to September 2020).

11. Defendants Todd Vasos, Jeff Owen, Steve Sunderland and Emily Taylor are all officers and or directors of Dollar General who, at all times relevant to this matter, were responsible for setting and implementing Dollar General's policies, procedures and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisements on its shelves and charging the advertised prices at the cash registers in Dollar General's New Jersey stores.

A29

12.   Defendants JOHN/JANE DOES 1-500 are fictitious names of individuals who are officers, supervisors, regional directors, and or managers of Dollar General stores located in New Jersey during the class period, alleged for the purpose of substituting their names for those of any additional defendants whose identity may be disclosed in discovery and should be made parties to this action.

13.   JOHN/JANE DOES 1-500 are all employees of Dollar General who, at all times relevant to this matter, were responsible for setting and implementing Dollar General's policies, procedures and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisements on its shelves and charging the advertised prices at the cash registers in Dollar General's New Jersey stores and the stores they each manage or supervise.

14.   Most, if not all of JOHN/JANE DOES 1-500 reside in or are otherwise residents or citizens of New Jersey at all times relevant to this matter.

15.   Most, if not all of JOHN/JANE DOES 1-500 resided in or were otherwise residents or citizens of New Jersey at the time this Complaint was filed.

16.   JOHN/JANE DOES 1-500 are each personally and directly liable to Plaintiff and putative class members that purchased items in the stores where they were responsible for setting and implementing Dollar General's policies, procedures and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisements on its shelves and charging the advertised prices at the cash registers due to their violations of the consumer statutes and regulations pleaded herein. See *Allen v V & A Bros*. 208 N.J. 114 (2011) and *N.J.S.A* 56:8-2.

A30

17.     Plaintiff on behalf of himself and the putative class seeks signigcant relief directly form JOHN/JANE DOES 1-500 both collectively and individually.

### FACTS RELATED TO DOLLAR GENERAL

18.     Plaintiff and all others similarly situated are persons who shop at Dollar General stores in New Jersey.

19.     DOLLAR GENERAL operates dollar stores that offer a variety of inexpensive merchandise, including home products, seasonal products, consumables, and apparel. The company's business model is about offering products at competitive prices (typically less than $10) in a convenient, small-store format. Its core customer category includes low-to-middle-income customers. The company's stores are located in convenient locations that are easily accessible to its customers. It follows a small-box format and the stores have an easy ''in and out'' shopping set-up.[1]

20.     Dollar General caters mainly to low-and-middle-income customers in rural and suburban areas. The company's core customers earn around $40,000 a year or below, $20,000 below the median income. Dollar General looks to build stores in rural areas where a big box retailer or grocery store is not within 15 or 20 miles. Around 75% of Dollar General stores are in towns with 20,000 or fewer people.[2]

---

[1] See https://marketrealist.com/2017/04/dollar-general-why-small-format-stores-are-key/
[2] See https://www.cnn.com/2019/07/19/business/dollar-general-opposition

A31

21. As of March 2022, DOLLAR GENERAL owned and operated approximately one hundred seventy-five (175) Dollar General stores in New Jersey, with more locations scheduled to open.[3]

## **FACTS RELATED TO PLAINTIFF'S TRANSACTIONS**

22. Plaintiff regularly shops at the Dollar General located at 228 NJ-35, Keyport, New Jersey 07735 ("Dollar General Keyport").

23. While shopping at Dollar General Keyport in early 2022, Plaintiff noticed discrepancies between the prices of merchandise advertised on the shelves and what he was charged at checkout.

24. When there was a price discrepancy, Plaintiff was usually charged and paid more than the advertised price.

25. As a result of these discrepancies, Plaintiff began to track his purchases.

26. Dollar General regularly advertised promotions for Saturday purchases, Specifically, purchases of at least twenty-five dollars ($25.00) made on Saturdays would receive a five-dollar ($5.00) store discount. Plaintiff attempted to focus his Dollar General shopping on Saturdays, using the discount to save money.

27. Relying upon the advertised price of merchandise, Plaintiff would frequently fill his basket with at least twenty-five dollars ($25.00) worth of merchandise and complete the purchase to obtain the five-dollar ($5.00) discount.

---

[3] *See* https://www.statista.com/statistics/1121086/number-of-dollar-general-stores-in-the-united-states-by-state/

28.    Plaintiff noticed pricing issues and became suspicious when he was filling up his basket to twenty-five dollars ($25) worth of goods and merchandise but would notice the prices rung up at the register were higher.

29.    Due to Plaintiff's experiences in being charged more at checkout than the advertised shelf price for merchandise, Plaintiff started to take pictures of the advertised prices to document the advertised/shelf prices to compare them to what he was charged and paid at checkout.

30.    From May through July 2022, Plaintiff made several purchases at the Keyport Dollar General store during which Dollar General charged him a higher price for its merchandise than advertised shelf price. The discrepancies are outlined below:

June 16, 2022 (See **Exhibit A:** Receipt, advertisements)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|---------------|-------------------|-------------------|
| 16-Jun | Keyport | Clover Valley | 2% Half Gallon Milk | $3.15 | $3.20 | $0.05 |
| 16-Jun | Keyport | General Mills | Lucky Charms | $4.00 | $4.75 | $0.75 |
| 16-Jun | Keyport | Dr. Pepper | Diet Dr. Pepper 12-pack | $4.50 | $5.00 | $0.50 |

June 21, 2022 (See **Exhibit B**: Receipt, advertisement)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|---------------|-------------------|-------------------|
| 21-Jun | Keyport | Pirates Booty | Pirates Booty | $2.50 | $2.75 | $0.25 |

June 23, 2022 (See **Exhibit C**: Receipt, advertisement)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|---------------|-------------------|-------------------|
| 23-Jun | Keyport | Clover Valley | 2% Half Gallon Milk | $3.15 | $3.20 | $0.05 |

June 28, 2022 (See **Exhibit D**: Receipt, advertisements)

A33

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|---------------|-------------------|-------------------|
| 28-Jun | Keyport | Clover Valley | Small Curd Cottage Cheese | $2.35 | $2.40 | $0.05 |
| 28-Jun | Keyport | Clover Valley | Chef Boyardee Mini Ravioli | $1.00 | $1.25 | $0.25 |
| 28-Jun | Keyport | Clover Valley | Armour Smoked Ham | $3.00 | $3.75 | $0.75 |

July 1, 2022 (See **Exhibit E**: Receipt, advertisements)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|---------------|-------------------|-------------------|
| 1-Jul | Keyport | Clover Valley | Scott Toilet Paper | $8.00 | $8.35 | $0.35 |
| 1-Jul | Keyport | Clover Valley | All Free Clear Detergent | $7.50 | $8.00 | $0.50 |

31. Defendants used the same procedures that they employed in charging a higher price than advertised to Plaintiff when selling the same and/or similar merchandise to numerous other New Jersey consumers.

32. In the six-year period before the Complaint was filed, Defendants charged prices that were higher than advertised that were same or similar to the advertisements described, *supra*, to numerous New Jersey consumers.

33. It is Defendants' policy and practice to charge a higher price at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves in DOLLAR GENERAL's New Jersey stores.

## CLASS ACTION ALLEGATIONS

34. This action is brought and may properly proceed as a class action, pursuant to the provisions of Rule 4:32-1(b)(2) and b(3) of the New Jersey Court Rules. Plaintiff brings

A34

this action on behalf of himself and all others similarly situated. Plaintiff seeks certification of the class pursuant to Rule 4:32-1(b)(2) and Rule 4:32-1(b)(3) seeking a judgment pursuant to Rule 4:32-2(c) to confer benefits upon a fluid class, whose members may be, but need not have been members of the class in suit; and the subclass Rule 4:32-1(b)(3). The class and subclass are initially defined as follows:

**CLASS**:

All persons who resided in New Jersey on the date this complaint was filed, who at any time on or after the day six years prior to the date on which this Complaint was filed, who purchased merchandise at a Dollar General store located in New Jersey.

**SUBCLASS**:

All members of the Class who paid more for merchandise than the advertised price labeled on the shelf at Dollar General store located in New Jersey.

35.  The class and subclass for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

36.  There are thousands if not tens or hundreds of thousands of consumers who meet the class and subclass definitions.

37.  There are questions of law and fact common to the members of class and subclass. These common questions include but are not limited to:

 a.  Whether the shelf price labels are advertisements under the GA Regulations.

 b.  Whether the shelf price labels are advertisements under the CFA.

 c.  Whether any or all of the merchandise sold at Dollar General stores in New Jersey are "Consumer commodities" under the Price Disclosure Regulations;

 d.  Whether the mis-priced shelf price labels violate the GA Regulations and/or the CFA.

A35

e.   Whether the shelf price labels advertised to Plaintiff and others similarly situated is a contract or notice pursuant the TCCWNA;

f.   Whether the receipts provided to Plaintiff and others similarly situated is a contract or notice pursuant the TCCWNA;

g.   Whether Dollar General stores in New Jersey are a "seller", subject to the requirements of the TCCWNA;

h.   Whether by charging consumers in New Jersey more than the advertised shelf price at checkout, Defendants failed to "substantiate through documents, records or other written proof any claim made regarding the… price of the advertised merchandise…. available for sale" (N.J.A.C. § 13:45A-9.2(a)(10)).

i.   Whether by charging consumers in New Jersey more than the advertised shelf price at checkout, Defendants advertised merchandise as a part of plan or scheme not to sell the item at the advertised price (N.J.S.A. § 56:8-2.2).

j.   Whether by charging consumers in New Jersey more than the advertised shelf price at checkout, Defendants advertised merchandise as a part of plan or scheme not to sell the item at the advertised price as required by the Price Disclosure Regulations (N.J.A.C. § 13:45A-14.10(a)(1).

k.   Whether by affixing an advertised price on store shelves which was less than the actual price charged for the merchandise at checkout, Defendants failed to plainly mark the total selling price as required by the CFA. (N.J.S.A. § 56:8-2.5).

l.   Whether by affixing an advertised price on store shelves which was less than the actual price charged for the merchandise at checkout, violate the GA Regulations

and/or the Price Disclosure Regulations and/or the CFA, Defendants violated the Declaratory Judgment Act (N.J.S.A. §§ 2A:16-50, et seq.).

38. Plaintiff's claims are typical of the claims of the members of the class and subclass which he represents because all such claims arise out of the same policies, practices, and conduct, and the same or similar documents used by Defendants in their dealings with Plaintiff and putative class members.

39. Plaintiff has no interests antagonistic to those of the class.

40. Plaintiff will fairly and adequately protect the interests of the class and subclass, and has retained competent counsel experienced in the prosecution of consumer litigation and class actions.

41. Proposed Class Counsel has investigated and identified potential claims in this action.

42. Proposed Class Counsel has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

43. Defendants have acted, or refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

44. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  While the economic damages suffered by the individual members of the subclass are significant to those class members, the amount is modest compared to the expense and burden of individual litigation. A class action will cause an orderly and expeditious administration of the claims of the class, and will foster economies of time, effort, and expense.

A37

45. The questions of law or fact common to the members of the class and subclass predominate over any questions affecting only individual members.

46. A class action will cause an orderly and expeditious administration of the claims of the subclass, and will foster economies of time, effort and expense.

47. Plaintiff does not anticipate any difficulty in the management of this litigation.

## CLASS CLAIMS

### COUNT ONE (On Behalf of Plaintiff and the Class)
### New Jersey Declaratory Judgment
### (N.J.S.A. §§ 2A:16-50, *et seq.*)

48. Plaintiff repeats and re-alleges all of the prior allegations as if set forth at length herein.

49. At all relevant times, there was in effect the Declaratory Judgments Act ("DJA"), N.J.S.A. § 2A:16-52, which states, in relevant part:

> All courts of record in this state shall, within their respective jurisdictions, have power to declare rights, status and other legal relations, whether or not further relief is or could be claimed; and no action or proceeding shall be open to objection on the ground that a declaratory judgment is demanded.

> The enumeration in other sections of this article of the questions determinable and rights declarable in a proceeding brought under the provisions of this article does not limit or restrict the exercise of the general powers conferred by this section in a proceeding for declaratory relief, in which a judgment will terminate the controversy or remove an uncertainty.

50. The GA Regulations confer rights on the consumers in New Jersey as contemplated by the Uniform Declaratory Judgments Law.

51. The CFA is a statute that confers rights as contemplated by the Uniform Declaratory Judgments Law.

52. The Price Disclosure Regulations confer rights on the consumers in New Jersey as contemplated by the Uniform Declaratory Judgments Law.

53.     The TCCWNA is a statute that confers rights as contemplated by the Uniform Declaratory Judgments Law.

54.     Defendants violated the GA Regulations, CFA and TCCWNA by committing an unconscionable commercial practice, misrepresentations and or other affirmative unlawful act by violating the GA Regulations, the Price Disclosure Regulations, and the CFA in its actions in falsely advertising prices to Plaintiff and those similarly situated, which made an item appear cheaper than what it actually was.

55.     Plaintiff, individually, and on behalf of the Class, seeks an order declaring that Defendants' actions in advertising prices on its shelves which are less than the actual price of the merchandise charged to Plaintiff and class members violated the GA Regulations, Price Disclosure Regulations, CFA and TCCWNA.

56.     The controversies presented in this case are definite and concrete and affect the adverse legal interests of the parties. Plaintiff and Class members contend that Defendants are legally precluded from advertising prices on the shelves of Dollar General's New Jersey stores that are less than the actual price of the merchandise charged to persons in New Jersey who purchase that merchandise.

57.     There is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment because Defendants have provided and will continue to provide unlawful advertisements in New Jersey and charge its customers more than the prices advertised on Dollar General store shelves.

58.     The Court should enter a declaratory judgment that Defendants' actions in providing its New Jersey customers with shelf advertisements that understate the actual price of the

merchandise charged to its customers, like those Plaintiff encountered, violate the GA Regulations, Price Disclosure Regulations, CFA and TCCWNA.

59. The Court should enter a declaratory judgment requiring Defendants to cease providing unlawful advertisements to its customers in New Jersey and also to cease charging more than the price advertised on the shelf of its New Jersey stores.

60. Putative class members should be provided notice that Defendants' actions in providing unlawful advertisements violate the GA Regulations, Price Disclosure Regulations, CFA and TCCWNA.

61. Putative class members should be provided notice that if they purchased an item and paid more than the advertised shelf price, like Plaintiff, they may also be a member of the Class and entitled to monetary relief under the CFA, GA Regulations, Price Disclosure Regulations, and TCCWNA.

62. If the Court were to deny Plaintiff's request for declaratory relief, this controversy will continue to exist, as Defendants will continue to provide unlawful advertisements to its customers in New Jersey and continue to charge them more than advertised shelf price.

63. As a result of the aforementioned violations, Plaintiff, on behalf of himself and the putative class, seeks a declaratory judgment that Defendants have violated the GA Regulations, the CFA, the Price Disclosure Regulations and the TCCWNA, injunctive relief enjoining Defendants from continuing to use advertisements that violate New Jersey law, and an award of reasonable attorneys' fees and costs.

**COUNT TWO (On Behalf of Plaintiff and the Class and Subclass)**
**Violations of the GA Regulations and the CFA**

64. Plaintiff repeats and re-alleges all of the prior allegations as if set forth at length herein.

65.   At all relevant times, there was in effect the General Advertising Regulations (the "GA Regulations"), N.J.A.C. § 13:45A-9.1, *et. seq.*

66.   The GA regulations prohibit "the failure of an advertiser to substantiate through documents, records or other written proof any claim made regarding the….price of the advertised merchandise". N.J.A.C. § 13:45A-9.2(a)(10).

67.   An advertisement violating the GA regulations is a *per se* violation of the CFA. *Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 468 (App. Div. 2001).

68.   Defendants' price labels on shelves in Dollar General's New Jersey stores are "Advertisements" under the GA Regulations at N.J.A.C. § 13:45A-9.1 and under the CFA at N.J.S.A. § 56:8-1.

69.   Defendants are "Advertisers" under the GA Regulations at N.J.A.C. § 13:45A-9.1.

70.   Dollar General's unit price labels on its New Jersey store shelves for the sale of merchandise via its brick and mortar stores and the sale of merchandise are subject to the GA Regulations and the CFA.

71.   Defendants have violated the GA regulations at N.J.A.C. § 13:45A-9.2(a)(10) by charging consumers more than the price advertised on its unit price labels at Dollar General's New Jersey stores.

72.   Defendants' aforementioned violations of the GA Regulations constitute per se violations of the CFA and is an unconscionable commercial practice in direct violation of the CFA at N.J.S.A. 56:8-2.

73.   Furthermore, Dollar General's "advertisement of merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price is an unlawful practice and a violation of the [CFA]." N.J.S.A. 56:8-2.2.

74. In addition, Defendants have engaged in unlawful, affirmative acts under the CFA, including unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in direct violation of the CFA in their interactions with Plaintiff and those similarly situated by charging a higher price at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves in Dollar General's New Jersey stores.

75. Plaintiff and those similarly situated paid more for the merchandise they purchased than the price advertised on the shelf labels for that merchandise at the times of their purchases.

76. As a direct result of Defendants' unit price mislabeling practices, Plaintiff and those similarly situated suffered an ascertainable loss in amounts they were overcharged in excess of the advertised price. Plaintiff suffered an ascertainable loss in the amounts he was overcharged.

77. As a result of the aforementioned violations, Plaintiff and those similarly situated re entitled to treble damages, reasonable attorney's fees and costs, pursuant to 56:8-19.

### COUNT THREE (On Behalf of Plaintiff and the Class and Subclass)
### Violations of the Price Disclosure Regulations and the CFA

78. Plaintiff repeats and re-alleges all of the prior allegations as if set forth at length herein.

79. At all relevant times, there was in effect the Unit Price Disclosure Regulations (the "PD Regulations"), N.J.A.C. § 13:45A-14.1, *et. Seq.*

80. At all relevant times, Defendants were "persons" under the PD Regulations, as they were:

> "corporation[s] or other organization[s] engaged in the sale, display or offering for sale of consumer commodities at retail establishment whose combined total floor area, exclusive of office, receiving and storage areas, dedicated to the sale of consumer commodities exceeds 4,000 square feet[4] or whose combined annual gross

---

[4] Specifically, Defendants noted in its March 19, 2021 2021 10-K that "we expect that our traditional 7,300 square foot store format will continue to be the primary store layout for new

A42

receipts from the sale of consumer commodities in the preceding year exceeded $ 2 million, regardless of the square footage involved[5]."

N.J.A.C. § 13:45A-14.2.

81.    The PD Regulations "provide for the disclosure of information necessary to enable consumers to compare, easily and effectively, the retail prices of certain consumer commodities regardless of package size or quantity." N.J.A.C. § 13:45A-14.1.

82.    The merchandise Defendants sells at its Dollar General stores in New Jersey are "consumer commodities" under the PD Regulations. N.J.A.C. § 13:45A-14.2.

83.    The items that Plaintiff purchased are "consumer commodities".

84.    The PD Regulations at § 13:45A-14.10(a)(1) mandate, in relevant part:

> Whenever a regulated consumer commodity is exposed or offered for sale at retail, the unit price and retail price shall be disclosed in the following manner:
>
> If the commodity is displayed upon a shelf, the unit price label shall appear directly below the commodity, or, alternatively, a unit price tag shall be attached to the commodity. If the use of a unit price label or unit price tag is impossible or impractical, a unit price sign or list may be used provided such sign or list is conspicuously located at or near the commodity.

85.    The "retail price" is defined in the PD Regulations as "the total retail price of a consumer commodity, excluding sales tax." N.J.A.C. § 13:45A-14.2.

86.    Here, Defendants failed to properly disclose the actual retail price of its consumer goods in its unit price labels as the unit price labels understated the true retail price of the items charged to customers at Dollar General's stores in New Jersey.

---

stores in 2021." Therefore, Defendants are well in excess of the 4,000 square feet threshold under the PD Regulations. *See* https://sec.report/Document/0001558370-21-003245/.

[5] Defendants' gross sales/revenue in 2022 to date is approximately $34,220,000,000, well in excess of the $2 million threshold under the PD Regulations. *See* https://www.wsj.com/market-data/quotes/DG/financials/annual/income-statement.

87. A price disclosure violating the PD Regulations is a *per se* violation of the CFA.

88. As a result of Defendants' aforementioned CFA Violations in the Dollar General stores in New Jersey, Plaintiff and those similarly situated suffered an ascertainable loss in amounts of the amount they were charged in excess of the unit price disclosure advertised on the shelves at Dollar General stores in New Jersey.

89. As a result of the aforementioned violations, Plaintiff and those similarly situated are entitled to treble damages, reasonable attorney's fees and costs, pursuant to 56:8-19.

**COUNT FOUR (On Behalf of Plaintiff and the Subclass)**
**Violations of the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA)**
**Predicated on Violations of the GA Regulations, PD Regulations, and the CFA**

90. Plaintiff repeats and re-alleges all of the prior allegations as if set forth at length herein.

91. The TCCWNA prohibits sellers from offering or giving written contracts or notices to consumers that contain any provision that violates a clearly established right of a consumer or a clearly established responsibility of a seller under New Jersey or Federal law. N.J.S.A. 56:12-15.

92. At all times relevant to this matter, Plaintiff and those similarly situated were "consumers" with regard to the unit price label advertisements that Dollar General uses at its stores in New Jersey within the meaning of the TCCWNA.

93. At all times relevant to this matter, Plaintiff and those similarly situated were customers of Defendants in that they had all purchased merchandise from Defendants in an amount which was greater than the advertised price.

94. At all times relevant to this matter, Defendants were "sellers" with regard to the sale of its merchandise at its stores within the meaning of the TCCWNA.

A44

95.   The unit price labels on Dollar General store shelves in its New Jersey stores which understated the true price of items that Dollar General provided to Plaintiff and those similarly situated were contracts and/or notices within the meaning of the TCCWNA.

96.   The purchase receipts that were provided to Plaintiff and those similarly situated who purchased merchandise at Dollar General stores in New Jersey were contracts and/or notices within the meaning of the TCCWNA.

97.   Defendants have violated the TCCWNA at <u>N.J.S.A.</u> 56:12-15 by entering into a consumer contract, displaying and/or giving consumer notices that contained provisions that violated clearly established rights of Plaintiff and all those similarly situated, as established by State law, and by offering a consumer contract that contained provisions that violated their clearly established responsibilities under State law.

98.   Specifically, as outlined, *supra*, Defendants' advertisements violated the GA Regulations at N.J.A.C. 13:45A-9.2(a)(10).

99.   It is a clearly established right of a consumer in New Jersey to not be provided with an advertisement that violates the GA Regulations at N.J.A.C. 13:45A-9.2(a)(10).

100.   It is a clearly established responsibility of a seller to not provide consumers in New Jersey with an advertisement that violates the GA Regulations at N.J.A.C. 13:45A-9.2(a)(10).

101.   The contracts/notices that Defendants provided to Plaintiffs and those similarly situated is unlawful because it contains provisions that violate the clearly established legal rights of Plaintiff and those similarly situated and violates Defendants' clearly established responsibilities under New Jersey law by employing methods to obscure the true price of its merchandise contrary to the requirements of the GA Regulations as set forth herein above and in direct violation of the CFA at N.J.S.A. § 56:8-2.

102.  Defendants were prohibited from advertising prices for its merchandise which were less than the true price of the merchandise

103.  Plaintiff and those similarly situated suffered a harm/were aggrieved because each received an unlawful contract/notice that violated their clearly established rights.

104.  Plaintiff and those similarly situated suffered a harm/were aggrieved because each paid an amount, referenced on their receipts, that was in excess of the amount stated on the unit the price label at Dollar General stores in New Jersey.

105.  Specifically, as outlined, *supra*, Defendants' contracts/ notices violated the PD Regulations at N.J.A.C. 13:45A-14.10(a)(1).

106.  It is a clearly established right of a consumer in New Jersey to not be provided with a unit price label that violates the PD Regulations at N.J.A.C. 13:45A-14.10(a)(1).

107.  It is a clearly established responsibility of a seller to not provide consumers in New Jersey with a unit price label that violates the PD Regulations at N.J.A.C. 13:45A-14.10(a)(1).

108.  The contract/notice that Defendants provided to Plaintiffs and those similarly situated in Dollar General's unit price labels is unlawful because it contains provisions that violate the clearly established legal rights of Plaintiff and those similarly situated and violates Defendants' clearly established responsibilities under New Jersey law by employing methods to obscure the true price of its merchandise contrary to the requirements of the PD Regulations as set forth herein above and in direct violation of the CFA at N.J.S.A. § 56:8-2.

109.  Defendants were prohibited from issuing unit price labels for its merchandise which were less than the true price of the merchandise

110.   Plaintiff and those similarly situated suffered a harm/were aggrieved because each received an unlawful unit price label that violated their clearly established rights.

111.   Plaintiff and those similarly situated suffered a harm/were aggrieved because each paid an amount, referenced on their receipts, that was in excess of the amount stated on the unit the price label at Dollar General stores in New Jersey.

112.   As a result of the aforementioned violations of the TCCWNA, Plaintiff and all others similarly situated are aggrieved consumers and are entitled to statutory damages of not less than $100.00 plus reasonable attorneys' fees, and costs pursuant to TCCWNA at <u>N.J.S.A.</u> 56:12-17 for each unlawful advertisement sent to them.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

*On behalf of himself and all others similarly situated as to the Class (Count One):*

a.      Certification of the class, as defined herein, for equitable relief pursuant to <u>Rule</u> 4:32-1(b)(2);

b.      Appointment of named Plaintiff, Ryan Button, as Class Representative and appointment of his attorneys as Class Counsel;

c.      Injunctive relief requiring Defendants to provide an accounting identifying all members of the class and subclass;

d.      Injunctive relief requiring Defendants to provide an accounting of all overcharges during the class period.

e.      A declaratory judgment that Defendants violated the GA Regulations, PD Regulations, CFA, and TCCWNA;

f.      Injunctive relief enjoining Defendants from engaging in future violations of the GA

A47

Regulations, PD Regulations, CFA and TCCWNA;

g.      Equitable relief requiring Defendants to disgorge all improper gains received due to their violations of New Jersey state laws directly to identifiable class members, via a *cy pres* award and/or via a fluid recovery pursuant to R. 4:32-2(c).

h.      Injunctive relief requiring Defendants to provide notice to all members of the class that their purchases at Dollar General stores in New Jersey may have violated of the GA Regulations, PD Regulations, CFA, and TCCWNA and that if they were harmed or aggrieved or sustained and ascertainable loss that they can bring individual actions for statutory relief under TCCWNA, treble damages under the CFA and for an award of attorneys' fees and costs pursuant to both TCCWNA and the CFA;

i.      An award of reasonable attorneys' fees and costs of suit in connection with this action, pursuant to the court's equitable powers, the CFA at N.J.S.A. 56:8-19, and the TCCWNA at N.J.S.A. 56:12-17; and

j.      Such other and further relief as the Court deems equitable and just.

*On behalf of himself and all others similarly situated as to the Class (Counts Two, Three, and Four)*

k.      Certification of the Class and Subclass, as defined herein, for monetary relief pursuant to Rule 4:32-1(b)(3);

l.      Appointment of named Plaintiff, Ryan Button, as Class Representative and appointment of his attorneys as Class Counsel;

m.      Injunctive relief requiring Defendants to provide an accounting identifying all members of the class and subclass;

n.      Declaratory judgment that Defendants violated the GA Regulations, PD Regulations, CFA and TCCWNA;

A48

o.      Injunctive relief enjoining Defendants from engaging in future violations of the GA Regulations, PD Regulations, CFA and TCCWNA;

p.      Actual damages;

q.      Treble damages under the Consumer Fraud Act pursuant to the CFA at <u>N.J.S.A.</u> 56:8-19,

r.      Statutory civil penalties of $100 per illegal advertisement and corresponding purchase for an overcharge pursuant to the TCCWNA at <u>N.J.S.A.</u> 56:12-17;

s.      Reasonable attorneys' fees and costs of suit in connection with this action, pursuant to the CFA at <u>N.J.S.A.</u> 56:8-19 and TCCWNA at <u>N.J.S.A.</u> 56:12-17;

t.      Confer benefits upon the entire class, as a fluid class, pursuant to R.4:32-2(c);

u.      Equitable relief requiring Defendants to disgorge all improper gains received due to their violations of New Jersey state laws directly to identifiable class members, via a *cy pres* award and/or via a fluid recovery pursuant to R. 4:32-2(c);

v.      Pre-judgment and post-judgment interest; and

w.      Such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of this Complaint will be mailed to the Attorney General of the State of New Jersey within ten (10) days after the filing of the Complaint with the Court, pursuant to <u>N.J.S.A.</u> 56:8-20.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to <u>Rule</u> 4:25-4, Javier L. Merino, Esq. is hereby designated as trial counsel for Plaintiff.

A49

## CERTIFICATION

Pursuant to Rule 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.  I further certify that I know of no party who should be joined in the action at this time.

> /s/ Javier L. Merino
> Javier L. Merino, Esq.
> Andrew R. Wolf, Esq.
> THE DANN LAW FIRM. PC
> 1520 U.S. Hwy. 130 – Suite 101
> North Brunswick, NJ  08902
> *Attorneys for Plaintiff, on behalf of himself and others similarly situated*

Date: October 6, 2022

A50

Javier L. Merino, Esq. – NJ Attorney ID No.:078112014
Andrew R. Wolf, Esq. - NJ Attorney ID No.: 018621995
THE DANN LAW FIRM, PC
1520 U.S. Hwy. 130 – Suite 101
North Brunswick, NJ 08902
(201) 355-3440 – -TELEPHONE
(216) 373-0536 – FAX

Jonathan Rudnick, Esq.
NJ Attorney ID No.: 034721990
The Law Office of Jonathan Rudnick LLC
788 Shrewsbury Ave, Suite 204
Tinton Falls, NJ, 07724
*Attorneys for Plaintiff and those similarly situated*

| | |
|---|---|
| RYAN BUTTON, ON BEHALF OF HIMSELF AND THOSE SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC D/B/A DOLLAR GENERAL, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, AND JOHN DOES 1-500, INDIVIDUALLY, JOINTLY, SEVERALLY, OR IN THE ALTERNATIVE,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY MONMOUTH COUNTY - LAW DIVISION<br><br>Civil Action<br><br>Docket No.: MON-002774-22<br><br>**ORDER ADDING DOLGENCORP, LLC D/B/A DOLLAR GENERAL and correcting the name for DOLLAR GENERAL CORPORATION TO METADATA** |

This matter being opened to the Court by The Dann Law Firm PC and Co-Counsel The

Law Office of Jonathan Rudnick LLC, attorneys for the Plaintiff Ryan Button, and it appearing

that DOLGENCORP, LLC D/B/A DOLLAR GENERAL should be added to the Case

Management System and DOLLAR GENERAL CORPORATION name should be corrected;

and good cause appearing;

**IT IS ORDERED** on this 18th day of November, 2022, that the Case Management System be updated to add DOLGENCORP, LLC D/B/A DOLLAR GENERAL and correct the name for DOLLAR GENERAL CORPORATION in this action.

**IT IS FURTHER ORDERED** pursuant to R. 1:5-1(a) that a copy of this Order will be served on all parties not served electronically, nor served personally in court this date, within seven (7) days of the date of this Order.

<u>/s/ MARA ZAZZALI-HOGAN, J.S.C.</u>

Opposed ()

Unopposed (X)

A52

Javier L. Merino, Esq.
Andrew R. Wolf, Esq.
THE DANN LAW FIRM, PC
1520 U.S. Highway 130 – Suite 101
North Brunswick, New Jersey 08902
(201) 355-3440 – TELEPHONE
(216) 373-0536 – FAX
jmerino@dannlaw.com
*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RYAN BUTTON, ON BEHALF OF HIMSELF AND THOSE SIMILARLY SITUATED, | CIVIL ACTION NO.: 3:22-cv-07028-MAS-RAS |
| Plaintiff, | Removed from Superior Court of New Jersey, Monmouth County, Law Division |
| vs. | |
| DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC D/B/A DOLLAR GENERAL, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, AND JOHN DOES 1-500, INDIVIDUALLY, JOINTLY, SEVERALLY, OR IN THE ALTERNATIVE, | Docket No. MON-L-002774-22 |
| | **NOTICE OF MOTION FOR REMAND** |
| Defendants. | **Motion Date: February 21, 2023** |

**PLEASE TAKE NOTICE** that, upon the accompanying Memorandum of

Law, the Declaration of Javier L. Merino and the exhibits annexed thereto, and upon

all prior pleadings and proceedings in this action, Plaintiff, Ryan Button, on behalf

of himself and all others similarly situated ("Plaintiff"), will move before this Court on February 21, 2023, pursuant to 28 U.S.C. §1447(c), for remand of this matter to the Law Division of the Superior Court of New Jersey-Monmouth County.

 **PLEASE TAKE FURTHER NOTICE** that oral argument is requested if this Motion is opposed, pursuant to Local Civil Rule 78.1(b); and

 **PLEASE TAKE FURTHER NOTICE** that a proposed form of Order is attached hereto.

     Respectfully submitted,

     THE DANN LAW FIRM, PC

     */s/ Javier L. Merino*
     Javier L. Merino
     1520 U.S. Highway 130 – Suite 101
     North Brunswick, New Jersey 08902
     (201) 355-3440 – TELEPHONE
     (216) 373-0536 – FAX
     jmerino@dannlaw.com

Dated: January 16, 2023

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RYAN BUTTON, ON BEHALF OF HIMSELF AND THOSE SIMILARLY SITUATED,<br><br>        Plaintiff,<br><br>        vs.<br><br>DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC D/B/A DOLLAR GENERAL, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, AND JOHN DOES 1-500, INDIVIDUALLY, JOINTLY, SEVERALLY, OR IN THE ALTERNATIVE,<br><br>        Defendants. | District of New Jersey Case No. 3:22-cv-07028-MAS-RAS<br><br>Removed from Superior Court of New Jersey, Monmouth County, Law Division<br><br>Docket No. MON-L-002774-22<br><br>**DECLARATION OF JAVIER L. MERINO, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND** |

**I, JAVIER L. MERINO, ESQ.**, being of full age, by way of Declaration in lieu of

Affidavit, say:

1. I am an attorney at law of the State of New Jersey and the Managing Partner of the New Jersey office for The Dann Law Firm, PC, which represents Plaintiff Ryan Button in the within matter. As such, I have personal knowledge of the facts stated herein.

2. This Declaration is made in support of the Plaintiff's Motion for Remand.

3. Plaintiff Ryan Button ("Button") filed the complaint in this matter on October 6, 2022 in the New Jersey Superior Court, Law Division, Monmouth County, Docket No. MON-L-005236-22. On or about November 4, 2022, Button served his initial discovery demands (the "Discovery Demands"), along with the summons and complaint, on Defendants Dollar General Corporation, Dolgencorp, LLC, Todd Vasos, Jeff Owen, Steve Sunderland, and Emily Taylor (collectively, the "Removing Defendants"). A true and accurate copy of the Discovery Demands is attached as **Exhibit A**.

4. Through the Discovery Demands, Button served interrogatories which requested the following information:

    a. State the current and correct full legal names and current or last known residential addresses of the following individuals[1]:

        i. Todd Vasos;
        ii. Jeff Owen;
        iii. Steve Sunderland; and
        iv. Emily Taylor

    b. Identify and State the correct full legal names and current or last known residential addresses of the John Does 1-500 referenced in ¶ 12-16 of the Complaint, i.e., individuals who are or were officers, supervisors, regional directors, and or managers of Dollar General stores located in New Jersey during the Class Period.

    c. **Identify and describe in detail** the process by which You change or changed the prices of Merchandise sold in Your New Jersey locations

---

[1] *See* https://investor.dollargeneral.com/websites/dollargeneral/English/4000/management-team.html; *see also* Complaint, ¶ 7-11

during the Class Period, including how and when You change prices in your Point of Sale system, and how and when you change the corresponding prices advertised on the shelves. Provide copies of all Documents related to your response to this interrogatory.

d. **Identify and describe** Your record retention policy (and all changes or revisions thereto) promulgated or in effect in New Jersey during the Class Period generally, and specifically with regards to changing the prices of Merchandise sold in Your POS and the prices advertised on Your store shelves if different than Your general record retention policy.

e. **Identify** including the name, current or last known address, titles and employment dates of all persons who, on Your behalf, performed any service related to changing the prices of Merchandise sold in Your New Jersey locations during the Class Period including changing prices in Your POS system and/or the prices advertised on the shelves.

f. **Identify and describe** all transactions during the Class Period where a customer in one of Your New Jersey locations was charged a price for any Merchandise purchased that was more than the price advertised on the shelf in that store at the time of the purchase, including the price in Your POS and the price on the store shelf.

*See Exh. A.*

5. As of this date, the Removing Defendants have not responded to the Discovery Demands.

6. On or about December 16, 2022, my colleagues and I spoke with Philip Goldstein and Trent Taylor, attorneys representing the Removing Defendants (hereinafter "Defendants"), to discuss Removing Defendants' recent removal of this matter to federal court.

7. During this call, we asked for Removing Defendants' consent for a voluntary remand. Instead of consenting, on December 27, 2022, Removing Defendants filed their motions to dismiss (Dkt. 26 and 27).

8. During this call, we also asked if Removing Defendants would consent to a briefing schedule on Plaintiff's anticipated motion to remand. On December 28, 2022, Removing Defendants, through counsel, advised they would not agree to a briefing schedule at that time because they did not believe there was a valid basis for such a motion.

9. As of October 6, 2022, upon information and belief, no other class action asserting the same or similar allegations against any of the Defendants had been filed in the preceding three years.

10. Upon filing of this motion, Plaintiff will seek a stay of Removing Defendants' motions to dismiss pending the outcome of this motion to remand.

11. A true and accurate copy of Dollar General's Assistant Store Manager job posting for its Keyport, New Jersey store from Dollar General's Career website is attached as **Exhibit B**.[2]

---

[2] *See* https://retail-dollargeneral.icims.com/jobs/235563/asst-store-mgr-in-keyport%2C-nj-s23861/job?mobile=false&width=1366&height=500&bga=true&needsRedirect=false&jan1offset=-300&jun1offset=-240 (last visited January 15, 2023)

12. A true and accurate copy of Dollar General's Store Manager job posting for its Camden, New Jersey store from Linkedin is attached as **Exhibit C**.[3]

13. A true and accurate copy of Dollar General's District Manager job posting for its Saddle Brook, New Jersey store from tartar.ai is attached as **Exhibit D**.[4]

**I HEREBY CERTIFY** that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

THE DANN LAW FIRM, PC

*/s/ Javier L. Merino*
Javier L. Merino, Esq.
1520 U.S. Highway 130 – Suite 101
North Brunswick, NJ 08902
(201) 355-3440 – TELEPHONE
(216) 373-0536 – FAX
jmerino@dannlaw.com

Dated: January 16, 2023

---

[3] *See* https://www.linkedin.com/jobs/view/store-manager-at-dollar-general-3429138467?utm_campaign=google_jobs_apply&utm_source=google_jobs_apply&utm_medium=organic (last visited January 15, 2023)

[4] *See* https://tarta.ai/j/Snwmq4MBf__BEUSnT53m1022-retail-district-manager-in-saddle-brook-new-jersey-at-dollar-general?utm_campaign=google_jobs_apply&utm_source=google_jobs_apply&utm_medium=organic (last visited January 15, 2023).

A59

# EXHIBIT A

  Cleveland | Columbus | Cincinnati | New Jersey | New York  

**Javier L. Merino, Esq.***

201-355-3440      JMerino@DannLaw.com      216-373-0536
Direct Telephone      Email      Fax

October 31, 2022

Dolgencorp, LLC d/b/a Dollar General
c/o Chief Executive Officer
100 Mission Ridge
Goodlettsville, Tennessee 37072

     Re:     *Button v. Dollar General Corporation et al.*
           Docket No.: MON-L-002774-22

To Whom It May Concern:

**PLEASE TAKE NOTICE** that, pursuant to the Rules of Court of the State of New Jersey, Plaintiffs hereby request that Defendant Dolgencorp, LLC d/b/a Dollar General respond to the following Interrogatories within the time and in the manner prescribed by the Rules of Court. This will be a continuing demand for discovery as such information becomes available to Defendant or their attorneys.

 Very truly yours,

Javier L. Merino, Esq.

---

NJ Address      DannLaw.com      NY Address
1520 U.S. Highway 130      877-475-8100      42 Broadway, 12th Floor
Suite 101      *Licensed in NJ and NY      New York, NY 10007
North Brunswick, NJ 08902      **By Appointment Only**

A61

**THE DANN LAW FIRM, PC**
By: Javier L. Merino, Esq. (NJ Attorney ID No. 078112014)
Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
1520 U. S. Highway 130, Suite 101
North Brunswick, NJ 08902
(201) 355-3440 – TELEPHONE
(216) 373-0536 – FAX

Jonathan Rudnick, Esq.
NJ Attorney ID No.: 034721990
The Law Office of Jonathan Rudnick LLC
788 Shrewsbury Ave, Suite 204
Tinton Falls, NJ, 07724

*Attorneys for Plaintiff and others similarly situated*

| | |
|---|---|
| RYAN BUTTON, ON BEHALF OF HIMSELF AND THOSE SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC D/B/A DOLLAR GENERAL, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, AND JOHN DOES 1-500, INDIVIDUALLY, JOINTLY, SEVERALLY, OR IN THE ALTERNATIVE,<br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION –MONMOUTH COUNTY<br><br>DOCKET NO. MON-L-002774-22<br><br>CIVIL ACTION<br><br>**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT DOLGENCORP, LLC D/B/A DOLLAR GENERAL** |

**TO**:  Dolgencorp, LLC d/b/a Dollar General
c/o Chief Executive Officer
100 Mission Ridge
Goodlettsville, Tennessee

**PLEASE TAKE NOTICE** that, pursuant to the Rules of Court of the State of New Jersey,

Plaintiff hereby requests that Defendant DolgenCorp, LLC d/b/a Dollar General responds to the

A62

following Interrogatories no later than the deadline set forth in the New Jersey Rules of Court. This will be a continuing demand for discovery as such information becomes available to Defendant DolgenCorp, LLC d/b/a Dollar General or their attorneys.

<div align="center">

**THE DANN LAW FIRM, PC**

</div>

**Dated**: October 28, 2022

<div align="right">

/s/ *Javier L. Merino*
Javier L. Merino
*Attorneys for Plaintiff and others similarly situated*

</div>

# <u>INSTRUCTIONS</u>

1.  When answering the following interrogatories, provide all information either in your possession, under your control, within your dominion, or available to you, regardless of whether this information is in your personal possession or possessed by your agents, servants, employees, representatives, or others with whom you have a relationship and from whom you are capable of deriving information, documents, or material.

2.  These interrogatories shall be deemed to be continuing so as to require supplemental answers if you obtain further information between the time the answers are served and the time of trial. If at any time after these interrogatories are answered, information becomes available which calls for a supplement or amendment to, or modification, deletion, explanation, or amplification of, a previous answer, or other additional information responsive to any interrogatory or part thereof becomes available, please provide such additional information in writing and under oath as required by Court Rules.

3.  If the answer to any part of an interrogatory is not known or available, please specify the portion of the interrogatory that cannot be answered completely, furnish all information that is known or available, and respond to the entire interrogatory by serving supplemental answers, from time to time, thereafter, as required by Court Rules.

4.  Each request to identify or annex a document shall be deemed to call for the identification or annexation of the original document to the extent that they are in or subject to, directly or indirectly, the control of the party to whom these interrogatories are addressed. In addition, each request should be considered as including a request for separate identification or production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other

A64

(e.g., by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereof).

5. To the extent you intend to produce any information in electronic form, production is called for in complete, readable, and usable form, including any information needed to read, understand, or analyze the information.

6. The selection of documents from files and sources shall be performed in such a manner as to ensure that the file or other source from which a document is obtained may be identified.

7. Documents attached to other documents or materials shall not be separated unless sufficient records are kept permitting reconstruction of the grouping or context in which the document is maintained in the ordinary course of your business.

8. If a claim of privilege, confidentiality, or the work product doctrine is asserted with respect to any document or oral communication (as defined below), state the following separately for each document or oral communication:

    a. The request to which the document or oral communication is responsive;

    b. The date of the document or oral communication;

    c. The type of document or oral communication;

    d. The subject matter or title of the document or the nature of the oral communication;

    e. All intended recipients of the document, all other known recipients, and the business, legal title, or position of each;

    f. The purpose for which the document was made;

    g. The circumstances, if known, under which the document was conveyed; and,

    h. The nature of and basis for the privilege or immunity claimed.

9.  If any Document sought in these requests had been misplaced, destroyed, erased, or cannot be located, state the following separately for each such document:

    a.  The request to which the document is responsive;

    b.  The date of the document;

    c.  The type of document;

    d.  The subject matter of the document;

    e.  All intended recipients of the document, all other known recipients, and the business, legal title, or position of each;

    f.  Each person who wrote or edited the document and his or her title and supervisor;

    g.  The last known location of the document; and,

    h.  The reason the document cannot be produced.

## **DEFINITIONS**

1.  The term "Plaintiff" refers to Plaintiff Ryan Button, and/or his agents.

2.  The terms "Defendant", "You", and "Your", refers to Defendant DolgenCorp, LLC d/b/a Dollar General, and/or anyone acting on their behalf including owners, affiliates, officers, directors, agents, attorneys, and employees.

3.  The term "document" means and includes, without limitation, all items identified in R. 4:18-1(a) and shall mean the original and/or any copy, regardless of origin or location, of any book, record, study, handwritten note, working paper, chart, paper, graph, index, tape, data sheet, computer input, computer output, computer media, or any other written, recorded, transcribed, punched, taped, filmed, electronic, magnetic, or graphic matter, including email and text messages, however produced or reproduced, to which you have or had access.

4.      The term "Complaint" refers to the Class Action Complaint and Jury Demand filed in this matter on October 10, 2022.

5.      "Identify" means, when used in reference to:

a.    A document, to state separately (i) its description (e.g., letter, report, memorandum, email message, word processing file, ledger, computer database, spreadsheet, etc.), (ii) its date, (iii) its subject matter; (iv) the identity of each author or signer, (v) its present location, and (vi) the identity of its custodian.

b.    An oral statement, communication, conference, or conversation, to state separately (i) its date and the place where it occurred; (ii) its substance; (iii) the identity of each person making the statement or participating in the communication, conference, or conversation; and (iv) the present location and custodian of all notes, memoranda, or other Documents memorializing, referring to, or relating to the subject matter of the statement, communication, conference, or conversation.

c.    A natural person or persons, to state separately (i) the full name of each such person; (ii) his or her present, or last known business address and his or her present, or last known residential address; and (iii) the employer of the person at the time to which the interrogatory answer is directed and the person's title or position at that time;

d.    An organization or entity other than a natural person (e.g., a corporation, company, firm, association, or partnership), to state separately (i) the full name and type of organization or entity; (ii) the date and state of organization or incorporation; (iii) the address of its principal place of business; and (iv) the nature of the business conducted.

6.      The phrase "relating to", "in connection with" or similar terminology, as used herein, means having any relationship or connection to, concerning, being connected to,

commenting on, responding to, containing, evidencing, showing, memorializing, describing, analyzing, reflecting, pertaining to, referring to, comprising, constituting, or otherwise establishing any reasonable, logical, or causal connection.

7.  "Class Period" or "at all times relevant to this matter" means anytime on or after October 10, 2016.

8.  "Point of Sale system" or "POS" means the system that allows You to accept payments from customers and keep track of sales.

9.  "Merchandise" means as it is defined in the New Jersey Consumer Fraud Act at N.J.S.A. 56:8-1 and any of the Regulations referred to in Plaintiff's Complaint.

10. "Advertised", "Advertisement", and any variation thereof, means as it is defined in the New Jersey Consumer Fraud Act at N.J.S.A. 56:8-1 and any of the Regulations referred to in Plaintiff's Complaint.

11. Unless otherwise specified or required by the context of the request, references to the singular include the plural, references to the plural include the singular, references to one gender include the other gender, references to past tense include the present, and references to the present tense include the past.

## **INTERROGATORIES**

1.     State the current and correct full legal names and current or last known residential addresses of the following individuals[1]:

         a.     Todd Vasos;

         b.     Jeff Owen;

         c.     Steve Sunderland; and

         d.     Emily Taylor

**ANSWER**:

2.     Identify and State the correct full legal names and current or last known residential addresses of the John Does 1-500 referenced in ¶ 12-16 of the Complaint, i.e., individuals who are or were officers, supervisors, regional directors, and or managers of Dollar General stores located in New Jersey during the Class Period.

**ANSWER**:

3.     **Identify and describe in detail** the process by which You change or changed the prices of Merchandise sold in Your New Jersey locations during the Class Period, including how and when You change prices in your Point of Sale system, and how and when you change the corresponding prices advertised on the shelves. Provide copies of all Documents related to your response to this interrogatory.

**ANSWER**:

4.     **Identify and describe** Your record retention policy (and all changes or revisions thereto) promulgated or in effect in New Jersey during the Class Period generally, and specifically with regards to changing the prices of Merchandise sold in Your POS and the prices advertised on Your store shelves if different than Your general record retention policy.

**ANSWER**:

5.     **Identify** including the name, current or last known address, titles and employment dates of all persons who, on Your behalf, performed any service related to changing the prices of

---

[1]   *See*   https://investor.dollargeneral.com/websites/dollargeneral/English/4000/management-team.html; *see also* Complaint, ¶ 7-11

8

Merchandise sold in Your New Jersey locations during the Class Period including changing prices in Your POS system and/or the prices advertised on the shelves.

**ANSWER**:

6.     **Identify and describe** all transactions during the Class Period where a customer in one of Your New Jersey locations was charged a price for any Merchandise purchased that was more than the price advertised on the shelf in that store at the time of the purchase, including the price in Your POS and the price on the store shelf.

**ANSWER**:

## **CERTIFICATION**

I hereby certify that the foregoing answers to Interrogatories are true to the best of my knowledge and belief, and that if I become aware of any information which would alter or in any way change the answers I have provided above, I shall promptly notify the party propounding the Interrogatories of same. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

I further certify that the copies of reports annexed hereto provided by any proposed expert witnesses are exact copies of the entire report or reports provided by them; that the existence of other reports of said experts, either written or oral, are unknown to me, and if such become later known or available, I shall serve them upon the propounding party.

I further certify that copies of all other documents, reports or other writings annexed hereto are exact copies of the same and that if any are unavailable or unknown to me at this time but become available or later known to me, I shall serve them promptly on the propounding party.

Date: _____

_____
Signature

_____
Print Name and Title

A71



**Cleveland | Columbus | Cincinnati | New Jersey | New York**



**Javier L. Merino, Esq.***

| 201-355-3440 | JMerino@DannLaw.com | 216-373-0536 |
| Direct Telephone | Email | Fax |

October 31, 2022

Dollar General Corporation
c/o Chief Executive Officer
100 Mission Ridge
Goodlettsville, Tennessee 37072

      Re:   *Button v. Dollar General Corporation et al.*
          Docket No.: MON-L-002774-22

To Whom It May Concern:

**PLEASE TAKE NOTICE** that, pursuant to the Rules of Court of the State of New Jersey, Plaintiffs hereby request that Defendant Dollar General Corporation respond to the following Interrogatories within the time and in the manner prescribed by the Rules of Court. This will be a continuing demand for discovery as such information becomes available to Defendant or their attorneys.

 Very truly yours,

Javier L. Merino, Esq.

| NJ Address | DannLaw.com | NY Address |
| 1520 U.S. Highway 130 | 877-475-8100 | 42 Broadway, 12th Floor |
| Suite 101 | *Licensed in NJ and NY | New York, NY 10007 |
| North Brunswick, NJ 08902 | | **By Appointment Only** |

A72

**THE DANN LAW FIRM, PC**
By: Javier L. Merino, Esq. (NJ Attorney ID No. 078112014)
Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
1520 U. S. Highway 130, Suite 101
North Brunswick, NJ 08902
(201) 355-3440 – TELEPHONE
(216) 373-0536 – FAX

Jonathan Rudnick, Esq.
NJ Attorney ID No.: 034721990
The Law Office of Jonathan Rudnick LLC
788 Shrewsbury Ave, Suite 204
Tinton Falls, NJ, 07724

*Attorneys for Plaintiff and others similarly situated*

| | |
|---|---|
| RYAN BUTTON, ON BEHALF OF HIMSELF AND THOSE SIMILARLY SITUATED,<br><br>       Plaintiff,<br><br><br>     vs.<br><br>DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC D/B/A DOLLAR GENERAL, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, AND JOHN DOES 1-500, INDIVIDUALLY, JOINTLY, SEVERALLY, OR IN THE ALTERNATIVE,<br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION –MONMOUTH COUNTY<br><br>DOCKET NO. MON-L-002774-22<br><br>CIVIL ACTION<br><br>**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT DOLLAR GENERAL CORPORATION** |

**TO**:  Dollar General Corporation
   c/o Chief Executive Officer
   100 Mission Ridge
   Goodlettsville, Tennessee

   **PLEASE TAKE NOTICE** that, pursuant to the Rules of Court of the State of New Jersey,

Plaintiff hereby requests that Defendant Dollar General Corporation responds to the following

Interrogatories no later than the deadline set forth in the New Jersey Rules of Court. This will be a continuing demand for discovery as such information becomes available to Defendant Dollar General Corporation or their attorneys.

**THE DANN LAW FIRM, PC**

**Dated**: October 28, 2022

/s/ *Javier L. Merino*
Javier L. Merino
*Attorneys for Plaintiff and others similarly situated*

A74

## INSTRUCTIONS

1.  When answering the following interrogatories, provide all information either in your possession, under your control, within your dominion, or available to you, regardless of whether this information is in your personal possession or possessed by your agents, servants, employees, representatives, or others with whom you have a relationship and from whom you are capable of deriving information, documents, or material.

2.  These interrogatories shall be deemed to be continuing so as to require supplemental answers if you obtain further information between the time the answers are served and the time of trial. If at any time after these interrogatories are answered, information becomes available which calls for a supplement or amendment to, or modification, deletion, explanation, or amplification of, a previous answer, or other additional information responsive to any interrogatory or part thereof becomes available, please provide such additional information in writing and under oath as required by Court Rules.

3.  If the answer to any part of an interrogatory is not known or available, please specify the portion of the interrogatory that cannot be answered completely, furnish all information that is known or available, and respond to the entire interrogatory by serving supplemental answers, from time to time, thereafter, as required by Court Rules.

4.  Each request to identify or annex a document shall be deemed to call for the identification or annexation of the original document to the extent that they are in or subject to, directly or indirectly, the control of the party to whom these interrogatories are addressed. In addition, each request should be considered as including a request for separate identification or production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other

3

A75

(e.g., by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereof).

5.    To the extent you intend to produce any information in electronic form, production is called for in complete, readable, and usable form, including any information needed to read, understand, or analyze the information.

6.    The selection of documents from files and sources shall be performed in such a manner as to ensure that the file or other source from which a document is obtained may be identified.

7.    Documents attached to other documents or materials shall not be separated unless sufficient records are kept permitting reconstruction of the grouping or context in which the document is maintained in the ordinary course of your business.

8.    If a claim of privilege, confidentiality, or the work product doctrine is asserted with respect to any document or oral communication (as defined below), state the following separately for each document or oral communication:

    a.    The request to which the document or oral communication is responsive;

    b.    The date of the document or oral communication;

    c.    The type of document or oral communication;

    d.    The subject matter or title of the document or the nature of the oral communication;

    e.    All intended recipients of the document, all other known recipients, and the business, legal title, or position of each;

    f.    The purpose for which the document was made;

    g.    The circumstances, if known, under which the document was conveyed; and,

    h.    The nature of and basis for the privilege or immunity claimed.

A76

9.    If any Document sought in these requests had been misplaced, destroyed, erased, or cannot be located, state the following separately for each such document:

    a.   The request to which the document is responsive;

    b.   The date of the document;

    c.   The type of document;

    d.   The subject matter of the document;

    e.   All intended recipients of the document, all other known recipients, and the business, legal title, or position of each;

    f.   Each person who wrote or edited the document and his or her title and supervisor;

    g.   The last known location of the document; and,

    h.   The reason the document cannot be produced.

## **DEFINITIONS**

1.    The term "Plaintiff" refers to Plaintiff Ryan Button, and/or his agents.

2.    The terms "Defendant", "You", and "Your", refers to Defendant Dollar General Corporation, and/or anyone acting on their behalf including owners, affiliates, officers, directors, agents, attorneys, and employees.

3.    The term "document" means and includes, without limitation, all items identified in R. 4:18-1(a) and shall mean the original and/or any copy, regardless of origin or location, of any book, record, study, handwritten note, working paper, chart, paper, graph, index, tape, data sheet, computer input, computer output, computer media, or any other written, recorded, transcribed, punched, taped, filmed, electronic, magnetic, or graphic matter, including email and text messages, however produced or reproduced, to which you have or had access.

A77

4.     The term "Complaint" refers to the Class Action Complaint and Jury Demand filed in this matter on October 10, 2022.

5.     "Identify" means, when used in reference to:

a.  A document, to state separately (i) its description (e.g., letter, report, memorandum, email message, word processing file, ledger, computer database, spreadsheet, etc.), (ii) its date, (iii) its subject matter; (iv) the identity of each author or signer, (v) its present location, and (vi) the identity of its custodian.

b.  An oral statement, communication, conference, or conversation, to state separately (i) its date and the place where it occurred; (ii) its substance; (iii) the identity of each person making the statement or participating in the communication, conference, or conversation; and (iv) the present location and custodian of all notes, memoranda, or other Documents memorializing, referring to, or relating to the subject matter of the statement, communication, conference, or conversation.

c.  A natural person or persons, to state separately (i) the full name of each such person; (ii) his or her present, or last known business address and his or her present, or last known residential address; and (iii) the employer of the person at the time to which the interrogatory answer is directed and the person's title or position at that time;

d.  An organization or entity other than a natural person (e.g., a corporation, company, firm, association, or partnership), to state separately (i) the full name and type of organization or entity; (ii) the date and state of organization or incorporation; (iii) the address of its principal place of business; and (iv) the nature of the business conducted.

6.     The phrase "relating to", "in connection with" or similar terminology, as used herein, means having any relationship or connection to, concerning, being connected to,

commenting on, responding to, containing, evidencing, showing, memorializing, describing, analyzing, reflecting, pertaining to, referring to, comprising, constituting, or otherwise establishing any reasonable, logical, or causal connection.

7.    "Class Period" or "at all times relevant to this matter" means anytime on or after October 10, 2016.

8.    "Point of Sale system" or "POS" means the system that allows You to accept payments from customers and keep track of sales.

9.    "Merchandise" means as it is defined in the New Jersey Consumer Fraud Act at N.J.S.A. 56:8-1 and any of the Regulations referred to in Plaintiff's Complaint.

10.    "Advertised", "Advertisement", and any variation thereof, means as it is defined in the New Jersey Consumer Fraud Act at N.J.S.A. 56:8-1 and any of the Regulations referred to in Plaintiff's Complaint.

11.    Unless otherwise specified or required by the context of the request, references to the singular include the plural, references to the plural include the singular, references to one gender include the other gender, references to past tense include the present, and references to the present tense include the past.

## <u>INTERROGATORIES</u>

1.  State the current and correct full legal names and current or last known residential addresses of the following individuals[1]:
    - a.  Todd Vasos;
    - b.  Jeff Owen;
    - c.  Steve Sunderland; and
    - d.  Emily Taylor

**ANSWER**:

2.  Identify and State the correct full legal names and current or last known residential addresses of the John Does 1-500 referenced in ¶ 12-16 of the Complaint, i.e., individuals who are or were officers, supervisors, regional directors, and or managers of Dollar General stores located in New Jersey during the Class Period.

**ANSWER**:

3.  **Identify and describe in detail** the process by which You change or changed the prices of Merchandise sold in Your New Jersey locations during the Class Period, including how and when You change prices in your Point of Sale system, and how and when you change the corresponding prices advertised on the shelves. Provide copies of all Documents related to your response to this interrogatory.

**ANSWER**:

4.  **Identify and describe** Your record retention policy (and all changes or revisions thereto) promulgated or in effect in New Jersey during the Class Period generally, and specifically with regards to changing the prices of Merchandise sold in Your POS and the prices advertised on Your store shelves if different than Your general record retention policy.

**ANSWER**:

5.  **Identify** including the name, current or last known address, titles and employment dates of all persons who, on Your behalf, performed any service related to changing the prices of

---

[1] *See* https://investor.dollargeneral.com/websites/dollargeneral/English/4000/management-team.html; *see also* Complaint, ¶ 7-11

Merchandise sold in Your New Jersey locations during the Class Period including changing prices in Your POS system and/or the prices advertised on the shelves.

**ANSWER**:

6.  **Identify and describe** all transactions during the Class Period where a customer in one of Your New Jersey locations was charged a price for any Merchandise purchased that was more than the price advertised on the shelf in that store at the time of the purchase, including the price in Your POS and the price on the store shelf.

**ANSWER**:

A81

## **CERTIFICATION**

I hereby certify that the foregoing answers to Interrogatories are true to the best of my knowledge and belief, and that if I become aware of any information which would alter or in any way change the answers I have provided above, I shall promptly notify the party propounding the Interrogatories of same. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

I further certify that the copies of reports annexed hereto provided by any proposed expert witnesses are exact copies of the entire report or reports provided by them; that the existence of other reports of said experts, either written or oral, are unknown to me, and if such become later known or available, I shall serve them upon the propounding party.

I further certify that copies of all other documents, reports or other writings annexed hereto are exact copies of the same and that if any are unavailable or unknown to me at this time but become available or later known to me, I shall serve them promptly on the propounding party.

Date: _____

_____
Signature

_____
Print Name and Title

A82

# EXHIBIT B

 Careers

‹ Welcome page

Returning Candidate? Log back in!

# ASST STORE MGR in KEYPORT, NJ S23861

**Requisition ID**  2021-235563    📍 228 STATE ROUTE 35    📍 KEYPORT    📍 NJ    📍 07735    📍 US-NJ-KEYPORT

## Company Overview

Dollar General Corporation has been delivering value to shoppers for more than 80 years. Dollar General helps shoppers Save time. Save money. Every day.® by offering products that are frequently used and replenished, such as food, snacks, health and beauty aids, cleaning supplies, basic apparel, housewares and seasonal items at everyday low prices in convenient neighborhood locations. Dollar General operates more than 18,000 stores in 47 states, and we're still growing. Learn more about Dollar General at www.dollargeneral.com.

## Job Details

**GENERAL SUMMARY:**

The Assistant Store Manager helps maintain a clean, well-organized store with a customer-first focus. At the direction and delegation of the Store Manager, the Assistant Store Manager assists with supervision of store employees, management and presentation of merchandise, completion of paperwork, and preparation of deposits.  The Assistant Store Manager also performs stocking and cashiering functions, and performs other duties as necessary to maximize profitability and customer satisfaction while protecting company assets and reducing losses.

**DUTIES and ESSENTIAL JOB FUNCTIONS:**

- Provide superior customer service leadership; greet and assist customers, and operate cash register and scanner to itemize the customer's purchase.
- Open and close the store a minimum of two days per week.
- Assist Store Manager with scheduling employees, providing adequate training for employees, conducting safety meetings, and ensuring employee compliance with company policies and procedures.
- Follow company work processes to manage merchandise, including receiving, unpacking, stocking, restocking and rotating merchandise on shelves and building merchandise displays.
- Assist in maintaining accurate inventory levels by controlling damages, markdowns, scanning, paperwork, and facility controls.
- Assist in implementation and maintenance of planograms; ensure merchandise is presented according to established practices and Store Manager direction.
- Assist in ensuring financial integrity of the store through strict cashier accountability, key control, adherences to company security practices and cash control procedures; authorize and sign for refunds and overrides, count register tills, and deposit money in bank.
- Assist with management of the store in the Store Manager's absence.

## Qualifications

**KNOWLEDGE and SKILLS:**

- Effective interpersonal, written and oral communication skills.

A85

- Ability to solve problems and deal with a variety of situations.
- Good organization skills with attention to detail.
- Ability to read and interpret documents such as diagrams, safety rules, operating and maintenance instructions, and procedures manuals.
- Ability to perform mathematical calculations such as addition, subtraction, multiplication, division, and percentages.
- Ability to perform cash register functions and generate reports.
- Knowledge of cash, facility, and safety control policies and practices.
- Knowledge of cash handling procedures including cashier accountability and deposit control.
- Ability to drive own vehicle to the bank to deposit money.

**WORK EXPERIENCE and/or EDUCATION:**

- High school diploma or equivalent strongly preferred.
- One year of experience in a retail environment and six months supervisory experience preferred.

**WORKING CONDITIONS:**

- Frequent walking and standing
- Frequent bending, stooping, and kneeling to run check out station, stock merchandise and unload trucks; which may also require the ability to push and/or pull rolltainers for stocking merchandise
- Frequent handling of merchandise and equipment such as handheld scanners, pricing guns, box cutters, merchandise containers, two-wheel dollies, U-boats (six-wheel carts), and rolltainers
- Frequent and proper lifting of up to 40 pounds; occasional lifting of up to 55 pounds
- Occasional climbing (using step ladder) up to heights of six feet
- Fast-paced environment; moderate noise level
- Occasional exposure to outside weather conditions
- Occasional or regular driving/providing own transportation to make bank deposits, attend management meetings and travel to other Dollar General stores.

*Dollar General Corporation is an equal opportunity employer.*

WORK WITH US
RETAIL JOBS
DISTRIBUTION CENTER JOBS
FLEET JOBS
CORPORATE JOBS

APPLICANT INSTRUCTIONS
FAQ

REWARDS
BENEFITS
TRAINING & DEVELOPMENT

CULTURE
COMPANY CULTURE
DIVERSITY & INCLUSION

SEARCH JOBS
NEWS & AWARDS
SHOP ONLINE

TERMS & CONDITIONS

PRIVACY POLICY

CCPA NOTICE TO APPLICANTS

## Options

Apply for this job online

Share on

© Copyright 2022 Dollar General Corporation. All Rights Reserved.

# EXHIBIT C







Dollar General Corporation has been delivering value to shoppers for more than 80 years. Dollar General helps shoppers Save time. Save money. Every day.® by offering products that are frequently used and replenished, such as food, snacks, health and beauty aids, cleaning supplies, basic apparel, housewares and seasonal items at everyday low prices in convenient neighborhood locations. Dollar General operates more than 18,000 stores in 47 states, and we're still growing. Learn more about Dollar General at www.dollargeneral.com.

**GENERAL SUMMARY**

Responsible for the management of all employees in the effective planning and implementation of all store processes, including ordering, receiving, stocking, presentation, selling, staffing and support.

**DUTIES and ESSENTIAL JOB FUNCTIONS**

- Recruit, select and retain qualified employees according to federal and state labor laws and company policies; ensure store is properly staffed.
- Provide proper training for employees; conduct performance evaluations; identify gaps for appropriate solutions and/or counseling, up to and including termination.
- Make recommendations regarding employee pay rate and advancement.

A88





 Dollar General · Camden, NJ

Evaluate operating statements to identify business trends (including sales, profitability, and turn), expense control opportunities, potential shrink, and errors.

- Order to ensure the meeting or exceeding of in-stock targets; review ordering plan, seasonal direction and inventory management issues on a weekly basis; follow up on Basic Stock Replenishment (BSR)/cycle counts.
- Facilitate the efficient staging, stocking and storage of merchandise by following defined company work processes.
- Ensure that all merchandise is presented according to established practices; utilize merchandise fixtures properly including presentation, product pricing and signage.
- Maintain accurate inventory levels by controlling damages, markdowns, scanning, paperwork, and facility controls.
- Ensure the financial integrity of the store through strict cashier accountability, key control, and adherence to stated company security practices and cash control procedures.
- Provide superior customer service leadership.
- Maintain a clean, well-organized store; facilitate a safe and secure working and shopping environment.
- Ensure that store is adequately equipped with tools necessary to perform required tasks.
- Follow company policies and procedures as outlined in the Standard Operating Procedures manual, Employee Handbook, and company communications; ensure employee compliance.
- Complete all paperwork and documentation according to guidelines and deadlines.

**KNOWLEDGE and SKILLS**

- Ability to read and interpret documents such as diagrams, safety rules, operating and maintenance instructions, and procedures manuals
- Ability to perform mathematical calculations such as addition, subtraction, multiplication, division, and percentages.
- Knowledge of cash handling procedures including cashier accountability and deposit control.

A89

 LinkedIn



 Dollar General · Camden, NJ

legal compliance and internal processes.

- Knowledge of cash, facility and safety control policies and practices (deposits, store keys, SAFE program, etc.)
- Good organization skills with attention to detail.
- Ability to solve problems and deal with a variety of situations where limited standardization exists.
- Certain store locations may give preference to bilingual Spanish speakers.

**WORK EXPERIENCE and/or EDUCATION**

- High school diploma or equivalent strongly preferred.
- One year of management experience in a retail environment preferred.

**COMPETENCIES**

- Aligns motives, values and beliefs with Dollar General values.
- Supports ownership by tapping into the potential of others.
- Acts as a liaison between the corporate office and store employees.
- Fosters cooperation and collaboration.
- Interacts with staff tactfully yet directly and maintains an open forum of exchange.
- Demonstrates responsiveness and sensitivity to customer needs.
- Applies basic principles of retail (i.e., ordering cycles, peak inventories, merchandise flow, etc.).
- Provides continuous attention to development of staff.
- Recruits, hires and trains qualified applicants to fulfill a store need.
- Ensures store compliance to federal labor laws and company policies and procedures.

**WORKING CONDITIONS and PHYSICAL REQUIREMENTS**

- Frequent walking and standing.

A90

 

 Dollar General · Camden, NJ

- Regularly driving/providing own transportation to make bank deposits and occasionally to attend management meetings and to other Dollar General stores.
- Fast-paced environment; moderate noise level.
- Occasionally exposed to outside weather conditions.

*Dollar General Corporation is an equal opportunity employer.*

#CC#

Show less ⌃

| Seniority level | Employment type |
|---|---|
| **Mid-Senior level** | **Full-time** |

| Job function | Industries |
|---|---|
| **Sales and Business Development** | **Retail** |

 Referrals increase your chances of interviewing at Dollar General by 2x

**See who you know**

 Get notified about new **Store Manager** jobs in **Camden, NJ**.

**Sign in to create job alert**

## Similar jobs

 **Store Manager**
Steve Madden
Cherry Hill, NJ

**10 hours ago**

A91

 

 Dollar General · Camden, NJ

### Store Manager
Foot Locker

Philadelphia, PA

4 days ago

### Store Manager
Men's Wearhouse

Reading, PA

1 week ago

 ### Store Manager
Extra Space Storage

Cherry Hill, NJ

1 week ago

 ### Store Manager
Ross Stores, Inc.

Turnersville, NJ

2 weeks ago

**Show more jobs like this** ⌄

## People also viewed

**STORE MANAGER**

Dollar Tree Stores

Oxford, PA

**52 minutes ago**

**STORE MANAGER**

Family Dollar

Pennsauken, NJ

A92





 Dollar General · Camden, NJ

Dollar Tree Stores

Bridgeton, NJ

2 days ago

### STORE MANAGER

Family Dollar

Philadelphia, PA

5 days ago

### Store Manager

RITE AID

Philadelphia, PA

4 days ago

### STORE MANAGER

Dollar Tree Stores

Vineland, NJ

2 days ago

### STORE MANAGER

Family Dollar

Chester, PA

**52 minutes ago**

### Store Manager

RITE AID

Philadelphia, PA

1 week ago

### STORE MANAGER

Dollar Tree Stores

Rio Grande, NJ

2 days ago

---

 **Looking for a job?**

A93

 

CAREERS

Dollar General · Camden, NJ

Privacy Policy

Cookie Policy

Brand Policy

Community Guidelines

Your California Privacy Choices

Copyright Policy

Guest Controls

Language

A94

# EXHIBIT D



Post a Job

APPLY WITH TARTA ASSISTANT
Unleash the power of automation for your job search (Paid option)

APPLY MANUALLY(FREE)
I have time, I'll manually find and apply for jobs

90% of users say Tarta.ai Assistant helps them save time applying for jobs. Not a member? Click here to subscribe.

# Retail district manager

**DOLLAR GENERAL  SADDLE BROOK, NEW JERSEY**

**RETAIL   MANAGER   STORE   MANAGEMENT   CUSTOMER SERVICE   EDUCATION   RETAIL   LEAD   MISSION   GROWTH   COMMUNICATION LEADERSHIP   FINANCIAL**

🕐 December 4, 2022

🏢 Dollar General

📍 Saddle Brook, New Jersey

🗓 FULL_TIME

4 Kansas City Strips, 8 oz each
4 Kansas City Strips, 8 oz each

The Essential Duo
The Essential Duo

Classic Steak Sampler Gift Box
Classic Steak Sampler Gift Box

4 Boneless Ribeyes, 8 oz each
4 Boneless Ribeyes, 8 oz each

4 Super T Filet Mign each
4 Super Trim Mignon, 6 o

**GENERAL SUMMARY :**

Plan and lead the activities of all stores within the assigned area of operation, including full profit and loss responsibility, while acting within the scope of company objectives and policies to accomplish divisional and regional goals.

DUTIES and ESSENTIAL JOB FUNCTIONS :

**Lead store teams by ensuring :**

- A culture that fosters Dollar General's mission and values.

- Fair administration of human resources policies & practices.

- Superior customer service through fun, friendly stores.

A96

- Area annual sales growth that meets or exceeds company targets through quality orders and efficient flow processes.

- All tools are effectively utilized in each store and market resulting in superior inventory presentation and management.

- Effective planning & execution of company objectives.

- Maximization of performance & productivity through a commitment to sensible store scheduling.

- Total development of human capital through proactive recruitment, selection and education of employees and customers.

- Protection of company assets through loss prevention and expense efficiencies.

- Identify and develop new business opportunities within operational area (i.e., distribution flow improvements, merchandising display efforts, store growth and real estate site selection, recruiting strategy, training and development priorities, employee Relations, customer service, systems implementation, etc.).

- Consistent and effective communication of divisional and regional priorities to store teams.

Qualifications

**KNOWLEDGE and SKILLS :**

- Demonstrated results-oriented leadership including the ability to model total development and serve as a steward of Dollar General's mission and values.

- Demonstrated record of achieving performance goals and objectives.

- Financial analysis skills sufficient to interpret operating statements and other financial reporting data, manage budgets, and control inventory.

- Demonstrated ability to produce desired results by leveraging resources, maintaining tough expense control, managing merchandise effectively, and defining and communicating clear expectations.

- Demonstrated ability to manage multiple tasks in a fast-paced environment while demonstrating flexibility and adaptability.

- Demonstrated strong interpersonal and leadership skills including a willingness to consistently provide superior customer service, the ability to react appropriately under pressure, and the ability to apply good judgment in ambiguous situations.

- Demonstrated ability to effectively work in collaboration with team to achieve objectives in a participative management style.

**WORK EXPERIENCE and / or EDUCATION :**

- Four+ years retail management experience with progressively more responsibility, managing multi-unit operations in retail, grocery or convenience store operations with full P&L responsibility.

- Bachelor's degree preferred.

- Big-box retail management and / or equivalent education and experience combination will be considered.

A97

**COMPETENCIES :**

- Drives results by identifying opportunities to improve performance.

- Works efficiently by planning and organizing work to achieve goals and objectives.

- Focuses on customers by anticipating customer need, overcoming obstacles, and continually striving to improve customer satisf
  action.

- Applies effective analytical skills by integrating complex information, while balancing tactical and strategic initiatives.

- Communicates effectively by providing clear and timely communication and demonstrating effective listening skills.

- Demonstrates adaptability by adjusting to changing business priorities.

<u>Note :</u> This position requires weekly travel in a company-provided vehicle with limited overnight stays; a current driver's license and a
cceptable driving history is required.

Last updated : 2022-10-05

 Report this job



| 4 USDA Prime Kansas City Strips, 12 oz each | 4 Boneless Ribeyes, 10 oz each | Classic Steak Sampler Gift Box | 4 Kansas City Strips, 8 oz each | The Esser |
| --- | --- | --- | --- | --- |
| 4 USDA Prime Kansas City Strips, 12 oz each | 4 Boneless Ribeyes, 10 oz each | Classic Steak Sampler Gift Box | 4 Kansas City Strips, 8 oz each | The Essentia |

## Similar jobs near me

- retail district manager jobs near me

 **tarta.ai**

"Okay Tarta, find me a job!"

    in  f

**TARTA**

Sign up

Tarta for Business

**CONTACT US**

2093 PHILADELPHIA PIKE #1986, CLAYMONT, DE 19703

EMAIL:  support@tarta.ai

A98

About

Tarta for Chrome

California Privacy Notice    Privacy    Terms of use

© 2016 - 2022 Botmakers LLC, All Rights Reserved

Philip A. Goldstein
MCGUIREWOODS LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020-1104
(212) 548-2167
pagoldstein@mcguirewoods.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| RYAN BUTTON, on behalf of himself and those similarly situated | : : : | Civil Action No.: 3:22-cv-07028 (MAS)(RLS) |
| Plaintiff, | : : | |
| v. | : : | |
| DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC d/b/a DOLLAR GENERAL, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, and JOHN DOES 1-500, individually, jointly, severally, or in the alternative, | : : : : : : : : : : | **DECLARATION OF PHILIP A. GOLDSTEIN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** <br><br> **Motion Date: February 21, 2023** |
| Defendants. | : | |

I, Philip A. Goldstein, of full age, declares as follows pursuant to 28 U.S.C.

§ 1746:

1.    I am counsel with the law firm McGuireWoods LLP, attorneys for

Defendants Dollar General Corporation, Dolgencorp, LLC, Todd Vasos, Jeff Owen,

Steve Sunderland, and Emily Taylor (collectively "Defendants") in the above-

captioned action. As counsel for Defendants, I am familiar with the pleadings, facts, and circumstances in this action, and I submit this declaration in support of Defendants' opposition to Plaintiff's Motion to Remand.

2.      Attached as **Exhibit 1** is a true and accurate copy of the Complaint. *See also* ECF Nos. 1-1; 24-1.

3.      Attached as **Exhibit 2** is a true and accurate copy of the complaint filed by Plaintiff's law firm in *Husar v. Dolgen Midwest, LLC*, No. 1:22-cv-02044, ECF 1-2 (N.D. Ohio).

4.      Attached as **Exhibit 3** is a true and accurate copy of the complaint filed by Plaintiff's law firm in *Husar v. Dollar General Corporation*, *et al.*, No. 2:23-cv-00002, ECF 1-1 (E.D. Ky.).

5.       Attached as **Exhibit 4** is a true and accurate copy of the complaint filed by Plaintiff's law firm in *Wolf v. Dollar General Corporation, et al.*, No. 7:23-cv-00558, ECF 1 (S.D.N.Y.).

6.      Attached as **Exhibit 5** is a true and accurate copy of the correspondence from Plaintiff's counsel requesting Dollar General to preserve documents related to shelf-pricing.

2

A101

I hereby declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on February 7, 2023, in New York, New York.

*s/ Philip A. Goldstein*
PHILIP A. GOLDSTEIN

3

# Exhibit 1

Javier L. Merino, Esq. – NJ Attorney ID No.:078112014
Andrew R. Wolf, Esq. - NJ Attorney ID No.: 018621995
THE DANN LAW FIRM, PC
1520 U.S. Hwy. 130 – Suite 101
North Brunswick, NJ 08902
(201) 355-3440 – -TELEPHONE
(216) 373-0536 – FAX

Jonathan Rudnick, Esq.
NJ Attorney ID No.: 034721990
The Law Office of Jonathan Rudnick LLC
788 Shrewsbury Ave, Suite 204
Tinton Falls, NJ, 07724
*Attorneys for Plaintiff and those similarly situated*

| | |
|---|---|
| RYAN BUTTON, ON BEHALF OF HIMSELF AND THOSE SIMILARLY SITUATED, Plaintiff, <br><br> vs. <br><br> DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC D/B/A DOLLAR GENERAL, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, AND JOHN DOES 1-500, INDIVIDUALLY, JOINTLY, SEVERALLY, OR IN THE ALTERNATIVE, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY MONMOUTH COUNTY - LAW DIVISION <br><br> Civil Action <br><br> Docket No.: MON-L- <br><br> **CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff, RYAN BUTTON ("Plaintiff"), on behalf of himself and those similarly situated, by way of Complaint, states:

## NATURE OF THE ACTION

1. This is a consumer protection class action against DOLLAR GENERAL CORPORATION ("DGC"), DOLGENCORP, LLC D/B/A DOLLAR GENERAL ("DOLLAR GENERAL"), Todd Vasos, Jeff Owen, Steve Sunderland, Emily Taylor, JOHN DOES 1-500, ("John Does"), collectively "Defendants" arising out of defendants' policies and

A104

practices of regularly charging Plaintiff and putative class members a higher price at the register than the price of merchandise advertised on the shelves at the time of sale at its from Dollar General stores in New Jersey.

2. The class action claims arise from Defendants' regular practice of charging customers a higher price on various items than the price advertised on the shelves, in violation of the New Jersey General Advertising Regulations, <u>N.J.A.C.</u> 13:45A-9.1*, et seq.* ("GA Regulations"); New Jersey Unit Price Disclosure Act Regulations, <u>N.J.A.C.</u> 13:45A-14.1*, et seq.* ("Price Disclosure Regulations") Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("CFA"); and the Truth in Consumer Contract Notice and Warranty Act ("TCCWNA"), N.J.S.A. 56:12-14, *et seq.*, for Defendants' unlawful practices of charging more than the advertised price of merchandise to its New Jersey consumers in its New Jersey locations.

## VENUE

3. Venue in Monmouth County is proper, pursuant to <u>R.</u> 4:3-2, because it is the county in which Plaintiff resides and is a county in which Defendants do business.

## PARTIES

4. Plaintiff resides in Cliffwood Beach, New Jersey.

5. Defendant DOLLAR GENERAL is the sole legal entity who operates stores trading as "Dollar General" in the State of New Jersey. DOLLAR GENERAL's principal place of business is in Goodlettsville, Tennessee.

6. Defendant DGC is the parent of DOLLAR GENERAL. DGC's principal place of business is in Goodlettsville, Tennessee.

7. Defendant Todd Vasos is the Chief Executive Officer of Dollar General and is a member of this Board of Directors. He has been in those positions at all times relevant to this matter.

A105

8.    Defendant Jeff Owen is the Chief Operating Officer of Dollar General. He has been in this position since 2019. Prior to holding this position, he was the Executive Vice President of Store Operations from 2015 to 2019.

9.    Defendant Steve Sunderland is the Executive Vice President of Store Operations of Dollar General. He has been in this position since 2019. Prior to holding this position, he was the Senior Vice President of Store Operations from 2014 to 2019.

10.    Defendant Emily Taylor is the Executive Vice President and Chief merchandising Officer of Dollar General. She has been in this position since 2020. Prior to holding this position, she was the Senior Vice President of Store Operations from 2014 to 2019. She joined Dollar General in 1998 and held roles of increasing responsibility in investor relations, financial planning and analysis, merchandise planning, pricing and merchandising operations prior to her promotion to Vice President, Pricing & Merchandise Data Optimization in March 2011. She served as Vice President, Merchandising Operations (March 2012 to April 2014) and was subsequently promoted to Senior Vice President, General Merchandise Manager in April 2014. She most recently served as Senior Vice President, Channel Innovation (September 2019 to September 2020).

11.    Defendants Todd Vasos, Jeff Owen, Steve Sunderland and Emily Taylor are all officers and or directors of Dollar General who, at all times relevant to this matter, were responsible for setting and implementing Dollar General's policies, procedures and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisements on its shelves and charging the advertised prices at the cash registers in Dollar General's New Jersey stores.

A106

12.  Defendants JOHN/JANE DOES 1-500 are fictitious names of individuals who are officers, supervisors, regional directors, and or managers of Dollar General stores located in New Jersey during the class period, alleged for the purpose of substituting their names for those of any additional defendants whose identity may be disclosed in discovery and should be made parties to this action.

13.  JOHN/JANE DOES 1-500 are all employees of Dollar General who, at all times relevant to this matter, were responsible for setting and implementing Dollar General's policies, procedures and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisements on its shelves and charging the advertised prices at the cash registers in Dollar General's New Jersey stores and the stores they each manage or supervise.

14.  Most, if not all of JOHN/JANE DOES 1-500 reside in or are otherwise residents or citizens of New Jersey at all times relevant to this matter.

15.  Most, if not all of JOHN/JANE DOES 1-500 resided in or were otherwise residents or citizens of New Jersey at the time this Complaint was filed.

16.  JOHN/JANE DOES 1-500 are each personally and directly liable to Plaintiff and putative class members that purchased items in the stores where they were responsible for setting and implementing Dollar General's policies, procedures and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisements on its shelves and charging the advertised prices at the cash registers due to their violations of the consumer statutes and regulations pleaded herein. See *Allen v V & A Bros*. 208 N.J. 114 (2011) and *N.J.S.A* 56:8-2.

17.     Plaintiff on behalf of himself and the putative class seeks signigcant relief directly form JOHN/JANE DOES 1-500 both collectively and individually.

## FACTS RELATED TO DOLLAR GENERAL

18.     Plaintiff and all others similarly situated are persons who shop at Dollar General stores in New Jersey.

19.     DOLLAR GENERAL operates dollar stores that offer a variety of inexpensive merchandise, including home products, seasonal products, consumables, and apparel. The company's business model is about offering products at competitive prices (typically less than $10) in a convenient, small-store format. Its core customer category includes low-to-middle-income customers. The company's stores are located in convenient locations that are easily accessible to its customers. It follows a small-box format and the stores have an easy ''in and out'' shopping set-up.[1]

20.     Dollar General caters mainly to low-and-middle-income customers in rural and suburban areas. The company's core customers earn around $40,000 a year or below, $20,000 below the median income. Dollar General looks to build stores in rural areas where a big box retailer or grocery store is not within 15 or 20 miles. Around 75% of Dollar General stores are in towns with 20,000 or fewer people.[2]

---

[1] See https://marketrealist.com/2017/04/dollar-general-why-small-format-stores-are-key/
[2] See https://www.cnn.com/2019/07/19/business/dollar-general-opposition

A108

21.    As of March 2022, DOLLAR GENERAL owned and operated approximately one hundred seventy-five (175) Dollar General stores in New Jersey, with more locations scheduled to open.[3]

## FACTS RELATED TO PLAINTIFF'S TRANSACTIONS

22.    Plaintiff regularly shops at the Dollar General located at 228 NJ-35, Keyport, New Jersey 07735 ("Dollar General Keyport").

23.    While shopping at Dollar General Keyport in early 2022, Plaintiff noticed discrepancies between the prices of merchandise advertised on the shelves and what he was charged at checkout.

24.    When there was a price discrepancy, Plaintiff was usually charged and paid more than the advertised price.

25.    As a result of these discrepancies, Plaintiff began to track his purchases.

26.    Dollar General regularly advertised promotions for Saturday purchases, Specifically, purchases of at least twenty-five dollars ($25.00) made on Saturdays would receive a five-dollar ($5.00) store discount. Plaintiff attempted to focus his Dollar General shopping on Saturdays, using the discount to save money.

27.    Relying upon the advertised price of merchandise, Plaintiff would frequently fill his basket with at least twenty-five dollars ($25.00) worth of merchandise and complete the purchase to obtain the five-dollar ($5.00) discount.

---

[3] *See* https://www.statista.com/statistics/1121086/number-of-dollar-general-stores-in-the-united-states-by-state/

28.     Plaintiff noticed pricing issues and became suspicious when he was filling up his basket to twenty-five dollars ($25) worth of goods and merchandise but would notice the prices rung up at the register were higher.

29.     Due to Plaintiff's experiences in being charged more at checkout than the advertised shelf price for merchandise, Plaintiff started to take pictures of the advertised prices to document the advertised/shelf prices to compare them to what he was charged and paid at checkout.

30.     From May through July 2022, Plaintiff made several purchases at the Keyport Dollar General store during which Dollar General charged him a higher price for its merchandise than advertised shelf price. The discrepancies are outlined below:

June 16, 2022 (See **Exhibit A**: Receipt, advertisements)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|---------------|-------------------|-------------------|
| 16-Jun | Keyport | Clover Valley | 2% Half Gallon Milk | $3.15 | $3.20 | $0.05 |
| 16-Jun | Keyport | General Mills | Lucky Charms | $4.00 | $4.75 | $0.75 |
| 16-Jun | Keyport | Dr. Pepper | Diet Dr. Pepper 12-pack | $4.50 | $5.00 | $0.50 |

June 21, 2022 (See **Exhibit B**: Receipt, advertisement)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|---------------|-------------------|-------------------|
| 21-Jun | Keyport | Pirates Booty | Pirates Booty | $2.50 | $2.75 | $0.25 |

June 23, 2022 (See **Exhibit C**: Receipt, advertisement)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|---------------|-------------------|-------------------|
| 23-Jun | Keyport | Clover Valley | 2% Half Gallon Milk | $3.15 | $3.20 | $0.05 |

June 28, 2022 (See **Exhibit D**: Receipt, advertisements)

A110

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|--------------:|------------------:|------------------:|
| 28-Jun | Keyport | Clover Valley | Small Curd Cottage Cheese | $2.35 | $2.40 | $0.05 |
| 28-Jun | Keyport | Clover Valley | Chef Boyardee Mini Ravioli | $1.00 | $1.25 | $0.25 |
| 28-Jun | Keyport | Clover Valley | Armour Smoked Ham | $3.00 | $3.75 | $0.75 |

July 1, 2022 (See **Exhibit E**: Receipt, advertisements)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|--------------:|------------------:|------------------:|
| 1-Jul | Keyport | Clover Valley | Scott Toilet Paper | $8.00 | $8.35 | $0.35 |
| 1-Jul | Keyport | Clover Valley | All Free Clear Detergent | $7.50 | $8.00 | $0.50 |

31.   Defendants used the same procedures that they employed in charging a higher price than advertised to Plaintiff when selling the same and/or similar merchandise to numerous other New Jersey consumers.

32.   In the six-year period before the Complaint was filed, Defendants charged prices that were higher than advertised that were same or similar to the advertisements described, *supra*, to numerous New Jersey consumers.

33.   It is Defendants' policy and practice to charge a higher price at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves in DOLLAR GENERAL's New Jersey stores.

## CLASS ACTION ALLEGATIONS

34.   This action is brought and may properly proceed as a class action, pursuant to the provisions of Rule 4:32-1(b)(2) and b(3) of the New Jersey Court Rules. Plaintiff brings

A111

this action on behalf of himself and all others similarly situated. Plaintiff seeks certification of the class pursuant to Rule 4:32-1(b)(2) and Rule 4:32-1(b)(3) seeking a judgment pursuant to Rule 4:32-2(c) to confer benefits upon a fluid class, whose members may be, but need not have been members of the class in suit; and the subclass Rule 4:32-1(b)(3). The class and subclass are initially defined as follows:

**CLASS**:

All persons who resided in New Jersey on the date this complaint was filed, who at any time on or after the day six years prior to the date on which this Complaint was filed, who purchased merchandise at a Dollar General store located in New Jersey.

**SUBCLASS**:

All members of the Class who paid more for merchandise than the advertised price labeled on the shelf at Dollar General store located in New Jersey.

35.    The class and subclass for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

36.    There are thousands if not tens or hundreds of thousands of consumers who meet the class and subclass definitions.

37.    There are questions of law and fact common to the members of class and subclass. These common questions include but are not limited to:

    a.    Whether the shelf price labels are advertisements under the GA Regulations.

    b.    Whether the shelf price labels are advertisements under the CFA.

    c.    Whether any or all of the merchandise sold at Dollar General stores in New Jersey are "Consumer commodities" under the Price Disclosure Regulations;

    d.    Whether the mis-priced shelf price labels violate the GA Regulations and/or the CFA.

e.   Whether the shelf price labels advertised to Plaintiff and others similarly situated is a contract or notice pursuant the TCCWNA;

f.   Whether the receipts provided to Plaintiff and others similarly situated is a contract or notice pursuant the TCCWNA;

g.   Whether Dollar General stores in New Jersey are a "seller", subject to the requirements of the TCCWNA;

h.   Whether by charging consumers in New Jersey more than the advertised shelf price at checkout, Defendants failed to "substantiate through documents, records or other written proof any claim made regarding the… price of the advertised merchandise…. available for sale" (N.J.A.C. § 13:45A-9.2(a)(10)).

i.   Whether by charging consumers in New Jersey more than the advertised shelf price at checkout, Defendants advertised merchandise as a part of plan or scheme not to sell the item at the advertised price (N.J.S.A. § 56:8-2.2).

j.   Whether by charging consumers in New Jersey more than the advertised shelf price at checkout, Defendants advertised merchandise as a part of plan or scheme not to sell the item at the advertised price as required by the Price Disclosure Regulations (N.J.A.C. § 13:45A-14.10(a)(1).

k.   Whether by affixing an advertised price on store shelves which was less than the actual price charged for the merchandise at checkout, Defendants failed to plainly mark the total selling price as required by the CFA. (N.J.S.A. § 56:8-2.5).

l.   Whether by affixing an advertised price on store shelves which was less than the actual price charged for the merchandise at checkout, violate the GA Regulations

and/or the Price Disclosure Regulations and/or the CFA, Defendants violated the Declaratory Judgment Act (N.J.S.A. §§ 2A:16-50, et seq.).

38. Plaintiff's claims are typical of the claims of the members of the class and subclass which he represents because all such claims arise out of the same policies, practices, and conduct, and the same or similar documents used by Defendants in their dealings with Plaintiff and putative class members.

39. Plaintiff has no interests antagonistic to those of the class.

40. Plaintiff will fairly and adequately protect the interests of the class and subclass, and has retained competent counsel experienced in the prosecution of consumer litigation and class actions.

41. Proposed Class Counsel has investigated and identified potential claims in this action.

42. Proposed Class Counsel has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

43. Defendants have acted, or refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

44. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  While the economic damages suffered by the individual members of the subclass are significant to those class members, the amount is modest compared to the expense and burden of individual litigation. A class action will cause an orderly and expeditious administration of the claims of the class, and will foster economies of time, effort, and expense.

45. The questions of law or fact common to the members of the class and subclass predominate over any questions affecting only individual members.

46. A class action will cause an orderly and expeditious administration of the claims of the subclass, and will foster economies of time, effort and expense.

47. Plaintiff does not anticipate any difficulty in the management of this litigation.

## CLASS CLAIMS

**COUNT ONE (On Behalf of Plaintiff and the Class)**
**New Jersey Declaratory Judgment**
**(N.J.S.A. §§ 2A:16-50, *et seq.*)**

48. Plaintiff repeats and re-alleges all of the prior allegations as if set forth at length herein.

49. At all relevant times, there was in effect the Declaratory Judgments Act ("DJA"), N.J.S.A. § 2A:16-52, which states, in relevant part:

All courts of record in this state shall, within their respective jurisdictions, have power to declare rights, status and other legal relations, whether or not further relief is or could be claimed; and no action or proceeding shall be open to objection on the ground that a declaratory judgment is demanded.

The enumeration in other sections of this article of the questions determinable and rights declarable in a proceeding brought under the provisions of this article does not limit or restrict the exercise of the general powers conferred by this section in a proceeding for declaratory relief, in which a judgment will terminate the controversy or remove an uncertainty.

50. The GA Regulations confer rights on the consumers in New Jersey as contemplated by the Uniform Declaratory Judgments Law.

51. The CFA is a statute that confers rights as contemplated by the Uniform Declaratory Judgments Law.

52. The Price Disclosure Regulations confer rights on the consumers in New Jersey as contemplated by the Uniform Declaratory Judgments Law.

A115

53. The TCCWNA is a statute that confers rights as contemplated by the Uniform Declaratory Judgments Law.

54. Defendants violated the GA Regulations, CFA and TCCWNA by committing an unconscionable commercial practice, misrepresentations and or other affirmative unlawful act by violating the GA Regulations, the Price Disclosure Regulations, and the CFA in its actions in falsely advertising prices to Plaintiff and those similarly situated, which made an item appear cheaper than what it actually was.

55. Plaintiff, individually, and on behalf of the Class, seeks an order declaring that Defendants' actions in advertising prices on its shelves which are less than the actual price of the merchandise charged to Plaintiff and class members violated the GA Regulations, Price Disclosure Regulations, CFA and TCCWNA.

56. The controversies presented in this case are definite and concrete and affect the adverse legal interests of the parties. Plaintiff and Class members contend that Defendants are legally precluded from advertising prices on the shelves of Dollar General's New Jersey stores that are less than the actual price of the merchandise charged to persons in New Jersey who purchase that merchandise.

57. There is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment because Defendants have provided and will continue to provide unlawful advertisements in New Jersey and charge its customers more than the prices advertised on Dollar General store shelves.

58. The Court should enter a declaratory judgment that Defendants' actions in providing its New Jersey customers with shelf advertisements that understate the actual price of the

merchandise charged to its customers, like those Plaintiff encountered, violate the GA Regulations, Price Disclosure Regulations, CFA and TCCWNA.

59.     The Court should enter a declaratory judgment requiring Defendants to cease providing unlawful advertisements to its customers in New Jersey and also to cease charging more than the price advertised on the shelf of its New Jersey stores.

60.     Putative class members should be provided notice that Defendants' actions in providing unlawful advertisements violate the GA Regulations, Price Disclosure Regulations, CFA and TCCWNA.

61.     Putative class members should be provided notice that if they purchased an item and paid more than the advertised shelf price, like Plaintiff, they may also be a member of the Class and entitled to monetary relief under the CFA, GA Regulations, Price Disclosure Regulations, and TCCWNA.

62.     If the Court were to deny Plaintiff's request for declaratory relief, this controversy will continue to exist, as Defendants will continue to provide unlawful advertisements to its customers in New Jersey and continue to charge them more than advertised shelf price.

63.     As a result of the aforementioned violations, Plaintiff, on behalf of himself and the putative class, seeks a declaratory judgment that Defendants have violated the GA Regulations, the CFA, the Price Disclosure Regulations and the TCCWNA, injunctive relief enjoining Defendants from continuing to use advertisements that violate New Jersey law, and an award of reasonable attorneys' fees and costs.

**COUNT TWO (On Behalf of Plaintiff and the Class and Subclass)**
**Violations of the GA Regulations and the CFA**

64.     Plaintiff repeats and re-alleges all of the prior allegations as if set forth at length herein.

65. At all relevant times, there was in effect the General Advertising Regulations (the "GA Regulations"), N.J.A.C. § 13:45A-9.1, *et. seq.*

66. The GA regulations prohibit "the failure of an advertiser to substantiate through documents, records or other written proof any claim made regarding the….price of the advertised merchandise". N.J.A.C. § 13:45A-9.2(a)(10).

67. An advertisement violating the GA regulations is a *per se* violation of the CFA. *Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 468 (App. Div. 2001).

68. Defendants' price labels on shelves in Dollar General's New Jersey stores are "Advertisements" under the GA Regulations at N.J.A.C. § 13:45A-9.1 and under the CFA at N.J.S.A. § 56:8-1.

69. Defendants are "Advertisers" under the GA Regulations at N.J.A.C. § 13:45A-9.1.

70. Dollar General's unit price labels on its New Jersey store shelves for the sale of merchandise via its brick and mortar stores and the sale of merchandise are subject to the GA Regulations and the CFA.

71. Defendants have violated the GA regulations at N.J.A.C. § 13:45A-9.2(a)(10) by charging consumers more than the price advertised on its unit price labels at Dollar General's New Jersey stores.

72. Defendants' aforementioned violations of the GA Regulations constitute per se violations of the CFA and is an unconscionable commercial practice in direct violation of the CFA at N.J.S.A. 56:8-2.

73. Furthermore, Dollar General's "advertisement of merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price is an unlawful practice and a violation of the [CFA]." N.J.S.A. 56:8-2.2.

74.     In addition, Defendants have engaged in unlawful, affirmative acts under the CFA,
including unconscionable commercial practices, deception, fraud, false promises, false
pretenses and/or misrepresentations in direct violation of the CFA in their interactions with
Plaintiff and those similarly situated by charging a higher price at the register for
merchandise than the price advertised on the unit price labels for the same merchandise on
the shelves in Dollar General's New Jersey stores.

75.     Plaintiff and those similarly situated paid more for the merchandise they purchased than
the price advertised on the shelf labels for that merchandise at the times of their purchases.

76.     As a direct result of Defendants' unit price mislabeling practices, Plaintiff and those
similarly situated suffered an ascertainable loss in amounts they were overcharged in
excess of the advertised price. Plaintiff suffered an ascertainable loss in the amounts he
was overcharged.

77.     As a result of the aforementioned violations, Plaintiff and those similarly situated re
entitled to treble damages, reasonable attorney's fees and costs, pursuant to 56:8-19.

**COUNT THREE (On Behalf of Plaintiff and the Class and Subclass)**
**Violations of the Price Disclosure Regulations and the CFA**

78.     Plaintiff repeats and re-alleges all of the prior allegations as if set forth at length herein.

79.     At all relevant times, there was in effect the Unit Price Disclosure Regulations (the "PD
Regulations"), N.J.A.C. § 13:45A-14.1, *et. Seq.*

80.     At all relevant times, Defendants were "persons" under the PD Regulations, as they were:

> "corporation[s] or other organization[s] engaged in the sale, display or offering for
> sale of consumer commodities at retail establishment whose combined total floor
> area, exclusive of office, receiving and storage areas, dedicated to the sale of
> consumer commodities exceeds 4,000 square feet[4] or whose combined annual gross

---

[4] Specifically, Defendants noted in its March 19, 2021 2021 10-K that "we expect that our
traditional 7,300 square foot store format will continue to be the primary store layout for new

receipts from the sale of consumer commodities in the preceding year exceeded $ 2 million, regardless of the square footage involved[5]."

N.J.A.C. § 13:45A-14.2.

81. The PD Regulations "provide for the disclosure of information necessary to enable consumers to compare, easily and effectively, the retail prices of certain consumer commodities regardless of package size or quantity." N.J.A.C. § 13:45A-14.1.

82. The merchandise Defendants sells at its Dollar General stores in New Jersey are "consumer commodities" under the PD Regulations. N.J.A.C. § 13:45A-14.2.

83. The items that Plaintiff purchased are "consumer commodities".

84. The PD Regulations at § 13:45A-14.10(a)(1) mandate, in relevant part:

> Whenever a regulated consumer commodity is exposed or offered for sale at retail, the unit price and retail price shall be disclosed in the following manner:
>
> If the commodity is displayed upon a shelf, the unit price label shall appear directly below the commodity, or, alternatively, a unit price tag shall be attached to the commodity. If the use of a unit price label or unit price tag is impossible or impractical, a unit price sign or list may be used provided such sign or list is conspicuously located at or near the commodity.

85. The "retail price" is defined in the PD Regulations as "the total retail price of a consumer commodity, excluding sales tax." N.J.A.C. § 13:45A-14.2.

86. Here, Defendants failed to properly disclose the actual retail price of its consumer goods in its unit price labels as the unit price labels understated the true retail price of the items charged to customers at Dollar General's stores in New Jersey.

---

stores in 2021." Therefore, Defendants are well in excess of the 4,000 square feet threshold under the PD Regulations.  *See* https://sec.report/Document/0001558370-21-003245/.

[5] Defendants' gross sales/revenue in 2022 to date is approximately $34,220,000,000, well in excess of the $2 million threshold under the PD Regulations. *See* https://www.wsj.com/market-data/quotes/DG/financials/annual/income-statement.

A120

87. A price disclosure violating the PD Regulations is a *per se* violation of the CFA.

88. As a result of Defendants' aforementioned CFA Violations in the Dollar General stores in New Jersey, Plaintiff and those similarly situated suffered an ascertainable loss in amounts of the amount they were charged in excess of the unit price disclosure advertised on the shelves at Dollar General stores in New Jersey.

89. As a result of the aforementioned violations, Plaintiff and those similarly situated are entitled to treble damages, reasonable attorney's fees and costs, pursuant to 56:8-19.

**COUNT FOUR (On Behalf of Plaintiff and the Subclass)**
**Violations of the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA)**
**Predicated on Violations of the GA Regulations, PD Regulations, and the CFA**

90. Plaintiff repeats and re-alleges all of the prior allegations as if set forth at length herein.

91. The TCCWNA prohibits sellers from offering or giving written contracts or notices to consumers that contain any provision that violates a clearly established right of a consumer or a clearly established responsibility of a seller under New Jersey or Federal law. <u>N.J.S.A.</u> 56:12-15.

92. At all times relevant to this matter, Plaintiff and those similarly situated were "consumers" with regard to the unit price label advertisements that Dollar General uses at its stores in New Jersey within the meaning of the TCCWNA.

93. At all times relevant to this matter, Plaintiff and those similarly situated were customers of Defendants in that they had all purchased merchandise from Defendants in an amount which was greater than the advertised price.

94. At all times relevant to this matter, Defendants were "sellers" with regard to the sale of its merchandise at its stores within the meaning of the TCCWNA.

95. The unit price labels on Dollar General store shelves in its New Jersey stores which understated the true price of items that Dollar General provided to Plaintiff and those similarly situated were contracts and/or notices within the meaning of the TCCWNA.

96. The purchase receipts that were provided to Plaintiff and those similarly situated who purchased merchandise at Dollar General stores in New Jersey were contracts and/or notices within the meaning of the TCCWNA.

97. Defendants have violated the TCCWNA at <u>N.J.S.A.</u> 56:12-15 by entering into a consumer contract, displaying and/or giving consumer notices that contained provisions that violated clearly established rights of Plaintiff and all those similarly situated, as established by State law, and by offering a consumer contract that contained provisions that violated their clearly established responsibilities under State law.

98. Specifically, as outlined, *supra*, Defendants' advertisements violated the GA Regulations at N.J.A.C. 13:45A-9.2(a)(10).

99. It is a clearly established right of a consumer in New Jersey to not be provided with an advertisement that violates the GA Regulations at N.J.A.C. 13:45A-9.2(a)(10).

100. It is a clearly established responsibility of a seller to not provide consumers in New Jersey with an advertisement that violates the GA Regulations at N.J.A.C. 13:45A-9.2(a)(10).

101. The contracts/notices that Defendants provided to Plaintiffs and those similarly situated is unlawful because it contains provisions that violate the clearly established legal rights of Plaintiff and those similarly situated and violates Defendants' clearly established responsibilities under New Jersey law by employing methods to obscure the true price of its merchandise contrary to the requirements of the GA Regulations as set forth herein above and in direct violation of the CFA at N.J.S.A. § 56:8-2.

102.   Defendants were prohibited from advertising prices for its merchandise which were less than the true price of the merchandise

103.   Plaintiff and those similarly situated suffered a harm/were aggrieved because each received an unlawful contract/notice that violated their clearly established rights.

104.   Plaintiff and those similarly situated suffered a harm/were aggrieved because each paid an amount, referenced on their receipts, that was in excess of the amount stated on the unit the price label at Dollar General stores in New Jersey.

105.   Specifically, as outlined, *supra*, Defendants' contracts/ notices violated the PD Regulations at N.J.A.C. 13:45A-14.10(a)(1).

106.   It is a clearly established right of a consumer in New Jersey to not be provided with a unit price label that violates the PD Regulations at N.J.A.C. 13:45A-14.10(a)(1).

107.   It is a clearly established responsibility of a seller to not provide consumers in New Jersey with a unit price label that violates the PD Regulations at N.J.A.C. 13:45A-14.10(a)(1).

108.   The contract/notice that Defendants provided to Plaintiffs and those similarly situated in Dollar General's unit price labels is unlawful because it contains provisions that violate the clearly established legal rights of Plaintiff and those similarly situated and violates Defendants' clearly established responsibilities under New Jersey law by employing methods to obscure the true price of its merchandise contrary to the requirements of the PD Regulations as set forth herein above and in direct violation of the CFA at N.J.S.A. § 56:8-2.

109.   Defendants were prohibited from issuing unit price labels for its merchandise which were less than the true price of the merchandise

110. Plaintiff and those similarly situated suffered a harm/were aggrieved because each received an unlawful unit price label that violated their clearly established rights.

111. Plaintiff and those similarly situated suffered a harm/were aggrieved because each paid an amount, referenced on their receipts, that was in excess of the amount stated on the unit the price label at Dollar General stores in New Jersey.

112. As a result of the aforementioned violations of the TCCWNA, Plaintiff and all others similarly situated are aggrieved consumers and are entitled to statutory damages of not less than $100.00 plus reasonable attorneys' fees, and costs pursuant to TCCWNA at N.J.S.A. 56:12-17 for each unlawful advertisement sent to them.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

*On behalf of himself and all others similarly situated as to the Class (Count One):*

a.      Certification of the class, as defined herein, for equitable relief pursuant to Rule 4:32-1(b)(2);

b.      Appointment of named Plaintiff, Ryan Button, as Class Representative and appointment of his attorneys as Class Counsel;

c.      Injunctive relief requiring Defendants to provide an accounting identifying all members of the class and subclass;

d.      Injunctive relief requiring Defendants to provide an accounting of all overcharges during the class period.

e.      A declaratory judgment that Defendants violated the GA Regulations, PD Regulations, CFA, and TCCWNA;

f.      Injunctive relief enjoining Defendants from engaging in future violations of the GA

Regulations, PD Regulations, CFA and TCCWNA;

g.      Equitable relief requiring Defendants to disgorge all improper gains received due to their violations of New Jersey state laws directly to identifiable class members, via a *cy pres* award and/or via a fluid recovery pursuant to R. 4:32-2(c).

h.      Injunctive relief requiring Defendants to provide notice to all members of the class that their purchases at Dollar General stores in New Jersey may have violated of the GA Regulations, PD Regulations, CFA, and TCCWNA and that if they were harmed or aggrieved or sustained and ascertainable loss that they can bring individual actions for statutory relief under TCCWNA, treble damages under the CFA and for an award of attorneys' fees and costs pursuant to both TCCWNA and the CFA;

i.      An award of reasonable attorneys' fees and costs of suit in connection with this action, pursuant to the court's equitable powers, the CFA at N.J.S.A. 56:8-19, and the TCCWNA at N.J.S.A. 56:12-17; and

j.      Such other and further relief as the Court deems equitable and just.

*On behalf of himself and all others similarly situated as to the Class (Counts Two, Three, and Four)*

k.      Certification of the Class and Subclass, as defined herein, for monetary relief pursuant to Rule 4:32-1(b)(3);

l.      Appointment of named Plaintiff, Ryan Button, as Class Representative and appointment of his attorneys as Class Counsel;

m.      Injunctive relief requiring Defendants to provide an accounting identifying all members of the class and subclass;

n.      Declaratory judgment that Defendants violated the GA Regulations, PD Regulations, CFA and TCCWNA;

A125

o.      Injunctive relief enjoining Defendants from engaging in future violations of the GA Regulations, PD Regulations, CFA and TCCWNA;

p.      Actual damages;

q.      Treble damages under the Consumer Fraud Act pursuant to the CFA at <u>N.J.S.A.</u> 56:8-19,

r.      Statutory civil penalties of $100 per illegal advertisement and corresponding purchase for an overcharge pursuant to the TCCWNA at <u>N.J.S.A.</u> 56:12-17;

s.      Reasonable attorneys' fees and costs of suit in connection with this action, pursuant to the CFA at <u>N.J.S.A.</u> 56:8-19 and TCCWNA at <u>N.J.S.A.</u> 56:12-17;

t.      Confer benefits upon the entire class, as a fluid class, pursuant to R.4:32-2(c);

u.      Equitable relief requiring Defendants to disgorge all improper gains received due to their violations of New Jersey state laws directly to identifiable class members, via a *cy pres* award and/or via a fluid recovery pursuant to R. 4:32-2(c);

v.      Pre-judgment and post-judgment interest; and

w.      Such other and further relief as the Court deems equitable and just.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues subject to trial.

## **NOTICE TO ATTORNEY GENERAL OF ACTION**

A copy of this Complaint will be mailed to the Attorney General of the State of New Jersey within ten (10) days after the filing of the Complaint with the Court, pursuant to <u>N.J.S.A.</u> 56:8-20.

## **DESIGNATION OF TRIAL COUNSEL**

Pursuant to <u>Rule</u> 4:25-4, Javier L. Merino, Esq. is hereby designated as trial counsel for Plaintiff.

A126

**<u>CERTIFICATION</u>**

Pursuant to <u>Rule</u> 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.  I further certify that I know of no party who should be joined in the action at this time.

<div align="right">

*/s/ Javier L. Merino*
Javier L. Merino, Esq.
Andrew R. Wolf, Esq.
THE DANN LAW FIRM. PC
1520 U.S. Hwy. 130 – Suite 101
North Brunswick, NJ  08902
*Attorneys for Plaintiff, on behalf of himself and others similarly situated*

</div>

Date: October 6, 2022

A127

EXHIBIT A







A131

DOLLAR GENERAL STORE #23861
KEYPORT, NJ 732-708-5083

| | | | |
|---|---|---|---|
| CV 2 MILK HG | 070744009652 | E | 3.20 |
| GM LUCKY CHARMS XL | 016000169678 | E | 9.50 |

2 @ 4.75

| | | | |
|---|---|---|---|
| JAX CHEESE CURLS 9 | 077817192273 | E | 3.00 |
| CV SALTED BUTTER 1 | 079176008158 | E | 4.50 |
| CV VANILLA SQ | 070640022199 | E | 3.50 |
| NESTLE PUSH UP VAR | 072554173783 | E | 4.35 |
| CELLOS ADULT-AG | 605030337043 | | 2.00 S |

2 @ 1.00

| | | | |
|---|---|---|---|
| DR PEPPER DIET 12P | 078000083163 | E | 13.50 S |

2 @ 6.75

STORE DISCOUNT                       3.50-S
SUBTOTAL                            $40.05
Tax1                                $0.80
TOTAL SALE                         $40.85
Visa              0083 CHIP        $40.85
AUTH# 016035
REF: 000000000167 AID: A0000000031010

TOTAL SAVINGS
$3.50

2022-06-16  11:00:48  23861 01          4504

8917704130344391155159594199197445133211161

-----------------CUT HERE-----------------
*********************************************
* Complete survey at dgcustomerfirst.com *
*             For a chance to             *
* WIN A $100 Gift Card *
* Weekly Drawings, Must be 18+ to enter *
*            SURVEY Code                  *
* 2370-5438-1076-712 *
*********************************************
-----------------CUT HERE-----------------

A132

EXHIBIT B



DOLLAR GENERAL STORE #23861
KEYPORT, NJ 732-708-5083

PIRATES BOOTY WHIT 015665601004 E    2.75
TOTAL SALE                                 $2.75
Visa                    0083 CHIP           $2.75
AUTH# 021283
REF: 000000001001 AID: A0000000031010
2022-06-21  09:08:33  23861 01          5780

8917706990034391150159114196697446113318 31

-----------------CUT HERE-----------------

**************************************** *
* Complete survey at dgcustomerfirst.com *
*          For a chance to                *
*WIN A $100 Gift Card*
* Weekly Drawings, Must be 18+ to enter   *
*          Survey Code                     *
*
*   2370-6698-1081-792
*
**************************************** *

-----------------CUT HERE-----------------

**SATURDAY JUNE 25TH ONLY!**
**DG** Store Coupon          Valid 6/25/2022

# $5 OFF $25

$5 off your purchase of
$25 or more (pretax)

OR SHOP ONLINE: USE PROMO CODE DGSAVEJUN

$25

A135

EXHIBIT C



DOLLAR GENERAL STORE #23861
KEYPORT, NJ 732-708-5083

CV VANILLA IC PAIL 070640022151 E      6.75
CV MACARONI CHEESE 076924889014 E      1.50
  2 @ 0.75
CV 2  MILK HG       070744009652 E      3.20
TOTAL  SALE                           $11.45
Visa            0083 CHIP             $11.45
AUTH# 023159
REF: 000000001316 AID: A0000000031010
2022-06-23  10:48:23  23861 01          6274

8917701830344391152159204196697447133315 71

----------------CUT HERE----------------
**********************************************  *
*  Complete survey at dgcustomerfirst.com  *
*            For a chance to                *
* WIN  A  $100  Gift  Card*
*  Weekly Drawings, Must be 18+ to enter    *
*            Survey Code                    *
¥                                          ¥
¥       2370-7138-1083-782                  ¥
*                                          *
**********************************************  *
----------------CUT HERE----------------

**SATURDAY JUNE 25TH ONLY!**

**DG Store Coupon**              Valid 6/25/2022

**$5 OFF $25**

*$5 off your purchase of*
*$25 or more* (pretax)

OR SHOP ONLINE: USE PROMO CODE DGSAVEJUN

$25 or more (pretax) after all other DG
discounts. Limit one DG $2, $3, or $5
off store coupon per customer. Excludes:

A138

EXHIBIT D



A140



A141

```
        DOLLAR GENERAL STORE #23861
          KEYPORT, NJ 732-708-5083


COKE ZERO              049000042559 E   20.25 S
   3 @ 6.75
STORE DISCOUNT                          10.25-S
BE MXD VEG            014500021281 E     6.00
   6 @ 1.00
BIRDSEYE STEAMFRSH   014500010988 E      3.00
   3 @ 1.00
ARMOUR LUNCHMAKER-   046600034274 E      2.00
   2 @ 1.00
CV SM CURD COTTAGE   070744009775 E      2.40
ARMOUR SMOKED HAM    027815091450 E      3.75
CBAD MINI BF RAVIO   064144043064 E      2.50
   2 @ 1.25
DGH ZIPPER SANDWIC   840323105873        2.35 S
REG LAYS             028400090858 E      1.00
   2 @ 0.50
SUBTOTAL                               $33.00
Tax1                                    $0.82
TOTAL SALE                             $33.82
MasterCard             7712 CHIP       $33.82
AUTH# 01712B
REF: 000000000489 AID: A0000000041010


         TOTAL SAVINGS
            $10.25
2022-06-28  12:30:57  23861 01        0933
```

8917708420034391157169429196660341113311 48

----------------CUT HERE-----------------
*****************************************
* Complete survey at dgcustomerfirst.com *
*          For a chance to              *
*WIN A $100 Gift Card*
* Weekly Drawings, Must be 18+ to enter *
*         Survey Code                   *
* ▮ 2370-1828-1088-742 ▮ *
*****************************************
----------------CUT HERE-----------------
**SATURDAY JULY 2ND ONLY!**
DG Store Coupon          Valid 7/2/2022
$5 OFF $25

A142







# EXHIBIT E



A145

DOLLAR GENERAL STORE #23861
KEYPORT, NJ 732-708-5083

BE MXD VEG            014500021281 E    6.00
   6 @ 1.00
OREO COOKE ORIG 4P 044000055653 E    1.00
CV MACARONI CHEESE 076924889014 E    3.00
   4 @ 0.75
FRUIT BY THE FOOT  016000194304 E    5.70 S
   2 @ 2.85
UTZ 10CT ORIGINAL  041780192646 E    5.25
GOODNITES S-M GIRL 036000413144     11.50
SPASOAP ALOE REFIL 852474169109      1.00 S
XTRA LDS W BLCH AL 850038699000      1.00 S
PS MENS 3N1 C.BLUE 815195012024      1.00 S
VO5 MENS 3N1 OCN S 816559015149      1.00 S
S S 3-ROLL JUMBO W 013100301601      2.35
SCOTT 8PK 1000 SHE 054000119712      8.35
ALL FREE   CLEAR 8 072613739455      8.00 S
COKE ZERO          049000042559 E   40.50 S
   6 @ 6.75
STORE DISCOUNT                      18.50-S
SUBTOTAL                            $77.15
Tax1                                $2.63
TOTAL SALE                         $79.78
Visa              0083 CHIP        $79.78
AUTH# 001492
REF: 000000000826 AID: A0000000031010

TOTAL SAVINGS
$18.50
2022-07-01   10:37:17  23861 01           1535

||||||||||||||||||||||||||||||||||||||||||||||
8917704440344391160159864104197442133112 21

----------------CUT HERE----------------
***************************************** *
* Complete survey at dgcustomerfirst.com *
*        For a chance to                 *
*WIN A $100 Gift Card*
* Weekly Drawings, Must be 18+ to enter   *

A146



# Exhibit 2

IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

FILED
LORAIN COUNTY
2022 OCT 11 A 8: 21
COURT OF COMMON PLEAS
TOM ORLANDO

NORMAN HUSAR, on behalf of himself
and those similarly situated,
% DannLaw
15000 Madison Avenue
Lakewood, OH 44107

      Plaintiff(s)

      v.

DOLGEN MIDWEST, LLC
d/b/a DOLLAR GENERAL,
c/o Corporation Service Company
3366 Riverside Dr., Ste. 103
Upper Arlington, OH 43221

      Defendant.

Case No. **22 C V 207 195**

Judge

**CLASS ACTION COMPLAINT FOR DAMAGES**

**JURY DEMAND ENDORSED HEREON**

Plaintiff Norman Husar ("Plaintiff"), individually and on behalf of all others similarly situated, through his attorneys, brings this action against Defendant DolGen Midwest, LLC d/b/a Dollar General ("Defendant" or "DG"), and alleges upon personal knowledge as to his own actions and experiences, and upon investigation, information and belief as to all others, as follows:

## NATURE OF THE ACTION

1.     This is a consumer protection class action against DG arising out of DG's policies and procedures of regularly charging the Plaintiff and putative class members a higher price at the register than the price of merchandise advertised on the shelves at the time of sale at Dollar General stores across Ohio.

2.     This class action arises from DG's regular practice of charging customers a higher price on various items than the price advertised on its shelves in violation of the Ohio Consumer Sales Practices Act, ORC 1345.01, *et seq.*

## PARTIES, JURISDICTION, AND VENUE

3.      Plaintiff Norman Husar ("Plaintiff") is a natural person who resides in the City of Cincinnati, County of Hamilton, State of Ohio.

4.      Defendant Dolgen Midwest, LLC d/b/a Dollar General ("DG") is a foreign limited liability company organized under the laws of the State of Tennessee with its principal place of business located at 100 Mission Ridge, Goodlettsville, TN 37072.

5.      This Court has jurisdiction pursuant to R.C. 1345.04 as this action arises under the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.* ("CSPA").

6.      Venue lies in this Court as the substantial majority of the transactions giving rise to the Plaintiff's causes of action occurred within various DG stores throughout Lorain County, Ohio.

## FACT RELATED TO DOLLAR GENERAL

7.      Plaintiff and all others similarly situated are persons who shop at Dollar General stores in Ohio.

8.      DOLLAR GENERAL operates dollar stores that offer a variety of inexpensive merchandise, including home products, seasonal products, consumables, and apparel. The company's business model is about offering products at competitive prices (typically less than $10) in a convenient, small-store format. Its core customer category includes low-to-middle-income customers. The company's stores are located in convenient locations that are easily accessible to its customers. It follows a small-box format and the stores have an easy "in and out" shopping set-up.[1]

---

[1] See https://marketrealist.com/2017/04/dollar-general-why-small-format-stores-are-key/ (last visited September 26, 2022)

A150

9.     Dollar General caters mainly to low-and-middle-income customers in rural and suburban areas. The company's core customers earn around $40,000 a year or below, $20,000 below the median income. Dollar General looks to build stores in rural areas where a big box retailer or grocery store is not within 15 or 20 miles. Around 75% of Dollar General stores are in towns with 20,000 or fewer people.[2]

10.     As of March 2022, DOLLAR GENERAL owned and operated approximately Nine Hundred Forty-Three (943) Dollar General stores in Ohio with more locations scheduled to open.[3]

## FACTS RELATED TO PLAINTIFF'S TRANSACTIONS

11.     The Plaintiff incorporates and restates the allegations contained in Paragraphs 1 through 10 as if fully set forth herein.

12.     The Plaintiff is a frequent customer of DG stores throughout Lorain County and Cuyahoga County.

13.     While shopping at various DG locations between early July 2022 and early September 2022, the Plaintiff noticed discrepancies between the prices of the merchandise advertised on the shelves and what he was charged at the checkout.

14.     When there was a price discrepancy, the Plaintiff was usually charged and paid more than the advertised price.

15.     As a result of these discrepancies, the Plaintiff began to track his purchases.

16.     In addition to tracking his purchases, the Plaintiff also began to document the advertised/shelf prices to compare them to what he was charged and paid at checkout.

---

[2] See https://www.cnn.com/2019/07/19/business/dollar-general-opposition (last visited September 26, 2022)
[3] *See* https://www.statista.com/statistics/1121086/number-of-dollar-general-stores-in-the-united-states-by-state/ (last visited September 26, 2022)

A151

17.    Between July 2022 and early September 2022, the Plaintiff made purchases at various DG Store Locations located in Lorain County, Ohio and Cuyahoga County, Ohio including:

- DG Store #04686 located at 1651 Cooper Foster Park Rd, Amherst, OH 44001;

- DG Store #07807 located at 425 W 4th St, Lorain, OH 44052-1644;

- DG Store #12868 located at 2540 Leavitt Road, Lorain, OH 44052-4142;

- DG Store #15058 at 7628 S. Leavitt Road, Amherst, OH 44001;

- DG Store #15242 located at 5248 Colorado Avenue, Sheffield Village, OH 44054-2335;

- DG Store #17110 located at 3785 Clague Rd, North Olmsted, OH 44070-2302

- DG Store #20045 located at 12526 Bellaire Rd, Cleveland, OH 44135

18.    Between July 2022 and early September 2022, the Plaintiff made purchases at the stores noted where the following price discrepancies occurred:

19.    In July and August 2022, Plaintiff made several purchases at Dollar General stores in Lorain County and Cuyahoga County. The discrepancies are outlined below:

| Date of Purchase | Store Number | Brand | Product | Price of Shelf/Sign | Register Price | Discrepancy |
|---|---|---|---|---|---|---|
| 07/03/22 | 12868 | Pepsi | Mountain Dew 2L | $1.90 | $2.20 | $0.30 |
| 07/06/22 | 15252 | Coca-Cola | Coke Zero 16 oz | $1.00 | $1.25 | $0.25 |
| 07/10/22 | 07807 | DG Health | Anti-Diarrheal | $3.50 | $3.95 | $0.45 |
| 07/14/22 | 07807 | CRC Brakleen | Brake Parts Cleaner 14 oz | $4.45 | $5.50 | $1.05 |
| 07/18/22 | 15252 | Eveready | Gold Battery AAA-8 | $4.95 | $6.00 | $1.05 |
| 07/23/22 | 04686 | Energizer | Max Battery D-2 | $4.65 | $5.50 | $0.85 |
| 07/28/22 | 17110 | Coca-Cola | Cherry Coke 16 oz | $1.00 | $1.25 | $0.25 |
| 07/31/22 | 07807 | Wrigley's | Extra Gum Slim Pack | $1.00 | $1.35 | $0.35 |
| 08/01/22 | 15058 | Coca-Cola | Coke de Mexico | $1.25 | $2.00 | $0.75 |
| 08/01/22 | 15252 | Raid | Aerosol A&R 17.5 oz | $4.75 | $5.25 | $0.50 |

4

| 08/05/22 | 20045 | Raid | Ant Baits 4 ct | $4.00 | $4.50 | $0.50 |
| 08/05/22 | 20045 | Coca-Cola | Sprite 16 oz | $1.00 | $1.25 | $0.25 |
| 08/09/22 | 07807 | Santitas | Tortilla Chips | $2.29 | $2.45 | $0.16 |
| 08/27/22 | 07807 | Energizer | 9V Batteries | $4.65 | $4.95 | $0.30 |
| 09/01/22 | 07807 | Crystal Valley | Water | $0.85 | $0.95 | $0.10 |
| 09/01/22 | 07807 | Crystal Valley | Water | $1.50 | $1.65 | $0.15 |

*See also* Exhibit 1 to Complaint - Receipts and Proof of Purchase.

20.     Based on the allegations in Paragraph 19 above and Exhibit 1 between July 3, 2022 and September 1, 2022 the Plaintiff was overcharged at least $7.26.

21.     Based on the allegations here and as demonstrated by Exhibit 1 DG used the same procedures that it employed in charging higher prices than advertised to the Plaintiff when selling the same and/or similar merchandise to numerous other Ohio consumers.

22.     In the two (2) year period before the Complaint was filed DG charged prices that were higher than advertised that were the same or similar to the advertisements described, *supra*, to numerous Ohio consumers.

23.     Based on the allegations herein, *supra*, and demonstrated by Exhibit 1, It is DG's policy and practice to charge higher prices at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves in DG's Ohio stores.

## CLASS ACTION ALLEGATIONS

24.     **Class Definition:** Plaintiff brings this action pursuant to Civ. R. 23 on behalf of a class of similarly situated individuals and entities defined as follows:

All persons who resided in Ohio on the date this complaint was filed, who at any time on or after the day two years prior to the date on which this Complaint was filed, who purchased merchandise at a Dollar General store located in Ohio.

25.     **Subclass Definition:** The Plaintiff also brings this action on behalf of a Subclass

5

A153

of similarly situated individuals and entitled defined as follows:

> All members of the Class who paid more for merchandise than the advertised price labeled on the shelf at a Dollar General store located in Ohio.

26.     Excluded from the Class and Subclass are (1) the Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parent(s) have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class and/or Subclass; (4) any person(s) who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any excluded parties.

27.     **Numerosity and Ascertainability:** Upon information and belief the Class and Subclass (the "Classes") are each composed of more than forty (40) members, such that the Classes are so numerous that joinder of all members is impractical.  This conclusion is reasonable given that Defendant operates 943 stores across Ohio as of March 2022 as noted above and the number of customers at each of DG's stores on a daily basis is likely dozens, if not hundreds or thousands of consumers.

28.     **Commonality and Predominance:** There are questions of law and fact common to the proposed Classes that predominate over any individual questions.  These questions of law and fact include, but are not limited to:

a.  Whether the shelf price labels are advertisements under the GA Regulations.

b.  Whether the shelf price labels are advertisements as defined by the CSPA;

c.  Whether any or all of the purchases made by the Plaintiff and members of the Classes were consumer transactions as defined by the CSPA;

d.  Whether the mis-priced shelf labels violate the CSPA;

6

A154

    e.    Whether the Plaintiff and/or members of the putative Classes suffered an ascertainable loss as a result of the Defendant's unlawful practices;

    f.    Whether by charging consumers in Ohio more than the advertised shelf price at checkout, DG committed a deceptive act as defined by the CSPA;

29.    **Typicality:** Plaintiff's claims are typical of the claims of the Classes. Plaintiff and the putative Class Members were all subjected to and affected by a uniform course of conduct; specifically, DG's pattern and practice of charging Ohio consumers a higher price at the register than the posted price on the shelf for various pieces of merchandise.

30.    **Adequacy:** The Plaintiff will adequately represent the interests of the Classes. The Plaintiff does not have any interests adverse to the Classes. Plaintiff's proposed class counsel has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

31.    **Superiority:** A class action is the superior method for the quick and efficient adjudication of this controversy since joinder of all members is impracticable. While the economic damages suffered by the individual members of the Classes are significant, the amount is modest compared to the expense and burden of individual litigation. The questions of law or fact common to the members of the Classes predominate over any question affecting only individual members. A class action will cause an orderly and expeditious administration of the claims of the Classes, and will foster economies of time, effort, and expense. Given the relatively small amount of damages available to Plaintiff and members of the Classes, adjudication on a classwide basis would provide members of the Classes with a remedy that they may be unlikely to pursue individually. Plaintiff does not anticipate any difficulty in the management of this litigation.

## CLASS CLAIMS

### COUNT ONE: VIOLATIONS OF THE CSPA, R.C. 1345.01, *et seq.*
### (On behalf of the Plaintiff and Classes)

32. Plaintiff restates and incorporates all of his allegations contained in paragraphs 1 through 31 in their entirety.

33. A "consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A).

34. DG's sales of merchandise to Plaintiff and the Class Members constitute "consumer transactions" because such services were for the primary purpose of Plaintiff's and the Class Members' personal, family, or household use. R.C. 1345.01(A).

35. Plaintiff and the Class Members are each a "consumer" because they engaged in a consumer transaction with DG. R.C. 1345.01(D).

36. DG is a "supplier" because it is engaged in the business of effecting or soliciting consumer transactions. R.C. 1345.01(C)

37. "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A).

38. "No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.03(A).

39. DG has engaged in unfair, deceptive, and/or unconscionable acts or practices in direct violation of the CSPA by charging a higher price at the register for merchandise than the

A156

price as advertised on the shelf price labels for the same merchandise.

40.     Plaintiff and those similarly situated paid more for the merchandise they purchased than the price advertised on the shelf labels for that merchandise at the times of their purchases.

41.     Ohio Courts have determined that the actions of a supplier in failing to honor promised prices constitute unfair or deceptive acts or practices. *See State of Ohio ex rel. Petro v. Level Propane Gases, Inc.*, PIF No. 2198 (November 27, 2003) and *White v. Kent*, PIF No. 636 (March 30, 1988). A copy of PIF Nos. 2198 and 636 is attached as Exhibit 2.

42.     The Ohio Attorney General has made these determinations available for public inspection pursuant to R.C. 1345.05(A)(3).

43.     Plaintiff and the Class Members have a private right of action under the CSPA for the claimed breaches.

44.     As a direct and proximate result of the actions of DG which violate the CSPA, Plaintiff and the Class Members are entitled to actual damages in an amount to be determined at trial, as well as an award of reasonable attorneys' fees.

### COUNT TWO: UNJUST ENRICHMENT
### (On behalf of the Plaintiff and Classes)

45.     Plaintiff restates and incorporates all of his allegations contained in paragraphs 1 through 44 in their entirety.

46.     "The purpose of an unjust enrichment claim is not to compensate the plaintiff for loss or damage suffered by the plaintiff, but to enable the plaintiff to recover the benefit he has conferred on the defendant under circumstances in which it would be unjust to allow the defendant to retain it." *Barrow v. Vill. of New Miami*, 104 N.E.3d 814, 818 (Ohio Ct. App.

9

2018); *San Allen, Inc. v. Buehrer*, 11 N.E.3d 739, 781 (Ohio Ct. App. 2014). Equitable "restitution is the remedy for the unjust enrichment of one party at the expense of another." *Id.*

47.    "To prevail on a claim for unjust enrichment, a plaintiff must demonstrate that: (1) he conferred a benefit upon the defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Id.*

48.    Based on the allegations herein, *supra*, DG has engaged in a pattern and practice of overcharging the Plaintiff and members of the Classes by at least $7.35 and collected monies from the Plaintiff and members of the Classes which DG knew or should have known that DG had no contractual or legal right to collect.

49.    Based on the allegations herein, DG enjoyed the use of these overcharges without providing any material benefit to the Plaintiff and members of the Classes.

50.    DG is therefore liable to the Plaintiffs and members of the Classes for an award of actual damages, compensatory damages, and punitive damages in amounts to be determined at trial.

## COUNT THREE: VIOLATIONS OF THE CSPA, R.C. 1345.01, *et seq.*
### (On behalf of Plaintiff individually)

51.    Plaintiff restates and incorporates all of his allegations contained in paragraphs 1 through 50 in their entirety.

52.    A "consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A).

53.    DG's sales of merchandise to Plaintiff constitute "consumer transactions" because

A158

such services were for the primary purpose of Plaintiff's personal, family, or household use. R.C. 1345.01(A).

54.     Plaintiff is a "consumer" because he engaged in a consumer transaction with DG. R.C. 1345.01(D).

55.     DG is a "supplier" because it is engaged in the business of effecting or soliciting consumer transactions. R.C. 1345.01(C)

56.     "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A).

57.     "No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.03(A).

58.     DG has engaged in unfair, deceptive, and/or unconscionable acts or practices in direct violation of the CSPA by charging a higher price at the register for merchandise than the price as advertised on the shelf price labels for the same merchandise.

59.     Plaintiff paid more for the merchandise he purchased than the price advertised on the shelf labels for that merchandise at the times of his purchases.

60.     Ohio Courts have determined that the actions of a supplier in failing to honor promised prices constitute unfair or deceptive acts or practices. *See State of Ohio ex rel. Petro v. Level Propane Gases, Inc.*, PIF No. 2198 (November 27, 2003) and *White v. Kent*, PIF No. 636 (March 30, 1988). *See* Exhibit 2.

61.     The Ohio Attorney General has made these determinations available for public inspection pursuant to R.C. 1345.05(A)(3).

11

62.    Plaintiff has a private right of action under the CSPA for the claimed breaches and such action provides for remedies including actual damages, costs, treble damages, statutory damages and attorneys' fees.

63.    As a direct and proximate result of the actions of DG which violate the CSPA, Plaintiff is is entitled to actual damages in an amount to be determined at trial or statutory damages of $200.00, non-economic damages of up to $5,000.00, treble damages, as well as an award of reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Norman Husar, on behalf of himself and those similarly situated, respectfully requests that that this Court grants judgment against Defendant Dolgen Midwest, LLC d/b/a Dollar General, and issue an Order:

A.  Finding that this action satisfies the prerequisites for Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and Subclass, each as defined, *supra*;

B.  Designating the Plaintiff as a representative of the Class and Subclass, and his undersigned counsel as Class Counsel;

C.  Awarding the Plaintiff, Class and Subclass their actual damages;

D.  Awarding the Plaintiff, Class and Subclass their statutory damages, as applicable;

E.  Awarding the Plaintiff his statutory non-economic damages for the violations of the CSPA, as applicable;

F.  Awarding the Plaintiff, Class, and Subclass, treble damages, as applicable, for the violations of the CSPA;

G.  Awarding the Plaintiff, Class and Subclass punitive damages, as applicable;

A160

I.  Granting all such further and other relief as this Court deems just and appropriate.

Respectfully submitted,

Whitney Kaster (091540)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Michael A. Smith Jr. (0097147)
**DANN LAW**
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiff and the Putative Classes*

## JURY DEMAND

Plaintiff Norman Husar hereby respectfully demands a trial by jury on all such claims that

may be so tried.

Whitney Kaster (091540)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Michael A. Smith Jr. (0097147)
**DANN LAW**
*Counsel for Plaintiff and the Putative Classes*

13

A161

# EXHIBIT 1

DOLLAR GENERAL







A165

DOLLAR GENERAL

POS STICKER DISPLAYED $1.50 - DID NOT TAKE PICTURE BEFORE PURCHASE

NO POS STICKER NOW - PIC BELOW TAKEN ABOUT 20 MINS AFTER PURCHASE









DOLLAR GENERAL

POS PIC TAKEN 9.1.22 - SAME POS AS 8.27.22









DOLLAR GENERAL 08.09.22







A176

DOLLAR GENERAL





DOLLAR GENERAL-12526 BELLAIRE RD, CLEV, OH 44135









A181





0  46500 76746  3







PICS ABOVE TAKEN 8.5.22 - NO RAID PRODUCTS AVAILABLE



DOLLAR GENERAL







A189

DOLLAR GENERAL





A191





DOLLAR GENERAL







A196

DOLLAR GENERAL



A197



DOLLAR GENERAL



Energizer Max
Battery D-2
Alkaline
Ea Enc Dl 2L

$2.33
per each

$4.65

A-P
F2

# DOLLAR GENERAL - D BATTERY - POS STICKER DIFFERENCES



ABOVE - DG NORTH OLMSTED 07.29.22



ABOVE DG AMHERST, OH 07.23.22

Case 3:22-cv-00304 Document 1-8 Filed 12/22/22 Page 231 of 602 PageID: 976



Eveready Gold
Battery AAA-8
Alkaline
8- Each (2L)

**$4.95**
per each

**$4<sup>95</sup>**

Item Price

0358-0003-0001
3/21   E

A-P
F2

Case 3:23-cv-37028-MGR Document 83-2 Filed 04/23/25 Page 232 of 602 PageID: 977

# DOLLAR GENERAL



DOLLAR GENERAL







DOLLAR GENERAL





**DOLLAR GENERAL**



# EXHIBIT 2

| | |
|---|---|
| Case Number: | C860520 |
| Case Name: | WHITE V. KENT JOSEPH CHEVROLET |
| FIR Number: | 10000636 |

RECEIVED

... 30 i 1988

ATTORNEY GENERAL OF OHIO
CONSUMER FRAUDS & CRIMES
PUBLIC INSPECTION FILE

IN THE COURT OF APPEALS

FIRST APPELLATE DISTRICT OF OHIO

HAMILTON COUNTY, OHIO

RECEIVED

1

ATTORNEY GENERAL ...O
CONSUMER FRAUDS ...ES
PUBLIC INSPECTION FILE

DEBBIE WHITE,

      Plaintiff-Appellee, :

vs. .

JEFFREY KENT :
    and
JOSEPH CHEVROLET, :

    Defendants-Appellants.:

APPEAL NO. C-860520
TRIAL NO. 85CV-06570

D E C I S I O N.

F I L E D
COURT OF APPEALS

MAR 3 0 1988

CLERK OF COURTS

Civil Appeal from: Hamilton County Municipal Court

Judgment Appealed from is: Affirmed in Part: Judgment Entered
                       and Cause Remanded

Date of Judgment Entry on Appeal: March 30, 1988

David J. Boyd, Esq., 500 Executive Building, 35 East Seventh
Street, Cincinnati, Ohio 45282, for Plaintiff-Appellee,

Lindhorst & Dreidame and Jay R. Langenbahn, Esq., 1700 Central
Trust Center, 201 East Fifth Street, Cincinnati, Ohio 45202, for
Defendants-Appellants.

Case 3:23-cv-22300-ABC Document 14-13 Filed 11/21/2023 Page 245 of 602 PageID: 990

**PER CURIAM.**

This **cause** came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers; from the Hamilton County Municipal Court, the transcript of the proceedings, the briefs and the argument of counsel.

Plaintiff-appellee Debbie White (White) was considering the purchase of a new **car** in November 1984, White, accompanied by **her** sister and her mother, met with **a** salesman of Joseph Chevrolet, Jeffrey Kent (collectively, appellants), White explained that she was interested in a Chevrolet Cavalier station **wagon** with certain optional equipment.

No vehicle meeting White's specification was available at appellants' place of business, but Kent suggested that he might be able to find a suitable **car** using a computerized **automobile** "**locator**" and to have the car brought to his lot. After some negotiations, a "deal" was arranged whereby White agreed to pay **about** $235.00 per month **for** the car:, An exact price could not be determined because the particular car which **White** selected had not yet been delivered to appellants. Eventually, White purchased the car.

After she examined the paperwork on the car, it became obvious to white that $2000.00 had been added to the sticker price of the automobile, **Appellants**' explanation for this additional amount was that White's trade-in was also increased by $2000.00 in order to give White **some** "**equity**" in the new car to **make** financing

- 2 -

A217

easier. As the $2000.00 increase over the **sticker** price was completely offset by the $2000.00 increase on the value of the trade-in, appellants contended that the price of the new car to White was unchanged from what she had **agreed** upon.

White was not satisfied with this explanation because she understood the transaction differently. White believed that she was initially going to receive additional value for her old car rather than a reduction in the sticker price of the new car:. Therefore, according to White, the additional $2000.00 increase in the value of the trade-in should ultimately have been deducted from the original sticker price of the new car,

Subsequently, White filed suit in the Hamilton County Municipal Court under the Ohio Consumer Sales Practices Act, R.C. Chapter 1345. After a trial by jury, a verdict was returned in favor of White, Actual damages were found to be $3100.00, and they were trebled pursuant to the statute to $9,300.00. Further, attorney fees were awarded in the amount $1500.00 for a total judgment in the amount of $10,800.00.

Appellants have assigned three errors to the trial court in this timely appeal. The first and second assignments of error are interdependent and will be considered together:

First assignment of error

The trial court erred to the prejudice of the appellant [*sic*] by submitting the issue of treble damages to the jury.

Second assignment of error

- 3 -

The jury **verdict** is prejudicial to the appellant [*sic*] in that it is against the manifest weight of the evidence.

It is clear from the complaint that an unfair consumer practice was being alleged against appellants, **and** therefore, if the judgment is not against the manifest weight of the evidence, then the trial court properly submitted the question of treble damages to the jury. Accordingly, the result of the second assignment of error may well be determinative on the first assignment of error.

In the trial of a civil suit it has been long established that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C. E. Morris Co. v. Foley Construction Co.* (1978), **54 Ohio St. 2d 279**, 376 N.E.2d 578, syllabus. We hold that the evidence fully supports the jury's finding of an unfair consumer practice,

At trial, White, her sister and her mother all testified that the **$2000.00** increase in the value of White's trade-in was in lieu of a reduction in the sticker price of the new car. While White argues that **numerous** unfair and unconscionable consumer practices were committed, **we** think it is sufficient to note that the statute specifically states that it is **an** unfair consumer practice for a supplier to indicate that a "specific price advantage exists, if it does not." R.C. 1345.02(B)(8). If the jury believed white and her witnesses, then it could have

- 4 -

found that both Kent, the salesman, and Gary Cunningham, the finance manager, told White that a price advantage existed where it did not, The testimony was competent and not incredible.

Appellants argued strongly, both at trial. and In oral argument before us, that the deal a5 described by White would not have made economic sense because the dealership would have sold the new car for less than what it coot them, and that White would have received more than she paid for her trade-in after driving it for about two years and putting about 14,000 additional miles on the odometer.

certainly the jury did not have to find that the dealership was planning on losing money, All that was necessary was that the jury believed that White was told of a price which was not the true price, The jury could have thought that appellants never had any intention of actually selling the car for the amount they told White, but rather that they intended to increase the purchase price from the beginning of the negotiations. The jury was completely free to believe all, part or none of what any witness said. *State v. Antill* (1964), 176 Ohio St. 61, 197 N.E.2d 548. Accordingly, the jury's verdict was not inconsistent with the manifest weight of the evidence, and the trial court did not err in submitting the issue of treble damages to the jury. The first and second assignments of error are overruled.

In the third assignment of error, appellants claim that the trial court erred in overruling their motion for judgment

A220

notwithstanding the verdict or **for** a new trial.  In both the memorandum in support of the motion **to** the trial court and their appellate brief *to* this court, appellants incorporate their arguments from the first and second assignments of error.  For the reasons expressed in the foregoing, we overrule the third assignment of error,

Finally, we note that the amount awarded, **$10,800.00,** exceeded the **$10,000.00** jurisdictional limit of the municipal court, R.C. **1901.17.** Therefore, **we vacate** said judgment and we enter the judgment that the trial court should **have** entered, $10,000.00, pursuant to App. R. **12(B).  We** remand the **cause** to the trial court for a determination of **how the** reduction should be divided between the trebled damages **and** the **award** of attorney fees.  In all other respects the judgment is affirmed.

**BLACK, P.J., DOAN and KLUSMEIER, JJ.**


**PLEASE NOTE:**

The Court **has** placed of record its own entry in this **case** on the date of the **release** of this Decision.

- 6 -

A221

RECEIVED
ATTORNEY GENERAL OF OHIO

NOV 2 7 2003

CONSUMER PROTECTION SECTION
PUBLIC INSPECTION FILE

IN THE COURT OF COMMON PLEAS
DELAWARE COUNTY, OHIO

STATE OF OHIO, *ex rel.*     )
JIM PETRO                    )
ATTORNEY GENERAL OF OHIO     )     CASE NO. 01-CVH 01-018
                             )
    Plaintiff,           )
                             )     JUDGE W. DUNCAN WHITNEY
    v.                   )
                             )
LEVEL PROPANE GASES, INC.    )     AGREED ENTRY & ORDER
                             )
    Defendant.           )

2003 NOV 24 AM 10: 3
JAN ANTONOPLOS
CLERK
COMMON PLEAS COURT
DELAWARE COUNTY, OHIO
FILED

This matter came to be heard upon the filing of a Complaint by the Attorney General of

Ohio on January 8, 2001. Subsequent to the filing of the Complaint, Defendant Level Propane

Gases, Inc. (Level) filed a Chapter 11 Bankruptcy proceeding in the United States Bankruptcy

Court, N.D. Ohio (Case No. 02-16172). A prior agreement between the parties was rejected

pursuant to 11 U.S.C. Section 365. By signing this Agreed Entry, Level submits to the personal

jurisdiction of this court and consents to the entry of this Agreed Entry and Order ("Agreed

Order").

    This Agreed Order shall apply to and bind Level, its shareholder(s), officers, directors,

agents, servants, employees, subsidiaries, successors or assigns, and any person or entity acting

through any corporation or other propane businesses whose acts, practices, or policies are, in any

respect, directed, formulated, or controlled by Level.

TERMINATION CODE ___5___

A222

## DEFINITIONS

As used in this Agreed Order, the following terms shall have the following meanings:

1.    "Advertisement" means any oral, written, graphic, electronic or pictorial statement or representation directed to consumers in the course of business, regardless of the medium of communication employed.

2.    "Business Day(s)" means Monday through Friday of any given week.

3.    "Calendar Day(s)" means Sunday through Saturday of any given week.

4.    "Clear and conspicuous" means that the statement, representation or term being disclosed is of such size, color, contrast and audibility and is so presented as to be readily noticed and understood by the person to whom it is being disclosed.  The disclosure of any written statement or term must be in close proximity to the terms it purports to clarify, modify, or explain.

5.    "C.O.D." means cash on delivery.

6.    "Consumer" means a person as defined in R.C. §1345.01(D).

7.    "Contract" means the written agreement entered into between Level and the consumer prior to the filing of this Agreed Order.

8.    "Contract Price" means any of the following:

      A.    a clear, conspicuous, and unambiguous written price representation by Level to a consumer or consumers;

      B.    an oral price quote by any employee or agent of Level including, but not limited to, drivers and customer service representatives that is confirmed by Level;

      C.    a web site quote.

A223

9. "Courtesy Fill" means Level will deliver propane to consumers according to Level's estimate of the consumers' propane use.

10. "Lock-in Agreement" means Level's offer to consumers whereby consumers may guarantee a price of propane for a stated price per gallon for a stated period of time.

11. "Market Price" means the actual price at which propane gas is currently sold, or has recently been sold, in the open market at retail in the usual and ordinary course of trade and competition between sellers and buyers equally free to bargain, as established by records of sales or the last reported price at which the propane sold.

12. "Material Terms and Conditions" means the price per gallon of propane, delivery date, and fees/charges that the consumer may be required to pay, any conditions affecting the price or delivery date, and any other terms or conditions which may affect the consumer's choice of a propane supplier.

13. "Minimum Usage" means the minimum number of gallons of propane that a consumer must purchase during the term of the contract in order to avoid the payment of any Underutilization Fee or any other fee or penalty.

14. "Pre-Buy Agreement" means Level's offer to consumers whereby consumers may pre-pay for a specific amount of propane for a stated price per gallon for a stated period of time by paying for such propane in advance of delivery.

15. "Represent," "Representing," and "Representation" mean and include any communication, including any advertisement whether made in writing, orally, by picture, design, or other graphics, and made by any means or mode of transmission including, but not limited to, telephonic or electronic transmission.

3

A224

"Represent," "Representing" and "Representation" include any implied representation.

16. "Underutilization Fee" means the amount a consumer must pay if the consumer does not purchase the minimum number of gallons of propane required under the terms of the contract. It is also the total amount charged to the consumer as calculated by the minimum gallons of propane gas that must be purchased multiplied by the quoted price per gallon, less the actual gallons purchased multiplied by the actual price charged.

17. "Will Call" means Level will deliver propane to consumers after the consumers request delivery of propane.

## AGREED FINDINGS OF FACT

1. Defendant is a corporation incorporated in the State of Ohio.

2. Defendant was engaged in the business of soliciting for sale and selling liquid petroleum gas, commonly known as propane, and related products and services in Delaware County and numerous other counties throughout Ohio.

3. Defendant regularly advertised its propane product throughout the State of Ohio.

4. Level required its customers to enter into written agreements for the purchase of propane.

## AGREED CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter, issues, and parties to this judgment.

2. The Ohio Attorney General is the proper party to bring this action and venue is proper.

4

A225

3. The Consumer Sales Practices Act, R.C. §1345.01 et seq. governs the business practices of the Defendant.

4. At all relevant times hereto, Level was a "supplier" as that term is defined in R.C. §1345.01 (C) in that it engaged in the solicitation of "consumer transactions" as that term is defined in R.C. §1345.01(A).

## CONCLUSIONS OF LAW ASSERTED BY THE ATTORNEY GENERAL AND ADOPTED BY THE COURT

1. A propane supplier's practice of making offers in written or printed advertisements without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions to obtaining the offered propane and/ or the offered price is an unfair and deceptive act or practice in violation of the Exclusions and Limitations in Advertisements Rule, O.A.C. §109:4-3-02(A)(1) and the Consumer Sales Practices Act, R.C. §1345.02(A).

2. A propane supplier's practice of failing to honor guaranteed or promised prices is an unfair, deceptive and unconscionable act or practice in violation of the Consumer Sales Practices Act, R.C. §1345.02(A), R.C. §1345.02(B)(8) and R.C. §1345.03(A).

3. A propane supplier's practice of refusing to disclose the price of the propane that it is delivering to consumers is an unfair, deceptive, and unconscionable act or practice in violation of the Consumer Sales Practices Act, R.C. §1345.02(A), R.C. §1345.03(A), R.C. §1345.03(B)(5), and the Repairs or Services Rule, O.A.C. §109:4-3-05.

A226

4. A propane supplier's practice of advertising that its propane prices are "low" or the "lowest" available when its prices are sometimes substantially higher than its competitors, or promising high quality service, when such is not the case is an unfair and deceptive act or practice in violation of the Consumer Sales Practices Act, R.C. §1345.02(A) and R.C. §1345.02(B)(8).

5. A propane supplier's practice of advertising or promising prompt delivery of propane to consumers without having taken, at the time of the advertisement or promise, commercially reasonable action to insure prompt delivery of propane to consumers is an unfair and deceptive and unconscionable act or practice in violation of the Consumer Sales Practices Act, R.C. §1345.02(A), R.C. §1345.03(A), and the Failure to Deliver Rule O.A.C. §109:4-3-09.

6. A propane supplier's practice of failing to respond to valid consumer complaints and/or to provide adequate customer service within a reasonable period of time is an unfair and deceptive act or practice in violation of the Consumer Sales Practices Act, R.C. §1345.02(A) and R.C. §1345.03(A). A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 by failing to provide consumers who have purchased a propane tank from it with proof of purchase and ownership of the tank.

7. A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 by failing to incorporate all material terms in its contracts with consumers, including clear and conspicuous disclosure of terms relating to price and any pricing program (i.e. Pre-pay, lock-in), any delivery program (i.e. Courtesy Fill, Will Call), minimum usage, tank delivery and pick-up, disconnection, reconnection, pump-outs, and the terms and conditions under

6

A227

which the propane supplier can change the delivery or payment status of the consumer (i.e., from Courtesy Fill to Will Call, C.O.D. or Payment in Advance).

8. A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 by failing to honor its Lock-In Agreement prices as specified in the contract with the consumer.

9. A propane supplier commits an unfair, deceptive and unconscionable act in violation of R.C. §§1345.02 and 1345.03 by incorporating in its consumer contract, or attempting to enforce, any provision that permits the propane supplier to unilaterally modify the contract with the consumer or any provision that limits the consumer to a specific court of competent jurisdiction when commencing a civil action against the supplier.

10. A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 by misrepresenting any material terms or conditions in connection with the advertisement, offer, sale, or delivery of propane to consumers.

11. A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 if it fails to use commercially reasonable efforts and standards to determine and provide an appropriately sized propane tank designed to meet the consumer's propane needs.

12. A propane supplier commits an unfair, deceptive and unconscionable act in violation of R.C. §§1345.02 and 1345.03 by charging a consumer more for an emergency delivery of propane than for a regular delivery of propane when the emergency need was the result of the propane supplier's failure to provide a timely deliver of propane.

7

13.     Until the earlier of (i) a propane supplier obtaining a written agreement with the consumer for the delivery of propane and/or the setting up of a tank, or (ii) a propane supplier receiving payment for the delivery of propane to a consumer, such supplier will be required to remove the tank and any other related equipment at no expense to the consumer if so requested by the consumer in writing.

14.     A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 if it fails to disclose during an oral price quote the price per gallon of propane, the time period for which the quoted price will be available, the time period for which the quoted price applies, and all other material terms and conditions applicable to receiving propane at the quoted price.

## NON-ADMISSION BY LEVEL

Level does not admit that it has engaged in any wrongdoing and the court makes no finding that Level has operated in violation of the Consumer Sales Practices Act §1345.01 et seq. Level enters into this Agreed Order with the Attorney General to resolve the matters before this Court.

## ORDER

For the purpose of effecting this Agreed Order, Level agrees and it is therefore ORDERED, ADJUDGED, and DECREED that:

A.     Level is permanently enjoined from engaging in any act or practice in violation of the Consumer Sales Practices Act, R.C. §§1345.01 et seq., any act or practice prohibited by the Conclusions Of Law Asserted By The Attorney General And Adopted By The Court, and the following described acts:

1.     Charging the consumer for any propane gas not delivered to the consumer; unless the consumer's agreement with Level specifically sets forth the terms and

8

A229

conditions for imposing such a charge and all such terms and conditions have been met;

2. On a consumer's request therefor, failing to provide all Level consumers who have purchased tanks from Level with proof of ownership necessary for these consumers to exercise their right to have their own tanks filled by Level's competitors;

3. Falsely representing that Level's prices will remain "level," or words of similar import, or that Level purchases fuel prior to any heating season so as to ensure the customer will not be harmed by rise in fuel prices;

4. Failing to honor its Lock-in Agreement prices for the term specified in Level's existing Contract with a consumer provided that the consumer is not in material breach of the Contract, said material breach including but not limited to non-compliance with payment terms;

5. Employing or continuing to employ any unfair or deceptive practices against any consumer who, in good faith, refuses to pay Level for any increased cost of propane or any other fee not specifically authorized by its existing Contract;

6. Utilizing or enforcing any provision purporting to reserve to Level the unfettered right to modify the Contract unilaterally; or, (ii) any provision limiting the consumer to commencing an action against Level only in a specific court of competent jurisdiction;

7. Subject to the requirements of paragraph 7 of Section B of this Agreed Entry and Order, and except for purposes of asserting its rights to the following fees for purposes of setoff against a consumer claim, collecting or attempting to collect

9

any fees, charges, penalties or monies Level claims is owed by any Level consumers prior to June 6, 2002 for the following:

a.     underutilization fees;

b.     tank pick up fees and taxes;

c.     tank pump-out fees;

d.     the difference between the price of propane set forth in the consumer's Lock-in Agreement and the cost actually charged. If consumers have not yet paid the increased amount to Level, Level will adjust the consumers' bills to reflect the price of propane set forth in the consumer's pre-buy or lock-in Contract;

e.     for those consumers who were promised a certain price per gallon in writing including, but not limited to, any correspondence or delivery receipts, the difference between the price actually charged and the price of propane represented in the writing;

f.     for those consumers who received delivery of propane after the end of the term of the Contract at an increased price per gallon above the price set forth in their Contracts and who canceled their Contract at the end of the term due to the increase in the price per gallon of propane but were billed at the increased amount, the difference between the amount charged and the amount set forth in their Contracts for any propane used by the consumer.

g.     any lock-in fee if the consumer did not receive the price promised by Level at any time the locked-in price promise was to remain effective;

A231

h.    any fees, deposits, or other payments not disclosed in Level's Contract with the consumer or not lawfully charged including, but not limited to, surcharges for consumer's use of credit (or credit card), adjusting the customer's account to zero balance when the customer had a credit balance in the account, miscellaneous fees, deviation fees, and retrieval fees;

i.    any late payment penalty, without qualification, that has been assessed based upon an underutilization charge, a tank pump-out fee, a disconnection fee, reconnection fee, tank pick-up fee, or the difference between the cost quoted for propane and the cost actually charged; and

j.    any late payment fee or returned check fee where such fees were not permitted by law.

B.    Level agrees to comply with the following business practices;

1.    Level shall take commercially reasonable steps to direct all credit reporting agencies to remove any negative or derogatory information regarding Level, which is incorrect, within thirty (30) days of receiving a complaint by a consumer which is supported by evidence that the reporting is incorrect.

2.    Level shall not charge more than the amount allowable under applicable state or federal law for a late payment and shall not collect or attempt to collect any such late charge not specifically disclosed in Level's Contract with the consumer.

3.    Level shall not use any debt collection practices, which are in violation of Ohio or federal laws.

4.    Level shall maintain records, correspondence, receipts and any other documentation relating to all accounts for consumers of Level for a period of

11

A232

three (3) years while they are customers of Level and for a period of two (2) years after termination of any relationship between Level and the consumer.

5. Level shall comply with Ohio's referral sales statutes.

6. Level shall give written notice of any bankruptcy filing to the Attorney General within five (5) business days of such filing.

7. In the event Level or majority voting control of its stock is sold, transferred or conveyed, or Level is merged with and into another entity, the documents that evidence such a transaction shall include a provision that, except for purposes of asserting its rights to the following fees for purposes of setoff against a consumer claim, prohibits Level's successor from collecting or attempting to collect any fees, charges, penalties or monies Level claims is owed by any Level consumers prior to June 6, 2002 for the following:

a. underutilization fees;

b. tank pick up fees and taxes;

c. tank pump-out fees;

d. the difference between the price of propane set forth in the consumer's Lock-in Agreement and the cost actually charged. If consumers have not yet paid the increased amount to Level, Level will adjust the consumers' bills to reflect the price of propane set forth in the consumer's pre-buy or lock-in Contract;

e. for those consumers who were promised a certain price per gallon in writing including, but not limited to, any correspondence or delivery receipts, the difference between the price actually charged and the price of propane represented in the writing;

A233

f.    for those consumers who received delivery of propane after the end of the term of the Contract at an increased price per gallon above the price set forth in their Contracts and who canceled their Contract at the end of the term due to the increase in the price per gallon of propane but were billed at the increased amount, the difference between the amount charged and the amount set forth in their Contracts for any propane used by the consumer.

g.    any lock-in fee if the consumer did not receive the price promised by Level at any time the locked-in price promise was to remain effective;

h.    any fees, deposits, or other payments not disclosed in Level's Contract with the consumer or not lawfully charged including, but not limited to, surcharges for consumer's use of credit (or credit card), adjusting the customer's account to zero balance when the customer had a credit balance in the account, miscellaneous fees, deviation fees, and retrieval fees;

i.    any late payment penalty, without qualification, that has been assessed based upon an underutilization charge, a tank pump-out fee, a disconnection fee, reconnection fee, tank pick-up fee, or the difference between the cost quoted for propane and the cost actually charged; and

j.    any late payment fee or returned check fee where such fees were not permitted by law.

Provided, however, such successor in interest may assert its right to such fees if a consumer first brings a legal action against such successor and such successor asserts such rights solely for purposes of setoff against the consumer claim; provided, however, such rights to setoff

13

A234

only may be exercised in compliance with R.C. §1345. Except as expressly provided in this section 7, the Attorney General hereby withdraws its objection to the transfer of some or all of Level's (and its affiliate's) assets free and clear of any interest the Attorney General may have in such assets or with regard to Level or its affiliates.

8. Upon reasonable request, Level shall provide copies of or access to the requested books, records and documents to the Attorney General at any time upon reasonable notice, and further make available other information to the Attorney General relating to compliance of this Agreed Entry & Order. Level shall make the requested information available at Level's offices or, at Level's election, shall deliver copies of the requested information to the Attorney General, in each case, within fourteen (14) business days of such request. This Section shall in no way limit the Attorney General's right to obtain documents, information, or testimony pursuant to any federal or Ohio law, regulation or rule.

9. Level shall immediately inform its employees and representatives acting in a supervisory capacity of the existence of, and terms and conditions of, this Agreed Entry And Order and shall direct those persons and/or entities to comply with this Agreed Entry and Order.

10. Level shall implement and maintain business practices designed in a commercially reasonable manner to minimize customer service related concerns including, but not limited to: failure to provide deliveries, repeated missed delivery dates, inability by consumers to reach Level's customer service representatives, billing questions immediately turned over to Level's collection department regardless of the circumstances, and other billing disputes.

14

A235

11.     Level shall not renew any consumer's existing Contract unless that Contract conforms to the terms of this Agreed Entry And Order and all applicable laws.

12.     Level shall not enter into any Contract with a consumer to provide that consumer with propane unless the Contract conforms to the terms of this Agreed Entry And Order and all applicable laws.

13.     On filing and entry of this Agreed Order, notwithstanding the "Governing Law" paragraph in Level's Contracts, Level hereby agrees not to object to consumer disputes being litigated in the jurisdiction in which the consumer resides.  Level further agrees that its consumer contracts are subject to the consumer protection laws of the states in which the consumer resides.

C.     The parties acknowledge that the Attorney General, in his complaint, sought reimbursement for consumers damaged by the alleged illegal conduct of Level.  The parties originally contemplated that this case would be settled in conjunction and coordination with the settlement of a class action known as Larry Mick, et al. v. Level Propane Gases, Inc., United States District Court for the Southern District of Ohio, Eastern Division, Case No. C-2-98-959, a class action covering all Ohio consumers potentially eligible for damages through the Attorney General's instant action with the consumer class represented by private counsel. These consumer claims are now subject to, and being addressed in, the pending Level bankruptcy action known as In Re Level Propane Gases, Inc., et al., Debtors, Chapter 11 Case No. 02-16172 (Jointly Administered), United States Bankruptcy Court, Northern District of Ohio, Judge Randolph Baxter presiding.

D.     It is hereby ORDERED that Level shall not represent, directly, or indirectly, that the Attorney General has sanctioned, condoned, or approved any part or aspect of the Defendant's business operation.

A236

E.    It is hereby ORDERED that Level is assessed a civil penalty pursuant to R.C. §1345.07(D) in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00).  Two Hundred Thousand Dollars is suspended on the condition that Level not violate the terms of this Agreed Entry & Order.  The parties hereto agree that such civil penalty is a pre-petition unsecured claim against Level in the amount of Fifty Thousand Dollars ($50,000) pursuant to this remunerative provision, and, to the extent that Level violates the terms of this Agreed Entry & Order, that such civil penalty will be a pre-petition unsecured claim for up to an additional Two Hundred Thousand ($200,000) pursuant to this remunerative provision.

F.    It is hereby ORDERED that Level shall pay Two Hundred and Seventy Five Thousand Dollars ($275,000.00) to the Attorney General for attorney fees and investigation costs.  The parties hereto agree that such payment is a pre-petition unsecured claim in the amount of Two Hundred and Seventy-Five Thousand Dollars ($275,000) pursuant to this remunerative provision.

G.    The Attorney General shall give Level fourteen (14) calendar days notice before filing a motion or other pleading seeking contempt of court or other sanctions for violation of this Agreed Entry & Order .  The notice shall be in writing and set forth those provisions in the Agreed Entry & Order that the Attorney General believes have been violated.  The fourteen (14) calendar days notice period shall provide an opportunity for Level to respond to the assertions of the Attorney General and the parties may use the notice period to attempt a resolution of the concerns.  Upon receipt of the written notice, Level may request a meeting with the Attorney General (or a staff person designated by the Attorney General) for the purpose of attempting to resolve the concerns set forth in the Attorney General's notice.  The Attorney General shall not unreasonably deny the request for such a meeting.  The giving of such notice shall not prevent the Attorney General from beginning such proceeding following the expiration of the fourteen

16

A237

(14) calendar day period. The Attorney General reserves his right, if there are exigent circumstances regarding Level's service to its Ohio customers, to by-pass the fourteen (14) calendar day notice period and immediately take any and all legal actions to address those exigent circumstances.

H. The Attorney General may notify or serve Level as provided under this Agreed Entry & Order or in any subsequent action at the following address and telephone number:

> H. Jeffrey Schwartz, Esq.
> Benesch, Friedlander, Coplan & Aronoff LLP
> 2300 BP Tower, 200 Public Square
> Cleveland, Ohio 44114-2378
> (216) 363-4500

Level shall notify the Attorney General in writing of any change in the notice/service person or contact information.

I. Level, if necessary, may notify the Attorney General under this Agreed Entry & Order at the following address and telephone number:

> Mr. David M. Dembinski
> Assistant Attorney General
> Consumer Protection Section
> 30 East Broad Street, 14th Floor
> Columbus, Ohio 43215
> (614) 644-9618

If Mr. Dembinski is unavailable, Level may notify the Attorney General at the following address and telephone number:

> Senior Deputy Attorney General
> Consumer Protection Section
> 30 East Broad Street, 14th Floor
> Columbus, Ohio 43215
> (614) 644-9618

J. Failure of the Attorney General to timely enforce any term, condition, or requirement of this Agreed Entry & Order shall not provide, nor be construed to provide, Level a

A238

defense for noncompliance with any term of this Agreed Entry & Order or any other law, rule, or regulation; nor shall it stop or limit the Attorney General from later enforcing any term of this Agreed Entry & Order or seeking any other remedy available by law, rule, or regulation.

JUDGE W. DUNCAN WHITNEY

APPROVED:

JIM PETRO
Attorney General


DAVID M. DEMBINSKI
Ohio Sup. Ct. Atty. No. 0006978
MICHAEL S. ZIEGLER
Ohio Sup. Ct. Atty. No. 0042206


Assistant Attorneys General
Consumer Protection Section
30 East Broad Street
State Office Tower - 14th Floor
Columbus, Ohio 43215-3428
614/644-9618

Counsel for Plaintiff


JOHN A. GLEASON
Ohio Sup. Ct. Atty. No. 0039150
Benesch, Friedlander, Coplan & Aronoff LLP
88 East Broad Street, Suite 900
Columbus, Ohio 43215-3506
614/223-9300

Counsel for Level Propane Gases, Inc., Debtor
and Debtor-in-Possession

# Exhibit 3

Package:000003 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000003 of 000072

# COMMONWEALTH OF KENTUCKY
## BOONE COUNTY CIRCUIT COURT, CIVIL DIVISION
### CASE NO. ___-CI-_____
### DIVISION _____

**NORMAN HUSAR,** individually and on
behalf of all others similarly situated,
% DannLaw
15000 Madison Avenue
Lakewood, OH 44107

PLAINTIFF(S)

**CLASS ACTION COMPLAINT FOR
MONEY**

v.

**DOLLAR GENERAL CORPORATION**
% Corporation Service Company, Registered
Agent
421 W. Main Street
Frankfort, KY 40601
**SERVED BY: CERTIFIED MAIL**

DEFENDANT(S)

AND

**DOLGENCORP, LLP**
% Corporation Service Company, Registered
Agent
421 W. Main Street
Frankfort, KY 40601
**SERVED BY: CERTIFIED MAIL**

******************************************

Plaintiff Norman Husar ("Plaintiff"), individually and on behalf of all others similarly

situated, through his attorneys, brings this action against Defendants Dollar General Corporation

("DGC") and DolgenCorp, LLC d/b/a Dollar General ("DG", together with "DGC", the

"Defendants"), and alleges upon personal knowledge as to his own actions and experiences, and

upon investigation, information and belief as to all others, as follows:

## NATURE OF THE ACTION

1.     This is a consumer protection class action against the Defendants arising out of the Defendants' policies and procedures of regularly charging the Plaintiff and putative class members a higher price at the register than the price of merchandise advertised on the shelves at the time of sale at Dollar General stores across Kentucky.

2.     This class action arises from Defendants' regular practice of charging customers a higher price on various items than the price advertised on its shelves in violation of the Kentucky Consumer Protection Act, KRS 367.100, *et seq.*

## PARTIES, JURISDICTION, AND VENUE

3.     Plaintiff Norman Husar ("Plaintiff") is a natural person who resides in the City of Cincinnati, County of Hamilton, State of Ohio.

4.     Defendant Dollar General Corporation ("DGC") is a foreign corporation organized under the laws of the State of Tennessee with its principal place of business located at 100 Mission Ridge, Goodlettsville, TN 37072.

5.     Defendant Dolgencorp, LLC ("DG") is a foreign limited liability company organized under the laws of the State of Tennessee with its principal place of business located at 100 Mission Ridge, Goodlettsville, TN 37072.

6.     This Court is the proper venue and has jurisdiction over the Parties as the Plaintiff transacted business with the Defendants in this County, the Defendant operates franchise locations across the County and Commonwealth, and Boone County is where all the issues arose related to this matter, and the minimum jurisdiction has been met.

## FACT RELATED TO DOLLAR GENERAL

2

A242

Package:000004 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000004 of 000072

7.      Plaintiff and all others similarly situated are persons who shop at Dollar General stores in Kentucky

8.      The Defendants operate Dollar General which are dollar stores that offer a variety of inexpensive merchandise, including home products, seasonal products, consumables, and apparel. ("Dollar General") The company's business model is about offering products at competitive prices (typically less than $10) in a convenient, small-store format. Its core customer category includes low-to-middle-income customers. The company's stores are located in convenient locations that are easily accessible to its customers. It follows a small-box format and the stores have an easy "in and out" shopping set-up.[1]

9.      Dollar General caters mainly to low-and-middle-income customers in rural and suburban areas. The company's core customers earn around $40,000 a year or below, $20,000 below the median income. Dollar General looks to build stores in rural areas where a big box retailer or grocery store is not within 15 or 20 miles. Around 75% of Dollar General stores are in towns with 20,000 or fewer people.[2]

10.     As of March 2022, the Defendants owned and operated approximately Six Hundred Fifty-Five (655) Dollar General stores in Kentucky with more locations scheduled to open.[3]

## FACTS RELATED TO PLAINTIFF'S TRANSACTIONS

11.     The Plaintiff incorporates and restates the allegations contained in Paragraphs 1 through 10 as if fully set forth herein.

---

[1] See https://marketrealist.com/2017/04/dollar-general-why-small-format-stores-are-key/ (last visited December 4, 2022)

[2] See https://www.cnn.com/2019/07/19/business/dollar-general-opposition (last visited December 4, 2022)

[3] *See* https://www.statista.com/statistics/1121086/number-of-dollar-general-stores-in-the-united-states-by-state/ (last visited December 4, 2022)

Package:000005 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000005 of 000072

12.    The Plaintiff is a customer of the Defendants' stores throughout Ohio and the Northern Kentucky area, including those in Boone County.

13.    While shopping at various Dollar General locations between early July 2022 and early September 2022, the Plaintiff noticed discrepancies between the prices of the merchandise advertised on the shelves and what he was charged at the checkout.

14.    When there was a price discrepancy, the Plaintiff was usually charged and paid more than the advertised price.

15.    As a result of these discrepancies, the Plaintiff began to track his purchases.

16.    In addition to tracking his purchases, the Plaintiff also began to document the advertised/shelf prices to compare them to what he was charged and paid at checkout.

17.    Between July 2022 and early September 2022, the Plaintiff made purchases at various DG Store Locations located in Lorain County, Ohio and Cuyahoga County, Ohio including:

- DG Store #04686 located at 1651 Cooper Foster Park Rd, Amherst, OH 44001;

- DG Store #07807 located at 425 W 4th St, Lorain, OH 44052-1644;

- DG Store #12868 located at 2540 Leavitt Road, Lorain, OH 44052-4142;

- DG Store #15058 at 7628 S. Leavitt Road, Amherst, OH 44001;

- DG Store #15242 located at 5248 Colorado Avenue, Sheffield Village, OH 44054-2335;

- DG Store #17110 located at 3785 Clague Rd, North Olmsted, OH 44070-2302

- DG Store #20045 located at 12526 Bellaire Rd, Cleveland, OH 44135

18.    Between July 2022 and early September 2022, the Plaintiff made purchases at the stores noted where the following price discrepancies occurred:

Package : 000006 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000006 of 000072

19.    In July and August 2022, Plaintiff made several purchases at Dollar General stores in Lorain County and Cuyahoga County. The discrepancies are outlined below:

| Date of Purchase | Store Number | Brand | Product | Price of Shelf/Sign | Register Price | Discrepancy |
|---|---|---|---|---|---|---|
| 07/03/22 | 12868 | Pepsi | Mountain Dew 2L | $1.90 | $2.20 | $0.30 |
| 07/06/22 | 15252 | Coca-Cola | Coke Zero 16 oz | $1.00 | $1.25 | $0.25 |
| 07/10/22 | 07807 | DG Health | Anti-Diarrheal | $3.50 | $3.95 | $0.45 |
| 07/14/22 | 07807 | CRC Brakleen | Brake Parts Cleaner 14 oz | $4.45 | $5.50 | $1.05 |
| 07/18/22 | 15252 | Eveready | Gold Battery AAA-8 | $4.95 | $6.00 | $1.05 |
| 07/23/22 | 04686 | Energizer | Max Battery D-2 | $4.65 | $5.50 | $0.85 |
| 07/28/22 | 17110 | Coca-Cola | Cherry Coke 16 oz | $1.00 | $1.25 | $0.25 |
| 07/31/22 | 15058 | Wrigley's | Extra Gum Slim Pack | $1.00 | $1.35 | $0.35 |
| 08/01/22 | 15058 | Coca-Cola | Coke de Mexico | $1.25 | $2.00 | $0.75 |
| 08/01/22 | 15252 | Raid | Aerosol A&R 17.5 oz | $4.75 | $5.25 | $0.50 |
| 08/05/22 | 20045 | Raid | Ant Baits 4 ct | $4.00 | $4.50 | $0.50 |
| 08/05/22 | 20045 | Coca-Cola | Sprite 16 oz | $1.00 | $1.25 | $0.25 |
| 08/09/22 | 07807 | Santitas | Tortilla Chips | $2.29 | $2.45 | $0.16 |
| 08/27/22 | 07807 | Energizer | 9V Batteries | $4.65 | $4.95 | $0.30 |
| 09/01/22 | 07807 | Crystal Valley | Water | $0.85 | $0.95 | $0.10 |
| 09/01/22 | 07807 | Crystal Valley | Water | $1.50 | $1.65 | $0.15 |

*See also* Exhibit 1 to Complaint - Receipts and Proof of Purchase.

20.    Based on the allegations in Paragraph 19 above and Exhibit 1 between July 3, 2022 and September 1, 2022 the Plaintiff was overcharged at least $7.26.

21.    In addition to the purchases in Ohio described above, on November 6, 2022 the Plaintiff made a purchase with discrepancy at the Defendants' store, Dollar General #01357 located at 832 Heights Blvd. Florence, KY 41042-1415.   These purchases are summarized below:

| Date of | Store | Brand | Product | Price of | Register | Discrepancy |
|---|---|---|---|---|---|---|

Package:000007 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)        Package : 000007 of 000072

Package:000008 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000008 of 000072

| Purchase | Number | | | Shelf/Sign | Price | |
|---|---|---|---|---|---|---|
| 12/04/2022 | 01357 | Raid | Ant & Roach Spray | $4.85 | $5.25 | $0.40 |

*See* Exhibit 2 - November 6 Receipt and Proof of Purchase.

22.     Based on the allegations above herein and as demonstrated by Exhibits 1 and 2, the Defendants used the same procedures that it employed in charging higher prices than advertised to the Plaintiff when selling the same and/or similar merchandise to numerous other Kentucky consumers.

23.     In the two (2) year period before the Complaint was filed the Defendants charged prices that were higher than advertised that were the same or similar to the advertisements described, *supra*, to numerous Kentucky consumers.

24.     Based on the allegations herein, *supra*, and demonstrated by Exhibits 1 and 2, It is the Defendants' policy and practice to charge higher prices at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves in the Defendants' stores.

**CLASS ACTION ALLEGATIONS**

25.     **Class Definition:** Plaintiff brings this action pursuant to CR 23.01 and CR 23.02 on behalf of a class of similarly situated individuals and entities defined as follows:

> All persons who resided in Kentucky on the date this complaint was filed, who at any time on or after the day two years prior to the date on which this Complaint was filed, who purchased merchandise at a Dollar General store located in Kentucky.

26.     **Subclass Definition:** The Plaintiff also brings this action on behalf of a Subclass of similarly situated individuals and entitled defined as follows:

> All members of the Class who paid more for merchandise than the advertised price labeled on the shelf at a Dollar General store located in Kentucky

27.     Excluded from the Class and Subclass are (1) the Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its

parent(s) have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class and/or Subclass; (4) any person(s) who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any excluded parties.

28.   **Numerosity and Ascertainability:** Upon information and belief the Class and Subclass (the "Classes") are each composed of more than forty (40) members, such that the Classes are so numerous that joinder of all members is impractical. This conclusion is reasonable given that the Defendants operate 655 stores across Kentucky as of March 2022 as noted above and the number of customers at each of the Defendants' stores on a daily basis is likely dozens, if not hundreds or thousands of consumers.

29.   **Commonality and Predominance:** There are questions of law and fact common to the proposed Classes that predominate over any individual questions. These questions of law and fact include, but are not limited to:

a.   Whether the shelf price labels are advertisements under the applicable regulations;

b.   Whether the shelf price labels are advertisements as defined by the KCPA;

c.   Whether any or all of the purchases made by the Plaintiff and members of the Classes were consumer transactions as defined by the KCPA;

d.   Whether the mis-priced shelf labels violate the KCPA;

e.   Whether the Plaintiff and/or members of the putative Classes suffered an ascertainable loss as a result of the Defendants' unlawful practices;

f.   Whether by charging consumers in Kentucky more than the advertised shelf price at checkout, the Defendants committed a deceptive act as defined by the CSPA;

7

30.    **Typicality:** Plaintiff's claims are typical of the claims of the Classes. Plaintiff and the putative Class Members were all subjected to and affected by a uniform course of conduct; specifically, the Defendants' pattern and practice of charging Ohio consumers a higher price at the register than the posted price on the shelf for various pieces of merchandise.

31.    **Adequacy:** The Plaintiff will adequately represent the interests of the Classes. The Plaintiff does not have any interests adverse to the Classes. Plaintiff's proposed class counsel has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

32.    **Superiority:** A class action is the superior method for the quick and efficient adjudication of this controversy since joinder of all members is impracticable. While the economic damages suffered by the individual members of the Classes are significant, the amount is modest compared to the expense and burden of individual litigation. The questions of law or fact common to the members of the Classes predominate over any question affecting only individual members. A class action will cause an orderly and expeditious administration of the claims of the Classes, and will foster economies of time, effort, and expense. Given the relatively small amount of damages available to Plaintiff and members of the Classes, adjudication on a classwide basis would provide members of the Classes with a remedy that they may be unlikely to pursue individually. Plaintiff does not anticipate any difficulty in the management of this litigation.

33.    The Plaintiff has retained the services of attorneys who are experienced and capable in prosecuting class action lawsuits. Neither the Plaintiff nor Plaintiff's Counsel have any interests which might prevent them from vigorously pursuing this action.

<p style="text-align:center"><strong><u>CLASS CLAIMS</u></strong></p>

Package:000010 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000010 of 000072

## COUNT ONE: VIOLATION OF KRS 367.170, *et seq.*
### (On behalf of the Plaintiff and Classes)

34.     Plaintiff restates and incorporates all of his allegations contained in paragraphs 1 through 33 in their entirety.

35.     The Plaintiff and the Class Members are each a "person" as the meaning of KRS 367.110(1).

36.     The Defendants' business(es) as described herein, *supra*, is "commerce" within the meaning of KRS 367.110(2) as a distribution of a service and intangible personal property and any other article and/or thing of value which includes commerce directly and/or indirectly affecting the people of this Commonwealth.

37.     KRS 367.170(1) states that any unfair, false, misleading or deceptive act or practice in the conduct of any trade or commerce are hereby declared unlawful.

38.     KRS 367.175(1) states every contract, combination in the form of trust ·and otherwise, or conspiracy of trade of commerce in this Commonwealth shall be unlawful.

39.     As described herein, *supra*, and demonstrated by Exhibit 2, the Defendants' actions in charging a higher price for merchandise than the price as advertised on the shelf price labels for the same merchandise are deceptive acts under KRS 367.140(1).

40.·    The Defendants' actions described herein, *supra*, violate the Kentucky Consumer Protection Act and the Plaintiff and Class members are entitled to an award of statutory damages as applicable, actual damages in a total amount to be determined at trial, punitive damages as applicable in a total amount to be determined at trial, and an award of reasonable attorneys' fees and costs.

## COUNT TWO: UNJUST ENRICHMENT
### · (On behalf of the Plaintiff and Classes)

Package:000011 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000011 of 000072

41.     Plaintiff restates and incorporates all of his allegations contained in paragraphs 1 through 40 in their entirety.

42.     Based on the allegations herein, *supra*, the Defendants have engaged in a pattern and practice of overcharging the Plaintiff and members of the Classes by at least $0.40 and collected monies from the Plaintiff and members of the Classes which the Defendants knew or should have known that the Defendants had no contractual or legal right to collect.

43.     By receiving payments from the Plaintiff and members of the Classes on products that the Defendants overcharged, the Defendants received a benefit conferred upon them at the expense of the Plaintiff and members of the Classes.

44.     Retaining the overcharged payments made by the Plaintiff and the members of the Classes was a resulting appreciation of benefit by the Defendants.

45.     The Defendants inequitably retained the benefit of the overcharged payments made by the Plaintiff and members of the classes without any material benefit for which the payments were made and bargained for by the Plaintiff and members of the Classes.

46.     The Defendants accepted and/or retained the overcharged payments made by the Plaintiff and members of the Classes with full knowledge and awareness that because of the Defendants' unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for tuition, fees, and/or other monies paid.

47.     Retaining the non-gratuitous benefits made to the Defendants by the Plaintiff and the members of the Classes under these circumstances made the Defendants' retention of the overcharged payments unjust and inequitable.

48.     Because the Defendants retention of the overcharged payments made by the Plaintiff and members of the Classes are unjust and inequitable, the Plaintiff and members of the

Package:000012 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000012 of 000072

Package:000013 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000013 of 000072

Classes are entitled an award of actual damages, compensatory damages, and punitive damages in amounts to be determined at trial.

### COUNT THREE: VIOLATIONS OF THE CSPA, R.C. 1345.01, *et seq.*
### (On behalf of Plaintiff individually)

49.     Plaintiff restates and incorporates all of his allegations contained in paragraphs 1 through 49 in their entirety.

50.     The Plaintiff is a "person" as the meaning of KRS 367.110(1).

51.     The Defendants' business(es) as described herein, *supra*, is "commerce" within the meaning of KRS 367.110(2) as a distribution of a service and intangible personal property and any other article and/or thing of value which includes commerce directly and/or indirectly affecting the people of this Commonwealth.

52.     KRS 367.170(1) states that any unfair, false, misleading or deceptive act or practice in the conduct of any trade or commerce are hereby declared unlawful.

53.     KRS 367.175(1) states every contract, combination in the form of trust and otherwise, or conspiracy of trade of commerce in this Commonwealth shall be unlawful.

54.     As described herein, *supra*, and demonstrated by Exhibit 2, the Defendants' actions in charging a higher price for merchandise than the price as advertised on the shelf price labels for the same merchandise are deceptive acts under KRS 367.140(1).

55.     The Defendants' actions described herein, *supra*, violate the Kentucky Consumer Protection Act and the Plaintiff is entitled to an award of statutory damages as applicable, actual damages of at least $0.40 and in a total amount to be determined at trial, punitive damages as applicable in a total amount to be determined at trial, and an award of reasonable attorneys' fees and costs.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Norman Husar, on behalf of himself and those similarly situated, respectfully requests that that this Court grants judgment against Defendants Dollar General Corporation and Dolgencorp, LLC and issue an Order:

A. Finding that this action satisfies the prerequisites for Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and Subclass, each as defined, *supra*;

B. Designating the Plaintiff as a representative of the Class and Subclass, and his undersigned counsel as Class Counsel;

C. Awarding the Plaintiff, Class and Subclass their actual damages;

D. Awarding the Plaintiff, Class and Subclass their statutory damages, as applicable;

E. Awarding the Plaintiff his statutory non-economic damages for the violations of the KCPA, as applicable;

F. Awarding the Plaintiff, Class and Subclass punitive damages, as applicable;

G. Awarding the Plaintiff, Class and Subclass pre-judgment and post-judgment interest, if applicable,

H. Awarding the Plaintiff, Class and Subclass their reasonable attorneys' fees and costs, including interest thereon, as allowed or required by law; and,

I. Granting all such further and other relief as this Court deems just and appropriate.

Respectfully submitted,

/s/Brian D. Flick, Esq.

Brian D. Flick (0095244)
**DANN LAW**
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

12

*Counsel for Plaintiff and the Putative Classes*

### TRIAL BY JURY

Pursuant to CR 38.02, Plaintiff Norman Husar, individually and on behalf of all others similarly situated, does hereby request a Trial by Jury.

Respectfully submitted,

/s/Brian D. Flick, Esq.
Brian D. Flick, Esq. #0095244
DannLaw
*Counsel for Plaintiff and the Putative Classes*

Package:000015 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000015 of 000072

# EXHIBIT 1

Package:000016 of 000072
Presiding Judge: HON. JAMES R. SCHRAND (654281)
Package : 000016 of 000072

**DOLLAR GENERAL**



Package : 000017 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000017 of 000072



Package: 000018 of 000072    Presiding Judge: HON. JAMES R. SCHRAND (654281)    Package: 000018 of 000072



Package:000019 of 000072
Presiding Judge: HON. JAMES R. SCHRAND (654281)
Package : 000019 of 000072

DOLLAR GENERAL

POS STICKER DISPLAYED $1.50 - DID NOT TAKE PICTURE BEFORE PURCHASE

NO POS STICKER NOW - PIC BELOW TAKEN ABOUT 20 MINS AFTER PURCHASE



Package : 000020 of 000072          Package : 000020 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000921 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654261)          Package : 000921 of 000072





Package:000022 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000022 of 000072

Package : 000023 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654261)          Package : 000023 of 000072



DOLLAR GENERAL

POS PIC TAKEN 9.1.22 - SAME POS AS 8.27.22



Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package: 000024 of 000072          Package: 000024 of 000072



Package:000025 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000025 of 000072.



Package: 000027 of 000072    Presiding Judge: HON. JAMES R. SCHRAND (654281)    Package: 000027 of 000072



DOLLAR GENERAL 08.09.22



Package:000028 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000028 of 000072



Package : 000029 of 000072          Package:000029 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)



DOLLAR GENERAL

Package : 000031 of 000072
Presiding Judge: HON. JAMES R. SCHRAND (654281)
Package:000031 of 000072





DOLLAR GENERAL-12526 BELLAIRE RD, CLEV, OH 44135



Package : 000033 of 000072 : : : : : : Presiding Judge: HON. JAMES R. SCHRAND (654281) : : : : : Package : 000033 of 000072.

Package : 000034 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000034 of 000072





Package:000035 of 000072        Presiding Judge: HON. JAMES R. SCHRAND (654281)        Package : 000035 of 000072

A273

Filed          22-CI-01419        12/12/2022       David Martin, Boone Circuit Clerk



Filed          22-CI-01419        12/12/2022       David Martin, Boone Circuit Clerk

Package : 000036 of 000072        Presiding Judge: HON. JAMES R. SCHRAND (654281)        Package:000036 of 000072

A274



0  46500 76746  3

Package:000037 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000037 of 000072



Package:000038 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000038 of 000072



**PICS ABOVE TAKEN 8.5.22 - NO RAID PRODUCTS AVAILABLE**



Package:000040 of 000072   Presiding Judge: HON. JAMES R. SCHRAND (654261)   Package : 000040 of 000072

A278

Package : 000041 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package:000041 of 000072

DOLLAR GENERAL





Package : 000042 of 000072         Presiding Judge: HON. JAMES R. SCHRAND (654281)         Package:000042 of 000072



Package: 000043 of 000072    Presiding Judge: HON. JAMES R. SCHRAND (654281)    Package: 000043 of 000072

DOLLAR GENERAL



Package:000044 of 000072     Presiding Judge: HON. JAMES R. SCHRAND (654281)     Package : 000044 of 000072



Package:000045 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000045 of 000072



Package : 000046 of 000072   Presiding Judge: HON. JAMES R. SCHRAND (654281)   Package : 000046 of 000072



DOLLAR GENERAL



Package:000048 of 000072.

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000048 of 000072.



Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000049 of 000072

Package : 000049 of 000072



Presiding Judge: HON. JAMES R. SCHRAND (654281)        Package : 000050 of 000072

Package : 000050 of 000072

A288

DOLLAR GENERAL



Package:000051 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000051 of 000072



Package : 000052 of 000072
Package:000052 of 000072
Presiding Judge: HON. JAMES R. SCHRAND (654281)



Package:000054 of 000072.

Presiding Judge: HON. JAMES. R. SCHRAND. (654281)

Package : 000054 of 000072

A292

## DOLLAR GENERAL - D BATTERY - POS STICKER DIFFERENCES



ABOVE - DG NORTH OLMSTED 07.29.22

Package:000055 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000055 of 000072



ABOVE DG AMHERST, OH 07.23.22

Presiding Judge: HON. JAMES R. SCHRAND (654281)     Package : 000056 of 000072

Package : 000056 of 000072

# DOLLAR GENERAL



Package:000057 of 000072        Presiding Judge: HON. JAMES R. SCHRAND (654281)        Package : 000057 of 000072



Filed

Filed



Filed
22-CI-01419 12/12/2022 David Martin, Boone Circuit Clerk
DOLLAR GENERAL



A298



**DOLLAR GENERAL**



Package:000062 of 000072    Presiding Judge: HON. JAMES R. SCHRAND (654281)    Package:000062 of 000072

A300

Package :000063 of 000072 ........................ Presiding Judge: HON. JAMES R. SCHRAND (654281) .................... Package:000063 of 000072



Package:000064 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package:000064 of 000072



**DOLLAR GENERAL**



Package : 000065 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654261)          Package : 000065 of 000072

Filed          22-CI-01419          12/12/2022          David Martin, Boone Circuit Clerk



Filed          22-CI-01419          12/12/2022          David Martin, Boone Circuit Clerk

Package : 000066 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package:000066 of 000072.

DOLLAR GENERAL 



Package:000067 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000067 of 000072

# EXHIBIT 2

Package : 000068 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package:000068 of 000072

DOLLAR GENERAL STORE 101397
FLORENCE, KY 859-[illegible]-2220
RAID A R LEMON 17 046500[illegible]
CRC BRAKLEEN CLEAN 078[illegible]208 6.25 S
DV SPRING WATER 1 078140006007 E 5.50 S
SUBTOTAL 1.00
Tax1 $11.75
TOTAL SALE 10.65
CASH $12.40
CHANGE $20.00
2022-11-06 16:20:31 01357 02 $7.60
6441

899256[illegible]01199391205109204194199126133111861

---------CUT HERE---------

************************************************
* Complete survey at dgcustomerfirst.com *
* For a chance to *
* WIN A $100 Gift Card *
* Weekly Drawings. Must be 18+ to enter *
* Survey Code *
* 0126-6308-1229-653 *
************************************************
---------CUT HERE---------

Package:000069 of 000072
Presiding Judge: HON. JAMES R. SCHRAND (654281)
Package : 000069 of 000072



Case 2:22-cv-00036-RB-DOC Document 138-4 Filed 06/07/23 Page 70 of 114 Page ID #081
Filed          22-CI-01419          12/12/2022          David Martin, Boone Circuit Clerk
85

DG - KY



Filed          22-CI-01419          12/12/2022          David Martin, Boone Circuit Clerk

A308





Package:000072 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000072 of 000072

David Martin, Boone Circuit Clerk
6025 Rogers Lane, Room 141
Burlington, KY 41005

CORPORATION SERVICE COMPANY
421 W. MAIN STREET
FRANKFORT, KY 40601



## KCOJ eFiling Cover Sheet

Case Number: 22-CI-01419

Envelope Number: 5366798

Package Retrieval Number: 536679836345426@00001158187

Service by: Certified Mail

Service Fee: $ 0.00

Postage Fee: $ 17.44

The attached documents were generated via the Kentucky Court of Justice eFiling system. For more information on eFiling, go to http://courts.ky.gov/efiling.

Generated: 12/13/2022 10:00:23 AM

A311

Package:000001 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000001 of 000072



CERTIFIED MAIL

7022 2410 0001 2944 5728

US POSTAGE PITNEY BOWES

ZIP 41011
02 4W
0000371255 DEC 13 2022
$ 011.33⁰

David S. Martin
Boone County Circuit Court Clerk
Boone Circuit & District Courts
Boone County Justice Center
6025 Rogers Lane
Burlington, Kentucky 41005

CI 22-CI-01419

Dolar General
CORPORATION SERVICE COMPANY
421 W. MAIN STREET
FRANKFORT KY 40601

A312



AOC-E-105    Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice    Courts.ky.gov

CR 4.02; Cr Official Form 1

**CIVIL SUMMONS**

Case #: **22-CI-01419**

Court:   **CIRCUIT**

County: **BOONE**

---

*Plantiff,* HUSAR, NORMAN VS. DOLLAR GENERAL CORPORATION ET AL, *Defendant*

TO:  **CORPORATION SERVICE COMPANY**
     **421 W. MAIN STREET**
     **FRANKFORT, KY 40601**

Memo: Related party is DOLGENCORP, LLP

The Commonwealth of Kentucky to Defendant:
**DOLGENCORP, LLP**

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

                              /s/ David Martin, Boone
                              Circuit Clerk
                              Date: **12/12/2022**

---

### Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

   Date: _____, 20_____    |  _____
                                      |         Served By
                                      |  _____
                                      |            Title

Summons ID: 536679836345427@00001158188
CIRCUIT: 22-CI-01419 Certified Mail
HUSAR, NORMAN VS. DOLLAR GENERAL CORPORATION ET AL



Page 1 of 1



A313

Package:000002 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000002 of 000072

**COMMONWEALTH OF KENTUCKY**
**BOONE COUNTY CIRCUIT COURT, CIVIL DIVISION**
**CASE NO. ___-CI-_____**
**DIVISION _____**

**NORMAN HUSAR**, individually and on
behalf of all others similarly situated,
℅ DannLaw
15000 Madison Avenue
Lakewood, OH 44107                                    PLAINTIFF(S)

**CLASS ACTION COMPLAINT FOR.**
**MONEY**

v.

**DOLLAR GENERAL CORPORATION**
℅ Corporation Service Company, Registered
Agent
421 W. Main Street
Frankfort, KY 40601                                    DEFENDANT(S)
**SERVED BY: CERTIFIED MAIL**

AND

**DOLGENCORP, LLP**
℅ Corporation Service Company, Registered
Agent
421 W. Main Street
Frankfort, KY 40601
**SERVED BY: CERTIFIED MAIL**

*********************************************

Plaintiff Norman Husar ("Plaintiff"), individually and on behalf of all others similarly

situated, through his attorneys, brings this action against Defendants Dollar General Corporation

("DGC") and DolgenCorp, LLC d/b/a Dollar General ("DG", together with "DGC", the

"Defendants"), and alleges upon personal knowledge as to his own actions and experiences, and

Package:000003 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000003 of 000072

A314

upon investigation, information and belief as to all others, as follows:

## NATURE OF THE ACTION

1.     This is a consumer protection class action against the Defendants arising out of the Defendants' policies and procedures of regularly charging the Plaintiff and putative class members a higher price at the register than the price of merchandise advertised on the shelves at the time of sale at Dollar General stores across Kentucky.

2.     This class action arises from Defendants' regular practice of charging customers a higher price on various items than the price advertised on its shelves in violation of the Kentucky Consumer Protection Act, KRS 367.100, *et seq.*

## PARTIES, JURISDICTION, AND VENUE

3.     Plaintiff Norman Husar ("Plaintiff") is a natural person who resides in the City of Cincinnati, County of Hamilton, State of Ohio.

4.     Defendant Dollar General Corporation ("DGC") is a foreign corporation organized under the laws of the State of Tennessee with its principal place of business located at 100 Mission Ridge, Goodlettsville, TN 37072.

5.     Defendant Dolgencorp, LLC ("DG") is a foreign limited liability company organized under the laws of the State of Tennessee with its principal place of business located at 100 Mission Ridge, Goodlettsville, TN 37072.

6.     This Court is the proper venue and has jurisdiction over the Parties as the Plaintiff transacted business with the Defendants in this County, the Defendant operates franchise locations across the County and Commonwealth, and Boone County is where all the issues arose related to this matter, and the minimum jurisdiction has been met.

## FACT RELATED TO DOLLAR GENERAL

Package:000004 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000004 of 000072

7.      Plaintiff and all others similarly situated are persons who shop at Dollar General stores in Kentucky

8.      The Defendants operate Dollar General which are dollar stores that offer a variety of inexpensive merchandise, including home products, seasonal products, consumables, and apparel. ("Dollar General") The company's business model is about offering products at competitive prices (typically less than $10) in a convenient, small-store format. Its core customer category includes low-to-middle-income customers. The company's stores are located in convenient locations that are easily accessible to its customers. It follows a small-box format and the stores have an easy "in and out" shopping set-up.[1]

9.      Dollar General caters mainly to low-and-middle-income customers in rural and suburban areas. The company's core customers earn around $40,000 a year or below, $20,000 below the median income. Dollar General looks to build stores in rural areas where a big box retailer or grocery store is not within 15 or 20 miles. Around 75% of Dollar General stores are in towns with 20,000 or fewer people.[2]

10.     As of March 2022,  the Defendants owned and operated approximately Six Hundred Fifty-Five (655) Dollar General stores in Kentucky with more locations scheduled to open.[3]

## FACTS RELATED TO PLAINTIFF'S TRANSACTIONS

11.     The Plaintiff incorporates and restates the allegations contained in Paragraphs 1 through 10 as if fully set forth herein.

---

[1] See https://marketrealist.com/2017/04/dollar-general-why-small-format-stores-are-key/ (last visited December 4, 2022)

[2] See https://www.cnn.com/2019/07/19/business/dollar-general-opposition (last visited December 4, 2022)

[3] *See* https://www.statista.com/statistics/1121086/number-of-dollar-general-stores-in-the-united-states-by-state/ (last visited December 4, 2022)

Package:000005 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000005 of 000072

12.     The Plaintiff is a customer of the Defendants' stores throughout Ohio and the Northern Kentucky area, including those in Boone County.

13.     While shopping at various Dollar General locations between early July 2022 and early September 2022, the Plaintiff noticed discrepancies between the prices of the merchandise advertised on the shelves and what he was charged at the checkout.

14.     When there was a price discrepancy, the Plaintiff was usually charged and paid more than the advertised price.

15.     As a result of these discrepancies, the Plaintiff began to track his purchases.

16.     In addition to tracking his purchases, the Plaintiff also began to document the advertised/shelf prices to compare them to what he was charged and paid at checkout.

17.     Between July 2022 and early September 2022, the Plaintiff made purchases at various DG Store Locations located in Lorain County, Ohio and Cuyahoga County, Ohio including:

- DG Store #04686 located at 1651 Cooper Foster Park Rd, Amherst, OH 44001;

- DG Store #07807 located at 425 W 4th St, Lorain, OH 44052-1644;

- DG Store #12868 located at 2540 Leavitt Road, Lorain, OH 44052-4142;

- DG Store #15058 at 7628 S. Leavitt Road, Amherst, OH 44001;

- DG Store #15242 located at 5248 Colorado Avenue, Sheffield Village, OH 44054-2335;

- DG Store #17110 located at 3785 Clague Rd, North Olmsted, OH 44070-2302

- DG Store #20045 located at 12526 Bellaire Rd, Cleveland, OH 44135

18.     Between July 2022 and early September 2022, the Plaintiff made purchases at the stores noted where the following price discrepancies occurred:

19.    In July and August 2022, Plaintiff made several purchases at Dollar General stores in Lorain County and Cuyahoga County. The discrepancies are outlined below:

| Date of Purchase | Store Number | Brand | Product | Price of Shelf/Sign | Register Price | Discrepancy |
|---|---|---|---|---|---|---|
| 07/03/22 | 12868 | Pepsi | Mountain Dew 2L | $1.90 | $2.20 | $0.30 |
| 07/06/22 | 15252 | Coca-Cola | Coke Zero 16 oz | $1.00 | $1.25 | $0.25 |
| 07/10/22 | 07807 | DG Health | Anti-Diarrheal | $3.50 | $3.95 | $0.45 |
| 07/14/22 | 07807 | CRC Brakleen | Brake Parts Cleaner 14 oz | $4.45 | $5.50 | $1.05 |
| 07/18/22 | 15252 | Eveready | Gold Battery AAA-8 | $4.95 | $6.00 | $1.05 |
| 07/23/22 | 04686 | Energizer | Max Battery D-2 | $4.65 | $5.50 | $0.85 |
| 07/28/22 | 17110 | Coca-Cola | Cherry Coke 16 oz | $1.00 | $1.25 | $0.25 |
| 07/31/22 | 07807 | Wrigley's | Extra Gum Slim Pack | $1.00 | $1.35 | $0.35 |
| 08/01/22 | 15058 | Coca-Cola | Coke de Mexico | $1.25 | $2.00 | $0.75 |
| 08/01/22 | 15252 | Raid | Aerosol A&R 17.5 oz | $4.75 | $5.25 | $0.50 |
| 08/05/22 | 20045 | Raid | Ant Baits 4 ct | $4.00 | $4.50 | $0.50 |
| 08/05/22 | 20045 | Coca-Cola | Sprite 16 oz | $1.00 | $1.25 | $0.25 |
| 08/09/22 | 07807 | Santitas | Tortilla Chips | $2.29 | $2.45 | $0.16 |
| 08/27/22 | 07807 | Energizer | 9V Batteries | $4.65 | $4.95 | $0.30 |
| 09/01/22 | 07807 | Crystal Valley | Water | $0.85 | $0.95 | $0.10 |
| 09/01/22 | 07807 | Crystal Valley | Water | $1.50 | $1.65 | $0.15 |

*See also* Exhibit 1 to Complaint - Receipts and Proof of Purchase.

20.    Based on the allegations in Paragraph 19 above and Exhibit 1 between July 3, 2022 and September 1, 2022 the Plaintiff was overcharged at least $7.26.

21.    In addition to the purchases in Ohio described above, on November 6, 2022 the Plaintiff made a purchase with discrepancy at the Defendants' store, Dollar General #01357 located at 832 Heights Blvd. Florence, KY 41042-1415.   These purchases are summarized below:

| Date of | Store | Brand | Product | Price of | Register | Discrepancy |
|---|---|---|---|---|---|---|

Package:000007 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000007 of 000072

| Purchase | Number | | | Shelf/Sign | Price | |
|---|---|---|---|---|---|---|
| 12/04/2022 | 01357 | Raid | Ant & Roach Spray | $4.85 | $5.25 | $0.40 |

*See* Exhibit 2 - November 6 Receipt and Proof of Purchase.

22.     Based on the allegations above herein and as demonstrated by Exhibits 1 and 2, the Defendants used the same procedures that it employed in charging higher prices than advertised to the Plaintiff when selling the same and/or similar merchandise to numerous other Kentucky consumers.

23.     In the two (2) year period before the Complaint was filed the Defendants charged prices that were higher than advertised that were the same or similar to the advertisements described, *supra*, to numerous Kentucky consumers.

24.     Based on the allegations herein, *supra*, and demonstrated by Exhibits 1 and 2, It is the Defendants' policy and practice to charge higher prices at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves in the Defendants' stores.

## CLASS ACTION ALLEGATIONS

25.     **Class Definition:** Plaintiff brings this action pursuant to CR 23.01 and CR 23.02 on behalf of a class of similarly situated individuals and entities defined as follows:

All persons who resided in Kentucky on the date this complaint was filed, who at any time on or after the day two years prior to the date on which this Complaint was filed, who purchased merchandise at a Dollar General store located in Kentucky.

26.     **Subclass Definition:** The Plaintiff also brings this action on behalf of a Subclass of similarly situated individuals and entitled defined as follows:

All members of the Class who paid more for merchandise than the advertised price labeled on the shelf at a Dollar General store located in Kentucky

27.     Excluded from the Class and Subclass are (1) the Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its

Package:000008 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000008 of 000072

parent(s) have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class and/or Subclass; (4) any person(s) who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any excluded parties.

28.     **Numerosity and Ascertainability:** Upon information and belief the Class and Subclass (the "Classes") are each composed of more than forty (40) members, such that the Classes are so numerous that joinder of all members is impractical.   This conclusion is reasonable given that the Defendants operate 655 stores across Kentucky as of March 2022 as noted above and the number of customers at each of the Defendants' stores on a daily basis is likely dozens, if not hundreds or thousands of consumers.

29.     **Commonality and Predominance:** There are questions of law and fact common to the proposed Classes that predominate over any individual questions.  These questions of law and fact include, but are not limited to:

    a.   Whether the shelf price labels are advertisements under the applicable regulations;

    b.   Whether the shelf price labels are advertisements as defined by the KCPA;

    c.   Whether any or all of the purchases made by the Plaintiff and members of the Classes were consumer transactions as defined by the KCPA;

    d.   Whether the mis-priced shelf labels violate the KCPA;

    e.   Whether the Plaintiff and/or members of the putative Classes suffered an ascertainable loss as a result of the Defendants' unlawful practices;

    f.   Whether by charging consumers in Kentucky more than the advertised shelf price at checkout, the Defendants committed a deceptive act as defined by the CSPA;

Package:000009 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000009 of 000072

30.    **Typicality:** Plaintiff's claims are typical of the claims of the Classes. Plaintiff and the putative Class Members were all subjected to and affected by a uniform course of conduct; specifically, the Defendants' pattern and practice of charging Ohio consumers a higher price at the register than the posted price on the shelf for various pieces of merchandise.

31.    **Adequacy:** The Plaintiff will adequately represent the interests of the Classes. The Plaintiff does not have any interests adverse to the Classes. Plaintiff's proposed class counsel has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

32.    **Superiority:** A class action is the superior method for the quick and efficient adjudication of this controversy since joinder of all members is impracticable. While the economic damages suffered by the individual members of the Classes are significant, the amount is modest compared to the expense and burden of individual litigation. The questions of law or fact common to the members of the Classes predominate over any question affecting only individual members. A class action will cause an orderly and expeditious administration of the claims of the Classes, and will foster economies of time, effort, and expense. Given the relatively small amount of damages available to Plaintiff and members of the Classes, adjudication on a classwide basis would provide members of the Classes with a remedy that they may be unlikely to pursue individually. Plaintiff does not anticipate any difficulty in the management of this litigation.

33.    The Plaintiff has retained the services of attorneys who are experienced and capable in prosecuting class action lawsuits. Neither the Plaintiff nor Plaintiff's Counsel have any interests which might prevent them from vigorously pursuing this action.

<div align="center">

**CLASS CLAIMS**

</div>

Package:000010 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000010 of 000072

## COUNT ONE: VIOLATION OF KRS 367.170, *et seq.*
### (On behalf of the Plaintiff and Classes)

34.    Plaintiff restates and incorporates all of his allegations contained in paragraphs 1 through 33 in their entirety.

35.    The Plaintiff and the Class Members are each a "person" as the meaning of KRS 367.110(1).

36.    The Defendants' business(es) as described herein, *supra*, is "commerce" within the meaning of KRS 367.110(2) as a distribution of a service and intangible personal property and any other article and/or thing of value which includes commerce directly and/or indirectly affecting the people of this Commonwealth.

37.    KRS 367.170(1) states that any unfair, false, misleading or deceptive act or practice in the conduct of any trade or commerce are hereby declared unlawful.

38.    KRS 367.175(1) states every contract, combination in the form of trust and otherwise, or conspiracy of trade of commerce in this Commonwealth shall be unlawful.

39.    As described herein, *supra*, and demonstrated by Exhibit 2, the Defendants' actions in charging a higher price for merchandise than the price as advertised on the shelf price labels for the same merchandise are deceptive acts under KRS 367.140(1).

40.    The Defendants' actions described herein, *supra*, violate the Kentucky Consumer Protection Act and the Plaintiff and Class members are entitled to an award of statutory damages as applicable, actual damages in a total amount to be determined at trial, punitive damages as applicable in a total amount to be determined at trial, and an award of reasonable attorneys' fees and costs.

## COUNT TWO: UNJUST ENRICHMENT
### (On behalf of the Plaintiff and Classes)

Package:000011 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000011 of 000072

41.     Plaintiff restates and incorporates all of his allegations contained in paragraphs 1 through 40 in their entirety.

42.     Based on the allegations herein, *supra*, the Defendants have engaged in a pattern and practice of overcharging the Plaintiff and members of the Classes by at least $0.40 and collected monies from the Plaintiff and members of the Classes which the Defendants knew or should have known that the Defendants had no contractual or legal right to collect.

43.     By receiving payments from the Plaintiff and members of the Classes on products that the Defendants overcharged, the Defendants received a benefit conferred upon them at the expense of the Plaintiff and members of the Classes.

44.     Retaining the overcharged payments made by the Plaintiff and the members of the Classes was a resulting appreciation of benefit by the Defendants.

45.     The Defendants inequitably retained the benefit of the overcharged payments made by the Plaintiff and members of the classes without any material benefit for which the payments were made and bargained for by the Plaintiff and members of the Classes.

46.     The Defendants accepted and/or retained the overcharged payments made by the Plaintiff and members of the Classes with full knowledge and awareness that because of the Defendants' unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for tuition, fees, and/or other monies paid.

47.     Retaining the non-gratuitous benefits made to the Defendants by the Plaintiff and the members of the Classes under these circumstances made the Defendants' retention of the overcharged payments unjust and inequitable.

48.     Because the Defendants retention of the overcharged payments made by the Plaintiff and members of the Classes are unjust and inequitable, the Plaintiff and members of the

Package :000012 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000012 of 000072

Classes are entitled an award of actual damages, compensatory damages, and punitive damages in amounts to be determined at trial.

### COUNT THREE: VIOLATIONS OF THE CSPA, R.C. 1345.01, *et seq.*
### (On behalf of Plaintiff individually)

49.     Plaintiff restates and incorporates all of his allegations contained in paragraphs 1 through 49 in their entirety.

50.     The Plaintiff is a "person" as the meaning of KRS 367.110(1).

51.     The Defendants' business(es) as described herein, *supra*, is "commerce" within the meaning of KRS 367.110(2) as a distribution of a service and intangible personal property and any other article and/or thing of value which includes commerce directly and/or indirectly affecting the people of this Commonwealth.

52.     KRS 367.170(1) states that any unfair, false, misleading or deceptive act or practice in the conduct of any trade or commerce are hereby declared unlawful.

53.     KRS 367.175(1) states every contract, combination in the form of trust and otherwise, or conspiracy of trade of commerce in this Commonwealth shall be unlawful.

54.     As described herein, *supra*, and demonstrated by Exhibit 2, the Defendants' actions in charging a higher price for merchandise than the price as advertised on the shelf price labels for the same merchandise are deceptive acts under KRS 367.140(1).

55.     The Defendants' actions described herein, *supra*, violate the Kentucky Consumer Protection Act and the Plaintiff is entitled to an award of statutory damages as applicable, actual damages of at least $0.40 and in a total amount to be determined at trial, punitive damages as applicable in a total amount to be determined at trial, and an award of reasonable attorneys' fees and costs.

### **PRAYER FOR RELIEF**

Package:000013 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000013 of 000072

A324

**WHEREFORE,** Plaintiff Norman Husar, on behalf of himself and those similarly situated, respectfully requests that that this Court grants judgment against Defendants Dollar General Corporation and Dolgencorp, LLC and issue an Order:

A. Finding that this action satisfies the prerequisites for Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and Subclass, each as defined, *supra*;

B. Designating the Plaintiff as a representative of the Class and Subclass, and his undersigned counsel as Class Counsel;

C. Awarding the Plaintiff, Class and Subclass their actual damages;

D. Awarding the Plaintiff, Class and Subclass their statutory damages, as applicable;

E. Awarding the Plaintiff his statutory non-economic damages for the violations of the KCPA, as applicable;

F. Awarding the Plaintiff, Class and Subclass punitive damages, as applicable;

G. Awarding the Plaintiff, Class and Subclass pre-judgment and post-judgment interest, if applicable,

H. Awarding the Plaintiff, Class and Subclass their reasonable attorneys' fees and costs, including interest thereon, as allowed or required by law; and,

I. Granting all such further and other relief as this Court deems just and appropriate.

Respectfully submitted,

/s/Brian D. Flick, Esq.

Brian D. Flick (0095244)
**DANN LAW**
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiff and the Putative Classes*

## TRIAL BY JURY

Pursuant to CR 38.02, Plaintiff Norman Husar, individually and on behalf of all others similarly situated, does hereby request a Trial by Jury.

Respectfully submitted,

/s/Brian D. Flick, Esq.

Brian D. Flick, Esq. #0095244
DannLaw
*Counsel for Plaintiff and the Putative Classes*

Package:000015 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000015 of 000072

A326

# EXHIBIT 1

Package:000016 of 000072
Presiding Judge: HON. JAMES R. SCHRAND (654281)
Package : 000016 of 000072

**DOLLAR GENERAL**



Package:000017 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000017 of 000072.



Filed    22-CI-01419    12/12/2022    David Martin, Boone Circuit Clerk



DOLLAR GENERAL

POS STICKER DISPLAYED $1.50 - DID NOT TAKE PICTURE BEFORE PURCHASE

NO POS STICKER NOW - PIC BELOW TAKEN ABOUT 20 MINS AFTER PURCHASE



Package : 000020 of 000072        Presiding Judge: HON. JAMES R. SCHRAND (654281)        Package:000020 of 000072

Filed          22-CI-01419          12/12/2022          David Martin, Boone Circuit Clerk
109



Package : 000021 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000021 of 000072



Package:000022 of 000072.          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000022 of 000072.



DOLLAR GENERAL

POS PIC TAKEN 9.1.22 - SAME POS AS 8.27.22



Package: 000024 of 000072 ....... Presiding Judge: HON. JAMES R. SCHRAND (654281) .......... Package: 000024 of 000072



Package : 000025 of 000072 .................... Presiding Judge: HON. JAMES R. SCHRAND (654281) .................... Package:000025 of 000072

A336



Package: 000026 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package:000026 of 000072

Filed     22-CI-01419     12/12/2022     David Martin, Boone Circuit Clerk



Package: 000027 of 000072     Presiding Judge: HON. JAMES R. SCHRAND (654281)     Package : 000027 of 000072

Filed   22-CI-01419   12/12/2022   110

DOLLAR GENERAL 08.09.22



Package : 000028 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000028 of 000072          Package : 000028 of 000072

Filed     22-CI-01419     12/12/2022     11 David Martin, Boone Circuit Clerk



Package:000029 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654261)

Package : 000029 of 000072



Package : 000030 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package:000030 of 000072

**DOLLAR GENERAL**



Package:000031 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654261)

Package : 000031 of 000072.



Package : 000032 of 000072    Presiding Judge: HON. JAMES R. SCHRAND (652281)    Package:000032 of 000072

A343

DOLLAR GENERAL-12526 BELLAIRE RD, CLEV, OH 44135



Package : 000033 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package:000033 of 000072



Package : 000034 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000034 of 000072



Package:000035 of 000072   Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000035 of 000072

Filed          22-CI-01419          12/12/2022          David Martin, Boone Circuit Clerk



Filed          22-CI-01419          12/12/2022          David Martin, Boone Circuit Clerk

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package: 000036 of 000072

Package : 000036 of 000072

A347



Package:000037 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000037 of 000072



Package:000038 of 000072    Presiding Judge: HON. JAMES R. SCHRAND (654261)    Package : 000038 of 000072

A349

Package : 000039 of 000072                          Package : 000039 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)



PICS ABOVE TAKEN 8.5.22 - NO RAID PRODUCTS AVAILABLE



Package : 000040 of 000072    Presiding Judge: HON. JAMES R. SCHRAND (654281)    Package : 000040 of 000072

A351

**DOLLAR GENERAL**



Package : 000041 of 000072 ........... Presiding Judge: HON. JAMES R. SCHRAND (654281) ........... Package: 000041 of 000072



Package : 000042 of 000072        Presiding Judge: HON. JAMES R. SCHRAND (654281)        Package:000042 of 000072



Package:000043 of 000072 ... Presiding Judge: HON. JAMES R. SCHRAND (654281) ... Package : 000043 of 000072

DOLLAR GENERAL

Package:000044 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000044 of 000072



Package:000045 of 000072        Presiding Judge: HON. JAMES R. SCHRAND (654281)        Package : 000045 of 000072



Package: 000046 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package: 000046 of 000072



Package : 000047 of 000072 Presiding Judge: HON. JAMES R. SCHRAND (654281) Package:000047 of 000072

DOLLAR GENERAL



Package : 000048 of 000072        Presiding Judge: HON. JAMES R. SCHRAND (654281)        Package : 000048 of 000072



Package : 000049 of 000072   Presiding Judge: HON. JAMES R. SCHRAND (654281)   Package : 000049 of 000072



Package : 000050 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000050 of 000072

DOLLAR GENERAL



Package: 000051 of 000072 ¦ Presiding Judge: HON. JAMES R. SCHRAND (654281) ¦ Package: 000051 of 000072



Package : 000052 of 000072   Presiding Judge: HON. JAMES R. SCHRAND (654281)   Package:000052 of 000072



DOLLAR GENERAL



**Energizer Max Battery D-2 Alkaline Fr End ct (2L)**

$4.65

$2.33
per each

## DOLLAR GENERAL - D BATTERY - POS STICKER DIFFERENCES



ABOVE - DG NORTH OLMSTED 07,29,22

Package:000055 of 000072 ........ Presiding Judge: HON. JAMES R. SCHRAND (654281) ........ Package : 000055 of 000072



ABOVE DG AMHERST, OH 07.23.22

Presiding Judge: HON. JAMES R. SCHRAND (654281)     Package: 000056 of 000072

Package : 000056 of 000072.

# DOLLAR GENERAL



Package : 000057 of 000072   Presiding Judge: HON. JAMES R. SCHRAND (654281)   Package : 000057 of 000072



A369

Filed
Filed



# DOLLAR GENERAL



Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package:000060 of 000072

Package :000060 of 000072

A371



A372

DOLLAR GENERAL



Package:000062 of 000072   Presiding Judge: HON. JAMES R. SCHRAND (654281)   Package : 000062 of 000072



Package:000063 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000063 of 000072

Filed   22-CI-01419   12/12/2022   David Martin, Boone Circuit Clerk



Package:000064 of 000072   Presiding Judge: HON. JAMES R. SCHRAND (652881)   Package : 000064 of 000072

DOLLAR GENERAL



Package:000065 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000065 of 000072



Package : 000066 of 000072    Presiding Judge: HON. JAMES R. SCHRAND (654281)    Package:000066 of 000072

DOLLAR GENERAL



Package : 000067 of 000072 . . . . . . . . . . . . . Presiding Judge: HON. JAMES R. SCHRAND (654281) . . . . . . . . . . Package:000067 of 000072

Package : 000067 of 000072

A378

Filed          22-CI-01419          12/12/2022          156 David Martin, Boone Circuit Clerk

# EXHIBIT 2

Package:000068 of 000072          Presiding Judge: HON. JAMES R. SCHRAND (654281)          Package : 000068 of 000072



DOLLAR GENERAL STORE #01357
FLORENCE, KY 859-568-2220

PAID A R LEMON 17  046500164798
CRC BRAKLEEN CLEAN 078254050508      $ 25 S
CV SPRING WATER 1  075140006007 E   $ 50 S
SUBTOTAL                             $ 00
Tax                                  $ 1.75
TOTAL SALE                          $0.66
CASH                                $12.40
CHANGE                              $20.00
2022-11-06  16:20:41  01357-02      $7.60
                                    5441

8992663501199391205109204194199126133 11861

---- CUT HERE ----

* Complete survey at dgcustomerfirst.com
*          for a chance to
* WIN A $100 Gift Card
* Weekly Drawings. Must be 18 to enter
*          Survey Code
*  0126-6308-1229-653
---- CUT HERE ----

Package:000069 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000069 of 000072

DG - KY



Package:000070 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654261)

Package : 000070 of 000072

Package:000071 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000071 of 000072





Package:000072 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000072 of 000072

David Martin, Boone Circuit Clerk
6025 Rogers Lane, Room 141
Burlington, KY 41005

CORPORATION SERVICE COMPANY
421 W. MAIN STREET
FRANKFORT, KY 40601



## KCOJ eFiling Cover Sheet

Case Number: 22-CI-01419

Envelope Number: 5366798

Package Retrieval Number: 536679836345427@00001158188

Service by: Certified Mail

Service Fee: $ 0.00

Postage Fee: $ 17.44

The attached documents were generated via the Kentucky Court of Justice eFiling system. For more information on eFiling, go to http://courts.ky.gov/efiling.

Generated: 12/13/2022 10:00:27 AM

A384

Package:000001 of 000072

Presiding Judge: HON. JAMES R. SCHRAND (654281)

Package : 000001 of 000072



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

DAVID S. MARTIN
BOONE CIRCUIT/DISTRICT COURTS
BOONE COUNTY JUSTICE CENTER
6025 ROGERS LANE
BURLINGTON KY 41005

7022 2410 0001 2944 5711

US POSTAGE PITNEY BOWES
ZIP 41011 $ 011.33
02 4W
0000371255 DEC 13 2022

DAVID S. MARTIN
BOONE COUNTY CIRCUIT COURT CLERK
BOONE CIRCUIT & DISTRICT COURTS
BOONE COUNTY JUSTICE CENTER
6025 ROGERS LANE
BURLINGTON, KENTUCKY 41005

CI 22-CI-01419

DolgenCorp
CORPORATION SERVICE COMPANY
421 W. MAIN STREET
FRANKFORT KY 40601

A385

# Exhibit 4

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH WOLF, CARMEN WOLF, ON BEHALF OF THEMSELVES AND THOSE SIMILARLY SITUATED,<br><br>      Plaintiff,<br><br>vs.<br><br>DOLLAR GENERAL CORPORATION, DOLGEN NEW YORK, LLC D/B/A DOLGEN, DOLGENCORP OF TEXAS, INC., INDIVIDUALLY, JOINTLY, SEVERALLY, OR IN THE ALTERNATIVE,<br><br>      Defendants. | Civil Case No.: _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs, Joseph Wolf ("Joseph") and Carmen Wolf, ("Carmen", collectively, the "Plaintiffs"), on behalf of themselves and those similarly situated, by way of Complaint, state:

## NATURE OF THE ACTION

1. This is a consumer protection class action against DOLLAR GENERAL CORPORATION ("DGC"), DOLGEN NEW YORK, LLC D/B/A DOLGEN ("DOLGEN"), and DOLGENCORP OF TEXAS, INC. ("Dolgencorp", collectively "Defendants") arising out of Defendants' policies and practices of regularly charging Plaintiffs and putative class members a higher price at the register than the price of merchandise advertised on the shelves at the time of sale at its Dollar General stores in New York.

2. The class action claims arise from Defendants' regular practice of charging customers a higher price at the cash register on various items than the price advertised on the in store shelves, in violation of N.Y. GEN. BUS. LAW § 349, and New York common law on behalf of consumers.

A387

## VENUE AND JURISDICTION

3.      The Court has personal jurisdiction over Defendants because they regularly conduct business transactions in this District and have committed the complained of acts in this District. For example, Defendants maintain a store in White Lake, New York, which is in this District.

4.      Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d)(2), as the amount in controversy is in excess of $5 million and Plaintiffs are citizens of a different state than Defendants.

## PARTIES

5.      Plaintiffs reside in East Elmhurst, New York and own a vacation home in Bethel, New York.

6.      Defendant DOLGEN is the sole legal entity who operates stores trading as "Dollar General" in the State of New York. DOLGEN is incorporated under the laws of the State of Kentucky with a principal place of business at 100 Mission Ridge, Goodlettsville, Tennessee.

7.      DOLGEN is a single-member LLC. Its sole member is Defendant Dolgencorp, which is a corporation incorporated under the laws of the State of Kentucky, with a principal place of business at 100 Mission Ridge, Goodlettsville, TN, 37072.

8.      Defendant DGC is the parent of DOLGEN. DGC's principal place of business is in Goodlettsville, Tennessee.

## FACTS RELATED TO DOLGEN

9.      Plaintiffs and all others similarly situated are persons who shop at Dollar General stores in New York.

A388

10.     DOLGEN operates dollar stores that offer a variety of inexpensive merchandise, including home products, seasonal products, consumables, and apparel. The company's business model is about offering products at competitive prices (typically less than $10) in a convenient, small-store format. Its core customer category includes low-to-middle-income customers. The company's stores are located in convenient locations that are easily accessible to its customers. It follows a small-box format and the stores have an easy ''in and out'' shopping set-up.[1]

11.     DOLGEN caters mainly to low-and-middle-income customers in rural and suburban areas. The company's core customers earn around $40,000 a year or below, $20,000 below the median income. Dollar General looks to build stores in rural areas where a big box retailer or grocery store is not within 15 or 20 miles. Around 75% of Dollar General stores are in towns with 20,000 or fewer people.[2]

12.     As of March 2022, DOLGEN owned and operated approximately Five-Hundred Fifty-Five (555) Dollar General stores in New York, with more locations scheduled to open.[3]

**FACTS RELATED TO PLAINTIFFS' TRANSACTIONS**

13.     Plaintiffs regularly shop at the Dollar General located at 1334 NY-17B, White Lake, NY 12786 ("Dollar General White Lake").

14.     While shopping at Dollar General White Lake in late summer 2022, Joseph noticed discrepancies between the prices of merchandise advertised on the shelves and what they were charged and paid at checkout.

---

[1] See https://marketrealist.com/2017/04/dollar-general-why-small-format-stores-are-key/
[2] See https://www.cnn.com/2019/07/19/business/dollar-general-opposition
[3] *See* https://www.statista.com/statistics/1121086/number-of-dollar-general-stores-in-the-united-states-by-state/

15.     When there was a price discrepancy, Plaintiffs were charged and paid more than the advertised price.

16.     In September 2022, Joseph made two purchases at the White Lake Dollar General store, using Carmen's credit card, of which Joseph is an authorized user, during which Defendants charged them a higher price for its merchandise than advertised shelf price. The discrepancies are outlined below:

(See **Exhibit 1:** Receipt, advertisements)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|---------------|-------------------|-------------------|
| 18-Sep-22 | White Lake | Clover Valley | 2% Lactose Free Milk | $4.15 | $4.25 | $0.10 |
| 04-Sep-22 | White Lake | Clover Valley | 2% Lactose Free Milk | $4.15 | $4.25 | $0.10 |

17.     On or about October 10, 2022, a lawsuit was commenced against one or more Defendants in the Superior Court of New Jersey, Law Division, Monmouth County, stylized *Ryan Button on behalf of himself and others similarly situated v. Dollar General Corporation, et al.*, assigned docket number MON-L-002774-22 (the "NJ Overcharge Matter"). A copy of the complaint, docket sheets, and an excerpt from the Notice of Removal is attached as **Composite Exhibit 2[4]**.

18.     On or about November 4, 2022, one or more Defendants were served with the summons and complaint in the NJ Overcharge Matter. *See Exh. 1*, p. 54 at ¶ 2.

---

[4] On December 5, 2022, the Defendants in the NJ Overcharge Matter removed the matter to the United States District Court for the District of New Jersey. As such, docket sheets for both the state court and federal court are attached.

19.    On or about October 11, 2022, another lawsuit was commenced against one or more Defendants in the Court of Common Pleas, Lorain County, Ohio, stylized *Norman Husar, on behalf of himself and those similarly situated v. Dolgen Midwest, LLC d/b/a Dollar General*, assigned docket number 22-CV-207195 (the "OH Overcharge Matter").  A copy of the complaint, docket sheets, and an excerpt from the Notice of Removal is attached as **Composite Exhibit 3**[5].

20.    On or about October 14, 2022, one or more Defendants were served with the OH Overcharge Matter summons and complaint. *See* Exh. *2*, p. 98 at ¶ 2.

21.    On or about November 1, 2022, the State of Ohio, through its Attorney General, commenced an action against DGC, stylized *State of Ohio ex rel. Attorney General Dave Yost v. Dollar General Corporation d/b/a Dollar General*, assigned docket number cv-2022-11-1812 (the "OH AG Matter"). A copy of the complaint and docket sheet is attached as **Composite Exhibit 4**.

22.    On or about November 9, 2022, DGC was served with the OH AG Matter summons and complaint. *See Exh. 3*, p. 8.

23.    The plaintiffs in the NJ and OH Overcharge Matters and the OH AG Matter all alleged that one or more Defendants engaged in a practice of regularly charging consumers a higher price at the register than the price of merchandise advertised on the shelves at the time of sale at Defendants' stores. *See Exhibits 1-4*.

24.    On or about December 11, 2022, Joseph, again using Carmen's credit card, made another purchase at the White Lake Dollar General store during which Dollar General *still* charged them a higher price for its merchandise than the advertised shelf price. The discrepancy is outlined below:

---

[5]  On November 14, 2022, the Defendants in the OH Overcharge Matter removed the matter to the United States District Court for the Northern District of Ohio. As such, docket sheets for both the state court and federal court are attached

(See **Exhibit 5:** Receipt, advertisements)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|---------------|-------------------|-------------------|
| 11-Dec-23 | White Lake | Land o Lakes | Low Fat Vanilla Yogurt | 3 for $2.00 | 3 for $2.25 | $0.25 |

25.     Defendants used the same procedures that they employed in charging a higher price than advertised to Plaintiffs when selling the same and/or similar merchandise to numerous other consumers in its New York stores.

26.     In the three-year period before the Complaint was filed, Defendants charged prices that were higher than advertised that were same or similar to the advertisements described, *supra*, to numerous consumers in its New York stores.

27.     It is Defendants' policy and practice to charge a higher price at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves in Defendants' New York stores.

## CLASS ACTION ALLEGATIONS

28.     This action is brought and may properly proceed as a class action, pursuant to the provisions of Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs bring this action on behalf of himself and all others similarly situated. Plaintiffs seek certification of the class defined as follows:

**CLASS**:

All consumers who at any time on or after the day three years prior to the date on which this Complaint was filed, paid more for merchandise than the advertised price labeled on the shelf at a Dollar General store located in New York.

Specifically excluded from any class is any judge or magistrate involved in this matter.

A392

29.     The class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

30.     There are thousands if not tens or hundreds of thousands of consumers who meet the class definition.

31.     There are questions of law and fact common to the members of class. These common questions include but are not limited to:

a.  Whether the mis-priced shelf price labels violate N.Y. GEN. BUS. LAW § 349;

b.  Whether Defendants engaged in "consumer-oriented" conduct under N.Y. GEN. BUS. LAW § 349;

c.  Whether Defendants' conduct was materially misleading under N.Y. GEN. BUS. LAW § 349;

d.  Whether Defendants' practice is likely to mislead a reasonable consumer acting reasonably under the circumstances under N.Y. GEN. BUS. LAW § 349.

e.  Whether Defendants' practice of charging consumers higher prices on merchandise than advertised was likely to mislead a reasonable consumer.

f.  Whether Plaintiffs and members of the class suffered injury as a result of Defendants' conduct under N.Y. GEN. BUS. LAW § 349;

g.  Whether Defendants should be enjoined from charging consumers higher prices on merchandise than advertised;

h.  Whether Defendants' conduct evidences a high degree of moral culpability, or whether Defendants' conduct is so flagrant as to transcend mere carelessness, or whether Defendants' conduct constitutes willful or wanton negligent or recklessness, so as to warrant punitive damages.

32.     Plaintiffs' claims are typical of the claims of the members of the class which he represents because all such claims arise out of the same policies, practices, and conduct, and the same or similar documents used by Defendants in their dealings with Plaintiffs and putative class members.

33.     Plaintiffs have no interests antagonistic to those of the class.

34.     Plaintiffs will fairly and adequately protect the interests of the class, and have retained competent counsel experienced in the prosecution of consumer litigation and class actions.

35.     Proposed Class Counsel has investigated and identified potential claims in this action.

36.     Proposed Class Counsel has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

37.     Defendants have acted, or refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

38.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  While the economic damages suffered by the individual members of the class are significant to those class members, the amount is modest compared to the expense and burden of individual litigation. A class action will cause an orderly and expeditious administration of the claims of the class, and will foster economies of time, effort, and expense.

39.     The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

A394

40.     A class action will cause an orderly and expeditious administration of the claims of the subclass, and will foster economies of time, effort and expense.

41.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

## CLASS CLAIMS

**COUNT ONE (On Behalf of Plaintiffs and the Class)**
**Declaratory Judgment**
**(28 U.S.C. §§ 2201, *et seq.*)**

42.     Plaintiffs repeat and re-allege all of the prior allegations as if set forth at length herein.

43.     At all relevant times, there was in effect the Declaratory Judgment Act ("DJA"), 28 U.S.C. §2201(a), which states, in relevant part:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

44.     GBL 349 confers rights on the consumers in New York as contemplated by the Uniform Declaratory Judgments Law.

45.     Defendants violated GBL 349 by committing deceptive and misleading commercial practices, by violating GBL 349 in its actions in falsely advertising prices to Plaintiffs and those similarly situated, which made an item appear cheaper than what it actually was.

46.     Plaintiffs, individually, and on behalf of the Class, seek an order declaring that Defendants' actions in advertising prices on its shelves which are less than the actual price of the merchandise charged to Plaintiffs and class members violated GBL 349.

47.     The controversies presented in this case are definite and concrete and affect the adverse legal interests of the parties. Plaintiffs and Class members contend that Defendants are

A395

legally precluded from advertising prices on the shelves of Dollar General's New York stores that are less than the actual price of the merchandise charged to persons in New York who purchase that merchandise.

48.　　There is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment because Defendants have provided and will continue to provide unlawful advertisements in New York and charge its customers more than the prices advertised on Dollar General store shelves.

49.　　The Court should enter a declaratory judgment that Defendants' actions in providing its New York customers with shelf advertisements that understate the actual price of the merchandise charged to its customers, like those Plaintiffs encountered, violate GBL 349.

50.　　The Court should enter a declaratory judgment requiring Defendants to cease providing unlawful advertisements to its customers in New York and also to cease charging more than the price advertised on the shelf of its New York stores.

51.　　Putative class members should be provided notice that Defendants' actions in providing unlawful advertisements violate GBL 349.

52.　　Putative class members should be provided notice that if they purchased an item and paid more than the advertised shelf price, like Plaintiffs, they may also be a member of the Class and entitled to monetary relief under GBL 349.

53.　　If the Court were to deny Plaintiffs' request for declaratory relief, this controversy will continue to exist, as Defendants will continue to provide unlawful advertisements to its customers in New Jersey and continue to charge them more than advertised shelf price.

54.　　As a result of the aforementioned violations, Plaintiffs, on behalf of themselves and the putative class, seek a declaratory judgment that Defendants have violated GBL 349, injunctive

relief enjoining Defendants from continuing to use advertisements that violate New York law, and an award of reasonable attorneys' fees and costs.

## COUNT TWO (On Behalf of Plaintiffs and the Class)
### Violation of N.Y. GEN. BUS. LAW § 349

55.     Plaintiffs repeat and re-allege all of the prior allegations as if set forth at length herein.

56.     Defendants have engaged in, and continue to engage in, deceptive acts and practices in violation of N.Y. GEN. BUS. LAW § 349.

57.     Defendants' acts are willful, unfair, unconscionable, deceptive, and contrary to the public policy of New York, which aims to protect consumers.

58.     Defendants' misrepresentations and false, deceptive, and misleading statements and omissions with respect to charging consumers more than the price advertised on its unit price labels at Dollar General's New York stores, constitute deceptive practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state. in violation of N.Y. GEN. BUS. LAW § 349.

59.     Defendants' false, deceptive, and misleading statements and omissions would have been material to any potential consumer's decision to purchase merchandise from Dollar General's New York stores.

60.     Defendants' improper consumer-oriented conduct is misleading in a material way in that it, inter alia, induced Plaintiffs and other Class Members to purchase and/or pay an overcharged price for Defendants' merchandise and goods.

61.     Defendants knew at the time it advertised via its unit price shelf labels certain goods to Class members and prospective customers that the consumers would be charged a higher price than advertised and that its promise was false because at the time of the unit price labeling

A397

Defendants themselves are in control of setting forth both the advertised price and the price consumers are charged at checkout. This is further evidenced by Defendants' actions in still overcharging its consumers as of December 11, 2022, two (2) months *after* two separate lawsuits were filed against Defendants making similar allegations. As such, an award of punitive damages for Defendants' conduct is appropriate under GBL 349.

62.     As a direct and proximate result of Defendants' unlawful deceptive acts and practices, Plaintiffs and the other members of the Class suffered and continue to suffer injuries based on the difference of the price advertised on the shelf versus the price charged at checkout. As a result of Defendants' recurring deceptive acts and practices, Plaintiffs and other Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs. This includes actual damages under GBL § 349, as well as statutory damages of $50 per merchandise or good purchased pursuant to GBL § 349.t.

63.     Plaintiffs and Class Members further seek equitable relief against Defendants. Pursuant to N.Y. GEN. BUS. LAW § 349, this Court has the power to award such relief, including but not limited to, an order declaring Defendants' practices as alleged herein to be unlawful, an Order enjoining Defendants from undertaking any further unlawful conduct, and an order directing Defendants to refund to Plaintiffs and the Class all amounts wrongfully overcharged.

64.     Defendants know full well that it overcharges consumers, and the misrepresentations it makes with regard to its advertised prices were made for the purpose of inducing consumers to purchase merchandise at its New York stores, so that it can reap outrageous profits to the direct detriment of New York consumers without regard to the consequences its actions cause such consumers. As such, Defendants' actions are unconscionable and actuated by

A398

bad faith, lack of fair dealing, actual malice, or accompanied by wanton and willful disregard for consumers' well-being. Defendants are therefore additionally liable for punitive damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

*On behalf of themselves and all others similarly situated as to the Class (Count One):*

   a.   Certification of the class, as defined herein, for equitable relief pursuant to Rule 23(b)(2);

   b.   Appointment of named Plaintiffs, Joseph Wolf and Carmen Wolf, as Class Representatives and appointment of their attorneys as Class Counsel;

   c.   Injunctive relief requiring Defendants to provide an accounting identifying all members of the class;

   d.   Injunctive relief requiring Defendants to provide an accounting of all overcharges during the class period.

   e.   A declaratory judgment that Defendants violated GBL 349;

   f.   Injunctive relief enjoining Defendants from engaging in future violations of GBL 349;

   g.   Injunctive relief requiring Defendants to provide notice to all members of the class that their purchases at Dollar General stores in New York may have violated of GBL 349 and that if they were harmed or aggrieved or sustained an ascertainable loss that they can bring individual actions for treble damages under the GBL 349 and for an award of attorneys' fees and costs pursuant to GBL 349.

A399

h.      An award of reasonable attorneys' fees and costs of suit in connection with this action, pursuant to the court's equitable powers and the GBL 349.

i.      Such other and further relief as the Court deems equitable and just.

*On behalf of themselves and all others similarly situated as to the Class (Count Two)*

j.      Certification of the Class, as defined herein, for monetary and injunctive relief pursuant to Rule 23;

k.      Appointment of named Plaintiffs, Joseph Wolf and Carmen Wolf, as Class Representative and appointment of their attorneys as Class Counsel;

l.      Injunctive relief requiring Defendants to provide an accounting identifying all members of the class;

m.      Declaratory judgment that Defendants violated GBL 349;

n.      Injunctive relief enjoining Defendants from engaging in future violations of GBL 349;

o.      Actual damages or statutory damages of $50.00 per violation, whichever is greater, under GBL 349(h);

p.      Reasonable attorneys' fees and costs of suit in connection with this action, pursuant to GBL 349.

q.      Punitive damages pursuant to GBL 349;

r.      Confer benefits upon the entire class pursuant to R. 23-2(c);

s.      Pre-judgment and post-judgment interest; and

t.      Such other and further relief as the Court deems equitable and just.

A400

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues subject to trial.

/s/ Javier L. Merino

Javier L. Merino, Esq.
THE DANN LAW FIRM. PC
1520 U.S. Hwy. 130 – Suite 101
North Brunswick, NJ  08902
*Attorneys for Plaintiffs and the*
*Putative Class*

Date: January 17, 2023

A401

# EXHIBIT 1

DOLLAR GENERAL STORE #14321
WHITE LAKE, NY 845-887-0225

CV LACTOSE FREE 2  070744010085 E      4.25
TOTAL   SALE                          $4.25
MasterCard              8142 CTLS      $4.25
AUTH# 69848P
REF: 000000011572 AID: A0000000041010    0957
2022-09-04   21:18:44   14321 01

8902308660391391183169134191673351113 11352

----------------CUT HERE----------------
*****************************************  *
* Complete survey at dgcustomerfirst.com  *
*           For a chance to              *
*WIN  A  $100  Gift  Card*
* Weekly Drawings, Must be 18+ to enter   *
*         Survey  Code                   *

          1420-1868-1156-362
*****************************************  *
----------------CUT HERE----------------

**SATURDAY SEPT. 10TH ONLY!**
DG Store Coupon              Valid 9/10/2022

**$5 OFF $25**
$5 off your purchase of
$25 or more (pretax)
OR SHOP ONLINE: USE PROMO CODE DGSAVESEP

$25 or more (pretax) after all other DG
discounts. Limit one DG $2, $3, or $5
off store coupon per customer. Excludes:
phone, gift and prepaid financial cards;
prepaid wireless handsets, Rug Doctor
rental, propane, tobacco and alcohol.
           X5627531129902431



----------------CUT HERE----------------



```
        DOLLAR GENERAL STORE #14321
        WHITE LAKE, NY 845-887-0225

KELL EGGG BTRMLK W 038000402906 E      3.25
CV LACTOSE FREE WH 070744010078 E      4.25
TOTAL    SALE                         $7.50
MasterCard              8142 CTLS     $7.50
AUTH# 21916P
REF: 000000005177 AID: A0000000041010
2022-09-18  15:57:06  14321 02           1022
```

8902309311216391187169169191673352113216552

----------------CUT HERE----------------

```
************************************** *
* Complete survey at dgcustomerfirst.com *
*            For a chance to             *
*WIN  A  $100  Gift  Card*
* Weekly Drawings, Must be 18+ to enter  *
*          Survey  Code                  *
```
**1420-2918-1170-333**
```
************************************** *
```
----------------CUT HERE----------------



SATURDAY SEPT. 24TH ONLY! -
**DG** Store Coupon                Valid 9/24/2022

**$5** OFF **$25**
$5 off your purchase of
$25 or more (pretax)

OR SHOP ONLINE: USE PROMO CODE DGSAVESEP

$25 or more (pretax) after all other DG
discounts. Limit one DG $2, $3, or $5
off store coupon per customer. Excludes:
phone, gift and prepaid financial cards;
prepaid wireless handsets, Rug Doctor
rental, propane, tobacco and alcohol.
X2582571220812431

-----------------CUT HERE-----------------



A405



# EXHIBIT 2

Javier L. Merino, Esq. – NJ Attorney ID No.:078112014
Andrew R. Wolf, Esq. - NJ Attorney ID No.: 018621995
THE DANN LAW FIRM, PC
1520 U.S. Hwy. 130 – Suite 101
North Brunswick, NJ 08902
(201) 355-3440 – -TELEPHONE
(216) 373-0536 – FAX

Jonathan Rudnick, Esq.
NJ Attorney ID No.: 034721990
The Law Office of Jonathan Rudnick LLC
788 Shrewsbury Ave, Suite 204
Tinton Falls, NJ, 07724
*Attorneys for Plaintiff and those similarly situated*

| | |
|---|---|
| RYAN BUTTON, ON BEHALF OF HIMSELF AND THOSE SIMILARLY SITUATED, Plaintiff, <br><br> vs. <br><br> DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC D/B/A DOLLAR GENERAL, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, AND JOHN DOES 1-500, INDIVIDUALLY, JOINTLY, SEVERALLY, OR IN THE ALTERNATIVE, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY MONMOUTH COUNTY - LAW DIVISION <br><br> Civil Action <br><br> Docket No.: MON-L- <br><br> **CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff, RYAN BUTTON ("Plaintiff"), on behalf of himself and those similarly situated, by way of Complaint, states:

## NATURE OF THE ACTION

1.      This is a consumer protection class action against DOLLAR GENERAL CORPORATION ("DGC"), DOLGENCORP, LLC D/B/A DOLLAR GENERAL ("DOLLAR GENERAL"), Todd Vasos, Jeff Owen, Steve Sunderland, Emily Taylor, JOHN DOES 1-500, ("John Does"), collectively "Defendants" arising out of defendants' policies and

A408

practices of regularly charging Plaintiff and putative class members a higher price at the register than the price of merchandise advertised on the shelves at the time of sale at its from Dollar General stores in  New Jersey.

2.     The class action claims arise from Defendants' regular practice of charging customers a higher price on various items than the price advertised on the shelves, in violation of the New Jersey General Advertising Regulations, <u>N.J.A.C.</u> 13:45A-9.1*, et seq.* ("GA Regulations"); New Jersey Unit Price Disclosure Act Regulations, <u>N.J.A.C.</u> 13:45A-14.1*, et seq.* ("Price Disclosure Regulations") Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("CFA"); and the Truth in Consumer Contract Notice and Warranty Act ("TCCWNA"), N.J.S.A. 56:12-14, *et seq.*, for Defendants' unlawful practices of charging more than the advertised price of merchandise to its New Jersey consumers in its New Jersey locations.

## VENUE

3.     Venue in Monmouth County is proper, pursuant to <u>R.</u> 4:3-2, because it is the county in which Plaintiff resides and is a county in which Defendants do business.

## PARTIES

4.     Plaintiff resides in Cliffwood Beach, New Jersey.

5.     Defendant DOLLAR GENERAL is the sole legal entity who operates stores trading as "Dollar General" in the State of New Jersey. DOLLAR GENERAL's principal place of business is in Goodlettsville, Tennessee.

6.     Defendant DGC is the parent of DOLLAR GENERAL. DGC's principal place of business is in Goodlettsville, Tennessee.

7.     Defendant Todd Vasos is the Chief Executive Officer of Dollar General and is a member of this Board of Directors. He has been in those positions at all times relevant to this matter.

8.  Defendant Jeff Owen is the Chief Operating Officer of Dollar General. He has been in this position since 2019. Prior to holding this position, he was the Executive Vice President of Store Operations from 2015 to 2019.

9.  Defendant Steve Sunderland is the Executive Vice President of Store Operations of Dollar General. He has been in this position since 2019. Prior to holding this position, he was the Senior Vice President of Store Operations from 2014 to 2019.

10. Defendant Emily Taylor is the Executive Vice President and Chief merchandising Officer of Dollar General. She has been in this position since 2020. Prior to holding this position, she was the Senior Vice President of Store Operations from 2014 to 2019. She joined Dollar General in 1998 and held roles of increasing responsibility in investor relations, financial planning and analysis, merchandise planning, pricing and merchandising operations prior to her promotion to Vice President, Pricing & Merchandise Data Optimization in March 2011. She served as Vice President, Merchandising Operations (March 2012 to April 2014) and was subsequently promoted to Senior Vice President, General Merchandise Manager in April 2014. She most recently served as Senior Vice President, Channel Innovation (September 2019 to September 2020).

11. Defendants Todd Vasos, Jeff Owen, Steve Sunderland and Emily Taylor are all officers and or directors of Dollar General who, at all times relevant to this matter, were responsible for setting and implementing Dollar General's policies, procedures and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisements on its shelves and charging the advertised prices at the cash registers in Dollar General's New Jersey stores.

A410

12. Defendants JOHN/JANE DOES 1-500 are fictitious names of individuals who are officers, supervisors, regional directors, and or managers of Dollar General stores located in New Jersey during the class period, alleged for the purpose of substituting their names for those of any additional defendants whose identity may be disclosed in discovery and should be made parties to this action.

13. JOHN/JANE DOES 1-500 are all employees of Dollar General who, at all times relevant to this matter, were responsible for setting and implementing Dollar General's policies, procedures and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisements on its shelves and charging the advertised prices at the cash registers in Dollar General's New Jersey stores and the stores they each manage or supervise.

14. Most, if not all of JOHN/JANE DOES 1-500 reside in or are otherwise residents or citizens of New Jersey at all times relevant to this matter.

15. Most, if not all of JOHN/JANE DOES 1-500 resided in or were otherwise residents or citizens of New Jersey at the time this Complaint was filed.

16. JOHN/JANE DOES 1-500 are each personally and directly liable to Plaintiff and putative class members that purchased items in the stores where they were responsible for setting and implementing Dollar General's policies, procedures and practices regarding ensuring compliance with New Jersey state laws and regulations regarding merchandise pricing advertisements on its shelves and charging the advertised prices at the cash registers due to their violations of the consumer statutes and regulations pleaded herein. See *Allen v V & A Bros*. 208 N.J. 114 (2011) and *N.J.S.A* 56:8-2.

17.     Plaintiff on behalf of himself and the putative class seeks signigcant relief directly form JOHN/JANE DOES 1-500 both collectively and individually.

### FACTS RELATED TO DOLLAR GENERAL

18.     Plaintiff and all others similarly situated are persons who shop at Dollar General stores in New Jersey.

19.     DOLLAR GENERAL operates dollar stores that offer a variety of inexpensive merchandise, including home products, seasonal products, consumables, and apparel. The company's business model is about offering products at competitive prices (typically less than $10) in a convenient, small-store format. Its core customer category includes low-to-middle-income customers. The company's stores are located in convenient locations that are easily accessible to its customers. It follows a small-box format and the stores have an easy ''in and out'' shopping set-up.[1]

20.     Dollar General caters mainly to low-and-middle-income customers in rural and suburban areas. The company's core customers earn around $40,000 a year or below, $20,000 below the median income. Dollar General looks to build stores in rural areas where a big box retailer or grocery store is not within 15 or 20 miles. Around 75% of Dollar General stores are in towns with 20,000 or fewer people.[2]

---

[1] See https://marketrealist.com/2017/04/dollar-general-why-small-format-stores-are-key/
[2] See https://www.cnn.com/2019/07/19/business/dollar-general-opposition

21.  As of March 2022, DOLLAR GENERAL owned and operated approximately one hundred seventy-five (175) Dollar General stores in New Jersey, with more locations scheduled to open.[3]

### FACTS RELATED TO PLAINTIFF'S TRANSACTIONS

22.  Plaintiff regularly shops at the Dollar General located at 228 NJ-35, Keyport, New Jersey 07735 ("Dollar General Keyport").

23.  While shopping at Dollar General Keyport in early 2022, Plaintiff noticed discrepancies between the prices of merchandise advertised on the shelves and what he was charged at checkout.

24.  When there was a price discrepancy, Plaintiff was usually charged and paid more than the advertised price.

25.  As a result of these discrepancies, Plaintiff began to track his purchases.

26.  Dollar General regularly advertised promotions for Saturday purchases, Specifically, purchases of at least twenty-five dollars ($25.00) made on Saturdays would receive a five-dollar ($5.00) store discount. Plaintiff attempted to focus his Dollar General shopping on Saturdays, using the discount to save money.

27.  Relying upon the advertised price of merchandise, Plaintiff would frequently fill his basket with at least twenty-five dollars ($25.00) worth of merchandise and complete the purchase to obtain the five-dollar ($5.00) discount.

---

[3] *See* https://www.statista.com/statistics/1121086/number-of-dollar-general-stores-in-the-united-states-by-state/

A413

28.     Plaintiff noticed pricing issues and became suspicious when he was filling up his basket to twenty-five dollars ($25) worth of goods and merchandise but would notice the prices rung up at the register were higher.

29.     Due to Plaintiff's experiences in being charged more at checkout than the advertised shelf price for merchandise, Plaintiff started to take pictures of the advertised prices to document the advertised/shelf prices to compare them to what he was charged and paid at checkout.

30.     From May through July 2022, Plaintiff made several purchases at the Keyport Dollar General store during which Dollar General charged him a higher price for its merchandise than advertised shelf price. The discrepancies are outlined below:

June 16, 2022 (See **Exhibit A:** Receipt, advertisements)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|---|---|---|---|---|---|---|
| 16-Jun | Keyport | Clover Valley | 2% Half Gallon Milk | $3.15 | $3.20 | $0.05 |
| 16-Jun | Keyport | General Mills | Lucky Charms | $4.00 | $4.75 | $0.75 |
| 16-Jun | Keyport | Dr. Pepper | Diet Dr. Pepper 12-pack | $4.50 | $5.00 | $0.50 |

June 21, 2022 (See **Exhibit B**: Receipt, advertisement)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|---|---|---|---|---|---|---|
| 21-Jun | Keyport | Pirates Booty | Pirates Booty | $2.50 | $2.75 | $0.25 |

June 23, 2022 (See **Exhibit C**: Receipt, advertisement)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|---|---|---|---|---|---|---|
| 23-Jun | Keyport | Clover Valley | 2% Half Gallon Milk | $3.15 | $3.20 | $0.05 |

June 28, 2022 (See **Exhibit D**: Receipt, advertisements)

A414

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|---------------|-------------------|-------------------|
| 28-Jun | Keyport | Clover Valley | Small Curd Cottage Cheese | $2.35 | $2.40 | $0.05 |
| 28-Jun | Keyport | Clover Valley | Chef Boyardee Mini Ravioli | $1.00 | $1.25 | $0.25 |
| 28-Jun | Keyport | Clover Valley | Armour Smoked Ham | $3.00 | $3.75 | $0.75 |

July 1, 2022 (See **Exhibit E**: Receipt, advertisements)

| Date | Location | Brand | Product | Price on Sign | Price at Register | Overcharge Amount |
|------|----------|-------|---------|---------------|-------------------|-------------------|
| 1-Jul | Keyport | Clover Valley | Scott Toilet Paper | $8.00 | $8.35 | $0.35 |
| 1-Jul | Keyport | Clover Valley | All Free Clear Detergent | $7.50 | $8.00 | $0.50 |

31.  Defendants used the same procedures that they employed in charging a higher price than advertised to Plaintiff when selling the same and/or similar merchandise to numerous other New Jersey consumers.

32.  In the six-year period before the Complaint was filed, Defendants charged prices that were higher than advertised that were same or similar to the advertisements described, *supra*, to numerous New Jersey consumers.

33.  It is Defendants' policy and practice to charge a higher price at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves in DOLLAR GENERAL's New Jersey stores.

## CLASS ACTION ALLEGATIONS

34.  This action is brought and may properly proceed as a class action, pursuant to the provisions of Rule 4:32-1(b)(2) and b(3) of the New Jersey Court Rules. Plaintiff brings

A415

this action on behalf of himself and all others similarly situated. Plaintiff seeks certification of the class pursuant to Rule 4:32-1(b)(2) and Rule 4:32-1(b)(3) seeking a judgment pursuant to Rule 4:32-2(c) to confer benefits upon a fluid class, whose members may be, but need not have been members of the class in suit; and the subclass Rule 4:32-1(b)(3). The class and subclass are initially defined as follows:

**CLASS**:

All persons who resided in New Jersey on the date this complaint was filed, who at any time on or after the day six years prior to the date on which this Complaint was filed, who purchased merchandise at a Dollar General store located in New Jersey.

**SUBCLASS**:

All members of the Class who paid more for merchandise than the advertised price labeled on the shelf at Dollar General store located in New Jersey.

35.   The class and subclass for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

36.   There are thousands if not tens or hundreds of thousands of consumers who meet the class and subclass definitions.

37.   There are questions of law and fact common to the members of class and subclass. These common questions include but are not limited to:

  a.   Whether the shelf price labels are advertisements under the GA Regulations.

  b.   Whether the shelf price labels are advertisements under the CFA.

  c.   Whether any or all of the merchandise sold at Dollar General stores in New Jersey are "Consumer commodities" under the Price Disclosure Regulations;

  d.   Whether the mis-priced shelf price labels violate the GA Regulations and/or the CFA.

e.   Whether the shelf price labels advertised to Plaintiff and others similarly situated is a contract or notice pursuant the TCCWNA;

f.   Whether the receipts provided to Plaintiff and others similarly situated is a contract or notice pursuant the TCCWNA;

g.   Whether Dollar General stores in New Jersey are a "seller", subject to the requirements of the TCCWNA;

h.   Whether by charging consumers in New Jersey more than the advertised shelf price at checkout, Defendants failed to "substantiate through documents, records or other written proof any claim made regarding the… price of the advertised merchandise…. available for sale" (N.J.A.C. § 13:45A-9.2(a)(10)).

i.   Whether by charging consumers in New Jersey more than the advertised shelf price at checkout, Defendants advertised merchandise as a part of plan or scheme not to sell the item at the advertised price (N.J.S.A. § 56:8-2.2).

j.   Whether by charging consumers in New Jersey more than the advertised shelf price at checkout, Defendants advertised merchandise as a part of plan or scheme not to sell the item at the advertised price as required by the Price Disclosure Regulations (N.J.A.C. § 13:45A-14.10(a)(1).

k.   Whether by affixing an advertised price on store shelves which was less than the actual price charged for the merchandise at checkout, Defendants failed to plainly mark the total selling price as required by the CFA. (N.J.S.A. § 56:8-2.5).

l.   Whether by affixing an advertised price on store shelves which was less  than the actual price charged for the merchandise at checkout, violate the GA Regulations

and/or the Price Disclosure Regulations and/or the CFA, Defendants violated the Declaratory Judgment Act (N.J.S.A. §§ 2A:16-50, et seq.).

38. Plaintiff's claims are typical of the claims of the members of the class and subclass which he represents because all such claims arise out of the same policies, practices, and conduct, and the same or similar documents used by Defendants in their dealings with Plaintiff and putative class members.

39. Plaintiff has no interests antagonistic to those of the class.

40. Plaintiff will fairly and adequately protect the interests of the class and subclass, and has retained competent counsel experienced in the prosecution of consumer litigation and class actions.

41. Proposed Class Counsel has investigated and identified potential claims in this action.

42. Proposed Class Counsel has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

43. Defendants have acted, or refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

44. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  While the economic damages suffered by the individual members of the subclass are significant to those class members, the amount is modest compared to the expense and burden of individual litigation. A class action will cause an orderly and expeditious administration of the claims of the class, and will foster economies of time, effort, and expense.

A418

45. The questions of law or fact common to the members of the class and subclass predominate over any questions affecting only individual members.

46. A class action will cause an orderly and expeditious administration of the claims of the subclass, and will foster economies of time, effort and expense.

47. Plaintiff does not anticipate any difficulty in the management of this litigation.

## CLASS CLAIMS

### COUNT ONE (On Behalf of Plaintiff and the Class)
### New Jersey Declaratory Judgment
### (N.J.S.A. §§ 2A:16-50, *et seq.*)

48. Plaintiff repeats and re-alleges all of the prior allegations as if set forth at length herein.

49. At all relevant times, there was in effect the Declaratory Judgments Act ("DJA"), N.J.S.A. § 2A:16-52, which states, in relevant part:

All courts of record in this state shall, within their respective jurisdictions, have power to declare rights, status and other legal relations, whether or not further relief is or could be claimed; and no action or proceeding shall be open to objection on the ground that a declaratory judgment is demanded.

The enumeration in other sections of this article of the questions determinable and rights declarable in a proceeding brought under the provisions of this article does not limit or restrict the exercise of the general powers conferred by this section in a proceeding for declaratory relief, in which a judgment will terminate the controversy or remove an uncertainty.

50. The GA Regulations confer rights on the consumers in New Jersey as contemplated by the Uniform Declaratory Judgments Law.

51. The CFA is a statute that confers rights as contemplated by the Uniform Declaratory Judgments Law.

52. The Price Disclosure Regulations confer rights on the consumers in New Jersey as contemplated by the Uniform Declaratory Judgments Law.

53.   The TCCWNA is a statute that confers rights as contemplated by the Uniform Declaratory Judgments Law.

54.   Defendants violated the GA Regulations, CFA and TCCWNA by committing an unconscionable commercial practice, misrepresentations and or other affirmative unlawful act by violating the GA Regulations, the Price Disclosure Regulations, and the CFA in its actions in falsely advertising prices to Plaintiff and those similarly situated, which made an item appear cheaper than what it actually was.

55.   Plaintiff, individually, and on behalf of the Class, seeks an order declaring that Defendants' actions in advertising prices on its shelves which are less than the actual price of the merchandise charged to Plaintiff and class members violated the GA Regulations, Price Disclosure Regulations, CFA and TCCWNA.

56.   The controversies presented in this case are definite and concrete and affect the adverse legal interests of the parties. Plaintiff and Class members contend that Defendants are legally precluded from advertising prices on the shelves of Dollar General's New Jersey stores that are less than the actual price of the merchandise charged to persons in New Jersey who purchase that merchandise.

57.   There is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment because Defendants have provided and will continue to provide unlawful advertisements in New Jersey and charge its customers more than the prices advertised on Dollar General store shelves.

58.   The Court should enter a declaratory judgment that Defendants' actions in providing its New Jersey customers with shelf advertisements that understate the actual price of the

merchandise charged to its customers, like those Plaintiff encountered, violate the GA Regulations, Price Disclosure Regulations, CFA and TCCWNA.

59.   The Court should enter a declaratory judgment requiring Defendants to cease providing unlawful advertisements to its customers in New Jersey and also to cease charging more than the price advertised on the shelf of its New Jersey stores.

60.   Putative class members should be provided notice that Defendants' actions in providing unlawful advertisements violate the GA Regulations, Price Disclosure Regulations, CFA and TCCWNA.

61.   Putative class members should be provided notice that if they purchased an item and paid more than the advertised shelf price, like Plaintiff, they may also be a member of the Class and entitled to monetary relief under the CFA, GA Regulations, Price Disclosure Regulations, and TCCWNA.

62.   If the Court were to deny Plaintiff's request for declaratory relief, this controversy will continue to exist, as Defendants will continue to provide unlawful advertisements to its customers in New Jersey and continue to charge them more than advertised shelf price.

63.   As a result of the aforementioned violations, Plaintiff, on behalf of himself and the putative class, seeks a declaratory judgment that Defendants have violated the GA Regulations, the CFA, the Price Disclosure Regulations and the TCCWNA, injunctive relief enjoining Defendants from continuing to use advertisements that violate New Jersey law, and an award of reasonable attorneys' fees and costs.

### COUNT TWO (On Behalf of Plaintiff and the Class and Subclass)
### Violations of the GA Regulations and the CFA

64.   Plaintiff repeats and re-alleges all of the prior allegations as if set forth at length herein.

65. At all relevant times, there was in effect the General Advertising Regulations (the "GA Regulations"), N.J.A.C. § 13:45A-9.1, *et. seq.*

66. The GA regulations prohibit "the failure of an advertiser to substantiate through documents, records or other written proof any claim made regarding the….price of the advertised merchandise". N.J.A.C. § 13:45A-9.2(a)(10).

67. An advertisement violating the GA regulations is a *per se* violation of the CFA. *Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 468 (App. Div. 2001).

68. Defendants' price labels on shelves in Dollar General's New Jersey stores are "Advertisements" under the GA Regulations at N.J.A.C. § 13:45A-9.1 and under the CFA at N.J.S.A. § 56:8-1.

69. Defendants are "Advertisers" under the GA Regulations at N.J.A.C. § 13:45A-9.1.

70. Dollar General's unit price labels on its New Jersey store shelves for the sale of merchandise via its brick and mortar stores and the sale of merchandise are subject to the GA Regulations and the CFA.

71. Defendants have violated the GA regulations at N.J.A.C. § 13:45A-9.2(a)(10) by charging consumers more than the price advertised on its unit price labels at Dollar General's New Jersey stores.

72. Defendants' aforementioned violations of the GA Regulations constitute per se violations of the CFA and is an unconscionable commercial practice in direct violation of the CFA at N.J.S.A. 56:8-2.

73. Furthermore, Dollar General's "advertisement of merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price is an unlawful practice and a violation of the [CFA]." N.J.S.A. 56:8-2.2.

74. In addition, Defendants have engaged in unlawful, affirmative acts under the CFA, including unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in direct violation of the CFA in their interactions with Plaintiff and those similarly situated by charging a higher price at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves in Dollar General's New Jersey stores.

75. Plaintiff and those similarly situated paid more for the merchandise they purchased than the price advertised on the shelf labels for that merchandise at the times of their purchases.

76. As a direct result of Defendants' unit price mislabeling practices, Plaintiff and those similarly situated suffered an ascertainable loss in amounts they were overcharged in excess of the advertised price. Plaintiff suffered an ascertainable loss in the amounts he was overcharged.

77. As a result of the aforementioned violations, Plaintiff and those similarly situated re entitled to treble damages, reasonable attorney's fees and costs, pursuant to 56:8-19.

**COUNT THREE (On Behalf of Plaintiff and the Class and Subclass)**
**Violations of the Price Disclosure Regulations and the CFA**

78. Plaintiff repeats and re-alleges all of the prior allegations as if set forth at length herein.

79. At all relevant times, there was in effect the Unit Price Disclosure Regulations (the "PD Regulations"), N.J.A.C. § 13:45A-14.1, *et. Seq.*

80. At all relevant times, Defendants were "persons" under the PD Regulations, as they were:

> "corporation[s] or other organization[s] engaged in the sale, display or offering for sale of consumer commodities at retail establishment whose combined total floor area, exclusive of office, receiving and storage areas, dedicated to the sale of consumer commodities exceeds 4,000 square feet[4] or whose combined annual gross

---

[4] Specifically, Defendants noted in its March 19, 2021 2021 10-K that "we expect that our traditional 7,300 square foot store format will continue to be the primary store layout for new

receipts from the sale of consumer commodities in the preceding year exceeded $ 2 million, regardless of the square footage involved[5]."

N.J.A.C. § 13:45A-14.2.

81.  The PD Regulations "provide for the disclosure of information necessary to enable consumers to compare, easily and effectively, the retail prices of certain consumer commodities regardless of package size or quantity." N.J.A.C. § 13:45A-14.1.

82.  The merchandise Defendants sells at its Dollar General stores in New Jersey are "consumer commodities" under the PD Regulations. N.J.A.C. § 13:45A-14.2.

83.  The items that Plaintiff purchased are "consumer commodities".

84.  The PD Regulations at § 13:45A-14.10(a)(1) mandate, in relevant part:

> Whenever a regulated consumer commodity is exposed or offered for sale at retail, the unit price and retail price shall be disclosed in the following manner:
>
> If the commodity is displayed upon a shelf, the unit price label shall appear directly below the commodity, or, alternatively, a unit price tag shall be attached to the commodity. If the use of a unit price label or unit price tag is impossible or impractical, a unit price sign or list may be used provided such sign or list is conspicuously located at or near the commodity.

85.  The "retail price" is defined in the PD Regulations as "the total retail price of a consumer commodity, excluding sales tax." N.J.A.C. § 13:45A-14.2.

86.  Here, Defendants failed to properly disclose the actual retail price of its consumer goods in its unit price labels as the unit price labels understated the true retail price of the items charged to customers at Dollar General's stores in New Jersey.

---

stores in 2021." Therefore, Defendants are well in excess of the 4,000 square feet threshold under the PD Regulations.  *See* https://sec.report/Document/0001558370-21-003245/.

[5] Defendants' gross sales/revenue in 2022 to date is approximately $34,220,000,000, well in excess of the $2 million threshold under the PD Regulations. *See* https://www.wsj.com/market-data/quotes/DG/financials/annual/income-statement.

87. A price disclosure violating the PD Regulations is a *per se* violation of the CFA.

88. As a result of Defendants' aforementioned CFA Violations in the Dollar General stores in New Jersey, Plaintiff and those similarly situated suffered an ascertainable loss in amounts of the amount they were charged in excess of the unit price disclosure advertised on the shelves at Dollar General stores in New Jersey.

89. As a result of the aforementioned violations, Plaintiff and those similarly situated are entitled to treble damages, reasonable attorney's fees and costs, pursuant to 56:8-19.

**COUNT FOUR (On Behalf of Plaintiff and the Subclass)**
**Violations of the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA)**
**Predicated on Violations of the GA Regulations, PD Regulations, and the CFA**

90. Plaintiff repeats and re-alleges all of the prior allegations as if set forth at length herein.

91. The TCCWNA prohibits sellers from offering or giving written contracts or notices to consumers that contain any provision that violates a clearly established right of a consumer or a clearly established responsibility of a seller under New Jersey or Federal law. N.J.S.A. 56:12-15.

92. At all times relevant to this matter, Plaintiff and those similarly situated were "consumers" with regard to the unit price label advertisements that Dollar General uses at its stores in New Jersey within the meaning of the TCCWNA.

93. At all times relevant to this matter, Plaintiff and those similarly situated were customers of Defendants in that they had all purchased merchandise from Defendants in an amount which was greater than the advertised price.

94. At all times relevant to this matter, Defendants were "sellers" with regard to the sale of its merchandise at its stores within the meaning of the TCCWNA.

A425

95.     The unit price labels on Dollar General store shelves in its New Jersey stores which understated the true price of items that Dollar General provided to Plaintiff and those similarly situated were contracts and/or notices within the meaning of the TCCWNA.

96.     The purchase receipts that were provided to Plaintiff and those similarly situated who purchased merchandise at Dollar General stores in New Jersey were contracts and/or notices within the meaning of the TCCWNA.

97.     Defendants have violated the TCCWNA at N.J.S.A. 56:12-15 by entering into a consumer contract, displaying and/or giving consumer notices that contained provisions that violated clearly established rights of Plaintiff and all those similarly situated, as established by State law, and by offering a consumer contract that contained provisions that violated their clearly established responsibilities under State law.

98.     Specifically, as outlined, *supra*, Defendants' advertisements violated the GA Regulations at N.J.A.C. 13:45A-9.2(a)(10).

99.     It is a clearly established right of a consumer in New Jersey to not be provided with an advertisement that violates the GA Regulations at N.J.A.C. 13:45A-9.2(a)(10).

100.    It is a clearly established responsibility of a seller to not provide consumers in New Jersey with an advertisement that violates the GA Regulations at N.J.A.C. 13:45A-9.2(a)(10).

101.    The contracts/notices that Defendants provided to Plaintiffs and those similarly situated is unlawful because it contains provisions that violate the clearly established legal rights of Plaintiff and those similarly situated and violates Defendants' clearly established responsibilities under New Jersey law by employing methods to obscure the true price of its merchandise contrary to the requirements of the GA Regulations as set forth herein above and in direct violation of the CFA at N.J.S.A. § 56:8-2.

102.   Defendants were prohibited from advertising prices for its merchandise which were less than the true price of the merchandise

103.   Plaintiff and those similarly situated suffered a harm/were aggrieved because each received an unlawful contract/notice that violated their clearly established rights.

104.   Plaintiff and those similarly situated suffered a harm/were aggrieved because each paid an amount, referenced on their receipts, that was in excess of the amount stated on the unit the price label at Dollar General stores in New Jersey.

105.   Specifically, as outlined, *supra*, Defendants' contracts/ notices violated the PD Regulations at N.J.A.C. 13:45A-14.10(a)(1).

106.   It is a clearly established right of a consumer in New Jersey to not be provided with a unit price label that violates the PD Regulations at N.J.A.C. 13:45A-14.10(a)(1).

107.   It is a clearly established responsibility of a seller to not provide consumers in New Jersey with a unit price label that violates the PD Regulations at N.J.A.C. 13:45A-14.10(a)(1).

108.   The contract/notice that Defendants provided to Plaintiffs and those similarly situated in Dollar General's unit price labels is unlawful because it contains provisions that violate the clearly established legal rights of Plaintiff and those similarly situated and violates Defendants' clearly established responsibilities under New Jersey law by employing methods to obscure the true price of its merchandise contrary to the requirements of the PD Regulations as set forth herein above and in direct violation of the CFA at N.J.S.A. § 56:8-2.

109.   Defendants were prohibited from issuing unit price labels for its merchandise which were less than the true price of the merchandise

110.     Plaintiff and those similarly situated suffered a harm/were aggrieved because each received an unlawful unit price label that violated their clearly established rights.

111.     Plaintiff and those similarly situated suffered a harm/were aggrieved because each paid an amount, referenced on their receipts, that was in excess of the amount stated on the unit the price label at Dollar General stores in New Jersey.

112.     As a result of the aforementioned violations of the TCCWNA, Plaintiff and all others similarly situated are aggrieved consumers and are entitled to statutory damages of not less than $100.00 plus reasonable attorneys' fees, and costs pursuant to TCCWNA at <u>N.J.S.A.</u> 56:12-17 for each unlawful advertisement sent to them.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

*On behalf of himself and all others similarly situated as to the Class (Count One):*

a.     Certification of the class, as defined herein, for equitable relief pursuant to <u>Rule</u> 4:32-1(b)(2);

b.     Appointment of named Plaintiff, Ryan Button, as Class Representative and appointment of his attorneys as Class Counsel;

c.     Injunctive relief requiring Defendants to provide an accounting identifying all members of the class and subclass;

d.     Injunctive relief requiring Defendants to provide an accounting of all overcharges during the class period.

e.     A declaratory judgment that Defendants violated the GA Regulations, PD Regulations, CFA, and TCCWNA;

f.     Injunctive relief enjoining Defendants from engaging in future violations of the GA

Regulations, PD Regulations, CFA and TCCWNA;

g.      Equitable relief requiring Defendants to disgorge all improper gains received due to their violations of New Jersey state laws directly to identifiable class members, via a *cy pres* award and/or via a fluid recovery pursuant to R. 4:32-2(c).

h.      Injunctive relief requiring Defendants to provide notice to all members of the class that their purchases at Dollar General stores in New Jersey may have violated of the GA Regulations, PD Regulations, CFA, and TCCWNA and that if they were harmed or aggrieved or sustained and ascertainable loss that they can bring individual actions for statutory relief under TCCWNA, treble damages under the CFA and for an award of attorneys' fees and costs pursuant to both TCCWNA and the CFA;

i.      An award of reasonable attorneys' fees and costs of suit in connection with this action, pursuant to the court's equitable powers, the CFA at N.J.S.A. 56:8-19, and the TCCWNA at N.J.S.A. 56:12-17; and

j.      Such other and further relief as the Court deems equitable and just.

*On behalf of himself and all others similarly situated as to the Class (Counts Two, Three, and Four)*

k.      Certification of the Class and Subclass, as defined herein, for monetary relief pursuant to Rule 4:32-1(b)(3);

l.      Appointment of named Plaintiff, Ryan Button, as Class Representative and appointment of his attorneys as Class Counsel;

m.      Injunctive relief requiring Defendants to provide an accounting identifying all members of the class and subclass;

n.      Declaratory judgment that Defendants violated the GA Regulations, PD Regulations, CFA and TCCWNA;

A429

o.      Injunctive relief enjoining Defendants from engaging in future violations of the GA Regulations, PD Regulations, CFA and TCCWNA;

p.      Actual damages;

q.      Treble damages under the Consumer Fraud Act pursuant to the CFA at <u>N.J.S.A.</u> 56:8-19,

r.      Statutory civil penalties of $100 per illegal advertisement and corresponding purchase for an overcharge pursuant to the TCCWNA at <u>N.J.S.A.</u> 56:12-17;

s.      Reasonable attorneys' fees and costs of suit in connection with this action, pursuant to the CFA at <u>N.J.S.A.</u> 56:8-19 and TCCWNA at <u>N.J.S.A.</u> 56:12-17;

t.      Confer benefits upon the entire class, as a fluid class, pursuant to R.4:32-2(c);

u.      Equitable relief requiring Defendants to disgorge all improper gains received due to their violations of New Jersey state laws directly to identifiable class members, via a *cy pres* award and/or via a fluid recovery pursuant to R. 4:32-2(c);

v.      Pre-judgment and post-judgment interest; and

w.      Such other and further relief as the Court deems equitable and just.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues subject to trial.

## **NOTICE TO ATTORNEY GENERAL OF ACTION**

A copy of this Complaint will be mailed to the Attorney General of the State of New Jersey within ten (10) days after the filing of the Complaint with the Court, pursuant to <u>N.J.S.A.</u> 56:8-20.

## **DESIGNATION OF TRIAL COUNSEL**

Pursuant to <u>Rule</u> 4:25-4, Javier L. Merino, Esq. is hereby designated as trial counsel for Plaintiff.

A430

## CERTIFICATION

Pursuant to <u>Rule</u> 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party who should be joined in the action at this time.

<div style="text-align: right;">

<u>/s/ Javier L. Merino</u>
Javier L. Merino, Esq.
Andrew R. Wolf, Esq.
THE DANN LAW FIRM. PC
1520 U.S. Hwy. 130 – Suite 101
North Brunswick, NJ 08902
*Attorneys for Plaintiff, on behalf of
himself and others similarly situated*

</div>

Date: October 6, 2022

A431

EXHIBIT A

CERTIFICATION OF JAVIER L. MERINO, ESQ.

A432





A434



A435

DOLLAR GENERAL STORE #23861
KEYPORT, NJ 732-708-5083

| | | | |
|---|---|---|---|
| CV 2 MILK HG | 070744009652 E | 3.20 | |
| GM LUCKY CHARMS XL | 016000169678 E | 9.50 | |
| 2 @ 4.75 | | | |
| JAX CHEESE CURLS 9 | 077817192273 E | 3.00 | |
| CV SALTED BUTTER 1 | 079176008158 E | 4.50 | |
| CV VANILLA SQ | 070640022199 E | 3.50 | |
| NESTLE PUSH UP VAR | 072554173783 E | 4.35 | |
| CELLOS ADULT-AG | 605030337043 | 2.00 | S |
| 2 @ 1.00 | | | |
| DR PEPPER DIET 12P | 078000083163 E | 13.50 | S |
| 2 @ 6.75 | | | |
| STORE DISCOUNT | | 3.50-S | |
| SUBTOTAL | | $40.05 | |
| Tax1 | | $0.80 | |
| TOTAL SALE | | $40.85 | |
| Visa | 0083 CHIP | $40.85 | |

AUTH# 016035
REF: 000000000167 AID: A0000000031010

TOTAL SAVINGS
$3.50

2022-06-16  11:00:48  23861 01          4504

8917704130344391155159594199197445133 21161

---------------CUT HERE----------------

****************************************
* Complete survey at dgcustomerfirst.com *
*       For a chance to                 *
* WIN A $100 Gift Card                  *
* Weekly Drawings, Must be 18+ to enter *
*       Survey Code                     *
*      2370-5438-1076-712               *
****************************************
------CUT HERE----------



A436

EXHIBIT B

CERTIFICATION OF JAVIER L. MERINO, ESQ.

A437



A438

DOLLAR GENERAL STORE #23861
KEYPORT, NJ 732-708-5083

PIRATES BOOTY WHIT 015665601004 E    2.75
TOTAL SALE                           $2.75
Visa                    0083 CHIP     $2.75
AUTH# 021283
REF: 000000001001 AID: A0000000031010
2022-06-21  09:08:33  23861 01        5780

8917706990034391150159114196697446 11331831

------------------CUT HERE------------------
********************************************* *
* Complete survey at dgcustomerfirst.com *
*            For a chance to             *
*WIN A $100 Gift Card*
* Weekly Drawings, Must be 18+ to enter  *
*          Survey Code                   *
* 2370-6698-1081-792 *
********************************************* *
------------------CUT HERE------------------

**SATURDAY JUNE 25TH ONLY!**
**DG Store Coupon**          Valid 6/25/2022

# $5 OFF $25

$5 off your purchase of
$25 or more (pretax)

OR SHOP ONLINE: USE PROMO CODE DGSAVEJUN

A439

EXHIBIT C

CERTIFICATION OF JAVIER L. MERINO, ESQ.



A441

```
        DOLLAR GENERAL STORE #23861
           KEYPORT, NJ 732-708-5083

CV VANILLA IC PAIL 070640022151 E    6.75
CV MACARONI CHEESE 076924889014 E    1.50
   2 @ 0.75
CV 2 MILK HG       070744009652 E    3.20
TOTAL  SALE                       $11.45
Visa              0083 CHIP       $11.45
AUTH# 023159
REF: 000000001316 AID: A0000000031010
2022-06-23  10:48:23  23861 01         6274
```

8917701830344391152159204196697447133331571

----------------CUT HERE----------------
*****************************************  *
*  Complete survey at dgcustomerfirst.com  *
*            For a chance to                *
* WIN  A  $100  Gift  Card *
*  Weekly Drawings, Must be 18+ to enter    *
*            Survey Code                     *
*  2370-7138-1083-782  *
*****************************************  *
----------------CUT HERE----------------

**SATURDAY JUNE 25TH ONLY!**

DG Store Coupon          Valid 6/25/2022

**$5 OFF $25**

$5 off your purchase of
$25 or more (pretax)

OR SHOP ONLINE: USE PROMO CODE DGSAVEJUN

$25 or more (pretax) after all other DG
discounts. Limit one DG $2, $3, or $5
off store coupon per customer. Excludes:

A442

EXHIBIT D

**CERTIFICATION OF JAVIER L. MERINO, ESQ.**

A443



A444



A445

DOLLAR GENERAL STORE #23861
KEYPORT, NJ 732-708-5083

| | | | |
|---|---|---|---|
| COKE ZERO | 049000042559 E | 20.25 | S |
| 3 @ 6.75 | | | |
| STORE DISCOUNT | | 10.25-| S |
| BE MXD VEG | 014500021281 E | 6.00 | |
| 6 @ 1.00 | | | |
| BIRDSEYE STEAMFRSH | 014500010988 E | 3.00 | |
| 3 @ 1.00 | | | |
| ARMOUR LUNCHMAKER- | 046600034274 E | 2.00 | |
| 2 @ 1.00 | | | |
| CV SM CURD COTTAGE | 070744009775 E | 2.40 | |
| ARMOUR SMOKED HAM | 027815091450 E | 3.75 | |
| CBAD MINI BF RAVIO | 064144043064 E | 2.50 | |
| 2 @ 1.25 | | | |
| DGH ZIPPER SANDWIC | 840323105873 | 2.35 | S |
| REG LAYS | 028400090858 E | 1.00 | |
| 2 @ 0.50 | | | |
| SUBTOTAL | | $33.00 | |
| Tax1 | | $0.82 | |
| TOTAL SALE | | $33.82 | |
| MasterCard | 7712 CHIP | $33.82 | |

AUTH# 01712B
REF: 000000000489 AID: A0000000041010

TOTAL SAVINGS
$10.25
2022-06-28  12:30:57  23861 01          0933

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
891770842003439115716942919666034111331148

---------------CUT HERE----------------
******************************************
* Complete survey at dgcustomerfirst.com *
*          For a chance to               *
*WIN A $100 Gift Card*
* Weekly Drawings, Must be 18+ to enter   *
*          Survey Code                    *
*      2370-1828-1088-742               *
******************************************
---------------CUT HERE----------------
SATURDAY JULY 2ND ONLY!
DG Store Coupon          Valid 7/2/2022
$5 OFF $25

A446







EXHIBIT E

CERTIFICATION OF JAVIER L. MERINO, ESQ.

Case 3:22-cv-03023-RK-DDC Document 138-1 Page 47 of 77 Date Filed 04/21/2023 PageID: 1222



DOLLAR GENERAL STORE #23861
KEYPORT, NJ 732-708-5083

| | | | |
|---|---|---|---|
| BE MXD VEG | 014500021281 E | 6.00 | |
| 6 @ 1.00 | | | |
| OREO COOKE ORIG 4P | 044000055653 E | 1.00 | |
| CV MACARONI CHEESE | 076924889014 E | 3.00 | |
| 4 @ 0.75 | | | |
| FRUIT BY THE FOOT | 016000194304 E | 5.70 | S |
| 2 @ 2.85 | | | |
| UTZ 10CT ORIGINAL | 041780192646 E | 5.25 | |
| GOODNITES S-M GIRL | 036000413144 | 11.50 | |
| SPASOAP ALOE REFIL | 852474169109 | 1.00 | S |
| XTRA LDS W BLCH AL | 850038699000 | 1.00 | S |
| PS MENS 3N1 C.BLUE | 815195012024 | 1.00 | S |
| VO5 MENS 3N1 OCN S | 816559015149 | 1.00 | S |
| S S 3-ROLL JUMBO W | 013100301601 | 2.35 | |
| SCOTT 8PK 1000 SHE | 054000119712 | 8.35 | |
| ALL FREE  CLEAR 8 | 072613739455 | 8.00 | S |
| COKE ZERO | 049000042659 E | 40.50 | S |
| 6 @ 6.75 | | | |
| STORE DISCOUNT | | 18.50-S | |
| SUBTOTAL | | $77.15 | |
| Tax1 | | $2.63 | |
| TOTAL SALE | | $79.78 | |
| Visa | 0083 CHIP | $79.78 | |

AUTH# 001492
REF: 000000000826 AID: A0000000031010

TOTAL SAVINGS
$18.50
2022-07-01  10:37:17  23861 01          1535

89177044403443911601598641041974421331221

----------------CUT HERE----------------
*****************************************
* Complete survey at dgcustomerfirst.com *
*         For a chance to               *
*WIN A $100 Gift Card*
* Weekly Drawings, Must be 18+ to enter *

A450



A451

# Civil Case Information Statement

**Case Details: MONMOUTH | Civil Part Docket# L-002774-22**

**Case Caption:** BUTTON RYAN  VS DOLLAR GENERAL CORPO RATION, D

**Case Initiation Date:** 10/10/2022

**Attorney Name:** JAVIER LUIS MERINO

**Firm Name:** THE DANN LAW FIRM, PC

**Address:** 1520 U.S. HIGHWAY 130 STE 101 NORTH BRUNSWICK NJ 08902

**Phone:** 2013553440

**Name of Party:** PLAINTIFF : Button, Ryan

**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Ryan Button? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**
This is a putative class action requiring TK 4 management for the complexities of class cert, notice, class wide discover, lit

**Do you or your client need any disability accommodations?** NO
          **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
          **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** YES

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

<u>10/10/2022</u>
Dated

<u>/s/ JAVIER LUIS MERINO</u>
Signed

A452

A453

## Case Summary

**Case Number:** MON L-002774-22

**Case Caption:** Button Ryan  Vs Dolgen Corp Llc

| | | |
|---|---|---|
| **Court:** Civil Part | **Venue:** Monmouth | **Case Initiation Date:** 10/10/2022 |
| **Case Type:** Complex Commercial | **Case Status:** Closed | **Jury Demand:** 6 Jurors |
| **Case Track:** 4 | **Judge:** Mara Zazzali-Hogan | **Team:** 3 |
| **Original Discovery End Date:** | **Current Discovery End Date:** | **# of DED Extensions:** 0 |
| **Original Arbitration Date:** | **Current Arbitration Date:** | **# of Arb Adjournments:** 0 |
| **Original Trial Date:** | **Current Trial Date:** | **# of Trial Date Adjournments:** 0 |
| **Disposition Date:** 12/06/2022 | **Case Disposition:** Transferred To Another Court | **Statewide Lien:** |

### Plaintiffs
**Ryan  Button**

| | | |
|---|---|---|
| **Party Description:** Individual | | **Attorney Name:** Javier Luis Merino |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** 078112014 |
| **City:** | **State:** NJ | **Zip:** 00000 | **Phone:** |

**Attorney Email:** JMERINO@DANNLAW.COM

### Defendants
**Dolgencorp Llc AKA  D/B/A Dollar General**

| | | |
|---|---|---|
| **Party Description:** Business | | **Attorney Name:** Philip Andrew Goldstein |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** 025732001 |
| **City:** | **State:** NJ | **Zip:** 00000 | **Phone:** |

**Attorney Email:** PAGOLDSTEIN@MCGUIREWOODS.COM

**Todd  Vasos**

| | | |
|---|---|---|
| **Party Description:** Individual | | **Attorney Name:** Philip Andrew Goldstein |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** 025732001 |
| **City:** | **State:** NJ | **Zip:** 00000 | **Phone:** |

**Attorney Email:** PAGOLDSTEIN@MCGUIREWOODS.COM

**Jeff  Owen**

| | | |
|---|---|---|
| **Party Description:** Individual | | **Attorney Name:** Philip Andrew Goldstein |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** 025732001 |
| **City:** | **State:** NJ | **Zip:** 00000 | **Phone:** |

**Attorney Email:** PAGOLDSTEIN@MCGUIREWOODS.COM

**Steve  Sunderland**

| | | |
|---|---|---|
| **Party Description:** Individual | | **Attorney Name:** Philip Andrew Goldstein |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** 025732001 |
| **City:** | **State:** NJ | **Zip:** 00000 | **Phone:** |

**Attorney Email:** PAGOLDSTEIN@MCGUIREWOODS.COM

**Emily  Taylor**

| | | |
|---|---|---|
| **Party Description:** Individual | | **Attorney Name:** Philip Andrew Goldstein |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** 025732001 |
| **City:** | **State:** NJ | **Zip:** 00000 | **Phone:** |

**Attorney Email:** PAGOLDSTEIN@MCGUIREWOODS.COM

A454

| Ividually , John Does 1-500, Ind | | | | | |
|---|---|---|---|---|---|
| **Party Description:** Fictitious | | | | **Attorney Name:** | |
| **Address Line 1:** | | | **Address Line 2:** | **Attorney Bar ID:** | |
| **City:** | **State:** NJ | | **Zip:** 00000 | **Phone:** | |
| **Attorney Email:** | | | | | |

### Case Proceeding

| Created Date | Scheduled Time | Court Room | Judge Name | Proceeding Description | Motion Type | Proceeding Status | Motion Status |
|---|---|---|---|---|---|---|---|
| 11/18/2022 | 09:00 | REMOT | MARA ZAZZALI-HOGAN | MOTION HEARING | MOTION TO CORRECT DATA | COMPLETED | CM |

### Case Actions

| Filed Date | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|
| 10/10/2022 | Complaint with Jury Demand for MON-L-002774-22 submitted by MERINO, JAVIER LUIS, THE DANN LAW FIRM, PC on behalf of RYAN BUTTON against DOLLAR GENERAL CORPORATION, DO, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR ET AL. | LCV20223595492 | 10/10/2022 |
| 10/11/2022 | TRACK ASSIGNMENT Notice submitted by Case Management | LCV20223596039 | 10/11/2022 |
| 10/11/2022 | DEFICIENCY NOTICE: re: Complaint [LCV20223595492] -Data Submitted Does Not Match Documents DF Dolgencorp is listed on the complaint but not in ecourts/ACMS - a motion to correct data is needed. | LCV20223602407 | 10/11/2022 |
| 10/13/2022 | CLERK NOTICE: re: Complaint [LCV20223595492] -Because class actions are excluded from the CBLP program, this matter will proceed in the normal course as a Track IV case, as per Judge Zazzali-Hogan. | LCV20223632194 | 10/13/2022 |
| 10/19/2022 | ORDER TO REMOVE FROM COMPLEX BUSINESS LITIGATION - GRANTED by Judge MARA ZAZZALI-HOGAN | LCV20223649853 | 10/19/2022 |
| 10/21/2022 | NOTICE OF APPEARANCE (NOT THE FIRST PAPER) submitted by RUDNICK, JONATHAN, S of JONATHAN RUDNICK, LLC on behalf of RYAN BUTTON against DOLLAR GENERAL CORPORATION, DO, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR ET AL. | LCV20223719863 | 10/21/2022 |
| 10/28/2022 | MOTION TO CORRECT DATA submitted by MERINO, JAVIER, LUIS of THE DANN LAW FIRM, PC on behalf of RYAN BUTTON against DOLLAR GENERAL CORPORATION, DO, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR ET AL. | LCV20223779730 | 10/28/2022 |
| 10/28/2022 | The motion filed on 10/28/2022 will be decided on 11/18/2022. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION TO CORRECT DATA [LCV20223779730] | LCV20223780778 | 10/28/2022 |
| 11/18/2022 | ORDER TO CORRECT DATA-Granted by Judge ZAZZALI-HOGAN re: MOTION TO CORRECT DATA [LCV20223779730] | LCV20223995994 | 11/18/2022 |
| 12/05/2022 | NOTICE OF REMOVAL submitted by GOLDSTEIN, PHILIP, ANDREW of MCGUIREWOODS LLP on behalf of DOLGENCORP LLC, TODD VASOS, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR against RYAN BUTTON | LCV20224138404 | 12/05/2022 |

A455

# U.S. District Court
## District of New Jersey [LIVE] (Trenton)
## CIVIL DOCKET FOR CASE #: 3:22-cv-07028-MAS-RLS

BUTTON v. DOLLAR GENERAL CORPORATION et al
Assigned to: Judge Michael A. Shipp
Referred to: Magistrate Judge Rukhsanah L. Singh
Case in other court: SUPERIOR COURT OF NEW JERSEY,
               MONMOUTH COUNTY, MON L 002774 22
Cause: 28:1441 Notice of Removal- Fraud

Date Filed: 12/05/2022
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**RYAN BUTTON**
*on behalf of himself and those similarly
situated*

represented by **ANDREW R. WOLF**
THE DANN LAW FIRM PC
1520 U.S HIGHWAY 130
SUITE 101
NORTH BRUNSWICK, NJ 08902
732-545-7900
Fax: 732-545-1030
Email: awolf@dannlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JAVIER LUIS MERINO**
DANN LAW FIRM
1520 U.S. HIGHWAY 130
SUITE 101
NORTH BRUNSWICK, NJ 08902
201-355-3440
Fax: 216-373-0536
Email: jmerino@dannlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DOLLAR GENERAL CORPORATION**

represented by **PHILIP ANDREW GOLDSTEIN**
MCGUIRE WOODS LLP
1251 AVENUE OF THE AMERICAS
20TH FLOOR
NEW YORK, NY 10020
212-548-2167
Email: pagoldstein@mcguirewoods.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**DOLGENCORP, LLC**
*agent of*
DOLLAR GENERAL

represented by **PHILIP ANDREW GOLDSTEIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

A456

**Defendant**

**TODD VASOS**                              represented by   **PHILIP ANDREW GOLDSTEIN**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**JEFF OWEN**                               represented by   **PHILIP ANDREW GOLDSTEIN**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**STEVE SUNDERLAND**                        represented by   **PHILIP ANDREW GOLDSTEIN**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**EMILY TAYLOR**                            represented by   **PHILIP ANDREW GOLDSTEIN**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN DOES 1-500**
*individually, jointly, severally, or in the
alternative*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/05/2022 | 1 | NOTICE OF REMOVAL by STEVE SUNDERLAND, DOLGENCORP, LLC D/B/A DOLLAR GENERAL, EMILY TAYLOR, DOLLAR GENERAL CORPORATION, TODD VASOS, JEFF OWEN from Superior Court of the State of New Jersey, Monmouth County, Law Division, case number MON-L-002774-22. ( Filing and Admin fee $ 402 receipt number ANJDC-13874853), filed by STEVE SUNDERLAND, DOLGENCORP, LLC D/B/A DOLLAR GENERAL, EMILY TAYLOR, DOLLAR GENERAL CORPORATION, TODD VASOS, JEFF OWEN. (Attachments: # 1 Exhibit 1 - State Court Pleadings, # 2 Exhibit 2 - Notice to State Court and Adverse Parties, # 3 Exhibit 3 - Slip, # 4 Civil Cover Sheet, # 5 Certificate of Service)(GOLDSTEIN, PHILIP) (Entered: 12/05/2022) |
| 12/05/2022 | 2 | Exhibit to 1 Notice of Removal,, *Exhibit 3 - Declaration of Philip A. Goldstein in Support of Notice of Removal* by DOLGENCORP, LLC D/B/A DOLLAR GENERAL, DOLLAR GENERAL CORPORATION, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, TODD VASOS. (GOLDSTEIN, PHILIP) |
| | | NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 12/05/2022) |
| 12/05/2022 | 3 | Corporate Disclosure Statement by DOLLAR GENERAL CORPORATION identifying no parent corporation as Corporate Parent.. (GOLDSTEIN, PHILIP) (Entered: 12/05/2022) |
| 12/05/2022 | 4 | Corporate Disclosure Statement by DOLGENCORP, LLC D/B/A DOLLAR GENERAL identifying Dollar General Corporation as Corporate Parent.. (GOLDSTEIN, PHILIP) |

| | | (Entered: 12/05/2022) |
|---|---|---|
| 12/05/2022 | 5 | Third Party Litigation Funding disclosure statement pursuant to L.Civ.R 7.1.1(a)(1-3) filed by DOLLAR GENERAL CORPORATION. (GOLDSTEIN, PHILIP) (Entered: 12/05/2022) |
| 12/05/2022 | 6 | Third Party Litigation Funding disclosure statement pursuant to L.Civ.R 7.1.1(a)(1-3) filed by DOLGENCORP, LLC D/B/A DOLLAR GENERAL. (GOLDSTEIN, PHILIP) (Entered: 12/05/2022) |
| 12/05/2022 | | Judge Michael A. Shipp and Magistrate Judge Rukhsanah L. Singh added. (kht) (Entered: 12/06/2022) |
| 12/06/2022 | 7 | NOTICE of Appearance by ANDREW R. WOLF on behalf of RYAN BUTTON (WOLF, ANDREW) (Entered: 12/06/2022) |
| 12/06/2022 | 8 | NOTICE of Appearance by JAVIER LUIS MERINO on behalf of RYAN BUTTON (MERINO, JAVIER) (Entered: 12/06/2022) |
| 12/06/2022 | 9 | ORDER Scheduling Conference set for 1/31/2023 at 10:30 AM before Magistrate Judge Rukhsanah L. Singh. Signed by Magistrate Judge Rukhsanah L. Singh on 12/6/2022. (kht) (Entered: 12/06/2022) |
| 12/07/2022 | 10 | Application and Proposed Order for Clerk's Order to extend time to answer as to Defendants.. (Attachments: # 1 Certificate of Service)(GOLDSTEIN, PHILIP) (Entered: 12/07/2022) |
| 12/08/2022 | 11 | MOTION for Leave to Appear Pro Hac Vice *of Marc E. Dann* by RYAN BUTTON. (Attachments: # 1 Certification Certification of Javier L. Merino, # 2 Certification Certification of Marc E. Dann with Exhibits, # 3 Text of Proposed Order Proposed Order Granting Pro Hac Vice to Marc E. Dann)(MERINO, JAVIER) (Entered: 12/08/2022) |
| 12/09/2022 | | Clerk`s Text Order - The document 10 Application for Clerk's Order to Ext Answer/Proposed Order submitted by STEVE SUNDERLAND, DOLGENCORP, LLC, EMILY TAYLOR, DOLLAR GENERAL CORPORATION, TODD VASOS, JEFF OWEN has been GRANTED. The answer due date has been set for 12/27/2022. (jal, ) (Entered: 12/09/2022) |
| 12/09/2022 | | Set Deadlines as to 11 MOTION for Leave to Appear Pro Hac Vice *of Marc E. Dann*. Motion set for 1/3/2023 before Magistrate Judge Rukhsanah L. Singh. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (jal, ) (Entered: 12/09/2022) |
| 12/12/2022 | | CLERK'S QUALITY CONTROL MESSAGE - Please be advised, pursuant to Fed. R. Civ. P. 7.1, a disclosure statement is required to be filed by parties and intervenors in diversity actions to identify the citizenship of every individual or entity whose citizenship is attributed to that party or intervenor. Such disclosure statements must be filed with the partys, intervenors or proposed intervenors first appearance, pleading, petition, motion, response or other request addressed to the Court. (jjc, ) (Entered: 12/12/2022) |
| 12/19/2022 | 12 | Exhibit to 1 Notice of Removal,, *Exhibit 3 "(Redacted)"-Declaration of Philip A. Goldstein in Support of Notice of Removal* by DOLGENCORP, LLC, DOLLAR GENERAL CORPORATION, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, TODD VASOS. (GOLDSTEIN, PHILIP) (Entered: 12/19/2022) |
| 12/19/2022 | 13 | MOTION to Seal by DOLGENCORP, LLC, DOLLAR GENERAL CORPORATION, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, TODD VASOS. (Attachments: |

A458

| | | |
|---|---|---|
| | | # 1 Declaration of Philip A. Goldstein In Support of Motion, # 2 Topics Index, # 3 (Proposed) Order, # 4 Certificate of Service)(GOLDSTEIN, PHILIP) (Entered: 12/19/2022) |
| 12/20/2022 | 14 | Corporate Disclosure Statement by EMILY TAYLOR. (GOLDSTEIN, PHILIP) (Entered: 12/20/2022) |
| 12/20/2022 | 15 | Corporate Disclosure Statement by TODD VASOS. (GOLDSTEIN, PHILIP) (Entered: 12/20/2022) |
| 12/20/2022 | 16 | Corporate Disclosure Statement by JEFF OWEN. (GOLDSTEIN, PHILIP) (Entered: 12/20/2022) |
| 12/20/2022 | 17 | Corporate Disclosure Statement by STEVE SUNDERLAND. (GOLDSTEIN, PHILIP) (Entered: 12/20/2022) |
| 12/20/2022 | 18 | Third Party Litigation Funding disclosure statement pursuant to L.Civ.R 7.1.1(a)(1-3) filed by STEVE SUNDERLAND. (GOLDSTEIN, PHILIP) (Entered: 12/20/2022) |
| 12/20/2022 | 19 | Third Party Litigation Funding disclosure statement pursuant to L.Civ.R 7.1.1(a)(1-3) filed by JEFF OWEN. (GOLDSTEIN, PHILIP) (Entered: 12/20/2022) |
| 12/20/2022 | 20 | Third Party Litigation Funding disclosure statement pursuant to L.Civ.R 7.1.1(a)(1-3) filed by EMILY TAYLOR. (GOLDSTEIN, PHILIP) (Entered: 12/20/2022) |
| 12/20/2022 | 21 | Third Party Litigation Funding disclosure statement pursuant to L.Civ.R 7.1.1(a)(1-3) filed by TODD VASOS. (GOLDSTEIN, PHILIP) (Entered: 12/20/2022) |
| 12/20/2022 | 22 | Corporate Disclosure Statement by DOLLAR GENERAL CORPORATION. (GOLDSTEIN, PHILIP) (Entered: 12/20/2022) |
| 12/20/2022 | 23 | Corporate Disclosure Statement by DOLGENCORP, LLC identifying Dollar General Corporation as Corporate Parent.. (GOLDSTEIN, PHILIP) (Entered: 12/20/2022) |
| 12/21/2022 | 24 | NOTICE by DOLGENCORP, LLC, DOLLAR GENERAL CORPORATION, JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, TODD VASOS *of Supplemental Submission of State Court Filings* (Attachments: # 1 Exhibit Exhibits to Complaint, # 2 Exhibit Summons Issued to Dollar General, # 3 Exhibit Civil Case Information Statement, # 4 Exhibit Track Assignment Notice, # 5 Exhibit Deficiency Notice Regarding Complaint, # 6 Exhibit Clerk's Notice, # 7 Exhibit Court Order, # 8 Exhibit Notice of Appearance, # 9 Exhibit Misc Motion Papers, # 10 Exhibit Text Entry, # 11 Exhibit Discovery) (GOLDSTEIN, PHILIP) (Entered: 12/21/2022) |
| 12/21/2022 | 25 | ORDER granting 11 Motion for Leave to Appear Pro Hac Vice as to Marc E. Dann. Signed by Magistrate Judge Rukhsanah L. Singh on 12/19/2022. (jal, ) (Entered: 12/21/2022) |
| 12/21/2022 | | Set Deadlines as to 13 MOTION to Seal . Motion set for 1/17/2023 before Magistrate Judge Rukhsanah L. Singh. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (jal, ) (Entered: 12/21/2022) |
| 12/27/2022 | 26 | MOTION to Dismiss by JEFF OWEN, STEVE SUNDERLAND, EMILY TAYLOR, TODD VASOS. (Attachments: # 1 Exhibit Memorandum of Law In Support of Motion to Dismiss, # 2 Exhibit Declaration of Philip A. Goldstein In Support of Motion to Dismiss, # 3 Exhibit Complaint, # 4 Exhibit Unreported Cases, # 5 Exhibit (Proposed) Order, # 6 Exhibit Certificate of Service)(GOLDSTEIN, PHILIP) (Entered: 12/27/2022) |
| 12/27/2022 | 27 | MOTION to Dismiss by DOLGENCORP, LLC, DOLLAR GENERAL CORPORATION. (Attachments: # 1 Exhibit Memorandum of Law In Support of Motion to Dismiss, # 2 |

A459

| | | Exhibit Declaration of Philip A. Goldstein In Support of Motion to Dismiss, # [3](#) Exhibit Complaint, # [4](#) Exhibit Dolgencorp LLC's Price Override/Price Match Policy, # [5](#) Exhibit Unreported Cases, # [6](#) Exhibit (Proposed Order), # [7](#) Exhibit Certificate of Service) (GOLDSTEIN, PHILIP) (Entered: 12/27/2022) |
|---|---|---|
| 12/28/2022 | | Set Deadlines as to [26](#) MOTION to Dismiss . Motion set for 2/6/2023 before Judge Michael A. Shipp. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (jal, ) (Entered: 12/28/2022) |
| 12/28/2022 | | Set Deadlines as to [27](#) MOTION to Dismiss . Motion set for 2/6/2023 before Judge Michael A. Shipp. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (jal, ) (Entered: 12/28/2022) |
| 12/28/2022 | [28](#) | Letter from Philip A. Goldstein to the Hon. Rukhsanah L. Singh re: Pro Hac Vice Application. (Attachments: # [1](#) Certification of Philip A. Goldstein, # [2](#) Certification of R. Trent Taylor, # [3](#) Proposed Order, # [4](#) Certificate of Service)(GOLDSTEIN, PHILIP) (Entered: 12/28/2022) |
| 01/03/2023 | [29](#) | ORDER Granting pro hac vice admission, as to Trent Taylor. Signed by Magistrate Judge Rukhsanah L. Singh on 1/3/2023. (jdg, ) (Entered: 01/03/2023) |
| 01/03/2023 | [30](#) | RESPONSE in Opposition filed by RYAN BUTTON re [13](#) MOTION to Seal (MERINO, JAVIER) (Entered: 01/03/2023) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/04/2023 10:02:07 | | | |
| **PACER Login:** | merinolawpc | **Client Code:** | 07457-Button |
| **Description:** | Docket Report | **Search Criteria:** | 3:22-cv-07028-MAS-RLS Start date: 1/1/1980 End date: 1/4/2023 |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

support of this Notice of Removal, and in accordance with 28 U.S.C. § 1446, Defendants state as follows:

## PROCEDURAL BACKGROUND

1.      Plaintiff Ryan Button, a citizen and resident of New Jersey, filed a complaint in the Superior Court of New Jersey, Law Division, Monmouth County, dated October 6, 2022, captioned *Ryan Button, on Behalf of Himself and Those Similarly Situated v. Dollar General Corporation, Dolgencorp, LLC d/b/a Dollar General, Todd Vasos, Jeff Owen, Steve Sunderland, Emily Taylor, and John Does 1-500*, bearing docket number MON-L-002774-22 ("State Court Action").

2.      On November 4, 2022, the summons and complaint were served on Dolgencorp, LLC and the individual defendants.[1]

3.      Removal of the complaint is timely because this Notice of Removal is filed within 30 days after November 4, 2022, as that time is calculated under the Federal Rules of Civil Procedure, and within 1 year of Plaintiff filing the complaint.  28 U.S.C. §§ 1446(b)(1), (c)(1); 1453(b); Fed. R. Civ. P. 6(a).

4.      The State Court Action has not been previously removed to federal court.

5.      Defendants have not filed any responsive pleadings in the State Court Action.

6.      Defendants are informed and believe that there has been no service of process upon any "Does," which are fictitious defendants and therefore disregarded for the purpose of this removal.  28 U.S.C. § 1441(b)(1); *see also Ortiz v. Richmond Elevator Co., Inc.*, No. 15–672 (CCC), 2015 WL 5945433, at *6 (D.N.J. Sept. 29, 2015) (citing 28 U.S.C. § 1441(b)(1) stating "the citizenship of fictitious parties such as John Doe or ABC Corporation is disregarded for

---

[1]      Each of the named defendants in this suit joins in and consents to the removal.

Case 3:22-cv-00031-RDM Document 136-1 Filed 07/22/23 Page 490 of 602 PageID: 1235

# EXHIBIT 3

IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

**NORMAN HUSAR**, on behalf of himself
and those similarly situated,

Case No. **22 C V 207 19 5**

    Plaintiff(s)

    v.

**PRAECIPE FOR SERVICE**

**DOLGEN MIDWEST, LLC**
**d/b/a DOLLAR GENERAL**,

    Defendant.

TO THE CLERK OF COURT:

Please serve a copy of the Summons, Time-Stamped Complaint, and All Exhibits upon the
following party via certified mail:

**DOLGEN MIDWEST, LLC**
**d/b/a DOLLAR GENERAL**,
c/o Corporation Service Company
3366 Riverside Dr., Ste. 103
Upper Arlington, OH 43221

Respectfully submitted,

Whitney Kaster(0091540)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Michael A. Smith Jr. (0097147)
**DANN LAW**
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiff and the Putative Classes*

IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

**NORMAN HUSAR**, on behalf of himself
and those similarly situated,
% DannLaw
15000 Madison Avenue
Lakewood, OH 44107

      Plaintiff(s)

      v.

**DOLGEN MIDWEST, LLC**
**d/b/a DOLLAR GENERAL,**
c/o Corporation Service Company
3366 Riverside Dr., Ste. 103
Upper Arlington, OH 43221

      Defendant.

Case No. **22CV207195**

Judge **TOM ORLANDO**

**CLASS ACTION COMPLAINT FOR
DAMAGES**

**JURY DEMAND ENDORSED HEREON**

Plaintiff Norman Husar ("Plaintiff"), individually and on behalf of all others similarly

situated, through his attorneys, brings this action against Defendant DolGen Midwest, LLC d/b/a

Dollar General ("Defendant" or "DG"), and alleges upon personal knowledge as to his own

actions and experiences, and upon investigation, information and belief as to all others, as

follows:

## NATURE OF THE ACTION

1.    This is a consumer protection class action against DG arising out of DG's policies

and procedures of regularly charging the Plaintiff and putative class members a higher price at

the register than the price of merchandise advertised on the shelves at the time of sale at Dollar

General stores across Ohio.

2.    This class action arises from DG's regular practice of charging customers a higher

price on various items than the price advertised on its shelves in violation of the Ohio Consumer

Sales Practices Act, ORC 1345.01, *et seq*.

## PARTIES, JURISDICTION, AND VENUE

3.    Plaintiff Norman Husar ("Plaintiff") is a natural person who resides in the City of Cincinnati, County of Hamilton, State of Ohio.

4.    Defendant Dolgen Midwest, LLC d/b/a Dollar General ("DG") is a foreign limited liability company organized under the laws of the State of Tennessee with its principal place of business located at 100 Mission Ridge, Goodlettsville, TN 37072.

5.    This Court has jurisdiction pursuant to R.C. 1345.04 as this action arises under the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.* ("CSPA").

6.    Venue lies in this Court as the substantial majority of the transactions giving rise to the Plaintiff's causes of action occurred within various DG stores throughout Lorain County, Ohio.

## FACT RELATED TO DOLLAR GENERAL

7.    Plaintiff and all others similarly situated are persons who shop at Dollar General stores in Ohio.

8.    DOLLAR GENERAL operates dollar stores that offer a variety of inexpensive merchandise, including home products, seasonal products, consumables, and apparel. The company's business model is about offering products at competitive prices (typically less than $10) in a convenient, small-store format. Its core customer category includes low-to-middle-income customers. The company's stores are located in convenient locations that are easily accessible to its customers. It follows a small-box format and the stores have an easy "in and out" shopping set-up.[1]

---

[1] See https://marketrealist.com/2017/04/dollar-general-why-small-format-stores-are-key/ (last visited September 26, 2022)

2

A465

9.      Dollar General caters mainly to low-and-middle-income customers in rural and
suburban areas. The company's core customers earn around $40,000 a year or below, $20,000
below the median income. Dollar General looks to build stores in rural areas where a big box
retailer or grocery store is not within 15 or 20 miles. Around 75% of Dollar General stores are in
towns with 20,000 or fewer people.[2]

10.     As of March 2022, DOLLAR GENERAL owned and operated approximately
Nine Hundred Forty-Three (943) Dollar General stores in Ohio with more locations scheduled to
open.[3]

### FACTS RELATED TO PLAINTIFF'S TRANSACTIONS

11.     The Plaintiff incorporates and restates the allegations contained in Paragraphs 1
through 10 as if fully set forth herein.

12.     The Plaintiff is a frequent customer of DG stores throughout Lorain County and
Cuyahoga County.

13.     While shopping at various DG locations between early July 2022 and early
September 2022, the Plaintiff noticed discrepancies between the prices of the merchandise
advertised on the shelves and what he was charged at the checkout.

14.     When there was a price discrepancy, the Plaintiff was usually charged and paid
more than the advertised price.

15.     As a result of these discrepancies, the Plaintiff began to track his purchases.

16.     In addition to tracking his purchases, the Plaintiff also began to document the
advertised/shelf prices to compare them to what he was charged and paid at checkout.

---

[2] See https://www.cnn.com/2019/07/19/business/dollar-general-opposition (last visited
September 26, 2022)
[3] *See*
https://www.statista.com/statistics/1121086/number-of-dollar-general-stores-in-the-united-states-by-state/ (last visited September 26, 2022)

17. Between July 2022 and early September 2022, the Plaintiff made purchases at various DG Store Locations located in Lorain County, Ohio and Cuyahoga County, Ohio including:

- DG Store #04686 located at 1651 Cooper Foster Park Rd, Amherst, OH 44001;

- DG Store #07807 located at 425 W 4th St, Lorain, OH 44052-1644;

- DG Store #12868 located at 2540 Leavitt Road, Lorain, OH 44052-4142;

- DG Store #15058 at 7628 S. Leavitt Road, Amherst, OH 44001;

- DG Store #15242 located at 5248 Colorado Avenue, Sheffield Village, OH 44054-2335;

- DG Store #17110 located at 3785 Clague Rd, North Olmsted, OH 44070-2302

- DG Store #20045 located at 12526 Bellaire Rd, Cleveland, OH 44135

18. Between July 2022 and early September 2022, the Plaintiff made purchases at the stores noted where the following price discrepancies occurred:

19. In July and August 2022, Plaintiff made several purchases at Dollar General stores in Lorain County and Cuyahoga County. The discrepancies are outlined below:

| Date of Purchase | Store Number | Brand | Product | Price of Shell/Sign | Register Price | Discrepancy |
|---|---|---|---|---|---|---|
| 07/03/22 | 12868 | Pepsi | Mountain Dew 2L | $1.90 | $2.20 | $0.30 |
| 07/06/22 | 15252 | Coca-Cola | Coke Zero 16 oz | $1.00 | $1.25 | $0.25 |
| 07/10/22 | 07807 | DG Health | Anti-Diarrheal | $3.50 | $3.95 | $0.45 |
| 07/14/22 | 07807 | CRC Brakleen | Brake Parts Cleaner 14 oz | $4.45 | $5.50 | $1.05 |
| 07/18/22 | 15252 | Eveready | Gold Battery AAA-8 | $4.95 | $6.00 | $1.05 |
| 07/23/22 | 04686 | Energizer | Max Battery D-2 | $4.65 | $5.50 | $0.85 |
| 07/28/22 | 17110 | Coca-Cola | Cherry Coke 16 oz | $1.00 | $1.25 | $0.25 |
| 07/31/22 | 07807 | Wrigley's | Extra Gum Slim Pack | $1.00 | $1.35 | $0.35 |
| 08/01/22 | 15058 | Coca-Cola | Coke de Mexico | $1.25 | $2.00 | $0.75 |
| 08/01/22 | 15252 | Raid | Aerosol A&R 17.5 oz | $4.75 | $5.25 | $0.50 |

A467

| 08/05/22 | 20045 | Raid | Ant Baits 4 ct | $4.00 | $4.50 | $0.50 |
| 08/05/22 | 20045 | Coca-Cola | Sprite 16 oz | $1.00 | $1.25 | $0.25 |
| 08/09/22 | 07807 | Santitas | Tortilla Chips | $2.29 | $2.45 | $0.16 |
| 08/27/22 | 07807 | Energizer | 9V Batteries | $4.65 | $4.95 | $0.30 |
| 09/01/22 | 07807 | Crystal Valley | Water | $0.85 | $0.95 | $0.10 |
| 09/01/22 | 07807 | Crystal Valley | Water | $1.50 | $1.65 | $0.15 |

*See also* Exhibit 1 to Complaint - Receipts and Proof of Purchase.

20.    Based on the allegations in Paragraph 19 above and Exhibit 1 between July 3, 2022 and September 1, 2022 the Plaintiff was overcharged at least $7.26.

21.    Based on the allegations here and as demonstrated by Exhibit 1 DG used the same procedures that it employed in charging higher prices than advertised to the Plaintiff when selling the same and/or similar merchandise to numerous other Ohio consumers.

22.    In the two (2) year period before the Complaint was filed DG charged prices that were higher than advertised that were the same or similar to the advertisements described, *supra*, to numerous Ohio consumers.

23.    Based on the allegations herein, *supra*, and demonstrated by Exhibit 1, It is DG's policy and practice to charge higher prices at the register for merchandise than the price advertised on the unit price labels for the same merchandise on the shelves in DG's Ohio stores.

## CLASS ACTION ALLEGATIONS

24.    **Class Definition:** Plaintiff brings this action pursuant to Civ. R. 23 on behalf of a class of similarly situated individuals and entities defined as follows:

All persons who resided in Ohio on the date this complaint was filed, who at any time on or after the day two years prior to the date on which this Complaint was filed, who purchased merchandise at a Dollar General store located in Ohio.

25.    **Subclass Definition:** The Plaintiff also brings this action on behalf of a Subclass

5

of similarly situated individuals and entitled defined as follows:

> All members of the Class who paid more for merchandise than the advertised price labeled on the shelf at a Dollar General store located in Ohio.

26.     Excluded from the Class and Subclass are (1) the Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parent(s) have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class and/or Subclass; (4) any person(s) who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any excluded parties.

27.     **Numerosity and Ascertainability:** Upon information and belief the Class and Subclass (the "Classes") are each composed of more than forty (40) members, such that the Classes are so numerous that joinder of all members is impractical.   This conclusion is reasonable given that Defendant operates 943 stores across Ohio as of March 2022 as noted above and the number of customers at each of DG's stores on a daily basis is likely dozens, if not hundreds or thousands of consumers.

28.     **Commonality and Predominance:** There are questions of law and fact common to the proposed Classes that predominate over any individual questions.  These questions of law and fact include, but are not limited to:

> a.  Whether the shelf price labels are advertisements under the GA Regulations.
>
> b.  Whether the shelf price labels are advertisements as defined by the CSPA;
>
> c.  Whether any or all of the purchases made by the Plaintiff and members of the Classes were consumer transactions as defined by the CSPA;
>
> d.  Whether the mis-priced shelf labels violate the CSPA;

e. Whether the Plaintiff and/or members of the putative Classes suffered an ascertainable loss as a result of the Defendant's unlawful practices;

f. Whether by charging consumers in Ohio more than the advertised shelf price at checkout, DG committed a deceptive act as defined by the CSPA;

29.  **Typicality:** Plaintiff's claims are typical of the claims of the Classes. Plaintiff and the putative Class Members were all subjected to and affected by a uniform course of conduct; specifically, DG's pattern and practice of charging Ohio consumers a higher price at the register than the posted price on the shelf for various pieces of merchandise.

30.  **Adequacy:** The Plaintiff will adequately represent the interests of the Classes. The Plaintiff does not have any interests adverse to the Classes. Plaintiff's proposed class counsel has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

31.  **Superiority:** A class action is the superior method for the quick and efficient adjudication of this controversy since joinder of all members is impracticable. While the economic damages suffered by the individual members of the Classes are significant, the amount is modest compared to the expense and burden of individual litigation. The questions of law or fact common to the members of the Classes predominate over any question affecting only individual members. A class action will cause an orderly and expeditious administration of the claims of the Classes, and will foster economies of time, effort, and expense. Given the relatively small amount of damages available to Plaintiff and members of the Classes, adjudication on a classwide basis would provide members of the Classes with a remedy that they may be unlikely to pursue individually. Plaintiff does not anticipate any difficulty in the management of this litigation.

price as advertised on the shelf price labels for the same merchandise.

40.     Plaintiff and those similarly situated paid more for the merchandise they purchased than the price advertised on the shelf labels for that merchandise at the times of their purchases.

41.     Ohio Courts have determined that the actions of a supplier in failing to honor promised prices constitute unfair or deceptive acts or practices. *See State of Ohio ex rel. Petro v. Level Propane Gases, Inc.*, PIF No. 2198 (November 27, 2003) and *White v. Kent*, PIF No. 636 (March 30, 1988). A copy of PIF Nos. 2198 and 636 is attached as Exhibit 2.

42.     The Ohio Attorney General has made these determinations available for public inspection pursuant to R.C. 1345.05(A)(3).

43.     Plaintiff and the Class Members have a private right of action under the CSPA for the claimed breaches.

44.     As a direct and proximate result of the actions of DG which violate the CSPA, Plaintiff and the Class Members are entitled to actual damages in an amount to be determined at trial, as well as an award of reasonable attorneys' fees.

## COUNT TWO: UNJUST ENRICHMENT
### (On behalf of the Plaintiff and Classes)

45.     Plaintiff restates and incorporates all of his allegations contained in paragraphs 1 through 44 in their entirety.

46.     "The purpose of an unjust enrichment claim is not to compensate the plaintiff for loss or damage suffered by the plaintiff, but to enable the plaintiff to recover the benefit he has conferred on the defendant under circumstances in which it would be unjust to allow the defendant to retain it." *Barrow v. Vill. of New Miami*, 104 N.E.3d 814, 818 (Ohio Ct. App.

2018); *San Allen, Inc. v. Buehrer*, 11 N.E.3d 739, 781 (Ohio Ct. App. 2014). Equitable "restitution is the remedy for the unjust enrichment of one party at the expense of another." *Id.*

47. "To prevail on a claim for unjust enrichment, a plaintiff must demonstrate that: (1) he conferred a benefit upon the defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Id.*

48. Based on the allegations herein, *supra*, DG has engaged in a pattern and practice of overcharging the Plaintiff and members of the Classes by at least $7.35 and collected monies from the Plaintiff and members of the Classes which DG knew or should have known that DG had no contractual or legal right to collect.

49. Based on the allegations herein, DG enjoyed the use of these overcharges without providing any material benefit to the Plaintiff and members of the Classes.

50. DG is therefore liable to the Plaintiffs and members of the Classes for an award of actual damages, compensatory damages, and punitive damages in amounts to be determined at trial.

**COUNT THREE: VIOLATIONS OF THE CSPA, R.C. 1345.01, *et seq.***
**(On behalf of Plaintiff individually)**

51. Plaintiff restates and incorporates all of his allegations contained in paragraphs 1 through 50 in their entirety.

52. A "consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A).

53. DG's sales of merchandise to Plaintiff constitute "consumer transactions" because

10

such services were for the primary purpose of Plaintiff's personal, family, or household use. R.C. 1345.01(A).

54.     Plaintiff is a "consumer" because he engaged in a consumer transaction with DG. R.C. 1345.01(D).

55.     DG is a "supplier" because it is engaged in the business of effecting or soliciting consumer transactions. R.C. 1345.01(C)

56.     "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A).

57.     "No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.03(A).

58.     DG has engaged in unfair, deceptive, and/or unconscionable acts or practices in direct violation of the CSPA by charging a higher price at the register for merchandise than the price as advertised on the shelf price labels for the same merchandise.

59.     Plaintiff paid more for the merchandise he purchased than the price advertised on the shelf labels for that merchandise at the times of his purchases.

60.     Ohio Courts have determined that the actions of a supplier in failing to honor promised prices constitute unfair or deceptive acts or practices. *See State of Ohio ex rel. Petro v. Level Propane Gases, Inc.*, PIF No. 2198 (November 27, 2003) and *White v. Kent*, PIF No. 636 (March 30, 1988). *See* Exhibit 2.

61.     The Ohio Attorney General has made these determinations available for public inspection pursuant to R.C. 1345.05(A)(3).

A473

62. Plaintiff has a private right of action under the CSPA for the claimed breaches and such action provides for remedies including actual damages, costs, treble damages, statutory damages and attorneys' fees.

63. As a direct and proximate result of the actions of DG which violate the CSPA, Plaintiff is is entitled to actual damages in an amount to be determined at trial or statutory damages of $200.00, non-economic damages of up to $5,000.00, treble damages, as well as an award of reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Norman Husar, on behalf of himself and those similarly situated, respectfully requests that that this Court grants judgment against Defendant Dolgen Midwest, LLC d/b/a Dollar General, and issue an Order:

A. Finding that this action satisfies the prerequisites for Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and Subclass, each as defined, *supra*;

B. Designating the Plaintiff as a representative of the Class and Subclass, and his undersigned counsel as Class Counsel;

C. Awarding the Plaintiff, Class and Subclass their actual damages;

D. Awarding the Plaintiff, Class and Subclass their statutory damages, as applicable;

E. Awarding the Plaintiff his statutory non-economic damages for the violations of the CSPA, as applicable;

F. Awarding the Plaintiff, Class, and Subclass, treble damages, as applicable, for the violations of the CSPA;

G. Awarding the Plaintiff, Class and Subclass punitive damages, as applicable;

12

A474

I. Granting all such further and other relief as this Court deems just and appropriate.

Respectfully submitted,

Whitney Kaster (091540)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Michael A. Smith Jr. (0097147)
**DANN LAW**
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiff and the Putative Classes*

## JURY DEMAND

Plaintiff Norman Husar hereby respectfully demands a trial by jury on all such claims that may be so tried.

Whitney Kaster (091540)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Michael A. Smith Jr. (0097147)
**DANN LAW**
*Counsel for Plaintiff and the Putative Classes*

A475

# EXHIBIT 1

DOLLAR GENERAL







DOLLAR GENERAL

POS STICKER DISPLAYED $1.50 - DID NOT TAKE PICTURE BEFORE PURCHASE

NO POS STICKER NOW - PIC BELOW TAKEN ABOUT 20 MINS AFTER PURCHASE



A480







DOLLAR GENERAL

POS PIC TAKEN 9.1.22 - SAME POS AS 8.27.22









DOLLAR GENERAL 08.09.22







DOLLAR GENERAL





DOLLAR GENERAL-12526 BELLAIRE RD, CLEV, OH 44135















PICS ABOVE TAKEN 8.5.22 - NO RAID PRODUCTS AVAILABLE



DOLLAR GENERAL







DOLLAR GENERAL





A505





DOLLAR GENERAL STORE #07807
LORAIN OH 440-538-6288

EXTRA PEPPMINT SET 022000008916 E     1.35
TOTAL  SALE                          $1.35
CASH                                 $2.00
CHANGE                               $0.65
2022-07-31   20:12:41   07807 02      2401

8997163101200391160109104192699183193414

------------------ CUT HERE ------------------
*********************************************
* Complete survey at dgcustomerfirst.com
*                 for a chance to
* WIN  A  $100  Gift  Card
* Weekly Drawings. Must be 18+ to enter
*            Survey Code
*           0776-3308-1121-113
*********************************************
------------------ CUT HERE ------------------
SATURDAY AUGUST 6TH ONLY!
DG Store Coupon              Valid 8/6/2022

$5 OFF $25
$5 off your purchase of
$25 or more (pretax)
OR SHOP ONLINE USE PROMO CODE DG7WN4UJ5

$25 or more (pretax) after all other
discounts. Limit one DG $2, $3, or

DOLLAR GENERAL







DOLLAR GENERAL



DOLLAR GENERAL





SUBTOTAL
RETAIL SALE
CASH                      $20.00
CHANGE                    $10.79

2022-07-23  20:44:31  04686 01          2011

CUT HERE

Complete survey at dgcustomerfirst.com
For a chance to
WIN A $100 Gift Card
Weekly Drawings. Must be 18+ to enter
Survey Code

CUT HERE

SATURDAY JULY 30th ONLY!

$5 OFF $25



DOLLAR GENERAL - D BATTERY - POS STICKER DIFFERENCES



ABOVE - DG NORTH OLMSTED 07.29.22



ABOVE DG AMHERST, OH 07.23.22

Case 3:22-cv-... Document ... Filed 07/21/2023 PageID: 1291



A518



A 519



DOLLAR GENERAL STORE #12792
SHIPPACK VILLAGE, PA 610-517-1667

EVEREADY GOLD A60-6                    6.00 S
031400030061=150

SUBTOTAL                              $6.00
Tax                                   $0.39
TOTAL SALE                            $6.39
CASH                                 $10.00
CHANGE                                $3.61

ITEMS 1
2022-07-18  20:09:50  15252 02          7732

CUT HERE

* * * * * * * * * * * * * * * * * * * * * * * * * * *
* Complete survey at dgcustomerfirst.com *
*           For a chance to              *
WIN A $100 Gift Card
* weekly drawings. Must be 18+ to enter. *
          Survey Code
        1511-8618-1098-645
* * * * * * * * * * * * * * * * * * * * * * * * * * *

CUT HERE
SATURDAY JULY 23rd ONLY!

$5 OFF $25
$5 off your purchase of
$25 or more

$25 or more (pretax) after all other DG
discounts. Limit one DG $2, $3, or $5
off store coupon per customer. Excludes:
phone, gift and prepaid financial cards,
prepaid wireless handsets, Rug Doctor
rental, propane, tobacco and alcohol.
X3592862227875621

A520

DOLLAR GENERAL

Case 3:22-cv-00573-RDB Document 1-86-5 Page 549 of 602 Date Filed 08/01/2023 PageID: 1294



Eveready Gold Battery AAA-8 Alkaline Fr End ck (2L) — Base Price **$4⁹⁵** — $4.95 per each — 0398-0003-0001 — 07/21 — E — A-P F2

A521



A522

DOLLAR GENERAL







DOLLAR GENERAL





DOLLAR GENERAL



A528

# EXHIBIT 2

| PIF Number: | 10000636 |
| Case Name: | WHITE V. KENT; JOSEPH CHEVROLET |
| Case Number: | C860520 |

Case 3:22-c Case 23-3034 Document 166 5 Filed 590 07 23/18 Filed 08/01/2023 PageID: 1304





IN THE COURT OF APPEALS

FIRST APPELLATE DISTRICT OF OHIO

HAMILTON COUNTY, OHIO

DEBBIE WHITE,

      Plaintiff-Appellee,  :

vs.             .

JEFFREY KENT         :
   and
JOSEPH CHEVROLET,      :

      Defendants-Appellants.:

APPEAL NO. C-860520
TRIAL NO. 85CV-06570

D E C I S I O N.

FILED
COURT OF APPEALS

MAR 3 0 1988

CLERK OF COURTS

Civil Appeal from: Hamilton County Municipal Court

Judgment Appealed from is: Affirmed in Part: Judgment Entered
                      and Cause Remanded

Date of Judgment Entry on Appeal: March 30, 1988

David J. Boyd, Esq., 500 Executive Building, 35 East Seventh
Street, Cincinnati, Ohio  45282, for Plaintiff-Appellee.

Lindhorst & Dreidame and Jay R. Langenbahn, Esq., 1700 Central
Trust Center, 201 East Fifth Street, Cincinnati, Ohio  45202, for
Defendants-Appellants.

PER CURIAM.

This **cause** came on to be heard upon the appeal, the tran-
script of the docket, journal entries and original papers; from
the Hamilton County Municipal Court, the transcript **of** the pro-
ceedings, the briefs and the argument of counsel.

Plaintiff-appellee Debbie White (White) was considering the
purchase **of** a new **car** in November 1984. White, accompanied by
her sister and her mother, met with **a** salesman of Joseph Chevro-
let, Jeffrey Kent (collectively, appellants). White explained
that she was interested in a Chevrolet Cavalier station **wagon**
with certain optional equipment.

No vehicle meeting White's specification was available at
appellants' place of business, but Kent suggested that he might
be able to find a suitable **car** using a computerized **automobile**
"locator" and to have the car brought to his lot. After some nego-
tiations, a "deal" was arranged whereby White agreed to pay **about**
$235.00 per month **for** the car:. An exact price could not be
determined because the particular car which **White** selected had
not yet been delivered to appellants. Eventually, White
purchased the car.

After she examined the paperwork on the car, **it** became obvious
to white that $2000.00 had been added to the sticker price of the
automobile. **Appellants'** explanation for this additional amount
was that White's trade-in was also increased by $2000.00 in order
to give White **some** "equity" in the new car to **make** financing

- 2 -

easier.  **As** the $2000.00 increase over the **sticker** price was completely offset by the $2000.00 increase on the value of the trade-in, appellants contended that the price of the new car to White was unchanged Erom what she had **agreed** upon.

White was not satisfied with this explanation because she understood the transaction differently.  White believed that she was initially going to receive additional value for her old car rather **than** a reduction in the sticker price of the new car:. Therefore, according to White, the additional $2000.00 increase in the value of the trade-in should ultimately have been deducted Erom the original sticker price of the new car,

Subsequently, White filed suit in the Hamilton County Muni-**cipal** Court under the Ohio Consumer Sales Practices Act, R.C. Chapter 1345.  After a trial **by** jury, a verdict was returned in favor of White,  Actual damages were found to be $3100.00,  and they were trebled pursuant to the statute to $9,300.00.  Further, attorney fees were awarded in the amount $1500.00 for **a** total judgment in the amount of $10,800.00.

Appellants have assigned three errors to the trial court in this timely appeal.  The first and second assignments of error are interdependent and will be considered together:

First assignment of error

The trial court erred to the prejudice of **the** appellant [*sic*] by submitting the issue of treble damages to the jury.

Second assignment of error

- 3 -

A533

> The jury **verdict** is prejudicial to the appellant
> [*sic*] in that it is against the manifest weight of the
> evidence.

It is clear from the complaint that an unfair consumer prac-
tice was being alleged against appellants, **and** therefore, if the
judgment is not against the manifest weight of the evidence, then
the trial court properly submitted the question of treble damages
to the jury. Accordingly, the result of the second assignment of
error may well be determinative on the first assignment of error.

In the trial **of** a civil suit it has been long established
that "[j]udgments supported by some competent, credible evidence
going to all the essential elements of the case will not be
reversed by a reviewing court as being against the manifest
weight of the evidence." *C. E. Morris Co. v. Foley Construction
Co.* (1978), **54 Ohio St. 2d 279**, 376 N.E.2d 578, syllabus. We
hold that the evidence fully supports the jury's finding of an
unfair consumer practice.

At trial, White, her sister and her mother all testified
that the $2000.00 increase in the value of White's trade-in was
in lieu of a reduction in the sticker price of the new car.
While White argues that **numerous** unfair and unconscionable
consumer practices were committed, **we** think it is sufficient to
note that the statute specifically states that **it** is **an** unfair
consumer practice for a supplier to indicate that a "specific
price advantage exists, if it does not," R.C. 1345.02(B)(8). If
the jury believed white and her witnesses, then **it** could have

- 4 -

A534

found that both Kent, the salesman, and Gary Cunningham, the finance manager, told White that a price advantage existed where it did not, The testimony was competent and not incredible.

Appellants argued strongly, both at trial. and In oral argument before us, that the deal a5 described by White would not have made economic sense because the dealership would have sold the new car for less than what it coot them, and that White would have received more than she paid for her trade-in after driving it for about two years and putting about 14,000 additional miles on the odometer.

certainly the jury did not have to find that the dealership was planning on losing money, All that was necessary was that the jury believed that White was told of a price which was not the true price, The jury could have thought that appellants never had any intention of actually selling the car for the amount they told White, but rather that they intended to increase the purchase price from the beginning of the negotiations. The jury was completely free to believe all, part or none of what any witness said, *State v. Antill* (1964), 176 Ohio St. 61, 197 N.E.2d 548. Accordingly, the jury's verdict was not inconsistent with the manifest weight of the evidence, and the trial court did not err in submitting the issue of treble damages to the jury. The first and second assignments of error are overruled.

In the third assignment of error, appellants claim that the trial court erred in overruling their motion for judgment

notwithstanding the verdict or **for** a new trial.  In both the memorandum in support of the motion **to** the trial court and their appellate brief *to this* court, appellants incorporate their arguments from the first and second assignments of error.  For the reasons expressed in the foregoing, we overrule the third assignment of error.

Finally, we note that the amount awarded, **$10,800.00**, exceeded the **$10,000.00** jurisdictional limit of the municipal court, R.C. **1901.17**.  Therefore, **we vacate** said judgment and we enter the judgment that the trial court should **have** entered, **$10,000.00**, pursuant to App. **R. 12(B)**.  **We** remand the **cause** to the trial court for a determination of **how** the reduction should be divided between the trebled damages **and** the **award** of attorney fees.  In all other respects the judgment is affirmed.

**BLACK, P.J., DOAN and KLUSMEIER, JJ.**

**PLEASE NOTE:**

The Court **has** placed of record its own entry in this **case** on the date of the **release** of this Decision.

- 6 -

A536

**RECEIVED**
ATTORNEY GENERAL OF OHIO

## IN THE COURT OF COMMON PLEAS
## DELAWARE COUNTY, OHIO

NOV 2 7 2003

CONSUMER PROTECTION SECTION
PUBLIC INSPECTION FILE

STATE OF OHIO, *ex rel.*           )
JIM PETRO                          )
ATTORNEY GENERAL OF OHIO           )    CASE NO. 01-CVH 01-018
                                   )
        Plaintiff,                 )
                                   )    JUDGE W. DUNCAN WHITNEY
        v.                         )
                                   )
LEVEL PROPANE GASES, INC.          )    AGREED ENTRY & ORDER
                                   )
        Defendant.                 )

This matter came to be heard upon the filing of a Complaint by the Attorney General of

Ohio on January 8, 2001. Subsequent to the filing of the Complaint, Defendant Level Propane

Gases, Inc. (Level) filed a Chapter 11 Bankruptcy proceeding in the United States Bankruptcy

Court, N.D. Ohio (Case No. 02-16172). A prior agreement between the parties was rejected

pursuant to 11 U.S.C. Section 365. By signing this Agreed Entry, Level submits to the personal

jurisdiction of this court and consents to the entry of this Agreed Entry and Order ("Agreed

Order").

This Agreed Order shall apply to and bind Level, its shareholder(s), officers, directors,

agents, servants, employees, subsidiaries, successors or assigns, and any person or entity acting

through any corporation or other propane businesses whose acts, practices, or policies are, in any

respect, directed, formulated, or controlled by Level.

TERMINATION CODE ___5___

**DEFINITIONS**

As used in this Agreed Order, the following terms shall have the following meanings:

1. "Advertisement" means any oral, written, graphic, electronic or pictorial statement or representation directed to consumers in the course of business, regardless of the medium of communication employed.

2. "Business Day(s)" means Monday through Friday of any given week.

3. "Calendar Day(s)" means Sunday through Saturday of any given week.

4. "Clear and conspicuous" means that the statement, representation or term being disclosed is of such size, color, contrast and audibility and is so presented as to be readily noticed and understood by the person to whom it is being disclosed. The disclosure of any written statement or term must be in close proximity to the terms it purports to clarify, modify, or explain.

5. "C.O.D." means cash on delivery.

6. "Consumer" means a person as defined in R.C. §1345.01(D).

7. "Contract" means the written agreement entered into between Level and the consumer prior to the filing of this Agreed Order.

8. "Contract Price" means any of the following:

   A. a clear, conspicuous, and unambiguous written price representation by Level to a consumer or consumers;

   B. an oral price quote by any employee or agent of Level including, but not limited to, drivers and customer service representatives that is confirmed by Level;

   C. a web site quote.

A538

9.    "Courtesy Fill" means Level will deliver propane to consumers according to Level's estimate of the consumers' propane use.

10.    "Lock-in Agreement" means Level's offer to consumers whereby consumers may guarantee a price of propane for a stated price per gallon for a stated period of time.

11.    "Market Price" means the actual price at which propane gas is currently sold, or has recently been sold, in the open market at retail in the usual and ordinary course of trade and competition between sellers and buyers equally free to bargain, as established by records of sales or the last reported price at which the propane sold.

12.    "Material Terms and Conditions" means the price per gallon of propane, delivery date, and fees/charges that the consumer may be required to pay, any conditions affecting the price or delivery date, and any other terms or conditions which may affect the consumer's choice of a propane supplier.

13.    "Minimum Usage" means the minimum number of gallons of propane that a consumer must purchase during the term of the contract in order to avoid the payment of any Underutilization Fee or any other fee or penalty.

14.    "Pre-Buy Agreement" means Level's offer to consumers whereby consumers may pre-pay for a specific amount of propane for a stated price per gallon for a stated period of time by paying for such propane in advance of delivery.

15.    "Represent," "Representing," and "Representation" mean and include any communication, including any advertisement whether made in writing, orally, by picture, design, or other graphics, and made by any means or mode of transmission including, but not limited to, telephonic or electronic transmission.

3

A539

"Represent," "Representing" and "Representation" include any implied representation.

16.    "Underutilization Fee" means the amount a consumer must pay if the consumer does not purchase the minimum number of gallons of propane required under the terms of the contract.  It is also the total amount charged to the consumer as calculated by the minimum gallons of propane gas that must be purchased multiplied by the quoted price per gallon, less the actual gallons purchased multiplied by the actual price charged.

17.    "Will Call" means Level will deliver propane to consumers after the consumers request delivery of propane.

## AGREED FINDINGS OF FACT

1.    Defendant is a corporation incorporated in the State of Ohio.

2.    Defendant was engaged in the business of soliciting for sale and selling liquid petroleum gas, commonly known as propane, and related products and services in Delaware County and numerous other counties throughout Ohio.

3.    Defendant regularly advertised its propane product throughout the State of Ohio.

4.    Level required its customers to enter into written agreements for the purchase of propane.

## AGREED CONCLUSIONS OF LAW

1.    This Court has jurisdiction over the subject matter, issues, and parties to this judgment.

2.    The Ohio Attorney General is the proper party to bring this action and venue is proper.

4

3.  The Consumer Sales Practices Act, R.C. §1345.01 et seq. governs the business practices of the Defendant.

4.  At all relevant times hereto, Level was a "supplier" as that term is defined in R.C. §1345.01 (C) in that it engaged in the solicitation of "consumer transactions" as that term is defined in R.C. §1345.01(A).

## CONCLUSIONS OF LAW ASSERTED BY THE ATTORNEY GENERAL AND ADOPTED BY THE COURT

1.  A propane supplier's practice of making offers in written or printed advertisements without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions to obtaining the offered propane and/ or the offered price is an unfair and deceptive act or practice in violation of the Exclusions and Limitations in Advertisements Rule, O.A.C. §109:4-3-02(A)(1) and the Consumer Sales Practices Act, R.C. §1345.02(A).

2.  A propane supplier's practice of failing to honor guaranteed or promised prices is an unfair, deceptive and unconscionable act or practice in violation of the Consumer Sales Practices Act, R.C. §1345.02(A), R.C. §1345.02(B)(8) and R.C. §1345.03(A).

3.  A propane supplier's practice of refusing to disclose the price of the propane that it is delivering to consumers is an unfair, deceptive, and unconscionable act or practice in violation of the Consumer Sales Practices Act, R.C. §1345.02(A), R.C. §1345.03(A), R.C. §1345.03(B)(5), and the Repairs or Services Rule, O.A.C. §109:4-3-05.

A541

4.  A propane supplier's practice of advertising that its propane prices are "low" or the "lowest" available when its prices are sometimes substantially higher than its competitors, or promising high quality service, when such is not the case is an unfair and deceptive act or practice in violation of the Consumer Sales Practices Act, R.C. §1345.02(A) and R.C. §1345.02(B)(8).

5.  A propane supplier's practice of advertising or promising prompt delivery of propane to consumers without having taken, at the time of the advertisement or promise, commercially reasonable action to insure prompt delivery of propane to consumers is an unfair and deceptive and unconscionable act or practice in violation of the Consumer Sales Practices Act, R.C. §1345.02(A), R.C. §1345.03(A), and the Failure to Deliver Rule O.A.C. §109:4-3-09.

6.  A propane supplier's practice of failing to respond to valid consumer complaints and/or to provide adequate customer service within a reasonable period of time is an unfair and deceptive act or practice in violation of the Consumer Sales Practices Act, R.C. §1345.02(A) and R.C. §1345.03(A). A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 by failing to provide consumers who have purchased a propane tank from it with proof of purchase and ownership of the tank.

7.  A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 by failing to incorporate all material terms in its contracts with consumers, including clear and conspicuous disclosure of terms relating to price and any pricing program (i.e. Pre-pay, lock-in), any delivery program (i.e. Courtesy Fill, Will Call), minimum usage, tank delivery and pick-up, disconnection, reconnection, pump-outs, and the terms and conditions under

6

A542

which the propane supplier can change the delivery or payment status of the consumer (i.e., from Courtesy Fill to Will Call, C.O.D. or Payment in Advance).

8.      A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 by failing to honor its Lock-In Agreement prices as specified in the contract with the consumer.

9.      A propane supplier commits an unfair, deceptive and unconscionable act in violation of R.C. §§1345.02 and 1345.03 by incorporating in its consumer contract, or attempting to enforce, any provision that permits the propane supplier to unilaterally modify the contract with the consumer or any provision that limits the consumer to a specific court of competent jurisdiction when commencing a civil action against the supplier.

10.    A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 by misrepresenting any material terms or conditions in connection with the advertisement, offer, sale, or delivery of propane to consumers.

11.    A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 if it fails to use commercially reasonable efforts and standards to determine and provide an appropriately sized propane tank designed to meet the consumer's propane needs.

12.    A propane supplier commits an unfair, deceptive and unconscionable act in violation of R.C. §§1345.02 and 1345.03 by charging a consumer more for an emergency delivery of propane than for a regular delivery of propane when the emergency need was the result of the propane supplier's failure to provide a timely deliver of propane.

7

13.    Until the earlier of (i) a propane supplier obtaining a written agreement with the consumer for the delivery of propane and/or the setting up of a tank, or (ii) a propane supplier receiving payment for the delivery of propane to a consumer, such supplier will be required to remove the tank and any other related equipment at no expense to the consumer if so requested by the consumer in writing.

14.    A propane supplier commits an unfair and deceptive act in violation of R.C. §1345.02 if it fails to disclose during an oral price quote the price per gallon of propane, the time period for which the quoted price will be available, the time period for which the quoted price applies, and all other material terms and conditions applicable to receiving propane at the quoted price.

## NON-ADMISSION BY LEVEL

Level does not admit that it has engaged in any wrongdoing and the court makes no finding that Level has operated in violation of the Consumer Sales Practices Act §1345.01 et seq. Level enters into this Agreed Order with the Attorney General to resolve the matters before this Court.

## ORDER

For the purpose of effecting this Agreed Order, Level agrees and it is therefore ORDERED, ADJUDGED, and DECREED that:

A.    Level is permanently enjoined from engaging in any act or practice in violation of the Consumer Sales Practices Act, R.C. §§1345.01 et seq., any act or practice prohibited by the Conclusions Of Law Asserted By The Attorney General And Adopted By The Court, and the following described acts:

1.    Charging the consumer for any propane gas not delivered to the consumer; unless the consumer's agreement with Level specifically sets forth the terms and

8

A544

conditions for imposing such a charge and all such terms and conditions have been met;

2. On a consumer's request therefor, failing to provide all Level consumers who have purchased tanks from Level with proof of ownership necessary for these consumers to exercise their right to have their own tanks filled by Level's competitors;

3. Falsely representing that Level's prices will remain "level," or words of similar import, or that Level purchases fuel prior to any heating season so as to ensure the customer will not be harmed by rise in fuel prices;

4. Failing to honor its Lock-in Agreement prices for the term specified in Level's existing Contract with a consumer provided that the consumer is not in material breach of the Contract, said material breach including but not limited to non-compliance with payment terms;

5. Employing or continuing to employ any unfair or deceptive practices against any consumer who, in good faith, refuses to pay Level for any increased cost of propane or any other fee not specifically authorized by its existing Contract;

6. Utilizing or enforcing any provision purporting to reserve to Level the unfettered right to modify the Contract unilaterally; or, (ii) any provision limiting the consumer to commencing an action against Level only in a specific court of competent jurisdiction;

7. Subject to the requirements of paragraph 7 of Section B of this Agreed Entry and Order, and except for purposes of asserting its rights to the following fees for purposes of setoff against a consumer claim, collecting or attempting to collect

A545

any fees, charges, penalties or monies Level claims is owed by any Level consumers prior to June 6, 2002 for the following:

a.    underutilization fees;

b.    tank pick up fees and taxes;

c.    tank pump-out fees;

d.    the difference between the price of propane set forth in the consumer's Lock-in Agreement and the cost actually charged. If consumers have not yet paid the increased amount to Level, Level will adjust the consumers' bills to reflect the price of propane set forth in the consumer's pre-buy or lock-in Contract;

e.    for those consumers who were promised a certain price per gallon in writing including, but not limited to, any correspondence or delivery receipts, the difference between the price actually charged and the price of propane represented in the writing;

f.    for those consumers who received delivery of propane after the end of the term of the Contract at an increased price per gallon above the price set forth in their Contracts and who canceled their Contract at the end of the term due to the increase in the price per gallon of propane but were billed at the increased amount, the difference between the amount charged and the amount set forth in their Contracts for any propane used by the consumer.

g.    any lock-in fee if the consumer did not receive the price promised by Level at any time the locked-in price promise was to remain effective;

     h.    any fees, deposits, or other payments not disclosed in Level's Contract with the consumer or not lawfully charged including, but not limited to, surcharges for consumer's use of credit (or credit card), adjusting the customer's account to zero balance when the customer had a credit balance in the account, miscellaneous fees, deviation fees, and retrieval fees;

     i.    any late payment penalty, without qualification, that has been assessed based upon an underutilization charge, a tank pump-out fee, a disconnection fee, reconnection fee, tank pick-up fee, or the difference between the cost quoted for propane and the cost actually charged; and

     j.    any late payment fee or returned check fee where such fees were not permitted by law.

B.    Level agrees to comply with the following business practices;

1.    Level shall take commercially reasonable steps to direct all credit reporting agencies to remove any negative or derogatory information regarding Level, which is incorrect, within thirty (30) days of receiving a complaint by a consumer which is supported by evidence that the reporting is incorrect.

2.    Level shall not charge more than the amount allowable under applicable state or federal law for a late payment and shall not collect or attempt to collect any such late charge not specifically disclosed in Level's Contract with the consumer.

3.    Level shall not use any debt collection practices, which are in violation of Ohio or federal laws.

4.    Level shall maintain records, correspondence, receipts and any other documentation relating to all accounts for consumers of Level for a period of

11

three (3) years while they are customers of Level and for a period of two (2) years after termination of any relationship between Level and the consumer.

5.    Level shall comply with Ohio's referral sales statutes.

6.    Level shall give written notice of any bankruptcy filing to the Attorney General within five (5) business days of such filing.

7.    In the event Level or majority voting control of its stock is sold, transferred or conveyed, or Level is merged with and into another entity, the documents that evidence such a transaction shall include a provision that, except for purposes of asserting its rights to the following fees for purposes of setoff against a consumer claim, prohibits Level's successor from collecting or attempting to collect any fees, charges, penalties or monies Level claims is owed by any Level consumers prior to June 6, 2002 for the following:

a.    underutilization fees;

b.    tank pick up fees and taxes;

c.    tank pump-out fees;

d.    the difference between the price of propane set forth in the consumer's Lock-in Agreement and the cost actually charged. If consumers have not yet paid the increased amount to Level, Level will adjust the consumers' bills to reflect the price of propane set forth in the consumer's pre-buy or lock-in Contract;

e.    for those consumers who were promised a certain price per gallon in writing including, but not limited to, any correspondence or delivery receipts, the difference between the price actually charged and the price of propane represented in the writing;

12

f.    for those consumers who received delivery of propane after the end of the term of the Contract at an increased price per gallon above the price set forth in their Contracts and who canceled their Contract at the end of the term due to the increase in the price per gallon of propane but were billed at the increased amount, the difference between the amount charged and the amount set forth in their Contracts for any propane used by the consumer.

g.    any lock-in fee if the consumer did not receive the price promised by Level at any time the locked-in price promise was to remain effective;

h.    any fees, deposits, or other payments not disclosed in Level's Contract with the consumer or not lawfully charged including, but not limited to, surcharges for consumer's use of credit (or credit card), adjusting the customer's account to zero balance when the customer had a credit balance in the account, miscellaneous fees, deviation fees, and retrieval fees;

i.    any late payment penalty, without qualification, that has been assessed based upon an underutilization charge, a tank pump-out fee, a disconnection fee, reconnection fee, tank pick-up fee, or the difference between the cost quoted for propane and the cost actually charged; and

j.    any late payment fee or returned check fee where such fees were not permitted by law.

Provided, however, such successor in interest may assert its right to such fees if a consumer first brings a legal action against such successor and such successor asserts such rights solely for purposes of setoff against the consumer claim; provided, however, such rights to setoff

A549

only may be exercised in compliance with R.C. §1345. Except as expressly provided in this section 7, the Attorney General hereby withdraws its objection to the transfer of some or all of Level's (and its affiliate's) assets free and clear of any interest the Attorney General may have in such assets or with regard to Level or its affiliates.

8.   Upon reasonable request, Level shall provide copies of or access to the requested books, records and documents to the Attorney General at any time upon reasonable notice, and further make available other information to the Attorney General relating to compliance of this Agreed Entry & Order. Level shall make the requested information available at Level's offices or, at Level's election, shall deliver copies of the requested information to the Attorney General, in each case, within fourteen (14) business days of such request. This Section shall in no way limit the Attorney General's right to obtain documents, information, or testimony pursuant to any federal or Ohio law, regulation or rule.

9.   Level shall immediately inform its employees and representatives acting in a supervisory capacity of the existence of, and terms and conditions of, this Agreed Entry And Order and shall direct those persons and/or entities to comply with this Agreed Entry and Order.

10.  Level shall implement and maintain business practices designed in a commercially reasonable manner to minimize customer service related concerns including, but not limited to: failure to provide deliveries, repeated missed delivery dates, inability by consumers to reach Level's customer service representatives, billing questions immediately turned over to Level's collection department regardless of the circumstances, and other billing disputes.

14

A550

11.     Level shall not renew any consumer's existing Contract unless that Contract conforms to the terms of this Agreed Entry And Order and all applicable laws.

12.     Level shall not enter into any Contract with a consumer to provide that consumer with propane unless the Contract conforms to the terms of this Agreed Entry And Order and all applicable laws.

13.     On filing and entry of this Agreed Order, notwithstanding the "Governing Law" paragraph in Level's Contracts, Level hereby agrees not to object to consumer disputes being litigated in the jurisdiction in which the consumer resides. Level further agrees that its consumer contracts are subject to the consumer protection laws of the states in which the consumer resides.

C.     The parties acknowledge that the Attorney General, in his complaint, sought reimbursement for consumers damaged by the alleged illegal conduct of Level. The parties originally contemplated that this case would be settled in conjunction and coordination with the settlement of a class action known as Larry Mick, et al. v. Level Propane Gases, Inc., United States District Court for the Southern District of Ohio, Eastern Division, Case No. C-2-98-959, a class action covering all Ohio consumers potentially eligible for damages through the Attorney General's instant action with the consumer class represented by private counsel. These consumer claims are now subject to, and being addressed in, the pending Level bankruptcy action known as In Re Level Propane Gases, Inc., et al., Debtors, Chapter 11 Case No. 02-16172 (Jointly Administered), United States Bankruptcy Court, Northern District of Ohio, Judge Randolph Baxter presiding.

D.     It is hereby ORDERED that Level shall not represent, directly, or indirectly, that the Attorney General has sanctioned, condoned, or approved any part or aspect of the Defendant's business operation.

E.  It is hereby ORDERED that Level is assessed a civil penalty pursuant to R.C. §1345.07(D) in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00). Two Hundred Thousand Dollars is suspended on the condition that Level not violate the terms of this Agreed Entry & Order. The parties hereto agree that such civil penalty is a pre-petition unsecured claim against Level in the amount of Fifty Thousand Dollars ($50,000) pursuant to this remunerative provision, and, to the extent that Level violates the terms of this Agreed Entry & Order, that such civil penalty will be a pre-petition unsecured claim for up to an additional Two Hundred Thousand ($200,000) pursuant to this remunerative provision.

F.  It is hereby ORDERED that Level shall pay Two Hundred and Seventy Five Thousand Dollars ($275,000.00) to the Attorney General for attorney fees and investigation costs. The parties hereto agree that such payment is a pre-petition unsecured claim in the amount of Two Hundred and Seventy-Five Thousand Dollars ($275,000) pursuant to this remunerative provision.

G.  The Attorney General shall give Level fourteen (14) calendar days notice before filing a motion or other pleading seeking contempt of court or other sanctions for violation of this Agreed Entry & Order . The notice shall be in writing and set forth those provisions in the Agreed Entry & Order that the Attorney General believes have been violated. The fourteen (14) calendar days notice period shall provide an opportunity for Level to respond to the assertions of the Attorney General and the parties may use the notice period to attempt a resolution of the concerns. Upon receipt of the written notice, Level may request a meeting with the Attorney General (or a staff person designated by the Attorney General) for the purpose of attempting to resolve the concerns set forth in the Attorney General's notice. The Attorney General shall not unreasonably deny the request for such a meeting. The giving of such notice shall not prevent the Attorney General from beginning such proceeding following the expiration of the fourteen

16

(14) calendar day period. The Attorney General reserves his right, if there are exigent circumstances regarding Level's service to its Ohio customers, to by-pass the fourteen (14) calendar day notice period and immediately take any and all legal actions to address those exigent circumstances.

    H.    The Attorney General may notify or serve Level as provided under this Agreed Entry & Order or in any subsequent action at the following address and telephone number:

> H. Jeffrey Schwartz, Esq.
> Benesch, Friedlander, Coplan & Aronoff LLP
> 2300 BP Tower, 200 Public Square
> Cleveland, Ohio 44114-2378
> (216) 363-4500

Level shall notify the Attorney General in writing of any change in the notice/service person or contact information.

    I.    Level, if necessary, may notify the Attorney General under this Agreed Entry & Order at the following address and telephone number:

> Mr. David M. Dembinski
> Assistant Attorney General
> Consumer Protection Section
> 30 East Broad Street, 14th Floor
> Columbus, Ohio 43215
> (614) 644-9618

    If Mr. Dembinski is unavailable, Level may notify the Attorney General at the following address and telephone number:

> Senior Deputy Attorney General
> Consumer Protection Section
> 30 East Broad Street, 14th Floor
> Columbus, Ohio 43215
> (614) 644-9618

    J.    Failure of the Attorney General to timely enforce any term, condition, or requirement of this Agreed Entry & Order shall not provide, nor be construed to provide, Level a

defense for noncompliance with any term of this Agreed Entry & Order or any other law, rule, or regulation; nor shall it stop or limit the Attorney General from later enforcing any term of this Agreed Entry & Order or seeking any other remedy available by law, rule, or regulation.

JUDGE W. DUNCAN WHITNEY

APPROVED:

JIM PETRO
Attorney General

DAVID M. DEMBINSKI
Ohio Sup. Ct. Atty. No. 0006978
MICHAEL S. ZIEGLER
Ohio Sup. Ct. Atty. No. 0042206

Assistant Attorneys General
Consumer Protection Section
30 East Broad Street
State Office Tower - 14th Floor
Columbus, Ohio 43215-3428
614/644-9618

Counsel for Plaintiff

JOHN A. GLEASON
Ohio Sup. Ct. Atty. No. 0039150
Benesch, Friedlander, Coplan & Aronoff LLP
88 East Broad Street, Suite 900
Columbus, Ohio 43215-3506
614/223-9300

Counsel for Level Propane Gases, Inc., Debtor
and Debtor-in-Possession



Public Docket Information

### NORMAN HUSAR V/S DOLGEN MIDWEST LLC       Case Number: **22CV207195**

**Case Details**

Type Of Action: Other Civil-CV
Judge: Miraldi, Judge James
Filed On: 10/11/2022

**Parties**

| Name | Birth Date | Party | Address | Attorney(s) |
|------|------------|-------|---------|-------------|
| HUSAR, NORMAN | N/A | P | C/O DANNLAW 15000 MADISON AVE LAKEWOOD, OHIO 44107 | |
| DOLGEN MIDWEST LLC | N/A | D | C/O CORPORATION SERVICE COMPANY 3366 RIVERSIDE DR,STE 103 UPPER ARLINGTON, OHIO 43221 | |

**Filter Docket**

☐ Show All        ☐ FILING        ☐ REQUEST

☐ FEES

[Filter]

| Date | Type | Description |
|------|------|-------------|
| 10/11/2022 | N/A | Filing fee of $300.00, paid by: DANN LAW FIRM CO LPA |
| 10/11/2022 | N/A | Receipt #: 22-0023571 Processed. |
| 10/11/2022 | FILING | COMPLAINT FILED. |
| 10/11/2022 | REQUEST | REQUEST FOR SERVICE FILED. |
| 10/11/2022 | N/A | SUMMONS W/COPY OF COMPLAINT SENT CERTIFIED MAIL TO: DOLGEN MIDWEST LLC ARTICLE #9414726699042202719822 |
| 10/19/2022 | N/A | Certified Mail Return : Article # : 9414726699042202719822, Delivered Date : 10/14/2022, Reason : Signed Receipt for Certified Mail Returned and Filed., Party : DOLGEN MIDWEST LLC, Note : |
| 11/14/2022 | FILING | NOTICE OF REMOVAL FILED BY DEFT |
| 11/17/2022 | N/A | Defendant has timely filed a notice of removal to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. Sec. 1446. Therefore, the clerk of courts shall transfer the above-captioned case to United States District Court for the Northern District of Ohio, forthwith. |

A555

11/17/2022 FEES      FEES ADDED:

**Print Docket**       **Close**

A556

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

CMCSch,Cat12,Parker

# U.S. District Court
## NORTHERN DISTRICT OF OHIO (Cleveland)
## CIVIL DOCKET FOR CASE #: 1:22-cv-02044-JG

Husar v. Dolgen Midwest, LLC
Assigned to: Judge James S. Gwin
Demand: $5,000,000
Case in other court: Lorain County Common Pleas, 22-cv-207195
Cause: 28:1441 Petition for Removal

Date Filed: 11/14/2022
Jury Demand: Both
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Norman Husar**
*on behalf of himself and those similarly situated*

represented by   **Brian D. Flick**
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
513-645-3488
Fax: 216-373-0536
Email: bflick@dannlaw.com
*ATTORNEY TO BE NOTICED*

**Marc E. Dann**
Dann Law
15000 Madison Avenue
Lakewood, OH 44107
216-373-0539
Fax: 216-373-0536
Email: notices@dannlaw.com
*ATTORNEY TO BE NOTICED*

**Michael A. Smith , Jr.**
Dann Law
15000 Madison Avenue
Lakewood, OH 44107
216-373-0539
Fax: 216-373-0536
Email: msmith@dannlaw.com
*ATTORNEY TO BE NOTICED*

**Whitney E. Kaster**
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
216-452-1029
Email: wkaster@dannlaw.com
*ATTORNEY TO BE NOTICED*

A557

V.

**Defendant**

**Dolgen Midwest, LLC**
*doing business as*
Dollar General

represented by **R. Trent Taylor**
McGuireWoods
800 East Canal Street
Richmond, VA 23219
804-775-1182
Fax: 804-225-5409
Email: rtaylor@mcguirewoods.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Travis C. Gunn**
McGuireWoods
800 East Canal Street
Richmond, VA 23219
804-775-7622
Fax: 804-698-2039
Email: tgunn@mcguirewoods.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brenna L. Fasko**
Thompson Hine
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291
216-566-5500
Fax: 216-566-5800
Email: brenna.fasko@thompsonhine.com
*ATTORNEY TO BE NOTICED*

**Elizabeth B. Wright**
Thompson Hine - Cleveland
3900 Key Tower
127 Public Square
Cleveland, OH 44114
216-566-5500
Fax: 216-566-5800
Email:
elizabeth.wright@thompsonhine.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/14/2022 | 1 | **Notice of Removal** from Lorain County Common Pleas, case number 22CV207195 with jury demand, Filing fee paid $ 402, receipt number AOHNDC-11710412. Filed by Dolgen Midwest, LLC. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1 - Summons and Complaint, # 3 Exhibit 2 - Complaint without missing page, # 4 Exhibit 3 - State Court |

A558

| | | Notice of Notice of Removal, # 5 Exhibit 4 - Financial Information). (Wright, Elizabeth) (Entered: 11/14/2022) |
|---|---|---|
| 11/14/2022 | 2 | Corporate Disclosure Statement identifying Corporate Parent Dollar General Corporation for Dolgen Midwest, LLC, filed by Dolgen Midwest, LLC. (Wright, Elizabeth) (Entered: 11/14/2022) |
| 11/14/2022 | 3 | **Motion** for attorney Travis C. Gunn to Appear Pro Hac Vice. Filing fee $ 120, receipt number AOHNDC-11710467, filed by Defendant Dolgen Midwest, LLC. (Attachments: # 1 Declaration in Support of Gunn PHV). (Wright, Elizabeth) (Entered: 11/14/2022) |
| 11/14/2022 | 4 | **Motion** for attorney Trent Taylor to Appear Pro Hac Vice. Filing fee $ 120, receipt number AOHNDC-11710490, filed by Defendant Dolgen Midwest, LLC. (Attachments: # 1 Declaration in Support of Taylor PHV). (Wright, Elizabeth) (Entered: 11/14/2022) |
| 11/14/2022 | 5 | **Motion** for leave to file exhibit under partial seal, filed by Defendant Dolgen Midwest, LLC. (Wright, Elizabeth) (Entered: 11/14/2022) |
| 11/14/2022 | | Judge James S. Gwin assigned to case. (L,MI) (Entered: 11/14/2022) |
| 11/14/2022 | | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge Thomas M. Parker. (L,MI) (Entered: 11/14/2022) |
| 11/14/2022 | 6 | Magistrate Consent Form issued. (L,MI) (Entered: 11/14/2022) |
| 11/16/2022 | 7 | Supplement to **Motion** for attorney Travis C. Gunn to Appear Pro Hac Vice; **Motion** for attorney Trent Taylor to Appear Pro Hac Vice, filed by Dolgen Midwest, LLC. (Related document(s) 3 , 4 ). (Attachments: # 1 Exhibit A - Declaration of R. Trent Taylor, # 2 Exhibit B - Declaration of Travis C. Gunn) (Wright, Elizabeth) (Entered: 11/16/2022) |
| 11/21/2022 | | **Order** [non-document] granting Motion for appearance pro hac vice by attorney Travis C. Gunn for Dolgen Midwest, LLC. Local Rule 5.1(c) requires that attorneys register for NextGen CM/ECF and file and receive all documents electronically. NextGen CM/ECF registration can be done online at www.pacer.gov. Login with your PACER credentials, go to the Maintenance tab, click Attorney Admissions/E-File Registration, select Ohio Northern District Court and then select Pro Hac Vice. If you were previously granted pro hac vice status and are already registered to file electronically, it is not necessary to register again. Judge James S. Gwin on 11/21/22. (Related Doc # 3 )(T,A) (Entered: 11/21/2022) |
| 11/21/2022 | | **Order** [non-document] granting Motion for appearance pro hac vice by attorney R. Trent Taylor for Dolgen Midwest, LLC. Local Rule 5.1(c) requires that attorneys register for NextGen CM/ECF and file and receive all documents electronically. NextGen CM/ECF registration can be done online at www.pacer.gov. Login with your PACER credentials, go to the Maintenance tab, click Attorney Admissions/E-File Registration, select Ohio Northern District Court and then select Pro Hac Vice. If you were previously granted pro hac vice status and are already registered to file electronically, it is not necessary to register again. Judge James S. Gwin on 11/21/22. (Related Doc # 4 )(T,A) (Entered: 11/21/2022) |
| 11/21/2022 | 8 | **Motion** to dismiss for failure to state a claim filed by Defendant Dolgen Midwest, LLC. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A - SOP 88 (Customer Overcharges)(Wright, Elizabeth) (Entered: 11/21/2022) |
| 11/21/2022 | 9 | **Answer** to Complaint with Jury Demand (Related Doc # 1 ) filed by Dolgen Midwest, LLC. (Wright, Elizabeth) (Entered: 11/21/2022) |
| 11/28/2022 | 10 | **Case Management Conference Scheduling Order** signed by Judge James S. Gwin on 11/28/22 setting a case management conference on 1/11/2023 at 12:00 PM to be held by video conference (Cleveland) before Judge James S. Gwin. This Court requires the |

| | | attendance of (1) all parties, (2) lead counsel, and (3) a representative with full authority for settlement purposes. (Attachments: # 1 Parties' Planning Meeting Report, # 2 Local Rule 30.1)(T,A) (Entered: 11/28/2022) |
|---|---|---|
| 12/02/2022 | 11 | Unopposed **Motion** for extension of time until 01/09/2023 to file response/reply to 8 **Motion** to dismiss for failure to state a claim filed by Plaintiff Norman Husar. Related document(s) 8 . (Flick, Brian) (Entered: 12/02/2022) |
| 12/08/2022 | | **Order** [non-document] entered by Judge James S. Gwin on 12/8/22 granting plaintiff's 11 Unopposed **Motion** for extension of time until 01/09/2023 to file response/reply to 8 **Motion** to dismiss for failure to state a claim . No further extensions. (T,A) (Entered: 12/08/2022) |
| 01/02/2023 | 12 | Preliminary Estimate/Budget of Amount of Fees and Expenses filed by Norman Husar. Related document(s) 10 .(Flick, Brian) (Entered: 01/02/2023) |

<table>
<tr><td colspan="4" align="center">**PACER Service Center**</td></tr>
<tr><td colspan="4" align="center">**Transaction Receipt**</td></tr>
<tr><td colspan="4" align="center">01/04/2023 10:06:25</td></tr>
<tr><td>**PACER Login:**</td><td>merinolawpc</td><td>**Client Code:**</td><td>07457-Button</td></tr>
<tr><td>**Description:**</td><td>Docket Report</td><td>**Search Criteria:**</td><td>1:22-cv-02044-JG</td></tr>
<tr><td>**Billable Pages:**</td><td>3</td><td>**Cost:**</td><td>0.30</td></tr>
</table>

A560

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **NORMAN HUSAR**, on behalf of himself and those similarly situated, | |
| Plaintiff(s), | |
| v. | **Case Number** _____ |
| **DOLGEN MIDWEST, LLC** d/b/a DOLLAR GENERAL | |
| Defendant. | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, as well as the Class Action Fairness

Act ("CAFA"), Defendant Dolgen Midwest, LLC ("Dollar General" or "Defendant") removes the

above-entitled action from the Lorain County Court of Common Pleas, Lorain County, Ohio, to

the United States District Court for the Northern District of Ohio, Eastern Division, on the grounds

of original jurisdiction under CAFA.  In support of this Notice of Removal, and in accordance with

28 U.S.C. § 1446, Dollar General states as follows:

### PROCEDURAL BACKGROUND

1.     Plaintiff Norman Husar, a citizen and resident of Ohio, filed a complaint in the

Lorain County Court of Common Pleas, Lorain County, Ohio, on October 11, 2022, captioned

*Norman Husar v. Dolgen Midwest, LLC d/b/a Dollar General*, Case No. 22-cv-207195 ("State

Court Action").

2.     On October 14, 2022, process of this complaint was served on Dollar General's

registered agent.

A561

# EXHIBIT 4

FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS
11/01/2022 03:14 PM
CV 2022 11 1812

**IN THE COURT OF COMMON PLEAS**
**BUTLER COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO ex rel. | ) | |
| ATTORNEY GENERAL | ) | CASE NO. |
| DAVE YOST | ) | |
| 30 E. Broad Street, 14th Floor | ) | JUDGE |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT AND REQUEST FOR** |
| | ) | **DECLARATORY JUDGMENT,** |
| DOLLAR GENERAL CORPORATION | ) | **INJUNCTIVE RELIEF,** |
| d/b/a DOLLAR GENERAL | ) | **CONSUMER RESTITUTION, AND** |
| 100 Mission RDG | ) | **CIVIL PENALTIES** |
| Goodlettsville, TN 37072 | ) | |
| | ) | |
| Defendant. | ) | |

## JURISDICTION AND VENUE

1.  Plaintiff, State of Ohio, through Attorney General Dave Yost, having reasonable cause to believe that violations of Ohio's consumer protection laws have occurred, brings this action in the public interest and on behalf of the State of Ohio under the authority vested in the Attorney General by R.C. 1345.07.

2.  The actions of Defendant Dollar General Corporation, as described below, have occurred in Ohio, including in Butler County, and, as set forth below, are in violation of the Consumer Sales Practices Act ("CSPA"), R.C. 1345.01 et seq., and its Substantive Rules, Ohio Administrative Code ("O.A.C") 109:4-3-01 et seq.

3.  Jurisdiction over the subject matter of this action lies with this Court pursuant to R.C. 1345.04 of the CSPA.

4.  This Court has venue to hear this case pursuant to Ohio Civ. R. 3(C)(3) because Butler County is one of the Ohio counties in which the Defendant conducted activity that gave rise to the claim for relief.

A563

## DEFENDANT

5. Defendant is a Tennessee corporation that has been registered with the Tennessee Secretary of State since May 29, 1998.

6. Defendant's principal place of business is 100 Mission RDG, Goodlettsville, Tennessee 37072.

7. Defendant engaged in consumer transactions using the name Dollar General.

8. Defendant registered the trade name, Dollar General, with the Ohio Secretary of State on March 2, 2015.

9. Defendant is a "supplier," as that term is defined in R.C. 1345.01(C), as Defendant engaged in the business of effecting "consumer transactions," either directly or indirectly, by soliciting or selling goods or services to "consumers" for purposes that were primarily for personal, family or household use, as those terms are defined in R.C. 1345.01(A), (C) and (D).

## STATEMENT OF FACTS

10. Defendant has been at all times relevant to this action engaged in the business of selling consumer goods in the State of Ohio, including in Butler County.

11. Defendant offers sales of household goods at multiple store locations throughout Ohio using advertisements on their shelves to display the price of goods.

12. When the goods are scanned for purchase at the register, the price that is charged to the consumer is different than the price advertised on the shelf.

13. Consumers are damaged when they pay prices higher than the advertised price, whether they realize the pricing difference at the point of sale or not.

A564

## CAUSE OF ACTION: VIOLATIONS OF THE CSPA

### Count I – Unfair and Deceptive Acts and Practices

14.   Plaintiff incorporates by reference, as if completely rewritten herein, the allegations set forth in Paragraphs One through Thirteen (1-13) of this Complaint.

15.   Defendant committed unfair or deceptive acts or practices in violation of the CSPA, R.C. 1345.02(A) and R.C. 1345.02(B)(8), by representing that a specific price advantage exists, if it does not.

16.   The acts or practices described above have been previously determined by Ohio courts to violate the CSPA, R.C. 1345.01 et seq. Defendants committed said violations after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

### Count II - Bait Advertising

17.   Plaintiff incorporates by reference, as if completely rewritten herein, the allegations set forth in Paragraphs One through Thirteen (1-13) of this Complaint.

18.   Defendant committed unfair or deceptive acts or practices in violation of the CSPA, R.C. 1345.02(A), and the Bait Advertising Rule, O.A.C. 109:4-3-03, by making offers of sales of goods when such offers are not a bona fide effort to sell such a good.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.   DECLARE, pursuant to R.C. 1345.07(A)(1), that each act or practice complained of herein violates the CSPA, R.C. 1345.01 et seq., and its Substantive Rules, O.A.C. 109:4-3-01 et seq., in the manner set forth in this Complaint.

A565

B.   ISSUE A PERMANENT INJUNCTION, pursuant to R.C. 1345.07(A)(2), enjoining Defendant, doing business under its own name or any other names, its agents, representatives, salespersons, employees, successors, or assigns, and all other persons acting in concert and participation with Defendant, directly or indirectly, from engaging in the acts or practices of which Plaintiff complains and from further violating the CSPA, R.C. 1345.01 et seq., and its Substantive Rules, O.A.C. 109:4-3-01 et seq., including, but not limited to, violating the specific statutes and rules alleged to have been violated herein.

C.   ASSESS, FINE, AND IMPOSE upon Defendant a civil penalty of $25,000 for each separate and appropriate violation described herein, pursuant to R.C. 1345.07(D).

D.   ORDER Defendant, pursuant to R.C. 1345.07(B), to pay actual damages to all consumers injured by the conduct of Defendant.

E.   ISSUE AN INJUNCTION prohibiting Defendant from engaging in business as a supplier in any consumer transaction in Ohio until such time as Defendant has satisfied all monetary obligations ordered by this Court or any other Ohio court, in connection with a consumer transaction.

F.   GRANT the Plaintiff its costs in bringing this action including, but not limited to, the costs of collecting on any judgment awarded.

G.   ORDER Defendant to pay all court costs.

H.   GRANT such other relief as the Court deems to be just, equitable, and appropriate.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

/s/ Lisa M. Treleven
LISA M. TRELEVEN (0086628)

4

A566

Assistant Attorney General
Consumer Protection Section
411 Vine Street, 17th Floor
Cincinnati, Ohio 45202
(513)852-1527 (phone)
(866)347-2545 (fax)
Lisa.Treleven@OhioAGO.gov
Counsel for Plaintiff, State of Ohio

A567

## CV 2022 11 1812 OHIO ATTORNEY GENERAL vs. DOLLAR GENERAL CORPORATION et al -OSTER

- Case Type:
  CIVIL - GENERAL
- Case Status:
  Open
- File Date:
  11/01/2022
- DCM Track:

- Action:
  CONSUMER SALES PRACTICES ACT-TRANSACTIONS O.R.C. 1345.01<13 (H)
- Status Date:
  11/01/2022
- Case Judge:
  Oster Jr., Honorable Michael A.
- Next Event:
  01/12/2023

| All Information | Party | Event | Docket | Disposition | Financial | Receipt |

### Docket Information

| Date | Docket Text | Amount Owed | Avail. | Image |
|------|-------------|-------------|--------|-------|
| 11/01/2022 | FUNDS ON DEPOSIT FOR COURT COST. | $0.00 | | |
| 11/01/2022 | INSTRUCTIONS TO THE CLERK: Mail a certified copy of the complaint to the Attorney General's Consumer Protection Division pursuant to ORC 1345.09(E). | | | |
| 11/01/2022 | General Division Special Projects Fee pursuant to Local Rule 4.13. | $165.00 | | |
| 11/01/2022 | Legal aid fees pursuant to ORC 2303.210 (C). | $26.00 | | |
| 11/01/2022 | General Division Arbitration/Mediation Special Project Fee pursuant Local Rule 4.12. | $30.00 | | |
| 11/01/2022 | Clerk of Courts Computerization Fee pursuant to ORC 2303.201 (B)(1). | $20.00 | | |
| 11/01/2022 | Court Computerization Fee pursuant to ORC 2303.201 (A)(1). | $5.00 | | |
| 11/01/2022 | Complaint & Filing fee for each cause of action ORC 2303.20(A). Attorney: TRELEVEN, LISA (0086628) | $25.00 | Image |
| 11/01/2022 | NOTICE OF APPEARANCE FILED Attorney: TRELEVEN, LISA (0086628) | $2.00 | Image |
| 11/01/2022 | PRECIPE FOR SERVICE Attorney: TRELEVEN, LISA (0086628) | $0.00 | Image |
| 11/01/2022 | SERVICE COPIES | $1.00 | |

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 11/02/2022 | AMENDED COMPLAINT FILED<br>Attorney: TRELEVEN, LISA (0086628) | $35.00 | ⊘<br>Image |
| 11/02/2022 | PRECIPE FOR SERVICE<br>Attorney: TRELEVEN, LISA (0086628) | $0.00 | ⊘<br>Image |
| 11/02/2022 | PRECIPE FOR SERVICE<br>Attorney: TRELEVEN, LISA (0086628) | $0.00 | ⊘<br>Image |
| 11/02/2022 | SERVICE COPIES | $1.00 | |
| 11/04/2022 | ELECTRONIC CERTIFIED MAIL COVERSHEET (IMPB BARCODE) | $6.00 | ⊘<br>Image |
| 11/04/2022 | Issue Date:  11/04/2022<br>Service:  SUMMONS BY CERTIFIED MAIL<br>Method:  E-CERTIFIED MAIL (w/ ERR)<br>Cost Per:  $0.00<br><br>DOLLAR GENERAL CORPORATION<br>C/O DOLGEN MIDWEST LLC<br>100 MISSION RIDGE<br>GOODLETTSVILLE, TN  37072<br>Tracking No: Z000058287 | $0.00 | |
| 11/04/2022 | SUMMONS ON COMPLAINT BY CERTIFIED MAIL ISSUED.<br><br>SUMMONS ON COMPLAINT BY CERTIFIED MAIL<br>Sent on:  11/04/2022  15:48:35.56 | $1.00 | ⊘<br>Image |
| 11/04/2022 | ELECTRONIC CERTIFIED MAIL COVERSHEET (IMPB BARCODE) | $6.00 | ⊘<br>Image |
| 11/04/2022 | Issue Date:  11/04/2022<br>Service:  COPY BY CERTIFIED MAIL<br>Method:  E-CERTIFIED MAIL (w/ ERR)<br>Cost Per:  $0.00<br><br>STATE OF OHIO<br>CONSUMER SALES PROTECTION DIVISION<br>30 E BROAD STREET<br>COLUMBUS, OH  43215<br>Tracking No: Z000058288 | $0.00 | |
| 11/04/2022 | COPY BY CERTIFIED MAIL ISSUED.<br><br>COPY ISSUED BY CERTIFIED MAIL<br>Sent on:  11/04/2022  15:51:14.99 | $0.00 | ⊘<br>Image |
| 11/07/2022 | ELECTRONIC CERTIFIED MAIL COVERSHEET (IMPB BARCODE) | $12.00 | ⊘<br>Image |

A569

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 11/07/2022 | Issue Date:  11/07/2022<br>Service:  SUMMONS ON AMENDED COMPLAINT<br>Method:  E-CERTIFIED MAIL (w/ ERR)<br>Cost Per:  $0.00<br><br>DOLLAR GENERAL CORPORATION<br>C/O DOLGEN MIDWEST LLC<br>100 MISSION RIDGE<br>GOODLETTSVILLE, TN  37072<br>Tracking No: Z000058300<br><br>DOGEN MIDWEST LLC<br>C/O CORPORATION SERVICE COMPANY<br>3366 RIVERSIDE DR STE 103<br>UPPER ARLINGTON, OH  43221<br>Tracking No: Z000058301 | $0.00 | |
| 11/07/2022 | SUMMONS ON AMENDED COMPLAINT ISSUED.<br><br>AMENDED SUMMONS<br>Sent on:  11/07/2022  09:20:48.95 | $1.00 | Image |
| 11/15/2022 | RETURN RECEIPT OF CERTIFIED MAIL OF<br>Method    : E-CERTIFIED MAIL (w/ ERR)<br>Issued     : 11/07/2022<br>Service    : SUMMONS ON AMENDED COMPLAINT<br>Served    : 11/09/2022<br>Return     : 11/15/2022<br>On         : DOGEN MIDWEST LLC<br>Signed By : WILLIAM P<br><br>Reason    : CERTIFIED MAIL SERVICE SUCCESSFUL<br>Comment  :<br><br>Tracking # : Z000058301 | $0.00 | Image |
| 12/02/2022 | COURT ADMINISTRATION OFFICE HAS SCHEDULED:<br>Event: STATUS REPORT HEARING<br>Date: 01/12/2023    Time: 9:50 am<br>Judge: Oster Jr., Honorable Michael A.    Location: General Division<br>Court, GSC 3rd Floor, Courtroom A | | |
| 12/02/2022 | COURT ADMINISTRATION OFFICE  ISSUED NOTICE TO REPORT<br><br>NOTICE TO REPORT OSTER<br>Sent on:  12/02/2022  12:21:12.13 | $2.00 | Image |
| 12/06/2022 | STIPULATION FOR EXTENSION OFTIME TO RESPOND<br>AMENDED COMPLAINT AND REQUEST FOR DECLARATORY<br>RELIEF, CONSUMER<br>RESTITUTION, AND CIVIL PENALTIES FILED<br>Attorney: MOORE, BRANDON P (0092716) | $0.00 | Image |

A570

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 12/06/2022 | APPEARANCE OF COUNSEL FILED<br>Attorney: MOORE, BRANDON P (0092716)  Receipt: 1037669  Date: 12/06/2022 | $2.00 | ⊘<br>Image |
| 12/07/2022 | RETURN RECEIPT OF CERTIFIED MAIL OF<br>　　Method　 : E-CERTIFIED MAIL (w/ ERR)<br>　　Issued　 : 11/04/2022<br>　　Service　 : SUMMONS BY CERTIFIED MAIL<br>　　Served　 : 11/15/2022<br>　　Return　 : 12/07/2022<br>　　On　　 : DOLLAR GENERAL CORPORATION<br>　　Signed By : ILLEGIBLE<br><br>　　Reason　 : CERTIFIED MAIL SERVICE SUCCESSFUL<br>　　Comment　 :<br><br>　　Tracking # : Z000058287 | $0.00 | ⊘<br>Image |
| 12/08/2022 | RETURN RECEIPT OF CERTIFIED MAIL OF<br>　　Method　 : E-CERTIFIED MAIL (w/ ERR)<br>　　Issued　 : 11/04/2022<br>　　Service　 : COPY BY CERTIFIED MAIL<br>　　Served　 : 11/17/2022<br>　　Return　 : 12/08/2022<br>　　On　　 : STATE OF OHIO<br>　　Signed By : JOHN ANDERSON<br><br>　　Reason　 : CERTIFIED MAIL SERVICE SUCCESSFUL<br>　　Comment　 :<br><br>　　Tracking # : Z000058288 | $0.00 | ⊘<br>Image |

A571

# Exhibit 5

  Cleveland | Columbus | Cincinnati | New Jersey | New York  

Date Filed: 08/21/2023     Page: 601     Document: 1-1     Case: 23-8034

**Marc E. Dann**

216-452-1026  
Direct Telephone

MDann@DannLaw.com  
Email

216-373-0536  
Fax

January 27, 2023

R. Trent Taylor  
McGuire Woods, 800 East Canal Street  
Richmond, VA 23219  
rtaylor@mcguirewoods.com

Breana Fasko  
Thompson Hine LLP, 3900 Key Center, 127 Public Square  
Cleveland, OH 44114-1291  
Brenna.Fasko@ThompsonHine.com

**Re: 1:22-cv-02044 ND OH Husar v. Dolgen**  
**3:22-cv-07028 D NJ  Button v. Dollar General Corporation, et al.**  
**7:23-cv-00558 SD NY Wolf v. Dollar General Corporation, et al.**  
**2:23-cv-0002 ED KY Husar v. Dollar General**

Trent and Breanna:

Multiple news outlets today have reported on a shutdown of Dollar General Stores in Ohio and have indicated that efforts are being made to reconcile shelf pricing with the pricing on Dollar General's point of sale system.[1]

On behalf of Norman Husar, Ryan Button, and Joseph and Carmen Wolf, and the respective putative class of plaintiffs, we request that your clients preserve all documents, physical and electronic, created or maintained that relate in any way to the process of changing

---

[1]

https://www.nbc4i.com/news/local-news/ohio-dollar-general-stores-shut-down-amid-overcharging-lawsuit/  
https://www.wkbn.com/news/local-news/all-ohio-dollar-generals-shut-down-to-the-public/  
https://www.wtrf.com/ohio/dollar-general-shuts-down-all-ohio-stores/

DannLaw  
15000 Madison Ave.  
Cleveland OH 44107  
216-373-0539  
www.dannlaw.com



Case: 23-8034   Document: 1-1   Page: 602   Date Filed: 08/21/2023

Shelf Pricing in Ohio, New Jersey, and New York Stores from July 1, 2022 and to continue to preserve such documents on an ongoing basis. That information includes but is not limited to: hard-copy documents; e-mails; information and postings on social media websites; electronic documents; pictures; text messages; data generated by calendaring or task management software; data created with the use of cellular devices, tablets, and/or document management software; data created with the use of paper and electronic mail logging and routing software; electronic activity logs; and personal e-mail accounts; any reports required by the Butler County Common Pleas Court, Ohio County Auditors or the Office of the Ohio Attorney General. You must preserve all potentially relevant information, regardless of whether it is contained on business or personal computers, cell phones, tablets, or any other devices.

Please also suspend all automatic disposal, deletion, or recycling of electronic files, including but not limited to email accounts. Please check the settings on your devices and email accounts to ensure that any automatic deletion settings are turned off immediately.

Thank you for your attention to this matter.

Sincerely,

Marc Dann

Mailing Address
PO Box 6031040
Cleveland OH  44103

DannLaw.com
877-475-8100

Physical Address
2728 Euclid Ave Suite 300
Cleveland OH  44115

A574